## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Regina M. Rodriguez

Civil Action No. 25-CV-2720-RMR

NESTOR ESAI MENDOZA GUTIERREZ, for himself and on behalf of themselves and others similarly situated,

       Petitioners-Plaintiffs,

v.

JUAN BALTASAR, Warden, Denver Contract Detention Facility, Aurora, Colorado, in his official capacity,

ROBERT GUADIAN, Director of the Denver Field Office for U.S. Immigration and Customs Enforcement, in his official capacity;

KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, in her official capacity;

TODD LYONS, Acting Director of U.S. Immigration and Customs Enforcement, in his official capacity;

PAMELA BONDI, Attorney General of the United States, in her official capacity;

EXECUTIVE OFFICE FOR IMMIGRATION REVIEW;

SIRCE OWEN, Acting Director for Executive Office of Immigration Review, in her official capacity;

U.S. DEPARTMENT OF HOMELAND SECURITY;

AURORA IMMIGRATION COURT; and,

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, MARK BOWEN, Acting Warden,

       Respondents-Defendants.

---

## ORDER

---

For decades, whenever the United States Immigration and Customs Enforcement ("ICE") detained a noncitizen[1] within the interior part of the United States who did not have a pending order of removal, the Department of Homeland Security ("DHS") detained them under Section 236 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226. Earlier this year, there was a policy change. Instead of detaining noncitizens apprehended in the interior of the United States under INA § 236, 8 U.S.C. § 1226, DHS decided to detain these individuals, under INA § 235, 8 U.S.C. § 1225. This statute had traditionally been used for noncitizens seeking admission into the United States who are detained at the border or near the border shortly after entry into the United States. Under 8 U.S.C. § 1225, detention is required during the pendency of a noncitizen's immigration removal proceedings whereas under 8 U.S.C. § 1226, noncitizens are entitled to a bond hearing and, if certain criteria are met, may be released on bond pending their immigration removal proceedings. This change in policy has resulted in many noncitizens, many of whom have in the United States for decades, being detained without a hearing. Throughout the United States, noncitizens have challenged DHS's new policy. One of the only courts that has embraced this new legal interpretation of the INA is the Board of Immigration Appeals ("BIA") in a decision issued September 5, 2025. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 216 (BIA 2025). In contrast, most of the federal district courts that have considered this issue determined that 8 U.S.C. § 1226 rather than 8 U.S.C. § 1225 applies to noncitizens who have resided in the United States for years, do

---

[1] This Opinion uses the terms "alien" and "noncitizen" interchangeably.

not have a removal order, and are detained by ICE. Respondents have failed to convince this Court otherwise.

Pending before the Court is Petitioner Nestor Esai Mendoza Gutierrez's ("Mr. Gutierrez" or "Petitioner") First Amended Class Action Complaint for Vacatur and Declaratory and *Habeas Corpus* Relief ("Petition" or "Amended Complaint"), ECF No. 6; Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction ("Emergency TRO"), ECF No. 14; and Plaintiff's Motion for Class Certification, ECF No. 15. Respondents filed a consolidated response, ECF No. 26, and Petitioner filed a Court-ordered consolidated reply, ECF No. 29. For the following reasons, the Court GRANTS the individual Emergency TRO, DEFERS ruling on the Motion for Class Certification, and further ORDERS pursuant to the All Writs Act, 28 U.S.C. § 1651(a), and to preserve the Court's jurisdiction, that Respondents SHALL be enjoined from removing Mr. Gutierrez and the class he proposes to represent from the United States or transferring them from the District of Colorado during the pendency of this action.

## I.     BACKGROUND

### A.     Factual Background

The following facts are derived from the allegations outlined in the Amended Complaint, ECF No. 6, Emergency TRO, ECF No. 14, and the Respondent's response, ECF No. 26. The Court assumes their truth only for the purpose of issuing this Order.

Mr. Gutierrez is a native of El Salvador who has resided in the Denver Metro Area since 1999. ECF No. 6 at 17. He currently lives with his wife and two teenage children, ages 18 and 16, who are U.S. citizens. *Id.* Mr. Gutierrez owns his own construction firm.

*Id.* He pays all required taxes, including Social Security, even though he does not benefit from Social Security. *Id.* In 2003, he was convicted in Colorado of Driving with Ability Impaired. ECF No. 26-1 ¶ 5. He received a 90-day suspended sentence. *Id.* In 2017, his son was sexually assaulted by a family friend. ECF No. 6 at 17. The Aurora, CO Police Department has an active warrant for the suspect's arrest. *Id.* Mr. Gutierrez has been subpoenaed to testify as a witness if, or when, the case goes to trial. *Id.* In 2024, Mr. Gutierrez applied for a "Victims of Criminal Activity" U-Visa as a parent of a minor child who is a victim of a crime. ECF No. 14-7 ¶ 10. His application is still pending. *Id.* On May 23, 2025, one of Mr. Gutierrez's neighbors accused him of indecent exposure at the apartment complex's pool. *Id.* ¶ 12. The Broomfield Police Department arrested him. *Id.* On May 25, 2025, he was released from jail and immediately detained by the United States ICE pursuant to 8 U.S.C. § 1226(a). ECF No. 26-1 ¶ 7. On June 10, 2025, the indecent exposure case was dismissed. ECF No. 6 at 19. On some unknown date, the DHS "reexamined its detention authority and determined that 8 U.S.C. 1225 is the correct detention authority that applies to" Mr. Gutierrez. ECF No. 26-1 ¶ 8. On June 23, 2025, Mr. Gutierrez appeared before the Immigration Judge ("IJ") for a custody redetermination hearing. *Id.* ¶ 13. At the hearing, the IJ found he lacked jurisdiction to issue a bond because Petitioner is detained pursuant to 8 U.S.C. § 1225. *Id.* As of September 26, 2025, Petitioner was still detained at the Denver Contract Detention Facility in Aurora, CO, as he has been since ICE apprehended him over four months ago on May 25, 2025. ECF No. 29.

**B.    Procedural History**

On August 29, 2025, Mr. Gutierrez filed his original Verified Petition for Writ of Habeas Corpus ("Original Application") through the immigration attorney who helped him file his U-Visa application in 2024. ECF No. 1. In it, he alleged a violation of 8 U.S.C. § 1226(a), a violation of the INA bond regulations (8 C.F.R. §§ 236.1, 1236.1, and 1003.19), and a violation of the Administrative Procedure Act ("APA"). On September 2, 2025, this Court ordered the Respondents to file a response two weeks after service of the Original Application. ECF No. 5. That same day, with the assistance of counsel from the American Civil Liberties Union ("ACLU"), Mr. Gutierrez filed his Amended Complaint, adding the class action component and a Fifth Amendment due process claim. ECF No. 6. On September 3, 2025, Mr. Gutierrez filed his Emergency TRO, ECF No. 14, and Motion for Class Certification, ECF No. 15. On September 4, 2025, the Court directed respondents to include in the response to the Original Application a response to the Emergency TRO and Motion for Class Certification. ECF No. 22. The matter is now fully briefed. The Court will address the Petition and Emergency TRO first and then the Motion for Class Certification.

## II.    Analysis

### A.    Petition and Emergency TRO

In response to the Petition, Respondents present four primary arguments. First, Respondents contend that the Court lacks jurisdiction to decide Mr. Gutierrez's habeas petition under 8 U.S.C. § 1252(a)(5), 8 U.S.C. § 1252(b)(9), and 8 U.S.C. § 1252(g). ECF No. 26 at 9-10. Second, that even if the Court has jurisdiction, Petitioner's challenge to

"DHS's decision to detain him under Section 1225(b)(2)(A) rather than Section 1226(a), [] fails because the plain text of Section 1225(b)(2)(A) makes clear that Petitioner falls within its scope." *Id.* at 10. Third, Mr. Gutierrez is not entitled to preliminary injunctive relief enjoining Respondents from denying him bond because he is detained under 8 U.S.C. § 1225(b)(2)(A). The Court will first consider Respondents' jurisdictional arguments and then Petitioner's request for injunctive relief, which will incorporate Respondents' statutory arguments.

### 1.    Jurisdiction

The Court first addresses the government's argument that this Court lacks jurisdiction over requests for relief under 8 U.S.C. § 1252(a)(5), 8 U.S.C. § 1252(b)(9), and 8 U.S.C. § 1252(g).

### a.    Sections 1252(a)(5), (b)(9)

Respondents argue that "the decision to detain Petitioner under Section 1225(b)(2)(A) is a question of law arising from his removal proceedings" and that the "issue could be reviewed by the appropriate court of appeals as part of an appeal of a final order of removal." ECF No. 26 at 9. District courts indeed lack jurisdiction to review orders of removal. *See* 8 U.S.C. § 1252(a)(5) ("[A] petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal . . . "). And that judicial review includes "all questions of law and fact, including interpretation and application of constitutional and statutory provisions" related to that order of removal. 8 U.S.C. § 1252(b)(9). There are two flaws in Respondents' argument.

First, 8 U.S.C. § 1252(a)(5) has a specific carve out for "section 2241 of Title 28, or any other habeas corpus provision." Section 2241 of Title 28 authorizes a court to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Here, Mr. Gutierrez is seeking a review of his detention, not a removal order. No removal order has been issued. Second, several courts have rejected Respondents' 8 U.S.C. § 1252(a)(5) and (b)(9) arguments because Petitioner's claims "are legal in nature and challenge specific conduct unrelated to removal proceedings." *Garcia Cortes v. Noem*, No. 1:25-CV-02677-CNS, 2025 WL 2652880, at *2 (D. Colo. Sept. 16, 2025) (citing *Mukantagara v. U.S. Dep't of Homeland Sec.*, 67 F.4th 1113, 1116 (10th Cir. 2023) ("Congress did not intend the zipper clause 'to cut off claims that have a tangential relationship with pending removal proceedings.' . . . A claim only arises from a removal proceeding when the parties in fact are challenging removal proceedings.")); *see also Jose J.O.E. v. Bondi*, No. 25-CV-3051 (ECT/DJF), 2025 WL 2466670, at *7 (D. Minn. Aug. 27, 2025) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 294–95 (2018) ("For present purposes, it is enough to note that respondents are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal; and they are not even challenging any part of the process by which their removability will be determined. Under these circumstances, § 1252(b)(9) does not present a jurisdictional bar.") Thus, Sections 1252(a)(5) and (b)(9) do not deprive the Court of jurisdiction here.

### b.    Section 1252(g)

Section 1252(g) imposes a narrow judicial bar to a federal court's review of "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Respondents argue that §1252(g)'s bar for a district courts' review of the Attorney General's decision to commence proceedings "includes a bar on considering challenges to the *basis on which* ICE chooses to commence removal proceedings." ECF No. 26 at 9-10 (emphasis in the original). Other courts, including in this District, have rejected similar arguments because the noncitizen did not challenge a decision or action to commence proceedings, but rather challenged "the underlying legal bases" of the decisions. *See Garcia Cortes*, 2025 WL 2652880, at *1 (quoting *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *3 (S.D. Fla. Sept. 9, 2025)). This Court agrees with the analysis in *Garcia Cortes*, § 1252(g) does not deprive the Court of jurisdiction to consider the narrow legal questions of whether Mr. Gutierrez's detention under 8 U.S.C. § 1225 violates the INA and whether he is entitled to a bond hearing under § 1226's discretionary detention framework. These "purely legal" questions fit the exception to § 1252(g)'s jurisdiction-stripping provision, as they can be decided in the abstract on an undisputed factual record and do not challenge the Attorney General's discretionary authority. *See id*.

Having dispensed with the Respondents' jurisdictional arguments, the Court turns now to the merits of Petitioner's claims.

8

2.    **Preliminary Injunction**

a.    **Legal Standard**

"A preliminary injunction requested under Rule 65(a) is an extraordinary remedy that may only be awarded upon a clear showing that the [movant] is entitled to such relief." *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 112 (10th Cir. 2024) (internal citation and quotation marks omitted); see also *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1261 (10th Cir. 2004) ("the [movant's] right to relief must be clear and unequivocal" (internal citation omitted)). The movant must show:

> (1) a substantial likelihood of success on the merits of their suit; (2) that they are likely to suffer irreparable harm in the absence of preliminary relief; (3) this threatened harm outweighs the harm a preliminary injunction may pose to the opposing party; and (4) if issued, the injunction will not adversely affect the public interest.

*Rocky Mountain Gun Owners*, 121 F.4th at 112. The likelihood-of-success and irreparable-harm factors are "the most critical" in the analysis. *Id.* (internal citation omitted). And the third and fourth factors "merge" where, like here, the government is the opposing party. *Id.* (internal citation omitted).

When a party seeks a "disfavored" preliminary injunction, the Tenth Circuit requires more. *Free the Nipple—Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 797 (10th Cir. 2019). "Disfavored preliminary injunctions don't merely preserve the parties' relative positions pending trial." *Id.* Rather, "a disfavored injunction[s] may exhibit any of three characteristics: (1) it mandates action (rather than prohibiting it), (2) it changes the status quo, or (3) it grants all the relief that the moving party could expect from a trial win." *Id.* "To get a disfavored injunction, the moving party faces a heavier burden on the

likelihood-of-success-on-the-merits and the balance-of-harms factors: [H]e must make a 'strong showing' that these tilt in h[is] favor." *Id.*

Respondents argue that this is a "disfavored injunction" because Petitioner is requesting a change in the status quo, i.e., his immediate release from detention, or, in the alternative, his request mandates action by requiring the Respondents to provide him with a bond hearing within seven days. ECF No. 26 at 20. Petitioner argues that this is not a disfavored preliminary injunction because it would return to the status quo before the controversy, which would be DHS's decades-long practice of detaining individuals like Mr. Gutierrez under 8 U.S.C. § 1226. In a recent ruling by a court in this District granting a preliminary injunction requesting a constitutionally adequate bond hearing for a noncitizen, the court found that the preliminary injunction was "partly" disfavored. *Arostegui-Maldonado v. Baltazar*, No. 25-CV-2205-WJM-STV, 2025 WL 2280357, at *4 (D. Colo. Aug. 8, 2025). Similarly, here, this Court will require a "strong showing" on the likelihood of success on the merits.

### b.    Likelihood of Success on the Merits

Petitioner is likely to succeed on the merits of his claims that he is unlawfully detained under 8 U.S.C. § 1225(b)(2)(A)'s mandatory detention authority and should be subject to 8 U.S.C. § 1226(a)'s discretionary scheme. Respondents readily admit that other district courts that have considered this same or similar issue "have concluded that aliens who enter without inspection and then reside in the United States fall within the scope of Section 1226(a) rather than Section 1225(b)(2)(A)" by relying "on the same types of arguments Petitioner makes here." ECF No. 26 at 10 n.1; *see, e.g., Rodriguez v.*

*Bostock*, 779 F. Supp. 3d 1239, 1256-61 (W.D. Wash. 2025) (*Rodriguez I*) (on a motion for preliminary injunction, finding a similarly situated plaintiff to Petitioner likely to succeed on the merits based on analysis of the two statutes' plain text, their relationship to one another, legislative history, and longstanding DHS practice). The same is true for district courts in the Tenth Circuit. *See Salazar v. Dedos*, No. 1:25-CV-00835-DHU-JMR, 2025 WL 2676729, at *6 (D.N.M. Sept. 17, 2025) (determining petitioner's, who entered the United States without inspection in the late 1980s and raised two U.S. Citizen children, detention "should have been governed by § 1226 [rather than § 1225] and that the denial of a meaningful bond review and his resultant continued detention violates his due process rights"); *Garcia Cortes*, 2025 WL 2652880, at *3 (agreeing "with Petitioner that Respondents were wrong to detain him without an opportunity to seek release on bond" because '[p]etitioner is not subject to § 1225(b)(2)(A)'s mandatory detention provision, nor does he fall outside of § 1226(a)'s discretionary detention provision based on any § 1226(c) exceptions.").

The only authority that Respondents identify supporting their position is the BIA's recent decision in *Yajure Hurtado*, finding that noncitizens such as Petitioner who have been present in the United States for many years are subject to section 1225(b)(2)(A). 29 I. & N. Dec. at 216. Only three of the thirty-eight decisions, none of which are from this Circuit, citing the BIA's decision in *Yajure Hurtado*, have denied the relief requested by the noncitizen. *See, e.g.*, *Chavez v. Noem*, No. 3:25-CV-02325-CAB-SBC, 2025 WL 2730228, at *5 (S.D. Cal. Sept. 24, 2025) (denying petitioners' application for TRO); *Vargas Lopez v. Trump*, No. 8:25CV526, 2025 WL 2780351, at *10 (D. Neb. Sept. 30,

2025) (denying petitioner's petition for writ of habeas corpus); *CRISTOBAL CAMILO LAGUNA ESPINOZA, Petitioner, v. DIRECTOR OF DETROIT FIELD OFFICE, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., Respondents.*, No. 4:25-CV-02107, 2025 WL 2878173, at *4 (N.D. Ohio Oct. 9, 2025) (denying writ of habeas corpus without prejudice). None of the Circuits have had the opportunity to consider the issue, though at least one decision granting relief is pending appeal. *See, e.g.*, *Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL 2084238, at *2 (D. Mass. July 24, 2025) (appeal filed in the First Circuit on September 29, 2025).

### i.    Plain Language of Section 1225

Previously, this Court has said two sections of INA authorize detention—8 U.S.C. § 1231, which applies once a removal order has been issued, and 8 U.S.C. § 1226, which operates when a removal order has not yet been entered. *L.G. v. Choate*, 744 F. Supp. 3d 1172, 1178 (D. Colo. 2024). Apparently, that was inaccurate, and a third section of the INA authorizes detention—8 U.S.C. § 1225.

Section 1225(b)(2)(A) states:

> [I]n the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title [the statute governing standard, non-expedited removal proceedings].

8 U.S.C. § 1225(b)(2)(A) (emphasis added). An applicant for admission is defined by § 1225(a)(1) as "[a]lien present in the United States who has not been admitted *or* who arrives in the United States." *Id.* § 1225(a)(1) (emphasis added). Respondents argue that Petitioner falls within the scope of § 1225(b)(2)(A) because he is an "applicant for

admission," as defined as a noncitizen present in the United States who has not been admitted. ECF No. 26 at 11. Petitioner, instead, argues that the text of § 1225 indicates it is only applicable to noncitizens arriving in the United States and "seeking admission." ECF Nos. 14 at 10-13.

Respondents have correctly noted that this "case involves a question of statutory interpretation." ECF No. 26 at 2. And the Court agrees with the reasoning of the courts that have done the hard work in analyzing the statutes and finding that "a proper understanding of the relevant statutes, in light of their plain text, overall structure, and uniform case law interpreting them, compels the conclusion that § 1225's provision for mandatory detention of noncitizens "seeking admission" does not apply to someone like [Mr. Gutierrez], who has been residing in the United States for more than two years." *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *3 (S.D.N.Y. Aug. 13, 2025); *see also Jimenez v. FCI Berlin, Warden*, No. 25-CV-326-LM-AJ, 2025 WL 2639390, at *8 (D.N.H. Sept. 8, 2025) ("Because § 1225(b)(2)(A) applies to applicants for admission who are seeking to enter the United States, it cannot apply to Jimenez, who has already entered the country and has been residing here for over two years."); *Martinez*, 2025 WL 2084238, at *8 (rejecting the Government's "novel interpretation" that 1225(b) applies to noncitizens detained while present in the United States); *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299, at *7 (D. Mass. July 7, 2025) ("[T]he plain text of Sections 1225 and 1226, together with the structure of the larger statutory scheme, indicates that Section 1225(b)(2) does not apply to noncitizens who are arrested on a warrant issued by the Attorney General while residing in the United States.");

*Rodriguez I*, 779 F. Supp. 3d at 1261 (holding that Section 1226, not 1225(b)(2), governed inadmissible noncitizens residing in the country). The Court also agrees with those district courts that have "join[ed] the numerous other district courts that have rejected the government's recent interpretation of the relationship between § 1225 and § 1226" after the BIA's decision in *Yajure Hurtado*. *JAIME VINICIO ORTIZ DONIS, Petitioner, v. CHRISTOPHER CHESTNUT, ET AL., Respondents.*, No. 1:25-CV-01228 JLT SAB, 2025 WL 2879514, at *11 (E.D. Cal. Oct. 9, 2025); *see also Zumba v. Bondi*, No. 25-CV-14626 (KSH), 2025 WL 2753496, at *5 (D.N.J. Sept. 26, 2025) (finding that the plain language of § 1225 does not apply to petitioner who entered the United States without inspection 23 years ago and that her mandatory detention violates the INA and the Due Process Clause of the Fifth Amendment).

This statutory interpretation appears to align with the Supreme Court's prior analysis. In *Jennings*, the Supreme Court wrote "[i]n sum, U.S. immigration law authorizes the Government to detain certain aliens *seeking admission into the country* under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain *aliens already in the country* pending the outcome of removal proceedings under §§ 1226(a)." 583 U.S. at 289 (emphasis added). Respondents argue that 8 U.S.C. § 1225 does not apply only to noncitizens who are just arriving in the United States, but also to those who entered without inspection and have been residing here. ECF No. 26 at 12. For support, Respondents point to § 1225(b)(1)(A)(iii)(II), which states that § 1225(b)(1) applies to aliens "who ha[ve] not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year

period immediately prior to the date of the determination of inadmissibility under this subparagraph." This same argument seems to indicate that § 1225 would only apply to noncitizens who have not lived in the United States continuously for two years, and not to noncitizens who have lived in the United States continuously for over two years, let alone decades like Petitioner.

Respondents also argue that § 1225(b)(2) is broader than § 1225(b)(1). ECF No. 26 at 12 (citing *Jennings*, 583 U.S. at 287). "Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." 583 U.S. at 287 (citing 1225(b)(1)(A)(i)). "Aliens covered by § 1225(b)(1) are normally ordered removed 'without further hearing or review' pursuant to an expedited removal process" unless they "indicate[ ] either an intention to apply for asylum . . . or a fear of persecution," in which case they are referred for an asylum interview. *Id.* (quoting § 1225(b)(1)(A)(ii)). It is true "Section 1225(b)(2) is broader," than § 1225(b)(1). *Id.* Section 1225(b)(2) "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)" *Id.* (citing §§ 1225(b)(2)(A), (B)). However, that does not mean that § 1225(b)(2) applies to all other noncitizens in the United States who have not been admitted.

This Court agrees with the analysis in *Zumba* that the title of § 1225, Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing, indicates Congress intended § 1225 to apply to inspections that occur at the ports of entry or near the border. 2025 WL 2753496, at *5; *see also Dubin v. United States*, 599 U.S. 110, 120-21 (2023) ("This Court has long considered that the title of a

statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute.") (internal quotations omitted). Additionally, the Court agrees with the analysis in *ORTIZ DONIS*, addressing the BIA's argument in *Yajure Hurtado* that if the § 1225(b)(2) catchall provision did not apply to noncitizens who have lived for years within the United States, then it is meaningless and does not apply to anyone. 2025 WL 2879514, at *11. However, the court in *ORTIZ DONIS* correctly points out that:

> § 1225(b)(2) applies to arriving noncitizens who are inadmissible on grounds other than 8 U.S.C. § 1182(a)(6)(C) or 1182(a)(7) (which are the grounds that put an arriving noncitizen on the track for expedited removal). The statute governing inadmissibility lists ten grounds for inadmissibility, many of which have distinct sub-grounds. *See* 8 U.S.C. § 1182(a)(1)-(10). There are thus arriving noncitizens inadmissible on these other bases who would fall under Section 1225(b)(2), as opposed to Section 1225(b)(1).

*Id.* Thus, the Court agrees with Petitioner that § 1225(b)(2) only applies to noncitizens "seeking admission" and inspected while trying to enter the country, and not to noncitizens who have lived in the United States continuously for over two years.

Respondents also try to argue that Petitioner is "seeking admission" because he has applied for a U-Visa. ECF No. 26 at 13. This argument is a nonstarter. Mr. Gutierrez's U-Visa application may make him an "applicant for admission." But being an "applicant for admission" is not synonymous with "seeking admission" under § 1225(b)(2) because such a reading of the statute "would render the phrase 'seeking admission' in § 1225(b) superfluous." *ORTIZ DONIS*, 2025 WL 2879514, at *8. Further, that Court has found that "[b]ecause § 1225(b)(2)(A) applies to applicants for admission who are seeking to enter the United States, it cannot apply to [Petitioner], who has already entered the country and has been residing here for over two years." *Jimenez*, 2025 WL 2639390, at *8.

ii.        **Plain Language of Section 1226**

The plain language of 8 U.S.C. § 1226—which provides that, "[o]n a warrant issued by the Attorney General, an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States"—indicates Congress's intent to establish a discretionary, rather than mandatory, detention framework for noncitizens arrested on a warrant. *See* 8 U.S.C. § 1226(a) (emphasis added). Subject to some limited exceptions for noncitizens with certain criminal charges, arrests, convictions, or admissions under § 1226(c), § 1226(a) provides that the Attorney General may release a noncitizen on bond or conditional parole if "his release would not pose a danger to property or persons, and that he is likely to appear for any future proceedings." *In Re Adeniji*, 22 I. & N. Dec. 1102, 1116 (BIA 1999). If a noncitizen is in removal proceedings and 8 U.S.C. § 1226(c) does not apply, DHS makes the initial decision to detain a noncitizen under 8 U.S.C. § 1226(a). The noncitizen may request a custody redetermination hearing from an IJ at any time before a removal order becomes final. 8 C.F.R. § 236.1(d)(1). That bond decision is appealable to the BIA. 8 C.F.R. § 1003.19(f). Detainees are allowed to seek an additional bond hearing before an IJ whenever they experience a material change in circumstances. 8 C.F.R. § 1003.19(e).

In January 2025, Congress passed the Laken Riley Act, amending 8 U.S.C. 1226(c) to add a category of noncitizens subject to mandatory detention. Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025). This category includes noncitizens who are (1) inadmissible under §§ 1182(6)(A) [present without admission or parole], (6)(C) [misrepresentation], or (7)(A) [lack of proper documentation] and (2) have been charged

with "burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." 8 U.S.C. 1226(c)(1)(E)(ii). None of these provisions applies to Mr. Gutierrez. This Court agrees with the other district courts that have conducted the statutory analysis of these two statutes: If 8 U.S.C. § 1225 already mandates detention for noncitizens "already in the country" as the Respondents argue, it would have been superfluous for Congress to pass the Laken Riley Act, amending § 1226 to add another category of noncitizens who must be detained. *Romero v. Hyde*, No. CV 25-11631-BEM, 2025 WL 2403827, at *11 (D. Mass. Aug. 19, 2025); *see also ORTIZ DONIS*, 2025 WL 2879514, at *9 ("[T]he Government's interpretation would 'nullify' a recent amendment to the immigration statutes."); *Rodriguez I*, 779 F. Supp. 3d at 1258 ("[I]f the immigration court's interpretation of Section 1225 is correct and its mandatory detention provisions apply to 'all noncitizens who have not been admitted,' then it would render superfluous provisions of Section 1226 that apply to certain categories of inadmissible noncitizens.") (internal citations omitted).

Respondents implore the Court to read 8 U.S.C. § 1226(a)'s general detention authority alongside § 1225, which they argue is more narrow than § 1226(a) and only applies to "applicants for admission." ECF No. 26 at 14. However, when the Court reads the two statutes side by side, the Court is further convinced that § 1225 was intended for noncitizens inspected upon entry to the United States or who have lived in the United States for less than two years, and § 1226(a) is intended for the apprehension and detention of aliens "already in the country." *Jennings*, 583 U.S. at 281. Respondents also rely on the same argument the BIA makes in *Yajure Hurtado*, that the redundancy of

mandating detention for a subset of noncitizens in two different statutes does not "eviscerate" § 1225(b)(2)(A), requiring the detention of "other aliens who entered without inspection." ECF No. 26 at 15 (citing *Barton v. Barr*, 590 U.S. 222, 239 (2020)). However, as one district court has found, the language in § 1225 and § 1226 is not redundant but contradictory. *See Romero*, 2025 WL 2403827, at *12 ("[B]y creating a specific exception, disallowing bond for certain applicants for admission, Congress clearly evinced its intent that bond remain available for the remainder.").

### iii.    Legislative History

Respondents argue that the "legislative history weighs in favor of Respondents' interpretation of Sections 1225 and 1226." ECF No. 26 at 17. However, this Court disagrees and instead agrees with the district courts that have found the Government's argument unpersuasive. *See, e.g.*, *ORTIZ DONIS*, 2025 WL 2879514, at *10; *Jimenez*, 2025 WL 2639390, at *9; *Rodriguez I*, 779 F. Supp. 3d at 1260. Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") in 1996. Before the IIRIRA was passed, the predecessor statute to § 1226, 8 U.S.C. § 1252 (1994), required that "[n]oncitizens who had effected an 'entry' into the United States were subject to deportation proceedings, while those who had not made an 'entry' were subject to 'more summary' exclusion proceedings." *ORTIZ DONIS*, 2025 WL 2879514, at *10 (citing *Hing Sum v. Holder*, 602 F.3d 1092, 1099 (9th Cir. 2010)). This led to a situation where noncitizens who had overstayed their visas or entered illegally had more due process rights than noncitizens who presented themselves at a port of entry. To remedy this, Congress passed the IIRIRA, substituting "'admission' for 'entry' and by replacing

deportation and exclusion proceedings with a general 'removal' proceeding." *Hing Sum, 602 F.3d at 1100*. Respondents argue that by replacing "admission" with "entry," "Congress expanded Section 1225 to address not only those who presented themselves at a port of entry," but also to include "*all* applicants for admission." ECF No. 26 at 17 (emphasis in original). However, this ignores that the predecessor statute included discretionary release on bond. *See* § 1252(a)(1) (1994) ("[A]ny such [noncitizen] taken into custody may, in the discretion of the Attorney General . . . be continued in custody . . . [or] be released under bond[.]"). Upon passing the IIRIRA, Congress declared that the new Section 1226(a) "restates the current provisions in section 242(a)(1) [1252(a)(1)] regarding the authority of the Attorney General to arrest, detain, and release on bond an alien who is not lawfully in the United States." H.R. REP. 104-469, 229. *See Rodriguez I, 779 F. Supp. 3d at 1260* ("Because noncitizens like Rodriguez were entitled to discretionary detention under Section 1226(a)'s predecessor statute and Congress declared its scope unchanged by IIRIRA, this background supports Rodriguez's position that he too is subject to discretionary detention.")

### iv.    Past Practice

In *Yajure Hurtado*, the BIA "acknowledge[d] that for years Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection" and that "the supplemental information for the 1997 Interim Rule titled 'Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures,' 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997), reflects that the Immigration and Naturalization Service took the position at that

time that '[d]espite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination.'" *Yajure Hurtado*, 29 I. & N. Dec. at 225 n.6. Respondents argue that whether noncitizens in Petitioner's position (applicants for admission who have resided in the country for over two years) are eligible for bond is "a matter of administrative discretion, not statutory interpretation." ECF No. 26 at 19. Interpretation of the meaning of a statute belongs to the "independent judgment" of the courts, as "agencies have no special competence in resolving statutory ambiguities." *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385-86, 401 (2024). Therefore, because it is the "responsibility of the court to decide whether the law means what the agency says" the Court disagrees with the holding of *Yajure Hutado* and declines to follow it. *Perez v. Mortgage Bankers Assn.*, 575 U.S. 92, 109, (2015) (Scalia, J., concurring in judgment). As discussed above, this Court joins other courts throughout the nation and finds that DHS has adopted a policy that likely violates federal law.

Also weakening Respondents' position that 8 U.S.C. § 1225 applies to Petitioner is the fact that when ICE arrested Petitioner on May 25, 2025, they did so pursuant to a Form I-200, "Warrant for Arrest of Alien", ECF No. 14-8 at 6, and issued a Form I-286 "Notice of Custody Determination," *id.* at 7. Both forms specifically reference INA § 236, 18 U.S.C. § 1226(a). Respondents represent that "ICE has canceled the Form I-286 initially issued to Petitioner in the case." ECF No. 26-1 ¶ 24. But, Respondents failed to provide information as to when they canceled the original Form I-286, whether or when they issued another I-286, or issued any other documents notifying Mr. Gutierrez he was

being detained under 8 U.S.C. § 1225, and under what authority they canceled the original I-286. As a recent district court noted, "Courts have given great weight to the manner in which DHS treated the petitioner in determining which detention statute applies." *Zumba,* 2025 WL 2753496, at *9 (citing *Lopez Benitez,* 2025 WL 2371588, at *3 (holding that § 1225 did not apply because (1) DHS had consistently treated petitioner as subject to discretionary detention under § 1226(a) and (2) the "plain text, overall structure, and uniform case law interpreting" the statutory provision compels the conclusion)).

In sum, the Court is persuaded that Petitioner is likely to succeed on the merits that he is unlawfully detained under 8 U.S.C. § 1225 and that § 1226 actually did and should have governed Petitioner's detention from the outset. This is a strong showing of Mr. Gutierrez's likelihood of success on the merits sufficient to justify even a mandatory injunction. The Court will therefore assess the remaining preliminary injunction factors to decide whether Mr. Gutierrez's request for relief should be granted.

### c.    Irreparable Harm

"The second preliminary-injunction factor asks whether irreparable injury will befall the movants without an injunction." *Free the Nipple—Fort Collins,* 916 F.3d at 805. "A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Dominion Video Satellite,* 269 F.3d at 1156.

Plaintiff contends that "he is imprisoned in jail-like conditions." ECF No. 14 at 14. This Court has previously recognized that ICE detention is "more akin to incarceration than civil confinement." *L.G.,* 744 F. Supp. 3d at 1182 (citing *Daley v. Choate,* No. 22-

CV-03043-RM, 2023 WL 2336052, at *4 (D. Colo. Jan. 6, 2023)). Mr. Gutierrez is the main financial provider for his wife and two kids. ECF No. 14-7 ¶ 18. Each day he is detained, his family experiences increased financial, caregiving, and emotional burdens. *See id.* Respondents argue that detention in and of itself does not constitute irreparable harm and that "petitioner has not established what is unique to his circumstances that constitute irreparable harm." ECF No. 26 at 23. This Court disagrees. What is unique to Mr. Gutierrez, and other noncitizens like him, is that he is being unlawfully detained without bond. Even if Mr. Gutierrez is not ultimately successful in his efforts to avoid removal, the record here shows that if he had been provided with a bond hearing, he would have been granted a conditional release because he is unlikely to abscond or be a danger to the community. This would give him and his family time to prepare for their future, pending his possible removal.

Federal courts have long recognized that the infringement of a constitutional right is an irreparable injury. *See Elrod v. Burns,* 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury."); *Free the Nipple—Fort Collins,* 916 F.3d at 805 ("Most courts consider the infringement of a constitutional right enough and require no further showing of irreparable injury."); *Awad v. Ziriax,* 670 F.3d 1111, 1131 (10th Cir. 2012) ("When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." (citation omitted)). Here, the Court has concluded that Mr. Gutierrez has made a strong showing on the merits of his claim that his detention without a bond hearing violates the INA and his procedural due process rights. Absent an

injunction, this infringement upon his Fifth Amendment rights will continue. Moreover, "[b]ecause Defendants are denying [Petitioner] a hearing that would likely result in his release, he has established irreparable harm absent injunctive relief." *Rodriguez I*, 779 F. Supp. 3d at 1262. Thus, the second preliminary injunction factor is satisfied.

### d.   Balance of Equities and the Public Interest

As noted above, the balance of equities and the public interest factors "merge" when the Government is the party opposing the injunction. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Respondents argue that "[t]he Supreme Court has recognized that the public interest in the enforcement of the United States' immigration laws is significant." ECF No. 26 at 33 (citing *Nken,* 556 U.S. at 436 (where the Supreme Court acknowledged the tension between the "public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm," and the "public interest in prompt execution of removal orders")). And here, Respondents continue, they have a valid statutory basis under United States immigration laws for Gutierrez's continued detention during removal proceedings, which is "a constitutionally valid aspect of the deportation process." *Id.* (quoting *Demore v. Kim,* 538 U.S. 510, 523 (2003)).

This Court has previously recognized that there is a public interest in the enforcement of the country's immigration laws. *L.G,* 744 F. Supp. 3d at 1185. (noting a public interest "in ensuring removable noncitizens appear for their scheduled removal proceedings and an interest in protecting the community") However, that does not mean that Respondents enjoy an unfettered right to detain noncitizens in contravention of the

law or in violation of the noncitizens' Fifth Amendment rights. *See Demore,* 538 U.S. at 523 ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks omitted)). Here, the harm to Respondents is minimal. Respondents do not argue that the burden of providing a bond hearing is great. Instead, Respondents argue that "[e]joining Respondents from carrying out their statutory obligations would harm the Government." ECF No. 26 at 23-24. But the Court has already held that the Government's statutory obligation is to provide Mr. Gutierrez a bond hearing. On the other hand, the harm of unlawfully detaining Mr. Gutierrez under 8 U.S.C. § 1225(b)(2)(A) without the opportunity for release on bond is much greater than the harm the Respondents will suffer by compelling them to return to their past practices of detaining noncitizens who have lived in the United States for several years under § 1226. *See Xuyue Zhang v. Barr*, 612 F. Supp. 3d 1005, 1017 (C.D. Cal. 2020) ("[T]he public interest benefits from a preliminary injunction that expedites a bond hearing to ensure that no individual is detained in violation of the Due Process Clause."). This is particularly so given the patently harsh conditions Petitioner continues to be subjected to, as outlined above.

For these reasons, the Court finds that the balance of equities and public interest factors favors a preliminary injunction enjoining Respondents from denying Petitioner bond on the basis that he is detained under § 1225(b)(2). *See Rodriguez I*, 779 F. Supp. 3d at 1263. Mr. Gutierrez shall be immediately released from detention until he receives a bond hearing before an IJ under § 1226(a), at which the Government shall bear the burden of justifying by clear and convincing evidence of dangerousness or flight risk.

### 3.   Bond Requirement

In a footnote, Respondents request that if the Court grants Petitioner's request for a preliminary injunction, it require Mr. Gutierrez to put up appropriate security.

Under Federal Rule of Civil Procedure 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." In the Tenth Circuit, district courts have "wide discretion under Rule 65(c) in determining whether to require security." *Winnebago Tribe of Nebraska v. Stovall,* 341 F.3d 1202, 1206 (10th Cir. 2003). This includes the discretion to "determine a bond is unnecessary to secure a preliminary injunction 'if there is an absence of proof showing a likelihood of harm.'" *Coquina Oil Corp. v. Transwestern Pipeline Co.,* 825 F.2d 1461, 1462 (10th Cir. 1987) (citation omitted).

Here, there is no proof that Respondents are likely to suffer harm if this Order is overturned. To the contrary, "[b]ecause this preliminary injunction enforces fundamental constitutional rights against the government, the court determines [w]aiving the security requirement best accomplishes the purposes of Rule 65(c)." *NetChoice, LLC v. Reyes,* 748 F. Supp. 3d 1105, 1132 (D. Utah 2024) (internal citation and quotation marks omitted; alterations original); *Entm't Merchants Ass'n v. Henry,* 2006 WL 2927884, at *4 (W.D. Okla. Oct. 11, 2006) ("the Court has discretion to require only a nominal bond, or no bond at all," where "issues of overriding public concern or important federal rights are involved"). The Court concludes that, given the important constitutional rights at issue in this case for Mr. Gutierrez, no bond will be required.

**B.    Class Certification**

Petitioner is requesting that the Court certify a Rule 23 class "based on the court's APA and federal question jurisdiction." ECF Nos. 15, 29 at 23. The Proposed class definition is:

> All noncitizens in the U.S. without lawful status who are (1) detained by ICE; (2) have or will have proceedings before any immigration court hearing cases within the District of Colorado; (3) whom DHS alleges or will allege have entered the U.S. without inspection; (4) who were not or will not be apprehended upon arrival; and (5) who are not or will not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time they are scheduled for or request a bond hearing.

ECF No. 15 at 4.

**1.    Legal Standard**

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). To justify a departure from that rule, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Id.* at 348–49 (quoting *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)); *see also Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010) ("A class action . . . enables a federal court to adjudicate claims of multiple parties at once, instead of in separate suits.").

The party seeking certifications must show:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

27

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition, "the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Wal-Mart*, 564 U.S. at 345. Petitioner seeks to certify a class under Rule 23(b)(2), which demands that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360.

The Court's examination of these requirements is not cursory. Rule 23 "does not set forth a mere pleading standard." *Id.* at 350. Rather, "certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Id.* at 350–51 (cleaned up). "Petitioner[] must satisfy the 'preponderance' evidentiary standard at the class certification stage." *D.B.U. v. Trump*, 349 F.R.D. 228, 235 (D. Colo. 2025) (citing *Payne v. Tri-State CareFlight, LLC*, 328 F.R.D. 601, 621 n.12 (D.N.M. 2018) ("[A]lthough the Tenth Circuit has not yet explicitly adopted the preponderance standard for fact-finding in class certification analyses, it most likely will, and the Court will employ that standard here.") (collecting cases)).

## 2.    Defer Ruling on the Motion to Certify

The Court will defer ruling on the Motion to Certify the class at this time, but not for the reasons put forward by Respondents. Respondents argue the Court should defer ruling on the Motion to Certify for two reasons. First, Respondents argue "the nature of the proposed class action is uncertain at this stage" because it is unclear if Plaintiff is

28

seeking class certification in the habeas context or an APA civil action, and that "Rule 23 does not directly apply in habeas cases." ECF No. 26 at 24. The Court rejects this argument for two reasons. First, the Court agrees with the analysis in *D.B.U.,* where the Honorable Charlotte N. Sweeney determined that a petitioner may proceed with their habeas claims on a class basis. *D.B.U.*, 349 F.R.D. at 234-35 (citing *Napier v. Gertrude, 542 F.2d 825, 827 n.2 (10th Cir. 1976)* ("It has been decided in other circuits that Rule 23 class actions are technically inapplicable to habeas corpus proceedings. The court may, however, apply an analogous procedure by reference to Rule 23 in proper circumstances.")). So, even if Plaintiff is seeking to certify the class in a habeas context, the Court may apply Rule 23. *Id.* Second, Petitioner clarified that he is seeking to certify the class under the APA. ECF No. 29 at 22.

Next, the respondents argue that the Court should defer ruling on the Motion to Certify until after the district court in the Central District of California rules on the motion to certify pending in *Maldonado Bautista v. Noem*, No. 5:25-cv-01873-SSSBFM, ECF No. 14 (C.D. Cal. July 28, 2025). This argument is nonsensical. The Court cannot look at the motion to certify in *Maldonado* because it is sealed, but it seems unlikely that the proposed class in *Maldonado* will include noncitizens detained in the District of Colorado. The hearing on the motion to certify in *Maldonado Bautista* has been continued until November 14, 2025. *Maldonado*, No. 5:25-cv-01873-SSSBFM, ECF No. 71 (C.D. Cal. Oct. 8, 2025). Moreover, the Supreme Court has limited a district court's ability to issue nationwide injunctive relief. *Trump v. CASA, Inc.*, 606 U.S. 831, 849 (2025).

3.    Section 1252(f)(1)

Respondents argue that 8 U.S.C. § 1252(f) proscribes class-wide relief. ECF No. 26 at 25-27. Section 1252(f) provides, in part, that

> [N]o court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of [§§ 1221–31] of this subchapter . . . other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

8 U.S.C. § 1252(f). In other words, "[i]t prohibits federal courts from granting classwide injunctive relief" against certain provisions of the INA, specifically §§ 1221–1231. *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see also Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022) ("§ 1252(f)(1) generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions."). "Those provisions charge the Federal Government with the implementation and enforcement of the immigration laws governing the inspection, apprehension, examination, and removal of aliens." *Garland,* 596 U.S. at 549–50.

Petitioner responds, arguing he is "not ask[ing] the Court to 'enjoin' or 'restrain' operations of the INA," instead, he is "ask[ing] the Court to '[d]eclare [Respondents] practice violates the INA and '[s]et aside' their unlawful detention policy under the APA" ECF No. 29 at 15. *Rodriguez v. Bostock* (*Rodriguez II)* considered a virtually identical argument and concluded that both the Supreme Court and the Ninth Circuit have affirmed that classwide declaratory relief remains available under section 1252(f)(1). 349 F.R.D. 333, 364 (W.D. Wash. 2025). In *Aleman Gonzalez,* the Supreme Court declined to reach

the question of whether § 1252(f) prohibits classwide declaratory relief. 596 U.S. at 551 n.2. The Ninth Circuit decided to follow its own precedent "[b]ecause the Supreme Court's reservation of a question [was] not clearly irreconcilable with a precedent of [the Ninth Circuit's precedent] that resolves the same question." *Rodriguez II*, 349 F.R.D. at 364 (alteration original) (citing *Al Otro Lado v. Exec. Off. for Immigr. Rev.*, 120 F.4th 606, 625 (9th Cir. 2024)). And Ninth Circuit precedent holds "it is the text of the IIRIRA itself that most clearly shows that Section 1252(f) was not meant to bar classwide declaratory relief" because it does not include the term "declaratory relief." *Rodriguez v. Hayes*, 591 F.3d 1105, 1119 (9th Cir. 2010).

The Tenth Circuit does not have an analogous case to *Hayes*. The Tenth Circuit did analyze 8 U.S.C. § 1252(f) in *Van Dinh v. Reno,* where the Tenth Circuit interpreted § 1252 of the INA to deprive the court of jurisdiction, in a class action lawsuit, to restrain the Attorney General's power to transfer noncitizens to appropriate facilities by granting injunctive relief. 197 F.3d 427, 433–34 (10th Cir. 1999). However, the Tenth Circuit noted that the complaint in *Van Dinh* did not allege that "an actual or continuing constitutional violation had occurred that could be remedied by judicial action," and declined to decide whether § 1252(f) bars review when constitutional due process issues are raised. *Id.* at 435 ("While the immigration statutes may not preclude collateral review of constitutional issues in § 2241 habeas cases, an issue we do not decide here, they do preclude direct review of the Attorney General's discretionary decisions in immigration cases by means of a *Bivens* class action suit."). Thus, the Tenth Circuit's decision in *Van Dihn* is distinguishable from the case presented here and specifically did not address, let alone

preclude, declaratory relief in a case such as this, which seeks collateral review of constitutional issues.

The Court agrees with the reasoning in *Rodriguez II*. Petitioner's requested relief does not fall within the bar of § 1252(f). Mr. Gutierrez is not seeking to halt, suspend, or alter the discretionary "operation" of any INA provision. Rather, he has raised procedural due process claims challenging the constitutionality of immigration agencies' recently enacted policies and procedures. Respondents note, "this case involves a question of statutory interpretation." ECF No. 26 at 2. And as the Supreme Court has held, "agencies have no special competence in resolving statutory ambiguities. Courts do." *Loper*, 603 U.S. 369 at 373. An order declaring that class members are subject to detention under § 1226(a) and thus entitled to bond hearings does not "enjoin or restrain" immigration operations; it simply requires defendants to follow the Constitution and the INA as Congress legislated it.

### 4. Rule 23(a)

Respondents challenge the proposed class's compliance with Rule 23(a) numerosity, commonality, and typicality requirements. And this is where the Court defers ruling on the class certification because the Court requires a better understanding of the scope and definition of the proposed class.

### a. Numerosity

Petitioners argue they satisfy Rule 23(a)'s numerosity requirement because "[t]he proposed class is sufficiently numerous to make joinder impracticable." ECF No. 15 at 6. Respondents argue that "Petitioner has not shown that this requirement would be met if

the proposed class definition were changed to address the commonality and typicality problems identified." ECF No. 26 at 29-30. Under Rule 23(a)(1), plaintiffs or petitioners must show "that the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Rule 23(a)'s numerosity inquiry is not a blunt "question of numbers." *Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275 (10th Cir. 1977). Assessing a class's numerosity is a "fact-specific inquiry," calling for the consideration of certain factors, including: "the nature of the action, the size of the individual claims, and the location of the members of the class or the property that is the subject matter of the dispute." *Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1215 (10th Cir. 2014) (quotations omitted). The Court needs to understand how many noncitizens detained in the District of Colorado have resided in the United States for over two years and were denied bond on the basis that the Immigration Court lacked jurisdiction under § 1225.

### b.    Commonality and Typicality

As to commonality, Petitioner asserts that because the proposed class's claims "include common questions of law and fact," they meet their commonality burden. ECF No. 15 at 10; *see also* Fed. R. Civ. P. 23(a)(2). Respondents resist, arguing the "proposed class appears to sweep in members who have no claim at all" because it includes noncitizens who "have requested and *received* a bond hearing." ECF No. 26 at 28 (emphasis in the original). And that the proposed class includes noncitizens who are detained "by DHS *anywhere*" but happened to have a hearing in immigration court in the District of Colorado by video conference. *Id.* at 28-29. To remedy these concerns,

Petitioner argues the class definition could be modified to include only noncitizens "who did not receive bond hearings" and have or will be "detained by ICE *in Colorado*." ECF No. 29 at 17 (emphasis in original).

Rule 23(a)(2) is disjunctive: a plaintiff may satisfy its commonality requirement if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *see also Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 914 (10th Cir. 2018) ("A finding of commonality requires only a single question of law or fact common to the entire class.") (quotations omitted). Petitioner argues that the common question is "whether § 1225(b)(2)'s mandatory detention provisions apply to [the class] and prevent them from being considered for release on bond under § 1225(a) and its implementing regulations." ECF No. 15 at 11. In an analogous case, the Western District of Washington found that commonality was satisfied when the common legal question was "whether Defendants' 'policy and practice denying bonds for lack of jurisdiction' violates the INA and APA." *Rodriguez II*, 349 F.R.D. at 354.

As to typicality, Respondents argue that "Petitioner's claim is not typical because he appears to be pursuing lawful status in the United States." ECF No. 26 at 39. This raises another question for the Court: how many members of the proposed class have some kind of pending application for lawful status in the United States, whether it be a U-Visa application like Petitioner, an I-589 (asylum application), an I-130 (petition for alien relative), or some other pending application? *See Rodriguez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 2782499, at *1 n.3 (W.D. Wash. Sept. 30, 2025) (*Rodriguez III*) (citing *Pena v. Hyde*, 2025 WL 2108913 (D. Mass. July 28, 2025) (determining individual

was not similarly situated to the class "because his case was focused on the effect of an approved I-120 made on his behalf"). The Court agrees that a common legal issue appears to exist. The Court further acknowledges that "[u]nder Rule 23(a)(2), Petitioners are not required to share the same factual circumstances of other class members, particularly where 'questions of law' . . . are 'common to the class.'" *D.B.U.*, 349 F.R.D. at 237 (citing *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1196 (10th Cir. 2010)). However, here the scope of the proposed class and the class definition need to be refined.

### 5.    Rule 26(b)(2)

Not being satisfied that the Petitioner has satisfied the Rule 23(a) requirements, the Court will not analyze the Rule 26(b)(2) requirements.

### III.    CONCLUSION

For the foregoing reasons, the Court concludes that Petitioner has made a strong showing that he is likely to succeed on the merits, that he is unlawfully detained under Section 1225(b)'s mandatory detention authority, and instead should be governed under Section 1226(a)'s discretionary detention scheme. Because he has also shown irreparable harm, and that balance of hardships tips sharply in his favor, the Court GRANTS Mr. Gutierrez's Emergency TRO, ECF No. 14. The Court further ORDERS that:

> (1) Defendants must release Mr. Gutierrez immediately until he receives a bond hearing before an IJ under § 1226(a), at which the Government shall bear the burden of justifying by clear and convincing evidence of dangerousness or flight risk;

(2) Respondents are enjoined from removing Mr. Gutierrez and the class he proposes to represent from the United States or transferring them from the District of Colorado during the pendency of this action;

(3) The Court will refrain from ruling on the Motion for Class Certification, ECF No. 15, until the Court can hold a hearing on the matter and have its pending questions answered. A hearing on the matter will be scheduled for November 21, 2025 at 1:00 p.m.

DATED: October 17, 2025

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge