**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-CV-2720-RMR

NESTOR ESAI MENDOZA GUTIERREZ, for himself and on behalf of others similarly situated,

      Petitioners-Plaintiffs,

v.

JUAN BALTASAR, Warden, Aurora ICE Processing Center, in his official capacity,

ROBERT HAGAN, Director of the Denver Field Office for U.S. Immigration and Customs Enforcement, in his official capacity;

KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, in her official capacity;

TODD LYONS, Acting Director of U.S. Immigration and Customs Enforcement, in his official capacity;

PAMELA BONDI, Attorney General of the United States, in her official capacity;

EXECUTIVE OFFICE FOR IMMIGRATION REVIEW;

SIRCE OWEN, Acting Director for Executive Office of Immigration Review, in her official capacity;

U.S. DEPARTMENT OF HOMELAND SECURITY;

AURORA IMMIGRATION COURT; and,

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,

      Respondents-Defendants.

---

**PLAINTIFF-PETITIONER'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

Plaintiff-Petitioner Nestor Esai Mendoza Gutierrez ("Plaintiff"), for himself and the class, moves for partial summary judgment 1) to declare Defendants-Respondents' ("Defendants") new interpretation of the Immigration and Nationality Act's ("INA") detention and bond provisions illegal on behalf of the class; and 2) on his individual *habeas corpus* claim.

## I.    Introduction – The Government Illegally Denies Bond to Class Members

Defendants changed their detention practices to illegally deny release on bond to the class members for the purpose of imprisoning them. For decades, most noncitizens apprehended after living in the U.S. and charged with having entered the country without inspection and being present in the country without admission or parole (8 U.S.C. § 1182(a)(6)(A)(i)) were detained pursuant to 8 U.S.C. § 1226, which allows application for bond and release from detention. The INA's plain language provides that noncitizens "arrested and detained" in the interior "may [be] release[d] on a bond" absent certain criminal offenses. § 1226(a)(2) & (c). The Supreme Court has recognized that noncitizens "who are arrested and detained may generally apply for release on bond" pursuant to § 1226(a)(2). *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021). *See also Nielsen v. Preap*, 586 U.S. 392, 395 & 397 (2019) (8 U.S.C. § 1226 is the "general rule regarding [noncitizens] arrest and detention" and permits "release … on bond").

But Defendants now interpret the INA to permit detaining class members pursuant to § 1225(b)(2)(A) to prevent them from seeking bond. This is a sharp contrast to Defendants' decades-long prior practice of applying § 1225 mandatory detention only "at the Nation's borders and ports of entry*." Jennings v. Rodriguez*, 583 U.S. 281,  287

(2018). Under this new theory, Defendants contend that because class members are "applicants for admission" (and therefore "seeking admission") to the U.S. – even if they have lived and built lives here for decades – they are subject to § 1225(b)(2) mandatory detention and cannot be released.

Agreeing with judges in hundreds of cases,[1] this Court granted a temporary restraining order requiring Defendants to release Plaintiff until he received a bond hearing under § 1226(a), as he was likely to succeed on his claim that Defendants' new

---

[1] *See, e.g.*, *Rodriguez Vazquez v. Bostock*, 779 F.Supp.3d 1239 (W.D. Wash. 2025) ("*Rodriguez Vazquez I*"); *Rodriguez Vazquez v. Bostock*, --- F.Supp.3d ----, 2025 WL 2782499 (W.D. Wash. Sept. 30, 2025) ("*Rodriguez Vazquez II*"); *Lopez Benitez v. Francis*, --- F.Supp.3d ----, 2025 WL 2371588 (S.D. N.Y. Aug. 13, 2025); *Romero v. Hyde*, --- F.Supp.3d ----, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Salcedo Aceros v. Kaiser*, 25-cv-06924, 2025 WL 2637503 (N.D. Cal. Sept. 12, 2025); *Ortiz Donis v. Chestnut*, 25-CV-01228, 2025 WL 2879514 (E.D. Cal. Oct. 9, 2025); *Jimenez v. FCI Berlin, Warden et al.*, --- F.Supp.3d ----, 2025 WL 2639390 (D. N.H. Sept. 8, 2025); *Guerrero Orellana v. Moniz*, --- F. Supp.3d ----, 2025 WL 2809996 (D. Mass. Oct. 3, 2025); Gomes v. Hyde, No. 25-CV-11571, 2025 WL 1869299 (D. Mass. July 7, 2025); *Diaz Martinez v. Hyde*, --- F. Supp. 3d ---, 2025 WL 2084238 (D. Mass. July 24, 2025); *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Maldonado Vazquez v. Feeley*, No. 2:25-CV-01542, 2025 WL 2676082, at *11 n.7 (D. Nev. Sept. 17, 2025) (collecting cases); *Chogllo Chafla v. Scott*, No. 25-CV-00437, 2025 WL 2688541 (D. Me. Sept. 22, 2025); Rivera Zumba v. Bondi, No. 25-CV-14626, 2025 WL 2753496 (D.N.J. Sept. 26, 2025); *Santiago Helbrum v. Williams*, No. 4:25-cv-00349, 2025 WL 2840273 (S.D. Iowa Sept. 30, 2025); *Cordero Pelico v. Kaiser*, No. 25-CV-07286, 2025 WL 2822876 (N.D. Cal. Oct. 3, 2025); *E.C. v. Noem*, No. 2:25-CV-01789, 2025 WL 2916264 (D. Nev. Oct. 14, 2025); *Maldonado de Leon v. Baker*, No. CV 25-3084, 2025 WL 2968042, at *5-8 (D. Md. Oct. 21, 2025); *Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787, at *4-9 (N.D. Ill. Oct. 24, 2025); *Martinez-Elvir v. Olson*, No. 3:25-CV-589, --- F. Supp. 3d ---, 2025 WL 3006772, at *6-11 (W.D. Ky. Oct. 27, 2025); *Morales-Martinez v. Raycraft*, No. 25-CV-13303, 2025 WL 3124695, at *4-7 (E.D. Mich. Nov. 7, 2025); *Escobar Salgado v. Mattos*, No. 2:25-CV-01872, 2025 WL 3205356 (D. Nev. Nov. 17 2025). *See also Demirel v. Fed. Detention Ctr. Philadelphia*, 2:25-cv-5488, 2025 WL 3218243 (E.D. Pa. Nov. 18, 2025) & Movant's App. at 146, Collected Cases (string cite of all 334 cases presently known to Plaintiff's counsel granting relief on this issue).

interpretation is wrong. ECF 33 & 36. Four other judges of this Court,[2] and judges across the federal judiciary, now also agree. This chorus notably includes the Western District of Washington which granted class-wide declaratory relief in a summary judgment in *Rodriguez Vazquez v. Bostock*, --- F.Supp.3d ----, 2025 WL 2782499 (W.D. Wash. Sept. 30, 2025). The language of "§ 1226 is … clear[]. … [It] applies to [noncitizens] already present in the United States … [And] permits … release on bond." *Jennings*, 583 U.S. at 303.

## II.    Factual and Procedural Background

### A. Immigration Detention's Legal Framework

This case concerns two detention provisions of the INA: 8 U.S.C. §§ 1226(a) and 1225(b). The distinction determines whether a noncitizen can be released on bond (§ 1226(a)), or faces mandatory detention (§ 1225(b)), during removal proceedings.[3]

---

[2] *Garcia Cortes v. Noem*, 25-cv-02677, 2025 WL 2652880, *3 (D. Colo. Sept. 16, 2025) (Sweeney, J., granting relief); Movant's App. at 3, *Moya Pineda v. Baltasar*, 25-cv-02955 (D. Colo. Oct. 20, 2025) (Gallagher, J., same); *Loa Caballero v. Baltasar*, 25-cv-03120, 2025 WL 2977650 (D. Colo. Oct. 22, 2025) (Wang, J., same); Movant's App. at 9, *Hernandez Vazquez v. Baltasar*, 25-cv-03049 (D. Colo. Oct. 23, 2025) (Gallagher, J., same); *Nava Hernandez v. Baltasar*, 25-cv-03094, 2025 WL 2996643 (D. Colo. Oct. 24, 2025) (Sweeney, J., same); *Artola Arauz v. Baltazar*, 25-cv-3260, 2025 WL 3041840 (D. Colo. Oct. 31, 2025) (Sweeney, J., same); Movant's App. 14, *Cervantes Arredondo v. Baltazar*, 25-cv-3040 (D. Colo. Oct. 31, 2025) (Jackson, J., same); Movant's App. 26, *De Domingo Campos v. Baltazar*, 25-cv-3062 (D. Colo. Nov. 13, 2025) (Gallagher, J., same); Movant App. 33, *Ortiz Rosales v. Baltazar*, 25-cv-3275 (D. Colo. Nov. 16, 2025) (Gallagher, J., same).

[3] As the Court noted, ECF 33 at 12, a third section, 8 U.S.C. § 1231(a), can also be utilized to detain (without bond) noncitizens who have a final removal order. Section 1231 detention is not relevant to this case, however, as the proposed class comprises only individuals who do not yet have a final removal order. *See* ECF 34, 35 & 47. *See also* ECF 6, p. 20 (proposed class excluding people "not subject to detention under … [§] 1231").

Noncitizens subject to § 1226(a) face *discretionary* detention. 8 U.S.C. § 1226(a)(1); 8 C.F.R. § 1236.1(c)(8). If ICE opts to detain them after arrest, these noncitizens can seek a "custody redetermination" hearing – the term of art for a bond hearing – before an administrative immigration judge ("IJ") to present evidence that they are not a flight risk or danger to the community and should therefore be released. *See* 8 C.F.R. § 1236.1(d); *Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006).

By contrast, people detained under § 1225(b) are subject to *mandatory* detention upon initiation of removal proceedings and can only seek release from ICE on humanitarian parole – which is wholly in the discretion of ICE, the jailing authority. *See* 8 U.S.C. § 1182(d)(5).

These two provisions reflect immigration law's longstanding distinction between noncitizens arrested *after entering* the country (§ 1226) and those arrested *while arriving* in the country (§ 1225). Before the 1996 Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), the INA's statutory authority for immigration detention was then-8 U.S.C. § 1252(a) (1994), which authorized detention during "deportation" proceedings *and* release on bond. Those "deportation" proceedings governed the detention of anyone in the U.S., regardless of their manner of entry. IIRIRA maintained the same detention-with-bond scheme at 8 U.S.C. § 1226(a). *See* H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (the new § 1226(a) "restate[d] the current provisions in [then 8 U.S.C. § 1252(a)] regarding the authority … to … detain, and release on bond…").

The IIRIRA, however, also enacted new detention-without-bond provisions at 8 U.S.C. § 1225, primarily for people stopped when arriving at the border or a port-of-entry. *See also Jennings*, 583 U.S. at 303.

In implementing the IIRIRA's detention authority, the then-Immigration and Naturalization Service (ICE's predecessor) clarified that people entering the U.S. without inspection and who were *not* apprehended while "arriving" would continue to be detained under § 1226(a) (formerly § 1252(a)) with access to bond. 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Inadmissible [noncitizens], except for arriving [noncitizens], have available to them bond … This procedure maintains the status quo.").

### B. Defendants' New Illegal Mandatory Detention Policy

During the almost thirty years since the IIRIRA's passage, the Department of Homeland Security (DHS) and the Executive Office for Immigration Review (EOIR) – the immigration court system – applied § 1226(a) to detain people arrested in the interior after "entry without inspection." Thus, for decades, these people could request bond.

Defendants, dramatically switching course, now insist that § 1225(b)(2)(A) requires detention for *all* persons who *ever* entered without inspection and have not been admitted to the U.S., regardless of where they were arrested or how long they have resided here.[4]

---

[4] This policy change occurred shortly after passage of the "One Big Beautiful Bill," touted by the White House as providing "tens of billions of dollars in expanded ICE detention" to provide "detention capacity sufficient to maintain an average daily population of at least 100,000 [noncitizens]." "Put simply, The Big Beautiful Bill will empower Big Beautiful Deportations." Press Release, The White House, The One Big Beautiful Bill Will Crack Down On Illegal Immigration (May 17, 2025), permalink: https://perma.cc/AT8X-FNWL. *See also* Movant's App. at 40, Dep't Homeland Sec. (@DHSgov), X.com (July 15, 2025) ("The Biden Administration dangerously unleashed millions of unvetted illegal aliens into American communities … [N]ow thanks to the Big Beautiful Bill, we will have plenty of

The change began in the Tacoma, Washington immigration court where IJs began denying bond to everyone who allegedly entered without inspection. *See*, *e.g.*, *Rodriguez Vazquez II*, 2025 WL 2782499, at *1.

Then, on July 8, 2025, DHS "in coordination with the Department of Justice" issued a memo stating "[e]ffective immediately, it is the position of DHS" that anyone who ever entered without inspection is "subject to detention under [§ 1225(b)] and may not be released from ICE custody." According to DHS, noncitizens are now "ineligible for a [bond] hearing … and may not be released" during removal proceedings unless ICE grants discretionary parole.[5] At this time, most IJs in Colorado began following Defendants' new interpretation from the July 8 memo.[6] Thus, the number of cases where Colorado IJ's determined they did not have "jurisdiction" to consider bond nearly quintupled.[7]

Then, in September 2025, the BIA issued a precedential decision adopting DHS' new (incorrect and illegal) position. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). Absent a declaratory judgment from this Court, this decision will be binding on all IJs in Colorado going forward and will result in all class members being detained for the

---

bed space [for detention]", citing "New ICE Policy Blocks Detained Migrants from Seeking Bond").

[5] Movant's App. at 42, "Interim Guidance Regarding Detention Authority for Applicants for Admission," July 8, 2025 ("July 8 Memo").

[6] Movant's App. at 44, IJ Kane Decision Den. Bond to N. Mendoza Gutierrez. *See also* Movant's App. at 49-50 (¶ 10-19), A. Reed Decl; Movant's App. at 54-55 (¶ 10-18), A. Vazquez Decl.; Movant's App. at 63-65 (¶ 8-26), D. Herrera Decl.; Movant's App. at 78-80 (¶ 7-18), S. Faville Decl.; Movant's App. at 88 (¶ 6-9), S. Meade Decl.; Movant's App. at 91-93 (¶ 8-18), T. Guevara Decl.

[7] Movant's App. at 104, Prof. Hausman Supplemental Decl. ¶¶ 7-8 (discussing increase in "no jurisdiction" findings from 7.36% of decisions to 33.65% of decisions).

duration of their removal proceedings (absent discretionary parole). *See* 8 C.F.R. § 1003.1(d)(1) (BIA "precedent decisions" "provide clear and uniform guidance to … the [IJs] … on the proper interpretation of the [INA]").

As such, IJs in Aurora, Colorado – where the class members are presently detained – now universally follow this illegal interpretation of the INA's detention scheme.[8]

### C. Defendants Unlawfully Detained Mr. Mendoza Gutierrez and the Class Without Bond Hearings

Mr. Mendoza Gutierrez was illegally detained without bond solely because of Defendants' new policy. *See* ECF 33 & 35. Before his arrest, Plaintiff lived in the Denver area for 26 years. He and his wife rented an apartment, where they lived with their two U.S.-citizen children. He owns a drywall firm and had steady employment. He had no criminal convictions, other than traffic tickets and a 23-year-old "driving with ability impaired" conviction – a conviction that does not disqualify him from seeking release on bond.[9] *See* 8 U.S.C. § 1226(c)(1)(A), (D), & (E).

---

[8] *See*, *e.g., supra*, n.2.

[9] Movant's App. at 107 (¶¶ 1-11), N. Mendoza Gutierrez Decl.

Plaintiff's experience is common and typical of the class.[10] ECF 47, pp. 6-8. Right now, over 500 people like him[11] remain illegally detained "in jail-like conditions." ECF 33, p. 22. The Aurora detention facility where class members are imprisoned is "more akin to incarceration than civil confinement." *L.G. v. Choate*, 744 F.Supp.3d 1172, 1182 (D. Colo. 2024). "More than that, the[] [conditions] are abhorrent." *Arostegui-Maldonado v. Baltazar*, --- F.Supp.3d ----, 2025 WL 2280357, *7 (D. Colo. Aug. 8, 2025). "It is hard to adequately state the significance of the potential injury" to a person who is illegally incarcerated, as one cannot "be given back" any day "he has spent in prison," *Case v. Hatch*, 8-CV-0542, 2011 WL 13285731, *5 (D. N.M. May 2, 2011), which causes "harm every day [one] remains in custody." *Rodriguez Vazquez I*, 779 F.Supp.3d at 1262.

ICE initiated removal proceedings against Mr. Mendoza Gutierrez, charging him with being present "without admission," *i.e.* entering the country "without inspection" and "seeking admission" in violation of 8 U.S.C. § 1182(a)(6)(A)(i).[12] ICE arrested and

---

[10] *See, e.g.*, Movant's App. at 5, *Moya Pineda* (granting relief; petitioner "lived in the [U.S.] for nearly twenty years … with his U.S. citizen wife and their two U.S.-citizen children … He owns a painting company…"); *Artola Arauz*, 2025 WL 3041840, at *1 (granting relief; petitioner "has lived in the [U.S.] for nearly 40 years. … [H]e works in construction."); Movant's App. at 35, *Ortiz Rosales* (granting relief; petitioner "has lived in the [U.S.] for nearly twenty years" "works in construction" and "does not have any criminal convictions"); Movant's App. at 28, *De Domingo Campos* (granting relief; petitioner entered the U.S. "almost thirty years ago," and has "raised four U.S. citizen children").

[11] *See* ECF 40, pp. 13-14 (Defendant's brief, identifying "519 individuals who are detained at the Denver Contract Detention Facility [who] entered without inspection during their most recent entry, were not encountered at the border by DHS, and are being detained pursuant to 8 U.S.C. § 1225(b)(2)").

[12] Movant's App. at 108 (¶ 14), N. Mendoza Gutierrez Decl.; Movant's App. at 111, N. Mendoza Gutierrez Notice to Appear (section 212(a)(6)(A)(i) of the INA is codified at 8 U.S.C. § 1182).

detained him, eventually concluding he was detained under § 1225.[13] As such, an IJ held that she could not order bond, relying on Defendants' new interpretation of § 1225.[14]

Unlike the vast majority of class members – 85% of whom lack counsel – Mr. Mendoza Gutierrez was able to hire attorneys to seek *habeas corpus* relief.[15]

### D.    Procedural History

Plaintiff filed an individual *habeas corpus* petition in this action on August 29, 2025. ECF 1. He then amended the petition on September 2, 2025 to seek declaratory judgment and APA vacatur for the class. ECF 6. He then sought a temporary restraining order and class certification on September 4, 2025. ECF 14 & 15. On October 17, 2025, the Court granted the TRO and ordered his "immediate" release until Defendants provided a bond hearing. ECF 33. He was ultimately released on October 18, 2025. ECF 36-1. This Court appointed him to represent a certified class on November 20, 2025. ECF 43 & 47.

### III.    Legal Standard

### A.    Declaratory Judgment

The Declaratory Judgment Act permits district courts to "declare the rights and other legal relations of any interested party," including the legality of agency action. 28 U.S.C. § 2201 & *Hooper v. City of Tulsa, Okla.*, 71 F.4th 1270, 1278 (10th Cir. 2023). Courts apply the familiar summary judgment standard: "The court shall grant summary

---

[13] *See* Movant's App. at 123-125 (¶ 7-8 & 11-13), M. Ketels Decl. *See also* Movant's App. at 116, N. Mendoza Gutierrez Notice to Appear.

[14] Movant's App. at 45, IJ Alison R. Kane Decision Den. Bond to N. Mendoza Gutierrez. *See also* Movant's App. at 42, "July 8 Memo."

[15] Movant's App. at 144, M. Sherman Decl., ¶ 15.

judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

Here, as in *Rodriguez Vazquez*, Plaintiff readily satisfies the standard. *Rodriguez Vazquez II*, 2025 WL 2782499, *7 (noting "the parties agree that the material facts are not in dispute, and the Court may resolve the claims … as a matter of law"). The dispute here is "fundamentally legal in nature" and can be decided summarily, as other judges of this Court have noted. *Nava Hernandez*, 2025 WL 2996643, at *1; Movant's App. at 4, *Moya Pineda*, at 1; Movant's App. at 10, *Hernandez Vazquez*, at 1. Indeed, Defendants concede this is a case "involv[ing] a question of statutory interpretation," ECF 26, p. 2, which makes it suitable for summary resolution.

### B.    *Habeas Corpus*

Federal courts review the detention of individuals in *habeas corpus* to determine if the detention violates "the Constitution, laws, or treaties of the United States." *Alexander v. Williams*, 641 F.Supp.3d 1082, 1089 (D. Colo. 2022). *See also* 28 U.S.C. § 2241. "Federal courts have habeas jurisdiction to examine the statutory and constitutional bases for an immigration detention unrelated to a final order of removal." *Mohit v. U.S. Dep't of Homeland Sec.*, 478 F.Supp.3d 1106, 1109 (D. Colo. 2020). *See also* ECF 33, pp. 6-8.

### IV.    Legal Argument – The Court Should Grant Summary Judgment

As nearly every court that has addressed the issue has held, Defendants' policy violates the INA.[16] Section 1225 has "traditionally been used for noncitizens seeking admission into the United States who are detained at the border or near the border shortly

---

[16] *Supra* n. 1-2 & Movant's App. 146, Collected Cases.

after entry into the United States." ECF 33, p. 2. In contrast, § 1226 applies to people who, like the class members, are "already in the country" and are detained "pending the outcome of removal proceedings*," Jennings*, 583 U.S. at 289, and thus "generally [may] apply for release on bond." *Nielsen*, 586 U.S. at 395. As this Court found, the INA's plain language, canons of statutory construction, legislative history, implementing regulations, and past agency practice all support this conclusion. ECF 33, pp. 10-22.

> **A.    The Statutes' Plain Language Entitles Plaintiff and Class Members to Bond**

"[A] proper understanding of the relevant statutes, in light of their plain text, overall structure, and uniform case law interpreting them, compels the conclusion that § 1225's provision for mandatory detention of noncitizens 'seeking admission' does not apply to someone like [Plaintiff], who has been residing in the [U.S.]." ECF 33, p. 13 (quoting *Lopez Benitez*, 2025 WL 2371588, at *3).

Section 1226 – and thus the ability to seek bond – governs detention of class members. "The plain language of [§ 1226] … indicates Congress' intent to establish a discretionary, rather than a mandatory, detention framework for noncitizens," and "provides that the Attorney General may release a noncitizen on bond or conditional parole 'if his [or her] release would not pose a danger to property or persons, and that he [or she] is likely to appear for any future proceedings.'" ECF 33, p. 17 (citing *In re Adeniji*, 22 I&N Dec. 1102, 1116 (BIA 1999)). Reading § 1226's discretionary detention authority to apply to class members "align[s] with the Supreme Court's prior analysis." ECF 33, p. 14. In *Jennings*, the Supreme Court recognized § 1226(a) is the "default" detention authority which applies to people "already in the country" whom ICE detains "pending the

outcome of removal proceedings." 583 U.S. at 281 & 289. As the statute expressly provides, the language of § 1226 includes both: (1) people like class members who entered without inspection, were never formally admitted to the country, and thus are charged as "inadmissible" under § 1182(a)(6)(A)(i); and (2) people who were admitted and are charged as "deportable" under the INA. *See id.* § 1229a(a)(3) (removal proceedings "determine[e] whether a [noncitizen] *may be admitted* to the [U.S.] or, if the [noncitizen] has been so admitted, removed from the [U.S.]") (emphasis added).

Section 1226's structure reinforces its applicability to class members. Subsection 1226(a) provides the general right to seek release on bond. Then § 1226(c) carves out discrete categories of noncitizens prohibited from release on bond (primarily those accused or convicted of certain crimes). These carve-outs include noncitizens who are inadmissible for entering without inspection *and* who meet the additional crime-related requirements. Because § 1226(c)'s exception expressly applies to people who entered without inspection (like the class) *and* who meet the additional criteria, it reinforces the "default" rule that § 1226(a)'s general detention authority otherwise applies to the class. *Jimenez,* 2025 WL 2639390, at *8 (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 559 U.S. 393, 400 (2010)).

By contrast, § 1225(b)(2) mandatory detention applies primarily "at the Nation's borders and ports of entry, where the Government must determine whether a[] [noncitizen] seeking to enter the country is admissible." *Jennings*, 583 U.S. at 287. The primary purpose of § 1225 as a whole is to define how DHS inspects, processes, and detains people at a port-of-entry or land border. *See id.* at 297. H.R. Rep. No. 104-469,

pt. 1, at 157-58, 228-29 (explaining § 1225's purpose). For example, § 1225 specifically addresses various types of arriving noncitizens whom immigration officers would encounter at the border or a port-of-entry, like stowaways (§ 1225(a)(2)), crewmen (§ 1225(a)(3)), and asylum seekers (§ 1225(b)(1)(A)(ii)).

Section 1225's text reinforces and reflects the provision's focus on inspection and processing at the border and ports-of-entry. The section's title expressly concerns "inspection by immigration officers" and the "expedited removal of inadmissible arriving [noncitizens]." 8 U.S.C. § 1225. *See Dubin v. U.S.*, 599 U.S. 110, 120-21 (2023) ("the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute"). Section 1225(b)(1) encompasses the "inspection" and expedited removal of certain noncitizens who are "inadmissible" for having misrepresented information or lacking entry documents.[17]

Section 1225(b)(2) in turn describes the "[i]nspection of other [noncitizens]" – that is, people whom (b)(1) does not cover. *See* 8 U.S.C. § 1225(b)(2) (subsection's title). The paragraph specifies that it applies only to "applicants for admission" (defined at § 1225(a)(1)) who are "*seeking admission*," with "admission" defined as "the lawful entry of the [noncitizen] into the United States after inspection and authorization by an immigration

---

[17] Section 1225(b)(1) provides for the expedited removal of noncitizens who are "arriving in" the U.S., *id.* § 1225(b)(1)(A)(i), while also authorizing the Secretary of Homeland Security to apply expedited removal to a limited class of noncitizens who are present in the U.S. without admission and cannot prove they have been in the U.S. for at least two years. *Id.* § 1225(b)(1)(A)(iii). Historically, the Secretary has limited applying expedited removal to "noncitizens who are apprehended immediately proximate to the land border and who have negligible ties or equities in the United States." *Make the Rd. New York v. Noem*, 25-CV-190, 2025 WL 2494908, at *1 (D. D.C. Aug. 29, 2025) (cleaned up).

officer." 8 U.S.C. § 1101(a)(13)(A). Thus, § 1225(b)(2) (and mandatory detention) applies only to "applicants for admission" who are "seeking" to make a lawful entry into the U.S. Read in context, § 1225(b)(2)'s language thus reflects Congress' intent to require detention only for noncitizens who presently seek admission into the U.S. ECF 33, p. 16. Congress did not intend to sweep up and imprison without bond individuals, like the class members, who have already entered the U.S. and are now present and residing here. *See* H.R. Rep. No. 104-469, pt. 1, at 157-58, 228-29; H.R. Rep. No. 104-828, at 209.

### B. Canons of Construction Make Clear that the Class is Entitled to Consideration for Bond

Several canons of statutory interpretation reinforce this plain reading of the statutes. First, "a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous." *Clark v. Rameker*, 573 U.S. 122, 131 (2014) (internal citations omitted). This is "one of the most basic interpretive canons." *Rodriguez Vazquez II*, 2025 WL 2782499, at *18 (citing *Corley v. U.S.*, 556 U.S. 303, 314 (2009)). Applying this canon requires rejecting the government's interpretation of the detention statutes as the government's interpretation makes several provisions superfluous.

Most notably, as this Court explained, in January 2025, "Congress passed the Laken Riley Act ['LRA'] amending [§ 1226(c)] to add a category of noncitizens subject to mandatory detention." ECF 33, p. 17 (citing Pub. L. No. 119-1, 139 Stat. 3 (2025)). These amendments impose mandatory detention on noncitizens who – like class members – are present in the country without having been admitted, but who – unlike class members – also have been charged with certain crimes ("burglary, theft, larceny, shoplifting, assault

of a law enforcement officer" and any crime that results in death or serious injury). 8 U.S.C. § 1226(c)(1)(E)(ii). If, as Defendants maintain, however, § 1225 provides detention authority "for noncitizens 'already in the country,'" and § 1226 does not apply to them, "it would have been superfluous for Congress to pass the [LRA]." ECF 33, p. 18. If noncitizens like class members are already ineligible for bond under § 1226(a) because they are detained under § 1225, there simply would have been no need for Congress to exclude them from bond by enacting the LRA. Thus, the LRA's new detention provisions are meaningless under Defendants' interpretation. *See Lopez Benitez*, 2025 WL 2371588, at *7 (government's interpretation would "nullify" the LRA); *Ortiz Donis*, 2025 WL 2879514, at *9 (same); *Romero*, 2025 WL 2403827, at *11-12 (government's interpretation is "a contradiction"); *Rodriquez Vazquez II*, 2025 WL 2782499, at *19 (government's interpretation would render the LRA "entirely redundant").[18]

Defendants' reading also makes § 1225(b)(2)(A)'s requirement that a noncitizen "who is an applicant for admission" also be "seeking admission" superfluous. *E.g.*, *Jimenez*, 2025 WL 2639390, at *8; *Salcedo Aceros*, 2025 WL 2637503, at *10; *Ortiz Donis*, 2025 WL 2879514, at *8. Defendants argue that § 1225(b)(2)(A) applies to class members because they are "applicants for admission" – defined as noncitizens "present in the [U.S.] who ha[ve] not been admitted or who arrive[d] in the [U.S.]." 8 U.S.C. §

---

[18] The canon presuming real and substantial effect requires the same result. As the *Rodriguez Vazquez* court explained, the LRA amendments necessarily recognize that § 1226(a) covers class members. The "specific exceptions [in the LRA] for inadmissible noncitizens who are arrested, charged with, or convicted of the enumerated crimes logically leaves those inadmissible noncitizens *not* criminally implicated under Section 1226(a)'s default rule for discretionary detention." *Rodriguez Vazquez I*, 779 F.Supp.3d at 1259 (emphasis in original, citation modified).

1225(a)(1). *See Romero*, 2025 WL 2403827, at *4. But the plain language of § 1225(b)(2)(A) does not apply to *all* applicants for admission. Quite the opposite: § 1225(b)(2)(A) qualifies that an applicant for admission shall be subject to mandatory detention when the noncitizen is "an applicant for admission, *if* the examining immigration officer determines that a[] [noncitizen] *seeking admission* is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). The noncitizen must *both* be 1) an "applicant for admission" *and* 2) affirmatively and actively "seeking admission." Noncitizens, like class members, who are arrested while residing in the U.S. do not fall into the scope of § 1225(b)(2)(A), because they were not "seeking admission" when arrested. *Guerrero Orellana*, 2025 WL 2809996, at *6-7. *See also Lopez Benitez*, 2025 WL 2371588, at *6. To the contrary, class members are noncitizens who, after entering the U.S. without inspection, are already inside the U.S. and often have resided in the country for months, years, and (like Plaintiff) even decades. At the time of their arrest, class members were not seeking "lawful entry" into the U.S. at a port-of-entry subject to inspection and authorization by an immigration officer – instead, they were already in the U.S. and intended to remain. *See Guerrero Orellana*, 2025 WL 2809996, at *6-7; Jimenez, 2025 WL 2639390, at *8; *Lopez Benitez*, 2025 WL 2371588, at *6).

The court in *Lopez Benitez* explained by analogy:

[S]omeone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as 'seeking admission' to the theater. Rather, that person would be described as already present there. Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as 'seeking admission' (or 'seeking' 'lawful entry') at that point – one would say that they had entered unlawfully but now seek a lawful means of remaining there.

16

*Lopez Benitez*, 2025 WL 2371588, *7; *accord Rodriguez Vazquez II*, 2025 WL 2782499, at *22.

**C.    The IIRIRA's Legislative History Demonstrates Defendants' Interpretation of the Detention Provisions is Wrong**

The legislative history also makes clear that the IIRIRA preserved the ability of noncitizens charged with "entry without inspection" to seek bond, rather than eliminate it. As noted above, prior to the IIRIRA, bond was generally available to people detained in the interior and charged with "entry without inspection." *See supra* at pp. 4-5 & ECF 33, p. 20. "If Congress had wished to enact the transformation of the immigration detention system that Defendants contend it did – requiring the detention of millions of people currently living and working in the [U.S.] – then it would have said so more clearly." *Rodriguez Vazquez II*, 2025 WL 2782499, at *24 (citing *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001)). In actuality, Congress said the opposite. "Upon passing the IIRIRA, Congress declared that the new Section 1226(a) 'restates the current provisions in [§ 1252(a)(1)] regarding the authority of the Attorney General to arrest, detain, *and release on bond* a[] [noncitizen] who is not lawfully in the [U.S.]." ECF 33, p. 20 (citing H.R. Rep. 104-469, 229, emphasis added). "Because noncitizens like [the class] were entitled to discretionary detention under [§] 1226(a)'s predecessor statute and Congress declared its scope unchanged … this background supports [the class's] position that [they] too [are] subject to discretionary detention" and are entitled to seek bond. *Rodriguez Vazquez I*, 779 F.Supp.3d at 1260.

**D.    Defendants' Implementing Regulations Confirm the Class is Entitled to Seek Bond**

Defendants' new policies also violate EOIR's and DHS's long-standing regulations stating people like class members are detained under § 1226(a) and thus bond-eligible. Following the IIRIRA's passage, in the decades since, and still today, the regulations recognize class members are detained under § 1226(a). At that time, EOIR explained in promulgating the bond regulations that "[d]espite being applicants for admission, [noncitizens] who are present without having been admitted ... [are] eligible for bond." *Inspection and Expedited Removal of Aliens*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). EOIR's statement made it clear that "[i]nadmissible [noncitizens], except for arriving [noncitizens] have available to them bond redetermination hearings …, while arriving [noncitizens] do not." *Id*.

In the following decades, these regulations remain unchanged. *Compare* 63 Fed. Reg. 27441, 27448 (May 19, 1998), *with* 8 C.F.R. § 1003.19(h)(2). Today the regulations governing IJs' bond jurisdiction under § 1226(a) – 8 C.F.R. § 1003.19(a) & (h)(2) – generally provide jurisdiction for people already present in the U.S., like the class members here, while specifically eliminating the IJ's bond jurisdiction over, among others, noncitizens subject to § 1226(c) and "arriving" noncitizens. At the same time, the regulations implementing § 1225(b)(2)(A) apply that statute's mandatory detention authority only to noncitizens who are *arriving* in the U.S. *See* 8 C.F.R. § 235.3(c)(1) (§ 1225(b) applies to "arriving [noncitizens] who appear[] … to be inadmissible"). "The regulation thus contemplates that 'applicants seeking admission' are a subset of applicants 'roughly interchangeable' with 'arriving [noncitizens].'" *Salcedo Aceros*, 2025

WL 2637503, at *10. *See also* 8 C.F.R. § 1.2 (defining "arriving [noncitizen]" as applicant for admission "coming or attempting to come into the [U.S.] at a port-of-entry").

In fact, decades ago, Defendants previously considered – and then rejected – the interpretation they are proposing again today. After passage of the IIRIRA, the then-Attorney General proposed a rule that all "[i]nadmissible [noncitizens] in removal proceedings" be ineligible for bond. *Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal*, 62 Fed. Reg. 444, 483 (Jan. 3, 1997). After receiving comments, the Attorney General deleted that provision and revised it to apply only to "[a]rriving [noncitizens]." 62 Fed. Reg. at 10361. She explained "[t]he effect of this change is that inadmissible [noncitizens]," – like the class members – "have available to them bond hearings …, while arriving [noncitizens] do not." *Id*. at 10323.

### E.    Past Agency Practice Demonstrates Class Members' Entitlement to Seek Bond

Finally, past agency practice supports Plaintiff's reading of the detention statutes. Though agencies no longer "have … special competence in resolving statutory ambiguities," *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 373, 400-401 (2024), regulatory "guidance and the agency's subsequent years of unchanged practice is persuasive" authority that courts may consider when exercising their independent authority to "decide whether the law means what the agency says." *Rodriguez Vazquez I*, 779 F.Supp.3d at 1261 & ECF 33, p. 21 (citing *Perez v. Mortgage Bankers Ass'n.*, 575 U.S. 92, 109 (2015) (Scalia, J., concurring in the judgment)). Here, for decades, Defendants have utilized § 1226 to detain noncitizens who "entered without inspection" and were arrested in the interior. "When an agency claims to discover in a long-extant

19

statute an unheralded power … [courts] greet its announcement with a measure of skepticism." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014).

## VI.    The Court Should Issue Final Judgment Pursuant to Rule 54(b)

Plaintiff and the class request that pursuant to Rule 54(b) the Court enter final judgment as to Counts I and II of the Amended Complaint and certify the action for appeal. ECF 6, ¶¶ 73-84.

## VII.    Conclusion

Thus, the Court should declare Defendants' interpretation of § 1226 and § 1225's bond provisions illegal, and grant Plaintiff's individual petition for a writ of *habeas corpus* as his detention without bond violated the laws of the United States. The Court should then order the Parties to confer within ten days of the Court's order regarding the content of a notice to be provided to the Class explaining their rights. In light of Defendants' objection to the preliminary injunction regarding transfers of class members (ECF 45, pp. 2-3), Plaintiff does not ask the court to enjoin further transfers of class members, but instead the Court should order Defendants to provide Class Counsel with notice any time a class member is to be transferred out of the District of Colorado, so that Class Counsel can monitor compliance with the declaratory judgment, and assist with additional filings, as necessary, so that class members can secure appropriate bond hearings.[19]

---

[19] The notice should be provided each Monday by 5:00 pm MT and should include the names and alien file numbers of all class members with the status of any bond proceedings for each person. If Defendants intend to transfer any class member outside the District of Colorado, they should provide the class member, the class member's immigration counsel (if applicable), and class counsel notice of the intent to transfer them five days before effectuating the transfer.

Dated: November 24, 2025.

Respectfully submitted,

*s/ Scott Medlock*
Timothy R. Macdonald
Sara R. Neel
Emma Mclean-Riggs
Anna I. Kurtz
Scott C. Medlock
ACLU FOUNDATION OF COLORADO
303 E. 17th Avenue
Denver, CO 80203
(720) 402-3107
sneel@aclu-co.org
emcleanriggs@aclu-co.org
akurtz@aclu-co.org
smedlock@aclu-co.org

Michael K.T. Tan
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
m.tan@aclu.org

Anand Balakrishnan
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
abalakrishnan@aclu.org

*s/ Hans Meyer*
Hans Meyer
Conor T. Gleason
The Meyer Law Office
PO Box 40394
Denver, CO 80204
(303) 831 0817
hans@themeyerlawoffice.com
conor@themeyerlawoffice.com

ATTORNEYS FOR PLAINTIFF-PETITIONER
AND THE PLAINTIFF CLASS

## CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2025, I electronically filed the foregoing **PLAINTIFF-PETITIONER'S MOTION FOR PARTIAL SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system, and that in accordance with Fed. R. Civ. P. 5, all counsel of record shall be served electronically through such filing.

*s/ Scott Medlock*

Counsel for Plaintiff-Petitioner and the Plaintiff Class