# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 25-CV-2720-RMR

NESTOR ESAI MENDOZA GUTIERREZ, for himself and on behalf of others similarly situated,

     Petitioners-Plaintiffs,

v.

JUAN BALTASAR, Warden, Aurora ICE Processing Center, in his official capacity,

ROBERT GUADIAN, Director of the Denver Field Office for U.S. Immigration and Customs Enforcement, in his official capacity;

KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, in her official capacity;

TODD LYONS, Acting Director of U.S. Immigration and Customs Enforcement, in his official capacity;

PAMELA BONDI, Attorney General of the United States, in her official capacity;

EXECUTIVE OFFICE FOR IMMIGRATION REVIEW;

SIRCE OWEN, Acting Director for Executive Office of Immigration Review, in her official capacity;

U.S. DEPARTMENT OF HOMELAND SECURITY;

AURORA IMMIGRATION COURT; and,

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,

     Respondents-Defendants.

---

## PLAINTIFF-PETITIONER'S APPENDIX OF EXHIBITS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF 49)

---

# TABLE OF CONTENTS

*Moya Pineda v. Baltasar*, No. 25-cv-02955 (D. Colo. Oct. 20, 2025) ...................... App. 3

*Hernandez Vazquez v. Baltasar*, No. 25-cv-03049 (D. Colo. Oct. 23, 2025) .......... App. 9

*Cervantes Arredondo v. Baltazar*, No. 25-cv-03040 (D. Colo. Oct 31, 2025) ........ App. 14

*De Domingo Campos v. Baltazar*, No. 25-cv-3062 (D. Colo. Nov. 13, 2025) ........ App. 26

*Ortiz Rosales v. Baltazar*, 25-cv-3275 (D. Colo. Nov. 16, 2025) ........................... App. 33

Dep't Homeland Security Post on X ........................................................................ App. 39

Interim Guidance Regarding Detention Authority for Applicants

    for Admission, July 8, 2025 ("July 8 Memo") (ECF No. 14-5) ..................... App. 41

IJ Kane Decision Den. Bond to N. Mendoza Gutierrez. (ECF No. 14-6) ............... App. 44

A. Reed Decl. (ECF No. 15-4) ................................................................................. App. 47

A. Vasquez Decl. (ECF No. 15-5) ........................................................................... App. 52

D. Herrera Decl. (ECF No. 15-6) ............................................................................ App. 62

S. Faville Decl. (ECF No. 15-7) .............................................................................. App. 77

S. Meade Decl. (ECF No. 15-8) .............................................................................. App. 87

T. Guevara Decl. (ECF No. 15-9) ........................................................................... App. 90

Prof. Hausman Supplemental Decl. ....................................................................... App. 102

N. Mendoza Gutierrez Decl. (ECF No. 14-7 & 15-2) ............................................ App. 106

N. Mendoza Gutierrez Notice to Appear (ECF No. 14-8) ...................................... App. 110

M. Ketels Decl. (ECF No. 26-1) ............................................................................. App. 120

M. Sherman Decl. (ECF No. 15-10) ....................................................................... App. 142

Collected Cases .................................................................................................... App. 146

*Moya Pineda v. Baltasar*, No. 25-cv-02955

(D. Colo. Oct. 20, 2025)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Gordon P. Gallagher

Civil Action No. 25-cv-02955-GPG

MANUEL MOYA PINEDA,

     Petitioner-Plaintiff,

v.

JUAN BALTASAR, Warden, Aurora ICE Processing Center, in his official capacity,
ROBERT GUADIAN, Director of the Denver Field Office for U.S. Immigration and Customs
Enforcement, in his official capacity;
KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, in her official
capacity;
TODD LYONS, Acting Director of U.S. Immigration and Customs Enforcement, in his official
capacity;
PAM BONDI, Attorney General of the United States, in her official capacity;

     Respondents-Defendants.

---

## ORDER

---

Before the Court is the Verified Petition for Writ of Habeas Corpus (Petition) (D. 1). The

Court GRANTS IN PART the Petition. Because the briefing demonstrates that Petitioner-Plaintiff

Manuel Moya Pineda's (Petitioner) challenge is fundamentally legal in nature, the Court declines

to hold a hearing regarding Petitioner's challenge. *See* 28 U.S.C. § 2243.

## I. BACKGROUND

This case is one of numerous cases in this District and across the country seeking habeas

relief for immigrants detained within the United States and denied detention hearings under a new

interpretation of 8 U.S.C. §§ 1225, 1226.

1

Petitioner has lived in the United States for nearly twenty years (D. 1 at 2).[1]  Before he was

detained, he lived with his U.S. citizen wife and their two U.S.-citizen children, along with one of

his stepchildren (*id*.).  He owns a painting company and supports his family (*id*.).

In 2012, Petitioner was taken into custody (D. 1 at 2).  He did not have any criminal

convictions that would disqualify him from being released on bond (*id*.).  Accordingly, an

Immigration Judge (IJ) granted Petitioner release on bond (*id*. at 2–3).

On or about July 18, 2025, U.S. Immigration and Customs Enforcement (ICE) again took

Petitioner into custody (D. 1 at 2).  He is still not subject to mandatory detention for criminal

conduct (*id*.).  At least at the time the Petition was filed, Petitioner was held by ICE at its Aurora

Facility in Aurora, Colorado, without release on bond or a bond hearing (*id*. at 3).

## II.  LEGAL STANDARD

A district court may grant a writ of habeas corpus to any person who demonstrates he is

"in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2241.

The individual in custody bears the burden of proving that his detention is unlawful.  *Walker v.*

*Johnston*, 312 U.S. 275, 286 (1941).

## III. ANALYSIS

As one among many similar cases, the issues presented here have been litigated before.

Respondents-Defendants (Respondents) raise essentially identical arguments to those that they

raised in prior cases in this District.  *Compare* D. 17 *with Garcia Cortes v. Noem*, No. 1:25-CV-

02677-CNS, 2025 WL 2652880, at *1 (D. Colo. Sept. 16, 2025) ("First, that the Court lacks

---

[1] The Court takes its facts from the Petition, which is verified (D. 1 at 18).  Defendants do not challenge any of the facts stated in the Petition, only the legal conclusions (*see* D. 17).

2

App. 005

jurisdiction 'to review ICE's initiation of removal proceedings under 8 U.S.C. § 1252.' ECF No. 7 at 7.  Second, that even if the Court has jurisdiction, it 'should find that Petitioner is properly detained' under 8 U.S.C. § 2552(b)(2)(A) because he falls under the statute.  *Id*.  Third, that Petitioner has received adequate process.  *Id*.").  These arguments have been considered and rejected by other Judges in this District.  *Id*.; *Mendoza Gutierrez v. Baltasar*, No. 25-CV-2720-RMR (D. Colo. Oct. 17, 2025), ECF 33.  Respondents make no attempt to distinguish the authority rejecting their arguments.[2]  The Court finds the prior decisions from this District noted above entirely persuasive and adopts their analysis.

Accordingly, the Court finds that it has jurisdiction to hear Petitioner's challenge to his detention because his "claims are legal in nature and challenge specific conduct unrelated to removal proceedings."  *Garcia Cortes*, 2025 WL 2652880, at *2.  Because Petitioner was not detained while attempting to enter the country and does not have other circumstances that would subject him to mandatory detention, "Petitioner is not subject to § 1225(b)(2)(A)'s mandatory detention provision, nor does he fall outside of § 1226(a)'s discretionary detention provision based on any § 1226(c) exceptions" and "Respondents were wrong to detain him without an opportunity to seek release on bond."  *Id*. at *3.  "At bottom, the Court agrees with other courts that have,

---

[2] The one case reaching a contrary result discussed by Respondents, *Chavez v. Noem*, No. 3:25-CV-02325-CAB-SBC, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025), is not persuasive.  As other courts have judiciously explained, *Chavez* relies on a flawed analyses of only an incomplete portion of the statutory provision at issue.  *Cerritos Echevarria,* v. *Bondi*, No. CV-25-03252-PHX-DWL-ESW, 2025 WL 2821282, at *4, *8 (D. Ariz. Oct. 3, 2025); *Cordero Pelico*, , v. *Polly Kaiser*, No. 25-CV-07286-EMC, 2025 WL 2822876, at *14 (N.D. Cal. Oct. 3, 2025) ("Petitioners here agree that they are 'applicants for admission.'  They contest whether they are 'applicants for admission . . . *seeking admission*' within the scope of 1225(b)(2), an issue the [*Chavez*] district court did not address at all.").

3

against substantially similar factual backgrounds, concluded that detention without a bond hearing amounts to a due process violation." *Id*. at *4 (collecting cases).[3]

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Petition (D. 1) is GRANTED IN PART, to the extent Petitioner seeks a bond hearing at which Respondents bear the burden of proof of showing his continued detention is proper and was proper at the time of his arrest. Respondents shall provide Petitioner with a bond hearing under § 1226(a) within SEVEN DAYS of this Order. Respondents are ENJOINED from denying bond to Petitioner on the basis that he is detained pursuant to § 1225(b)(2)(A). Respondents are further ORDERED to file a status report within FIVE DAYS of Petitioner's bond hearing, stating whether he has been granted bond, and, if his request for bond was denied, the reasons for that denial. Such status update shall also include as an attachment any warrant justifying Petitioner's detention at the time he was detained.

The Court further converts its previously issued Temporary Restraining Order (D. 10) into a preliminary injunction: Pursuant to the All Writs Act, 28 U.S.C. § 1651(a), and in order to preserve the Court's jurisdiction, Defendants SHALL NOT REMOVE Petitioner from the District of Colorado or the United States unless or until this Court or the Court of Appeals for the Tenth Circuit vacates this Order or the case is terminated.

---

[3] Respondents cite this Court's decision in *Bonilla Espinoza v. Ceja*, 25-cv-01120 (D. Colo. May 21, 2025), ECF No. 11 at 21. That case, unlike this one, dealt with a circumstance where the statutory scheme allowed for detention without hearing. *Id*. In this instance, the statutory scheme *requires* Petitioner be provided a bond hearing. Therefore, failure to do so violates due process.

4

DATED October 20, 2025.

BY THE COURT:

_____

Gordon P. Gallagher
United States District Judge

App. 008

*Hernandez Vazquez v. Baltasar*,

No. 25-cv-03049 (D. Colo. Oct. 23, 2025)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Gordon P. Gallagher

Civil Action No. 25-cv-03049-GPG

BENJAMIN HERNANDEZ VAZQUEZ,

      Petitioner-Plaintiff,

v.

JUAN BALTASAR, Warden, Aurora ICE Processing Center, in his official capacity,
ROBERT GUADIAN, Director of the Denver Field Office for U.S. Immigration and Customs
Enforcement, in his official capacity;
KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, in her official
capacity;
TODD LYONS, Acting Director of U.S. Immigration and Customs Enforcement, in his official
capacity;
PAM BONDI, Attorney General of the United States, in her official capacity;

      Respondents-Defendants.

---

## ORDER

---

Before the Court is the Verified Petition for Writ of Habeas Corpus (Petition) (D. 1). The
Court GRANTS IN PART the Petition. Because the briefing demonstrates that Petitioner-Plaintiff
Benjamin Hernandez Vazquez's (Petitioner) challenge is fundamentally legal in nature, the Court
declines to hold a hearing regarding Petitioner's challenge. *See* 28 U.S.C. § 2243.

## I. BACKGROUND

This case is one of numerous cases in this District and across the country seeking habeas
relief for immigrants detained within the United States and denied detention hearings under a new
interpretation of 8 U.S.C. §§ 1225, 1226.

1

Petitioner has lived in the United States for nearly twenty years (D. 1 at 2).[1]  He has two U.S.-citizen children (*id*.).  In July 2025, U.S. Immigration and Customs Enforcement (ICE) took Petitioner into custody (*id*.).  Although he was encountered by ICE at a jail, he does not have criminal convictions that would subject him to mandatory detention for criminal conduct (*id*.; D. 15 at 6).  At least at the time the Petition was filed, Petitioner was held by ICE at its Aurora Facility in Aurora, Colorado, without release on bond or a bond hearing (D. 1 at 2).

## II.  LEGAL STANDARD

A district court may grant a writ of habeas corpus to any person who demonstrates he is "in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2241.  The individual in custody bears the burden of proving that his detention is unlawful.  *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## III. ANALYSIS

As one among many similar cases, the issues presented here have been litigated before.  Respondents-Defendants (Respondents) raise essentially identical arguments to those that they raised in prior cases in this District.  *Compare* D. 15 at 7–15 *with Garcia Cortes v. Noem*, No. 1:25-CV-02677-CNS, 2025 WL 2652880, at *1 (D. Colo. Sept. 16, 2025) ("First, that the Court lacks jurisdiction 'to review ICE's initiation of removal proceedings under 8 U.S.C. § 1252.'  ECF No. 7 at 7.  Second, that even if the Court has jurisdiction, it 'should find that Petitioner is properly detained' under 8 U.S.C. § 2552(b)(2)(A) because he falls under the statute.  *Id*.  Third, that Petitioner has received adequate process.  *Id*.").  These arguments have been considered and

---

[1] The Court takes its facts from the Petition, which is verified (D. 1 at 18).  Defendants do not challenge any of the facts stated in the Petition, only the legal conclusions (*see* D. 15).

2

App. 011

rejected by other Judges in this District.  *Id*.; *Mendoza Gutierrez v. Baltasar*, No. 25-CV-2720-RMR (D. Colo. Oct. 17, 2025), ECF 33.  Respondents make no attempt to distinguish the authority rejecting their arguments.[2]  The Court finds the prior decisions from this District noted above entirely persuasive and adopts their analysis.

Accordingly, the Court finds that it has jurisdiction to hear Petitioner's challenge to his detention because his "claims are legal in nature and challenge specific conduct unrelated to removal proceedings."  *Garcia Cortes*, 2025 WL 2652880, at *2.  Because Petitioner was not detained while attempting to enter the country and does not have other circumstances that would subject him to mandatory detention, "Petitioner is not subject to § 1225(b)(2)(A)'s mandatory detention provision, nor does he fall outside of § 1226(a)'s discretionary detention provision based on any § 1226(c) exceptions" and "Respondents were wrong to detain him without an opportunity to seek release on bond."  *Id*. at *3.  "At bottom, the Court agrees with other courts that have, against substantially similar factual backgrounds, concluded that detention without a bond hearing amounts to a due process violation."  *Id*. at *4 (collecting cases).[3]

---

[2] One case reaching a contrary result, *Chavez v. Noem*, No. 3:25-CV-02325-CAB-SBC, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025), is not persuasive.  As other courts have judiciously explained, *Chavez* relies on a flawed analyses of only an incomplete portion of the statutory provision at issue.  *Cerritos Echevarria*, v. *Bondi*, No. CV-25-03252-PHX-DWL-ESW, 2025 WL 2821282, at *4, *8 (D. Ariz. Oct. 3, 2025); *Cordero Pelico*, , *v. Polly Kaiser*, No. 25-CV-07286-EMC, 2025 WL 2822876, at *14 (N.D. Cal. Oct. 3, 2025) ("Petitioners here agree that they are 'applicants for admission.'  They contest whether they are 'applicants for admission . . . *seeking admission*' within the scope of 1225(b)(2), an issue the [*Chavez*] district court did not address at all.").

[3] Respondents cite this Court's decision in *Bonilla Espinoza v. Ceja*, 25-cv-01120 (D. Colo. May 21, 2025), ECF No. 11 at 21.  That case, unlike this one, dealt with a circumstance where the statutory scheme allowed for detention without hearing.  *Id*.  In this instance, the statutory scheme *requires* Petitioner be provided a bond hearing.  Therefore, failure to do so violates due process.

3

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Petition (D. 1) is GRANTED IN PART, to the extent Petitioner seeks a bond hearing at which Respondents bear the burden of proof of showing his continued detention is proper and was proper at the time of his arrest.  Respondents shall provide Petitioner with a bond hearing under § 1226(a) within SEVEN DAYS of this Order.  Respondents are ENJOINED from denying bond to Petitioner on the basis that he is detained pursuant to § 1225(b)(2)(A). Respondents are further ORDERED to file a status report within FIVE DAYS of Petitioner's bond hearing, stating whether he has been granted bond, and, if his request for bond was denied, the reasons for that denial.  Such status update shall also include as an attachment any warrant justifying Petitoner's detention at the time he was detained.

The Court further converts its previously issued Temporary Restraining Order (D. 11) into a preliminary injunction for the reasons previously stated:  Pursuant to the All Writs Act, 28 U.S.C. § 1651(a), and in order to preserve the Court's jurisdiction, Defendants SHALL NOT REMOVE Petitioner from the District of Colorado or the United States unless or until this Court or the Court of Appeals for the Tenth Circuit vacates this Order or the case is terminated.


DATED October 23, 2025.

BY THE COURT:

_____
Gordon P. Gallagher
United States District Judge

4


*Cervantes Arredondo v. Baltazar*, No. 25-cv-03040

(D. Colo. Oct. 31, 2025)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 1:25-cv-03040-RBJ

HUGO CERVANTES ARREDONDO,

      Petitioner,

v.

JUAN BALTAZAR, ROBERT GUARDIAN,
KRISTI NOEM, TODD LYONS,
PAMELA BONDI,
in their official capacities,

      Respondents.

---

## ORDER

---

    This matter comes before the Court on petitioner/plaintiff Hugo Cervantes Arredondo's (petitioner or Mr. Cervantes Arredondo) application for a writ of habeas corpus and motion for a temporary restraining order (TRO) and preliminary injunction. ECF No. 1; ECF No. 8. Mr. Cervantes Arredondo, a noncitizen who entered the United States without inspection and has never applied for admission or parole, claims that he is being illegally detained by respondents/defendants (respondents) under 8 U.S.C. § 1225(b)(2)(A) at an U.S. Immigration and Customs Enforcement (ICE) detention facility in Aurora, Colorado. He claims that his detention is instead governed by 8 U.S.C. § 1226(a).

1

In his habeas petition and TRO motion, Mr. Cervantes Arredondo seeks his immediate release, or, alternatively, a bond hearing within seven days where the government would bear the burden of proof to justify his continued detention by clear and convincing evidence.[1]  *See* ECF No. 1 at ¶¶ 9, 94; ECF No. 8 at 4-5. Respondents oppose this relief in its entirety.  *See* ECF No. 17.

Because the briefing demonstrates that petitioner's challenge is fundamentally legal in nature, it is unnecessary for the Court to hold a hearing in order to decide his challenge.  *See* 28 U.S.C. § 2243.

## I.      BACKGROUND[2]

Mr. Cervantes Arredondo has lived in the United States for 28 years, the last 13 of those in Colorado.  ECF No. 1 at ¶¶ 18, 24; ECF No. 8 at 2-3.  He lives with his partner and her elderly father, both United States citizens with significant health issues.  *Id.*  Mr. Cervantes Arredondo works as an independent carpenter, helps manage the household, and provides care for his partner and her father.  *Id.*

Mr. Cervantes Arredondo has pending state charges for "drug possession and possession of drug paraphernalia" stemming from a November 2024 arrest.  ECF

---

[1] Mr. Cervantes Arredondo separately requested that the Court enjoin respondents from transferring him out of the jurisdiction of this district during the pendency of these proceedings, which this Court has already granted.  ECF No. 8 at 5; ECF No. 11.

[2] The facts in this section are drawn from Mr. Cervantes' habeas petition and motion for a TRO (ECF No. 1 and ECF No. 8), respondents' opposition papers (ECF No. 17), and the attached documents.  The Court assumes the truth of these facts only for the purpose of issuing this Order.

App. 016

No. 17 at 6; *see also* ECF No. 8-1 at ¶ 15.  Furthermore, Mr. Cervantes Arredondo has a conviction arising from a separate arrest to one count of unlawful use of a controlled substance under Colo. Rev. Stat. § 18-18-404(1), a misdemeanor, and served two weeks in jail for this offense.  ECF No. 17 at 9; ECF No. 8 at 3.  To the Court's knowledge, this is Mr. Cervantes Arredondo's only criminal conviction.

On June 26, 2025, Mr. Cervantes Arredondo was arrested and detained by ICE following his release from local custody (related to his aforementioned conviction) and placed in removal proceedings under 8 U.S.C. § 1229a.  ECF No. 17 at 7.  He was charged with being inadmissible "as an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated" under § 1182(a)(6)(A)(i).[3]  *Id.*  Initially, ICE detained Mr. Cervantes Arredondo under § 1226.  *Id.*  However, sometime thereafter, ICE "cancelled [his] detention under § 1226," and claimed that his detention is authorized under § 1225(b) instead.  *Id.*

## II.   <u>LEGAL STANDARD</u>

A district court may grant a writ of habeas corpus to any person who demonstrates he is "in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2241.  The individual in custody bears the burden of

---

[3] Petitioner has admitted this charge but is seeking relief from removal.  *See* ECF No. 17 at 7.  His final merits hearing is scheduled for November 4, 2025.  *Id.*

3

App. 017

proving that his detention is unlawful. *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

### III.    ANALYSIS

#### 1.    Mr. Cervantes Arredondo is wrongfully detained under § 1225(b)(2)(A).

The Immigration and Nationality Act (INA) contains two provisions that govern detention for noncitizens who are placed in removal proceedings but do not yet have a final order of removal, 8 U.S.C. §§ 1225(b) and 1226(a)-(c).

Mr. Cervantes Arredondo asserts that as an individual who entered the United States without inspection many years ago and has never applied for admission, his detention is governed by the "default discretionary bond procedures" of § 1226(a). ECF No. 1 at ¶ 56; ECF No. 8 at 6.  He argues that the plain language and statutory structure of these provisions, as well as the legislative history and decades of agency practice, compel this conclusion.  ECF No. 1 at ¶¶ 55-68; ECF No. 8 at 6-11.

Respondents contend that Mr. Cervantes Arredondo is properly detained under the mandatory provisions of § 1225(b)(2)(A).  ECF No. 17.  They concede that "numerous nonprecedential decisions" have found that this section does *not* apply to noncitizens like petitioner who have long lived inside the United States without ever being admitted or seeking admission.[4]  *Id.* at 2.  Nevertheless, they

---

[4] This is actually a substantial understatement. Of the dozens of district courts across the country to consider this issue, the overwhelming majority have found in favor of Mr. Cervantes Arredondo's interpretation of §§ 1225(b)(2)(A) and 1226(a).  *See, e.g.*, ECF No. 1 at ¶¶ 52-53

App. 018

argue that Mr. Cervantes Arredondo is, as a matter of law, "an applicant for admission" who is "seeking admission," and thus, must be detained pending removal. *Id.* at 2-3, 10 (quoting from § 1225(b)(2)(A)). Respondents likewise rely on the text and structure of the INA and the legislative history—and argue that the longstanding agency practice of providing bond hearings to petitioners like Mr. Cervantes Arredondo was "an exercise of administrative discretion," and in any event, does not overcome the statute's plain language. *Id.* at 10-18, 18.

This issue and these arguments are now familiar territory. Since ICE began detaining noncitizens similarly situated to petitioner under § 1225(b)(2)(A) rather than § 1226 earlier this year, every district court in this Circuit to consider this issue has found that § 1225(b)(2)(A) does not apply. *See Garcia Cortes v. Noem*, No. 25-cv-02677-CNS, 2025 WL 2652880 (D. Colo. Sept. 16, 2025); *Salazar v. Dedos*, No. 25-cv-00835-DHU-JMR, 2025 WL 2676729 (D.N.M. Sept. 17, 2025); *Mendoza v. Gutierrez*, No. 25-cv-2720-RMR, 2025 WL 2962908 (D. Colo. Oct. 17, 2025); *Moya Pineda v. Baltasar*, No. 25-cv-02955-GPG (D. Colo. Oct. 20, 2025) (ECF No. 21); *Loa Caballero v. Baltazar*, No. 25-cv-03120-NYW, 2025 WL 2977650 (D. Colo. Oct. 22, 2025); *Nava Hernandez v. Baltazar*, No. 25-cv-03094-CNS, 2025 WL 2996643 (D. Colo. Oct. 24, 2025).

---

(collecting cases). To date, neither the United States Supreme Court nor any Court of Appeals has squarely taken up this issue.

The arguments raised in this case are no different.[5]  This Court has reviewed the careful analysis in these decisions, especially, in *Mendoza Gutierrez*, *Loa Caballero*, *Garcia Cortes*, and *Nava Hernandez*, and finds them compelling.  In particular, the Court agrees that the plain language of § 1225 reflects that, in order to fall under this provision, a noncitizen must be, at the time removal proceedings are initiated: (1) "an applicant for admission"; (2) "seeking admission"; and (3) "not clearly and beyond a doubt entitled to be admitted," and that the first and second criteria are not identical.  *See Garcia Cortes*, 2025 WL 2652880, at *3 ("The categories 'applicants for admission' and 'seeking admission' are not conterminous") (internal citations omitted); *see also Loa Caballero*, 2025 WL 2977650, at *6.  Furthermore, "the phrase 'seeking admission,' otherwise undefined in the statute, necessarily requires some sort of present-tense action." *Garcia Cortes*, 2025 WL 2652880 at *3 (internal citations omitted).

Therefore, this section does not apply to individuals who, like petitioner, entered the country without inspection, have lived here for more than two years, and are not, at the initiation of removal proceedings, "seeking admission."  This interpretation is further supported by the Supreme Court's characterization of the

---

[5] However, in contrast to a number of these cases, respondents do not contest the Court's jurisdiction to hear Mr. Cervantes Arredondo's habeas petition or to order the relief he seeks.  *See c.f.*, *Gutierrez Mendoza*, 2025 WL 2962908, at *2-3, *Garcia Cortes*, 2025 WL 2652880, at *1-2, *Loa Caballero*, 2025 WL 2977650, at *2-4.

6

relevant provisions in *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). *See id.* ("In sum, U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)") (emphasis added).

Respondents attempt to distinguish just one of the aforementioned cases from this District, arguing that the petitioner in *Garcia Cortes* was differently situated than Mr. Cervantes Arredondo because he was initially admitted to the United States on a visitor's visa. *See* ECF No. 17 at 13. However, the court's decision in that case did not turn on the petitioner's prior admission. Rather, the court focused on this fact to explain why, at the time of his removal proceedings, the petitioner was not "seeking admission." *Garcia Cortes*, 2025 WL 2652880, at *3. This does not mean, as respondents suggest, that individuals who have never been admitted are therefore, as a matter of law, "seeking admission," and properly detained under § 1225(b). Indeed, the same court, in *Nava Hernandez*, rejected this conclusion for a petitioner who, like Mr. Cervantes Arredondo, "entered the United States without inspection and continued living here" and never sought admission. 2025 WL 2996643, at *4, *4-7. Respondents otherwise make no attempt to grapple with or distinguish the decisions by courts in this District (or any other) other than to observe that those decisions are nonbinding. ECF No. 17 at 2.

7

As another court in this District has recently done, this Court "finds the prior decisions from this District noted above entirely persuasive and adopts their analysis." *Moya Pineda*, No. 25-cv-02955-GPG, ECF No. 21 at 3. Accordingly, Mr. Cervantes Arredondo detention under § 1225(b)(2)(A) violates the law.

**2.  Respondents must provide Mr. Cervantes Arredondo a bond hearing at which the government bears the burden of proof.**

Because Mr. Cervantes Arredondo's detention is governed by § 1226(a), he is entitled to a bond hearing before an immigration judge.[6] *See* 8 C.F.R. §§ 100.19(a), 1236.1(d). The next question is which party is to bear the burden of proof at that hearing and what that burden is.

Normally, at a bond hearing authorized under § 1226(a), the noncitizen bears the burden of proving that he is neither a danger to the community nor a flight risk. *See* C.F.R. § 236.1(c)(8); *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). Accordingly, respondents argue that the Court should place the burden on Mr. Cervantes Arredondo here. *See* ECF No. 19 at 20-22. Petitioners argue that, under these circumstances, where Mr. Cervantes Arredondo has suffered "a due process

---

[6] Respondent's initially claimed that Mr. Cervantes Arredondo's conviction to Col. Rev. Stat. § 18-18-404(1) separately required his mandatory detention under § 1226(c)(1)(A). *See* ECF No. 17 at 1-2, 9. However, respondent has since withdrawn this argument. *See* ECF No. 20. In any event, the Court agrees with petitioner that, under the categorical approach, his crime of conviction is not "relate[d] to a controlled substance" under the federal schedule, relying upon the analysis of a similar Colorado drug offense in *Johnson v, Barr*, 967 F.3d 110, 1106 (10th Cir. 2020). *See* ECF No. 19 at 1-3.

violation stemming from prolonged detention," the government should bear the burden of proof by clear and convincing evidence. *See* ECF No. 1 at ¶¶ 69-70.

Here, again, the Court sides with the majority of courts in this District that have found that it is more appropriate for the government to bear the burden of proof in this context. *See, e.g.*, *Garcia Cortes*, 2025 WL 2652880, at *5 (citing *L.G. v. Choate*, 744 F.Supp.3d 1172, 1185 (D. Colo. 2024)); *Loa Caballero*, 2025 WL 2977650, at *9; *Mendoza Gutierrez*, 2025 WL 2962908, at *10; *see also Salazar*, 2025 WL 2676729, at *6. Mr. Cervantes Arredondo has now been mandatorily detained under the wrong statute for over four months, depriving him of a core liberty interest. Furthermore, as a result, his family is suffering "severe economic and personal hardship," as he is unable to provide the financial, emotional, and other support they depend on. ECF No. 8 at 13. Under these circumstances, the government ought to bear the burden of proving that he poses a danger to the community or a risk of flight such that he should remain in detention.

Furthermore, the clear and convincing standard that generally "applies to civil detention where liberty is at stake" is appropriate here as well. *See L.G.*, 744 F.Supp.3d at 1186 (citing *United States v. Salerno*, 481 U.S. 739, 751 (1987) and *Addington v. Texas*, 441 U.S. 418, 433 (2024)).

Finally, unless petitioner agrees, his final merits hearing should not take place prior to his bond hearing. Mr. Cervantes Arredondo should not be placed at a

9

disadvantage in his bond hearing (or merits hearing) because the government wrongfully detained him under § 1225(b)(2)(A) for several months.[78]

## IV. CONCLUSION

For the foregoing reasons, petitioner's application for a writ of habeas corpus (ECF No. 1), is hereby GRANTED IN PART, to the extent that the Court rules that his detention is governed by § 1226(a), and that, within seven (7) days of this ORDER, respondents must provide him with a bond hearing under that section. At that bond hearing, the government bears the burden of proving by clear and convincing evidence that if petitioner is released, he poses a danger to the community or a risk of flight. Furthermore, unless petitioner expresses a contrary

---

[7] Because the relief Mr. Cervantes Arredondo seeks in his motion for a TRO is identical to the relief sought in—and granted under—his habeas petition, that motion is respectfully denied as moot. *See Caballero Loa v. Baltazar*, 2025 WL 2977650, at *9. However, if the Court were to analyze the TRO factors (the movant is likely to succeed on the merits; the movant will suffer irreparable harm absent the requested relief; the threatened injury outweighs any harm that the order/injunction may cause the opposing party; and the order/injunction will not adversely affect the public interest), it would find that Mr. Cervantes Arredondo has satisfied them. *See id.* at n 7. For the reasons articulated in this Order, he is likely to succeed on the merits. His ongoing mandatory detention constitutes irreparable harm. Under the merged third and fourth factors, the government is not harmed by, and the public has an interest in, the "proper governmental enforcement of §§ 1225 and 1226" in the process of immigration enforcement. *See id.* (internal citations omitted).

[8] To the extent petitioner seeks attorney's fees, *see* ECF No. 1 at ¶ 94d, he is directed to file a separate motion complying with the Federal Rules of Civil Procedure and the Local Rules.

App. 024

desire, his bond hearing must take place prior to his final merits hearing on his application for relief from removal.

Respondents are further ORDERED to file a status report within five (5) days of petitioner's bond hearing, stating whether he has been granted bond, and, if his request for bond was denied, the reasons for that denial.

The Court converts its previously issued Temporary Restraining Order (ECF No. 11) into a preliminary injunction: Pursuant to the All Writs Act, 28 U.S.C. § 1651(a), and in order to preserve this Court's jurisdiction, respondents SHALL NOT REMOVE petitioner from the District of Colorado or the United States unless or until this Court or the Court of Appeals for the Tenth Circuit vacates this Order or the case is terminated.

It is SO ORDERED.

Dated: October 31, 2025        BY THE COURT:

_____
R. Brooke Jackson
Senior United States District Court Judge

*De Domingo Campos v. Baltazar*, No. 25-cv-3062

(D. Colo. Nov. 13, 2025)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge Gordon P. Gallagher

Civil Action No. 1:25-cv-3062-GPG-NRN

JAVIER DE DOMINGO CAMPOS,

      Plaintiff-Petitioner,

v.

JUAN BALTAZAR, Warden of the Denver Contract Detention Facility, Aurora, Colorado, in his official capacity,
ROBERT GAUDIAN, Field Office Director, Denver Field Office, U.S. Immigration and Customs Enforcement, in his official capacity,
KRISTI NOEM, Secretary, U.S. Department of Homeland Security, in her official capacity,
TODD LYONS, Acting Director of Immigration and Customs Enforcement, in his official capacity,
PAM BONDI, Attorney General, U.S. Department of Justice, in her official capacity,

      Defendants-Respondents.

---

## ORDER

---

      Before the Court is Plaintiff-Petitioner's Verified Petition for Writ of Habeas Corpus (D. 1). The Court GRANTS IN PART the petition for the following reasons. Because the briefing demonstrates that Plaintiff-Petitioner Javier de Domingo Campos's (Petitioner) challenge is fundamentally legal in nature, the Court declines to hold a hearing regarding Petitioner's challenge. *See* 28 U.S.C. § 2243.

## I. FACTS

      This civil action arises from Petitioner's detainment at Immigration and Customs Enforcement's (ICE) Denver Contract Detention Facility in Aurora, Colorado pending a

1

App. 027

determination in his removal proceedings.[1]  Petitioner entered the United States almost thirty years ago and has not left since (D. 1 at ¶ 1).  He has been married to his spouse for almost 30 years, and together they have raised four U.S. citizen children (*id.*).  On July 18, 2025, while driving to work in Denver, Petitioner was stopped by immigration agents who placed him under arrest and transported him to immigration custody (*id.* at ¶ 3). Following his arrest, ICE initiated removal proceedings, and Petitioner has remained detained at the Aurora Contract Detention Facility since that date (*id.*).  On August 14, 2025, Petitioner appeared before the Aurora Immigration Court for a custody redetermination hearing (*id.* at ¶ 4).  At that hearing, the Department of Homeland Security (DHS) argued that Petitioner's detention was authorized under 8 U.S.C. § 1225(b), which provides for mandatory detention of noncitizen "applicants to admission" to the U.S. (*id.* at ¶¶ 4, 19).  The Immigration Judge (IJ) rejected DHS's argument, finding instead that Petitioner is detained pursuant to § 1226(a) and therefore eligible for bond (*id.*). The IJ further determined that Petitioner met his burden to show he is not a danger to the community nor a flight risk and accordingly ordered his release on a $10,000 bond (*id.*).

That same day, Defendant-Respondents (Respondents) invoked the automatic stay provision at 8 C.F.R. § 1003.19(i)(2), which provides for an automatic 10-day stay of an IJ's bond order to allow DHS to decide whether to appeal (*id.* at ¶ 5).  Respondents used this provision to immediately prevent Mr. Campos's release (*id.*).  On August 27, 2025, DHS filed a notice of appeal

---

[1] The Court draws the operative facts as set forth in Plaintiff-Petitioner's Verified Petition for Write of Habeas Corpus (D. 1).

App. 028

with the Board of Immigration Appeals (BIA), thereby triggering the extended automatic stay under 8 C.F.R. § 1003.6(c) (*id.*).

On September 30, 2025, Petitioner filed the instant petition for writ of habeas corpus, arguing that ICE's authority to detain him is governed by 8 U.S.C. § 1226(a), not 1225(b)(2), and ICE's invocation of the automatic stay regulation violates his constitutional rights to procedural and substantive due process and exceeds the statutory authority Congress granted DHS (*id.* at 1).

On October 8, 2025, this Court issued a temporary restraining order prohibiting Respondents from removing Petitioner from the District of Colorado or the U.S. and ordering Respondents to show cause as to why the Petitioner should not be released from custody on bond (D. 16). Respondents' subsequent briefing filed on October 23, 2025, indicated that a merits hearing on Petitioner's application for removal before the IJ was scheduled for October 30, 2025 (D. 21 at 9). To prevent deciding a moot question, on October 31, the Court ordered the parties to provide a status update within seven days as to the outcome of the merits hearing and further briefing on the facts of this case (D. 25).

The Parties provided a joint status report on November 3, 2025 (D. 28) and an updated joint status report on November 6, 2025 (D. 29). The Parties stated that on November 5, 2025, the BIA issued an order remanding Petitioner's bond to the IJ for further factual findings, mooting Petitioner's challenge to the automatic stay provision under 8 C.F.R. § 1003.19(i)(2) (*id.* at 2). However, they agree that Peititioner's challenge as to whether his detention is governed by 8 U.S.C. § 1226(a) or 8 U.S.C. § 1225(b)(2)(A) remains ripe before this Court (*id.*).

Respondents argue that this Court lacks jurisdiction to review DHS's determination to detain Petitioner pursuant to 8 U.S.C. § 1225(b), and Petitioner's detention is governed by 8 U.S.C.

3

§ 1225(b) because he is a non-citizen present in the United States who has not been admitted (D. 21 at 9). Petitioner argues his detention is governed instead by 8 U.S.C. § 1226(a), which establishes discretionary detention for noncitizens ICE arrests "[o]n a warrant issued by the Attorney General" and then placed in 8 U.S.C. § 1229a removal proceedings (D. 1 at ¶ 17). Petitioner says he is not subject to 8 U.S.C. § 1225(b) because that statute "governs only individuals seeking initial admission to the United States, not those like Mr. Campos who previously entered and have established residence" (*id.* at ¶ 69).

## II. LEGAL STANDARD

A district court may grant a writ of habeas corpus to any person who demonstrates he is "in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2241. The individual in custody bears the burden of proving that his detention is unlawful. *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## III. ANALYSIS

As one among many similar cases, the issues presented here have been litigated before. Respondents raise essentially identical arguments to those that they raised in prior cases in this District. *Compare* D. 21 *with Garcia Cortes v. Noem*, No. 1:25-CV-02677-CNS, 2025 WL 2652880, at *1 (D. Colo. Sept. 16, 2025) ("First, that the Court lacks jurisdiction 'to review ICE's initiation of removal proceedings under 8 U.S.C. § 1252.' ECF No. 7 at 7. Second, that even if the Court has jurisdiction, it 'should find that Petitioner is properly detained' under 8 U.S.C. § 2552(b)(2)(A) because he falls under the statute. *Id.* Third, that Petitioner has received adequate process. *Id.*"). These arguments have been considered and rejected by this Court and by other Judges in this District. *Id.*; *Mendoza Gutierrez v. Baltasar*, No. 25-CV-2720-RMR (D. Colo. Oct.

17, 2025), ECF 33; *Moya Pineda v. Baltasar et al.,* No. 1:25-cv-02955-GPG (D. Colo. Oct. 20, 2025), ECF 21.   Respondents make no attempt to distinguish the authority rejecting their arguments.[2]  The Court finds the prior decisions from this District noted above entirely persuasive and adopts their analysis.

Accordingly, the Court finds that it has jurisdiction to hear Petitioner's challenge to his detention because his "claims are legal in nature and challenge specific conduct unrelated to removal proceedings."  *Garcia Cortes*, 2025 WL 2652880, at *2.  Because Petitioner was not detained while attempting to enter the country and does not have other circumstances that would subject him to mandatory detention, "Petitioner is not subject to § 1225(b)(2)(A)'s mandatory detention provision, nor does he fall outside of § 1226(a)'s discretionary detention provision based on any § 1226(c) exceptions" and "Respondents were wrong to detain him without an opportunity to seek release on bond."  *Id*. at *3.  "At bottom, the Court agrees with other courts that have, against substantially similar factual backgrounds, concluded that detention without a bond hearing amounts to a due process violation."  *Id*. at *4 (collecting cases).

## IV.  CONCLUSION

For the foregoing reasons, Petitioner's Petition (D. 1) is GRANTED IN PART, to the extent Petitioner seeks a bond hearing at which Respondents bear the burden of proof of showing his continued detention is proper and was proper at the time of his arrest.  Respondents shall provide

---

[2] The one case reaching a contrary result discussed by Respondents, *Chavez v. Noem*, No. 3:25-CV-02325-CAB-SBC, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025), is not persuasive.  As other courts have judiciously explained, *Chavez* relies on a flawed analyses of only an incomplete portion of the statutory provision at issue. *Cerritos Echevarria,* v. *Bondi*, No. CV-25-03252-PHX-DWL-ESW, 2025 WL 2821282, at *4, *8 (D. Ariz. Oct. 3, 2025); *Cordero Pelico*, , *v. Polly Kaiser*, No. 25-CV-07286-EMC, 2025 WL 2822876, at *14 (N.D. Cal. Oct. 3, 2025) ("Petitioners here agree that they are 'applicants for admission.'  They contest whether they are 'applicants for admission . . . *seeking admission*' within the scope of 1225(b)(2), an issue the [*Chavez*] district court did not address at all.").

5

Petitioner with a bond hearing under § 1226(a) within SEVEN DAYS of this Order.  Respondents are ENJOINED from denying bond to Petitioner on the basis that he is detained pursuant to § 1225(b)(2)(A).  Respondents are further ORDERED to file a status report within FIVE DAYS of Petitioner's bond hearing, stating whether he has been granted bond, and, if his request for bond was denied, the reasons for that denial.  Such status update shall also include as an attachment any warrant justifying Petitoner's detention at the time he was detained.

The Court further converts its previously issued Temporary Restraining Order (D. 16) into a preliminary injunction: Pursuant to the All Writs Act, 28 U.S.C. § 1651(a), and in order to preserve the Court's jurisdiction, Defendants SHALL NOT REMOVE Petitioner from the District of Colorado or the United States unless or until this Court or the Court of Appeals for the Tenth Circuit vacates this Order or the case is terminated.


DATED November 13, 2025.

BY THE COURT:

_____
Gordon P. Gallagher
United States District Judge

*Ortiz Rosales v. Baltazar*, 25-cv-3275 (D. Colo.

Nov. 16, 2025)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Gordon P. Gallagher

Civil Action No. 25-cv-03275-GPG

DANIEL ORTIZ ROSALES,

      Petitioner,

v.

JUAN BALTAZAR, Warden of the Denver Contract Detention Facility, Aurora, Colorado, in his official capacity,
ROBERT GAUDIAN, Field Office Director, Denver Field Office, U.S. Immigration and Customs Enforcement, in his official capacity,
KRISTI NOEM, Secretary, U.S. Department of Homeland Security, in her official capacity,
TODD LYONS, Acting Director of Immigration and Customs Enforcement, in his official capacity, and
PAM BONDI, Attorney General, U.S. Department of Justice, in her official capacity,

      Respondents.

---

## ORDER

---

      Before the Court are the Verified Petition for Writ of Habeas Corpus (Petition) (D. 1).  The Court GRANTS IN PART the Petition.  Because the briefing demonstrates that Petitioner Daniel Ortiz Rosales's challenge is fundamentally legal in nature, the Court declines to hold a hearing regarding Petitioner's challenge.  *See* 28 U.S.C. § 2243.

### I.  BACKGROUND

      This case is one of numerous cases in this District and across the country seeking habeas relief for immigrants detained within the United States and denied detention hearings under a new interpretation of 8 U.S.C. §§ 1225, 1226.

1

Petitioner has lived in the United States for nearly twenty years (D. 1 at 2).[1]  He graduated from Durango High School, attended San Juan College, and works in construction (*id*.).  He does not have any criminal convictions (*id*.).

In 2014, Petitioner filed a Form I-821D, Consideration of Deferred Action for Childhood Arrivals (DACA) with U.S. Citizenship and Immigration Services (USCIS) (D. 21-1 at 3).  His DACA petition was approved and renewed once, expiring in 2022 (*id*.).

On October 12, 2025, U.S. Immigration and Customs Enforcement (ICE) took Petitioner into custody (D. 21-1 at 3).

At least at the time the Petition was filed, Petitioner was held by ICE at its facility in Aurora, Colorado, without release on bond or a bond hearing (*id*. at 3).

## II.  LEGAL STANDARD

A district court may grant a writ of habeas corpus to any person who demonstrates he is "in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2241.  The individual in custody bears the burden of proving that his detention is unlawful.  *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## III. ANALYSIS

As one among many similar cases, the issues presented here have been litigated before.  Respondents-Defendants (Respondents) raise essentially identical arguments to those that they raised in prior cases in this District.  *Compare* D. 17 *with Garcia Cortes v. Noem*, No. 1:25-CV-02677-CNS, 2025 WL 2652880, at *1 (D. Colo. Sept. 16, 2025) ("First, that the Court lacks

---

[1] The Court takes its facts from the Petition, which is verified (D. 1 at 16).  Defendants do not challenge any of the facts stated in the Petition, only the legal conclusions (*see* D. 21 at 6–8).

2

jurisdiction 'to review ICE's initiation of removal proceedings under 8 U.S.C. § 1252.' ECF No. 7 at 7. Second, that even if the Court has jurisdiction, it 'should find that Petitioner is properly detained' under 8 U.S.C. § 2552(b)(2)(A) because he falls under the statute. *Id*. Third, that Petitioner has received adequate process. *Id*."). These arguments have been considered and rejected by other Judges in this District. *Id*.; *Mendoza Gutierrez v. Baltasar*, No. 25-CV-2720-RMR (D. Colo. Oct. 17, 2025), ECF 33. Respondents make no attempt to distinguish the authority rejecting their arguments.[2] The Court finds the prior decisions from this District noted above entirely persuasive and adopts their analysis.

Accordingly, the Court finds that it has jurisdiction to hear Petitioner's challenge to his detention because his "claims are legal in nature and challenge specific conduct unrelated to removal proceedings." *Garcia Cortes*, 2025 WL 2652880, at *2. Because Petitioner was not detained while attempting to enter the country and does not have other circumstances that would subject him to mandatory detention, "Petitioner is not subject to § 1225(b)(2)(A)'s mandatory detention provision, nor does he fall outside of § 1226(a)'s discretionary detention provision based on any § 1226(c) exceptions" and "Respondents were wrong to detain him without an opportunity to seek release on bond." *Id*. at *3. "At bottom, the Court agrees with other courts that have,

---

[2] The one case reaching a contrary result discussed by Respondents, *Chavez v. Noem*, No. 3:25-CV-02325-CAB-SBC, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025), is not persuasive. As other courts have judiciously explained, *Chavez* relies on a flawed analyses of only an incomplete portion of the statutory provision at issue. *Cerritos Echevarria*, v. *Bondi*, No. CV-25-03252-PHX-DWL-ESW, 2025 WL 2821282, at *4, *8 (D. Ariz. Oct. 3, 2025); *Cordero Pelico*, , v. *Polly Kaiser*, No. 25-CV-07286-EMC, 2025 WL 2822876, at *14 (N.D. Cal. Oct. 3, 2025) ("Petitioners here agree that they are 'applicants for admission.' They contest whether they are 'applicants for admission . . . *seeking admission*' within the scope of 1225(b)(2), an issue the [*Chavez*] district court did not address at all.").

3

against substantially similar factual backgrounds, concluded that detention without a bond hearing amounts to a due process violation." *Id*. at *4 (collecting cases).[3]

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Petition (D. 1) is GRANTED IN PART, to the extent Petitioner seeks a bond hearing at which Respondents bear the burden of proof of showing his continued detention is proper and was proper at the time of his arrest. *See Batz Barreno v. Baltasar*, No. 25-cv-3017-GPG, ECF No. 18 (Nov. 14, 2025). Respondents shall provide Petitioner with a bond hearing under § 1226(a) within SEVEN DAYS of this Order. Respondents are ENJOINED from denying bond to Petitioner on the basis that he is detained pursuant to § 1225. Respondents are further ORDERED to file a status report within FIVE DAYS of Petitioner's bond hearing, stating whether he has been granted bond, and, if his request for bond was denied, the reasons for that denial. Such status update shall also include as an attachment any warrant justifying Petitioner's detention at the time he was detained.

The Court further converts its previously issued Temporary Restraining Order (D. 15) into a preliminary injunction: Pursuant to the All Writs Act, 28 U.S.C. § 1651(a), and in order to preserve the Court's jurisdiction, Defendants SHALL NOT REMOVE Petitioner from the District of Colorado or the United States unless or until this Court or the Court of Appeals for the Tenth Circuit vacates this Order or the case is terminated.

---

[3] Respondents cite this Court's decision in *Bonilla Espinoza v. Ceja*, 25-cv-01120 (D. Colo. May 21, 2025), ECF No. 11 at 21. That case, unlike this one, dealt with a circumstance where the statutory scheme allowed for detention without hearing. *Id*. In this instance, the statutory scheme *requires* Petitioner be provided a bond hearing. Therefore, failure to do so violates due process.

4

DATED November 16, 2025.

BY THE COURT:

Gordon P. Gallagher
United States District Judge

App. 038

Dep't Homeland Security Post on X

← **Post**

 **Homeland Security** ✓
@DHSgov                                         ...

The Biden administration dangerously unleashed millions of unvetted
illegal aliens into American communities—and they used many
loopholes to do so.

President Trump and Secretary Noem are now enforcing this law as it
was actually written to keep America safe.

Politicians and activists can cry wolf all they want, but it won't deter this
administration from keeping these criminals and lawbreakers off
American streets—and now thanks to the Big Beautiful Bill, we will have
plenty of bed space to do so.

---

**POLICY**

# New ICE Policy Blocks Detained Migrants From Seeking Bond

The policy shift will apply to all immigrants
who crossed the U.S.-Mexico border illegally

---

11:00 AM · Jul 15, 2025 · **101.2K** Views

💬 229        ↩ 899        ♡ 3.8K        🔖 68        ↥

💬 Read 229 replies

App. 040

Interim Guidance Regarding Detention Authority for

Applicants for Admission, July 8, 2025

("July 8 Memo") (ECF No. 14-5)

Limited Time Only - Save $100 on Fall Conference Webcast. Use Promo Code "Save100FallWeb"    ✕

**MEMO & REGULATORY COMMENTS**

# ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission

7/8/25   |   AILA Doc. No. 25071607.   |   Detention & Bond, Removal & Relief

On July 8, 2025, ICE issued interim guidance regarding detention authority for applicants for admission.



> **To All ICE Employees**
> **July 8, 2025**
>
> **Interim Guidance Regarding Detention Authority for Applicants for Admission**
>
> As you are all well aware, the U.S. Department of Homeland Security's (Department or DHS) detention authority under the immigration laws is extraordinarily broad and equally complex. The Department's authority to detain, and its authority or lack of authority to release, an alien from immigration detention varies based upon the circumstances of the case. This message serves as notice that DHS, in coordination with the Department of Justice (DOJ), has revisited its legal position on detention and release authorities. DHS has determined that section 235 of the Immigration and Nationality Act (INA), rather than section 236, is the applicable immigration detention authority for all applicants for admission. The following interim guidance is intended to ensure immediate and consistent application of the Department's legal interpretation while additional operational guidance is developed.
>
> **Custody Determinations**
>
> An "applicant for admission" is an alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival. INA § 235(a)(1). **Effective immediately, it is the position of DHS that such aliens are subject to detention under INA § 235(b) and may not be released from ICE custody except by INA § 212(d)(5) parole.** These aliens are also ineligible for a custody redetermination hearing ("bond hearing") before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS. For custody purposes, these aliens are now treated in the same manner that "arriving aliens" have historically been treated. **The only aliens eligible for a custody determination and release on recognizance, bond, or other conditions under INA § 236(a) during removal proceedings are aliens admitted to the United States and chargeable with deportability under INA § 237,** with the exception of those subject to mandatory detention under INA § 236(c).

Moving forward, ICE will not issue Form I-286, *Notice of Custody Determination*, to applicants for admission because Form I-286 applies by its terms only to custody determinations under INA § 236 and part 236 of Title 8 of the Code of Federal Regulations. With a limited exception for certain habeas petitioners, on which the Office of the Principal Legal Advisor (OPLA) will individually advise, if Enforcement and Removal Operations (ERO) previously conducted a custody determination for an applicant for admission still detained in ICE custody, ERO will affirmatively cancel the Form I-286.

Because the position that detention is pursuant to INA § 235(b) is likely to be litigated, however, OPLA will need to make alternative arguments in support of continued detention before the Executive Office for Immigration Review. Accordingly, ERO and Homeland Security Investigations (HSI) should continue to develop and obtain evidence, including conviction records, to support OPLA's arguments of dangerousness and flight risk in those bond proceedings.

## Re-detention

This interpretation does not impose an affirmative requirement on ICE to immediately identify and arrest all aliens who may be subject to INA § 235 detention. Rather, the custody provisions at INA § 235(b)(1)(B)(ii), (iii)(IV), and (b)(2)(A) are best understood as prohibitions on release once an alien enters ICE custody upon initial arrest or re-detention.

This change in legal interpretation may, however, warrant re-detention of a previously released alien in a given case. Until additional guidance is issued, ERO and HSI should consult with OPLA prior to rearresting an alien on this basis.

## Parole Requests by Previously Released Aliens

It is expected that ICE will see an increase in applicants for admission previously released under INA § 236(a) requesting documentation of parole pursuant to INA § 212(d)(5) in order to establish eligibility for certain immigration benefits, including employment authorization and adjustment of status. DHS does not take the position that prior releases of applicants for admission pursuant to INA § 236(a) were releases on parole under INA § 212(d)(5) based on this change in legal position. Accordingly, ERO and HSI are not required to "correct" the release paperwork by issuing INA § 212(d)(5) parole paperwork.

IJ Kane Decision Den. Bond to N. Mendoza

Gutierrez. (ECF No. 14-6)



**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**AURORA IMMIGRATION COURT**

Respondent Name:

MENDOZA-GUTIERREZ, NESTOR ESAI

To:

Reed, Alyssa
2325 W. 72nd Ave.
Denver, CO 80221

A-Number:

Riders:
In Custody Redetermination Proceedings

Date:
06/23/2025

**ORDER OF THE IMMIGRATION JUDGE**

The respondent requested a custody redetermination pursuant to 8 C.F.R. § 1236. After full consideration of the evidence presented, the respondent's request for a change in custody status is hereby ordered:

☑ Denied, because

the court lacks jurisdiction because the respondent is detained under section 235 of the Act.

☐ Granted. It is ordered that Respondent be:
    ☐ released from custody on his own recognizance.
    ☐ released from custody under bond of $
    ☐ other:

☐ Other:

Immigration Judge: Tyler Wood 06/23/2025

| Appeal: | Department of Homeland Security: | ☐ waived | ☑ reserved |
|---------|-----------------------------------|----------|-----------|
|         | Respondent:                       | ☐ waived | ☑ reserved |

Appeal Due: 07/23/2025

## Certificate of Service

This document was served:

Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service | [ U ] Address Unavailable

To: [ ] Noncitizen | [ ] Noncitizen c/o custodial officer | [ E ] Noncitizen's atty/rep. | [ E ] DHS

Respondent Name : MENDOZA-GUTIERREZ, NESTOR ESAI | A-Number :

Riders:

Date: 06/23/2025 By: PARISH, REGAN, Court Staff

A. Reed Decl. (ECF No. 15-4)

### Declaration of Alyssa Reed, Esq.

**Experience and Qualifications**

1.  I am an attorney practicing in Denver, Colorado (Colorado Bar #37759). I am the owner of Reed Immigration Law, LLC, a law firm specializing in immigration law. I am a past chapter chair of the Colorado Chapter of the American Immigration Lawyers Association.

2.  I regularly represent people who are detained by ICE at the Denver Contract Detention Facility in Aurora, Colorado and operated by the GEO Group (also known as the Aurora ICE Processing Center or simply "GEO"). Among other services, I represent detained people in bond proceedings. I have practiced this type of law and represented these types of clients for approximately 20 years.

3.  I regularly speak with other attorneys who practice immigration law, and in particular with other attorneys who represent people who are detained at the Aurora ICE Processing Center. As part of my practice, I also regularly observe portions of other proceedings while waiting to represent my clients.

4.  From my extensive practice and experience working with people confined at the Aurora ICE Processing Center, I know that many people who are detained at the Aurora ICE Processing Center are forced to proceed *pro se* in immigration detention proceedings because they cannot hire a lawyer.

5.  As part of my practice, I regularly speak to people detained at the Aurora ICE Processing Center, and am aware of the harms that are caused to them by their detention.

**Representation of E.R.G.**

6.  I represent E.R.G. who was detained at the Aurora ICE Processing Center from July 30, 2025 until approximately August 29, 2025, when I learned he was transferred to a different detention facility in Arizona. He was recently transferred again to a facility in Louisiana.

7.  The Department of Homeland Security (DHS) refused to release E.R.G. on bond.

8.  DHS alleges that E.R.G. entered the United States "without inspection," and is thus subject to mandatory detention, without the option of being granted bond, pursuant to 8 U.S.C. § 1225(b).

9.  I filed Motion for Custody Hearing on behalf of E.R.G. pursuant to 8 C.F.R. § 1236, seeking a determination of bond for E.R.G., and the case was heard by Immigration Judge Nina Carbone on August 19, 2025.

10. Based on my experience representing clients like E.R.G., people similarly situated to E.R.G., with supportive factors like E.R.G.'s, were previously routinely granted bond before by IJs, or at least given a hearing on bond.

11. In particular, E.R.G. has no disqualifying criminal convictions under 8 U.S.C. § 1226(c). Instead, E.R.G. is married to a legal permanent resident (who is undergoing treatment for cancer), owns a home with his wife, has three minor U.S.-citizen children who he supports, has been steadily employed by the same construction firm since 2020, owns three vehicles, and had applied for immigration relief before his arrest and detention, all facts which would have previously made E.R.G. an excellent candidate for release on bond.

12. Immigration Judge Carbone ruled that the Immigration Court did not have jurisdiction to hear bond determinations because E.R.G. was an "applicant for admission" detained under 8 U.S.C. § 1225(b).

13. Immigration Judge Carbone issued a written order in E.R.G.'s case, which is attached to this Declaration as Exhibit 1. Exhibit 1 is a true and correct copy of the order denying E.R.G.'s request for bond.

**Change in Immigration Court Practice**

14. DHS and the Immigration Judges' position is a new interpretation of 8 U.S.C. § 1225(b), as DHS previously would not have applied this provision to people like E.R.G. who has resided in the U.S. for years, and was not apprehended at either the border or a point of entry.

15. As a result of DHS and ICE's new policy and practice, E.R.G. was detained at the Aurora ICE Processing Center for 30 days, and his detention continues in Arizona as of the date of this declaration. This has been a hardship on E.R.G. because he has been unable to care for his children and his cancer-stricken wife during his detention.

16. I have observed that other Immigration Judges hearing bond cases at the Aurora ICE Processing Center have also adopted this new interpretation to deny bond to anyone who entered the U.S. without inspection at any time in the past, even if that was 10, 15, or 20-plus years ago.

17. Indeed, I am also counsel of record in this case for Mr. Mendoza Gutierrez, who was similarly denied bond and also remains detained.

18. This is a dramatic change in the interpretation of INA sections 8 U.S.C. §§ 1225 & 1226, as compared to my prior experience as an immigration attorney practicing at the Aurora ICE Processing Center.

19. Previously, it was standard practice among the Immigration Judges to recognize that people who entered without inspection but were not detained at the border or a port of entry were eligible for bond, unless their criminal history under § 1226(c) rendered them ineligible for bond in any amount.

20. I believe that the new interpretation of 8 U.S.C. §§ 1225 and 1226 being relied upon by the Immigration Judges at the Aurora ICE Processing Center are contrary to the law.

**People Detained at the Aurora ICE Processing Center Face Irreparable Harm**

21. This change is resulting in immediate, irreparable harm to my client E.R.G., Mr. Mendoza Gutierrez, as well as many other people detained at the Aurora ICE Processing Center. This change is a particular irreparable hardship on people who are proceeding *pro se* in their immigration cases, as they do not have a lawyer who can argue that this policy and practice is contrary to the law.

22. E.R.G. is being irreparably harmed by his detention. His spouse is at risk for losing her employment due to missing several days of work to attend his court hearings in addition to the days she misses due to her cancer treatments. She is currently undergoing immunotherapy which causes extreme fatigue, headaches, and nasea. E.R.G. is struggling knowing that he cannot be there to help his wife during this difficult time. His spouse is unable to afford the family's bills without his financial assistance since he's been detained. E.R.G. has an eye condition, Pterygium, that he was advised requires surgery in order to prevent a loss of vision. Prior to his detention by ICE, he had planned to schedule the surgery but now his condition is worsening and he's unable to obtain treatment while detained.

23. Likewise, it is not uncommon for people who remain detained to lose their jobs and housing as a consequence of their continued detention. Typically, their families will suffer as well by being deprived of income their detained family member was earning, as well as the care and support that their detained family member was providing before their detention.

24. In my experience, people who are granted bond after detention typically attend all subsequent immigration court appearances and remain engaged in their case. It is the vast minority of detainees who are granted bond and then do not continue to appear in their immigration cases. This is especially true when the detainee has counsel, like E.R.G. does. In fact, in almost 20 years of immigration practice, I have never had a client released on bond who then willfully refused to attend their further immigration court proceedings.

I declare under penalty of perjury under the law of the United States and 28 U.S.C. § 1746 that the foregoing is true and correct.

Alyssa Reed

Date:  09/02/2025

A. Vasquez Decl. (ECF No. 15-5)

## Declaration of Arturo Vazquez, Esq.

**Experience and Qualifications**

1. I am an attorney practicing in Denver, Colorado. I work at Monclova Law P.C.

2. I specialize in immigration law and regularly represent people who are detained by ICE at the Aurora ICE Processing Center, operated by the GEO Group, in Aurora, Colorado. Among other services, I represent detained people in bond proceedings. I have practiced this type of law and represented these types of clients for 10 years (7 years as an attorney and 3 years as a student attorney while I attended the University of Wyoming).

3. I regularly speak with other attorneys who practice immigration law, and in particular with other attorneys who represent people who are detained at the Aurora ICE Processing Center. As part of my practice, I also regularly observe portions of other proceedings while waiting to represent my clients.

4. From my extensive practice and experience working with people confined at the Aurora ICE Processing Center, I know that many people who are detained at the Aurora ICE Processing Center are forced to proceed *pro se* in immigration detention proceedings because they cannot hire a lawyer.

5. As part of my practice, I regularly speak to people detained at the Aurora ICE Processing Center, and am aware of the harms that are caused to them by their detention.

**Representation of M.T.R.A.**

6. I represent M.T.R.A. who has been detained at the Aurora ICE Processing Center since July 29, 2025.

7. The Department of Homeland Security (DHS) refused to release M.T.R.A. on bond.

8. DHS alleges that M.T.R.A. entered the United States "without inspection," and is thus subject to mandatory detention, without the option of being granted bond, pursuant to 8 U.S.C. § 1225(b).

9. I filed a Request for Redetermination of Custody on behalf of M.T.R.A. pursuant to 8 C.F.R. § 1236, seeking a determination of bond for M.T.R.A. M.T.R.A.'s case was heard by Immigration Judge Alison R. Kane on August 12, 2025.

10. Based on my experience representing clients like M.T.R.A., people similarly situated to M.T.R.A. with supportive factors like M.T.R.A.'s, were routinely granted bond before July 8, 2025 by IJs.

11. In particular, M.T.R.A. has no disqualifying criminal convictions under 8 U.S.C. § 1226(c). Instead, she has resided in the United States since she was 9 years old, received her education here, has a fixed address, steady employment, contributes to the economy, files taxes, started her own business, is a single mother to three United States Citizen children, has the support of many community members, was not deemed to be a flight risk or a danger to society not by the IJ or by the government, which would have previously made M.T.R.A. an excellent candidate for release on bond.

12. Immigration Judge Kane ruled that the Immigration Court did not have jurisdiction to hear bond determinations because M.T.R.A. was an "applicant for admission" detained under 8 U.S.C. § 1225(b).

13. Immigration Judge Kane issued a written order in M.T.R.A.'s case, which is attached to this Declaration as Exhibit 1. Exhibit 1 is a true and correct copy of the order denying M.T.R.A.'s request for bond.

**Change in Immigration Court Practice**

14. DHS and the Immigration Judges' position is a new interpretation of 8 U.S.C. § 1225(b), as DHS previously would not have applied this provision to people like M.T.R.A. who has resided in the U.S. for years, and was not apprehended at either the border or a point of entry.

15. As a result of DHS and ICE's new policy and practice, M.T.R.A. has now been detained at the Aurora ICE Processing Center for 36 days as of September 3, 2025. This has been a hardship on M.T.R.A. because she has been separated from her three children who are minor's and rely on her for their care, she is the sole provider and care giver for them and as of now they have been staying with an aunt. However, M.T.R.A. doesn't know how much longer her sister can help her out for, the separation from her family is creating her emotional problems on everyone.

16. I am aware that other Immigration Judges hearing bond cases at the Aurora ICE Processing Center have also adopted this new interpretation to deny bond to anyone who entered the U.S. without inspection at any time in the past, even if that was 10, 15, or 20-plus years ago.

17. This is a dramatic change in the interpretation of INA sections 8 U.S.C. §§ 1225 & 1226, as compared to my prior experience as an immigration attorney practicing at the Aurora ICE Processing Center.

18. Previously, it was standard practice among the Immigration Judges to recognize that people who entered without inspection but were not detained at the border or a port of entry were eligible for bond, unless their criminal history under § 1226(c) rendered them ineligible for bond in any amount.

19. I believe that the new interpretation of 8 U.S.C. §§ 1225 and 1226 being relied upon by the Immigration Judges at the Aurora ICE Processing Center are contrary to the law.

20.  M.T.R.A. has decided not to appeal the case yet as she is a single mother and is trying to figure out how to use the limited resources that she has. Also she is also concerned that the limited resources that she has, will be utilized in the appeal and she won't get a decision on her bond case before she gets a decision on her merits case and at that point the appeal will be moot.

21. In my experience, it is not uncommon for the BIA to take 3 months to resolve bond denial appeals. During this time, M.T.R.A. and people like her remain detained at the Aurora ICE Processing Center.

**People Detained at the Aurora ICE Processing Center Face Irreparable Harm**

22. This change is resulting in immediate, irreparable harm to my client M.T.R.A.  as well as many other people detained at the Aurora ICE Processing Center. This change is a particular irreparable hardship on people who are proceeding *pro se* in their immigration cases, as they do not have a lawyer who can argue that this policy and practice is contrary to the law.

23. M.T.R.A. is harmed being detained as first she is being treated as a criminal being detained and deprived of her liberty,  separated from her family, incarcerated without having committed a single crime and without an opportunity of ever being released from detention. Secondly her ability to be able to fully represent herself in her immigration matter is greatly affected as she is a single mother and being detained, and having three minor children that rely on her, she has no one that is able to gather the evidence necessary to prove the different elements to have  a successful case.

24. Likewise, it is not uncommon for people who remain detained to lose their jobs and housing as a consequence of their continued detention. Typically, their families will suffer as well

by being deprived of income their detained family member was earning, as well as the care and support that their detained family member was providing before their detention.

25. In my experience, people who are granted bond after detention typically attend all subsequent immigration court appearances and remain engaged in their case. It is the vast minority of detainees who are granted bond and then do not continue to appear in their immigration cases. This is especially true when the detainee has counsel, like M.T.R.A. does. In my experience as an attorney there has never been a case of someone that has been released on bond and they do not appear for their subsequent immigration court appearances.

I declare under penalty of perjury under the law of the United States and 28 U.S.C. § 1746 that the foregoing is true and correct.

Arturo Vazquez

Monclova Law P.C.

Arturov@monclovalaw.com

1745 S Federal Blvd.

Denver, CO 80219

Date: September 3, 2025



**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**AURORA IMMIGRATION COURT**

Respondent Name:

   R       -A      , M    T

To:

   Vazquez, Arturo
   1745 S Federal Blvd
   Denver, CO 80219

A-Number:

Riders:
In Custody Redetermination Proceedings

Date:
08/12/2025

## ORDER OF THE IMMIGRATION JUDGE

The respondent requested a custody redetermination pursuant to 8 C.F.R. § 1236. After full consideration of the evidence presented, the respondent's request for a change in custody status is hereby ordered:

☑  Denied, because

The threshold issue before the Court is whether the immigration judge has jurisdiction to review the Department of Homeland Security's (DHS's) bond determination for an individual who is an "applicant for admission" under section 235 of the Immigration and Nationality Act (INA or the Act). For the reasons explained below, the Court finds that the Respondent is subject to mandatory detention under section 235 of the INA. Therefore, the Court does not have jurisdiction to redetermine the Respondent's bond under section 236 of the INA.

The immigration detention framework is multifaceted, but a plain reading of the statutes undergirding the detention of noncitizens, in addition to guidance from the Supreme Court, the Attorney General, the Board of Immigration Appeals, and the federal regulations, make it clear that Congress did not give immigration judges jurisdiction to redetermine bond for individuals who are "applicants for admission" under section 235 of the INA. Compare INA § 235, with INA § 236 (providing for the detention of noncitizens who have been admitted and have subsequently become removable); see Matter of M S , 27 I&N Dec. 509, 516 (A.G. 2019) ("[S]ection 235 (under which detention is mandatory) and section 236(a) (under which detention is permissive) can be reconciled only if they apply to different classes of aliens."). FN 1.

The statutory definition for an "applicant for admission" is a noncitizen present in the United States who has not been admitted or who arrives in the United States, "whether or not at a designated port of arrival." INA § 235(a)(1); Matter of Lemus, 25 I&N Dec. 734, 743 (BIA 2012) (explaining that applicants for admission include those seeking permission to enter and those who are present in the United States without having requested or received permission to enter). The INA mandates detention for applicants for admission described under section 235(b). Section 235(b)

(1) covers applicants for admission who are "arriving aliens" and "certain other aliens" who are initially placed in expedited removal and then referred to full removal proceedings after establishing a credible fear of persecution. INA § 235(b)(1)(B)(ii) ("[T]he alien shall be detained for further consideration of the application for asylum.") (emphasis added). Section 235(b)(2) covers applicants for admission who are not subject to expedited removal and who are placed directly into full removal proceedings. INA § 235(b)(2)(A) ("[I]f the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 240.") (emphasis added).

Notably, the Board of Immigration Appeals (BIA) recognizes the DHS's discretion to subject an eligible applicant for admission to the expedited removal process in INA section 235(b)(1), or place them directly into full section 240 removal proceedings. Matter of E-R-M- & L-R-M-, 25 I&N Dec. 520 (BIA 2011). However, under the INA and the supporting case law and regulations, either way the noncitizen is an applicant for admission and therefore subject to the mandatory detention requirements of section 235(b) (1) or (2).

The Court here finds Respondent falls under section 235(b)(2) of the INA. Section 235(b)(2) clearly commands that anyone who meets the definition of an applicant for admission and is not subject to (b)(1) (or another 235(b)(2)(B) exception) "shall be detained for a proceeding under section 240." INA § 235(b)(2)(A). The Board of Immigration Appeals clarified in Matter of Q. Li that "for aliens arriving in and seeking admission into the United States who are placed directly in full removal proceedings, section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), mandates detention 'until removal proceedings have concluded.'" 29 I&N Dec. 66, 68 (BIA 2025) (quoting Jennings v. Rodriguez, 583 U.S. 281, 299 (2018).

In Jennings v. Rodriguez, the Supreme Court stated that "applicants for admission fall into one of two categories, those covered by § [235](b)(1) and those covered by § [235](b)(2)" 583 U.S. at 287. The Supreme Court further stated that, "[r]ead most naturally, §§ [235](b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded. Section [235](b)(1) aliens are detained for 'further consideration of the application for asylum,' and § [235](b)(2) aliens are in turn detained for '[removal] proceeding[s].' Once those proceedings end, detention under § [235](b) must end as well. Until that point, however, nothing in the statutory text imposes any limit on the length of detention. And neither § [235](b)(1) nor § [235](b)(2) says anything whatsoever about bond hearings." Id. at 297.

Section 235.3 of Title 8 of the Code of Federal Regulations further explains mandatory detention under section 235(b) of the INA. Subsection (b) of the regulation addresses noncitizens who may be subject to expedited removal and therefore detention under INA section 235(b)(1). 8 C.F.R. § 235.3(b). This same regulation also states that noncitizens not subject to expedited removal "who [were] not inspected and admitted or paroled into the United States but who establish[] that

[they] [have] been continuously physically present in the United states for the 2-year period immediately prior to the date of determination of inadmissibility shall be detained in accordance with section 235(b)(2) of the Act for a proceeding under section 240 of the Act." 8 C.F.R. § 235.3(b)(1)(ii). The regulation also covers arriving aliens placed in section 240 proceedings and states they "shall be detained in accordance with section 235(b) of the Act." 8 C.F.R. § 235.3(c)(1). Clearly, the regulations contemplate the INA's instruction that all classes of applicants for admission are subject to mandatory detention under either section 235(b) (1) or (2).

Additionally, the regulations further contemplate detention under section 235(b) when discussing under what circumstances DHS will refer a case to an immigration judge through a Notice to Appear. 8 C.F.R. 235.6(a)(1) (2020). See Pangea Legal Servs. v. U.S. Dep't of Homeland Sec., 512 F.Supp.3d 966 (N.D. Cal. Jan. 8, 2021) (enjoining the rule titled, Procedures for Asylum and Withholding of Removal; Credible Fear and Reasonable Fear Review, amending subsection (a)(1)(ii) of the regulation). The regulation provides that an immigration or asylum officer will issue a Notice to Appear: (i) "in accordance with the provisions of section 235(b)(2)(A) of the Act," if the examining immigration officer "detains an alien for a proceeding before an immigration judge under section 240;" and (ii) when a noncitizen in expedited removal proceedings under section 235(b)(1) is determined to have established as credible fear of persecution or torture. Id.

Notably, once an alien is detained under section 235(b), the post-hoc issuance of a warrant by DHS does not convert the statutory authority governing their detention from section 235(b) to 236(a). Matter of Q. Li, 29 I&N Dec. at 69 n.4.
In sum, the Court finds Respondent is an applicant for admission as defined under section 235(a) of the INA, since he has never been admitted, and a careful review of the INA, caselaw, and regulations reveals that applicants for admission shall be detained pursuant to section 235(b). Because the law requires the detention of all applicants for admission, this Court does not have jurisdiction to review the Respondent's bond determination made by DHS.

Nothing in this ruling impacts the DHS's authority to release the Respondent from detention pursuant to parole under section 212(d)(5) of the INA. Jennings, 583 US at 288 ("Regardless of which of those two sections [under INA § 235(b)] authorizes [the noncitizen's] detention, applicants for admission may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'") (citing INA § 212(d)(5)(A); Matter of Cabrera-Fernandez, 28 I&N Dec. 747, 749 (BIA 2023) ("[C]onditional parole under section 236(a)(2)(B) of the INA is legally distinct from release on humanitarian parole under section 212(d)(5)(A)").

Alternatively, if the Court were to properly have jurisdiction over these custody proceedings, the Court makes the following findings. Respondent represents that she has no criminal record, and DHS provided no evidence or argument to show she poses any danger to persons or property. Thus, the Court does not find she does. As for flight risk, Respondent has strong ties to the U.S. She has lived in the U.S., albeit

unlawfully but for many years with a grant of Deferred Action for Childhood Arrivals (DACA), after being brought to the U.S. at the age of nine. Exh. 2 at 14-19. She has a fixed address and was steadily employed, operating her own business, before being taken into ICE custody. Id. at 20, 33-56. She is a single mother to three U.S. citizen children who are all under the age of 21 and would serve as qualifying relatives on the EOIR-42B application Respondent intends to file. Id. at 8-11. Many family and community members have filed letters in support of Respondent, and she has sponsors to ensure she returns to future Court hearings if she is released. Id. at 70-132. Under the circumstances, and in consideration of the record as a whole, if the court had jurisdiction to redetermine Respondent's bond, the court would set a bond of $3,000 to ensure his continued participation in his removal proceeding.

FN 1. In determining that applicants for admission are subject to mandatory detention under section 235(b) of the INA and not eligible for a custody determination by the Court under section 236, the Court acknowledges that section 236(c) discusses its applicability to certain aliens who are inadmissible under cross-referenced sections of the INA. See INA § 236(c)(1)(A), (D), (E)(i). However, that Congress determined certain actions and offenses should constitute both grounds for inadmissibility and mandatory detention of criminal aliens, and then efficiently defined such grounds for mandatory detention in section 236(c) of the INA by cross referencing inadmissibility grounds in section 212(a), does not compel a conclusion that 236 must necessarily apply to applicants for admission. See Matter of Kotliar 24 I&N Dec. 124 (BIA 2007) (holding that an alien need not be charged with the ground that provides the basis for mandatory detention under section 236(c)(1)). In other words, that a noncitizen could be found to have committed certain actions or offenses that qualify as grounds for inadmissibility does not affect their categorization as an "applicant for admission."

☐   Granted. It is ordered that Respondent be:
    ☐   released from custody on his own recognizance.
    ☐   released from custody under bond of $
    ☐   other:

☐   Other:

Immigration Judge: Alison R. Kane 08/12/2025

Appeal:    Department of Homeland Security: ☐   waived   ☑   reserved
           Respondent:                      ☐   waived   ☑   reserved
Appeal Due: 09/11/2025

## Certificate of Service

This document was served:

Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service | [ U ] Address Unavailable

To: [ ] Alien | [ ] Alien c/o custodial officer | [ E ] Alien atty/rep. | [ E ] DHS

Respondent Name : R          -A      , M     T        | A-Number :

Riders:

Date: 08/12/2025 By: Alison R. Kane, Immigration Judge

D. Herrera Decl. (ECF No. 15-6)

## Declaration of Daniel Herrera, Esq.

**Experience and Qualifications**

1. I am an attorney practicing in Denver, Colorado. I work at The Meyer Law Office.

2. I specialize in immigration law and regularly represent people who are detained by ICE at the Aurora ICE Processing Center, operated by the GEO Group, in Aurora, Colorado ("Aurora Facility"). My firm does a variety of work for immigrants, including representation of detained people in bond proceedings. I have practiced this type of law and represented these types of clients for two years.

3. As such, I routinely speak with other attorneys who practice immigration law, and in particular with other attorneys who represent people detained in the Aurora Facility. As part of my practice, I also regularly observe portions of other proceedings that take place at the immigration court in the Aurora Facility while I wait to represent my clients.

4. As part of my practice, I regularly speak to people detained at the Aurora Facility and regularly hear from them about the harms that detention is causing in their lives.

**Representation of Mr. A.**

5. My firm represents Mr. A, who has been detained at the Aurora ICE Processing Center for more than a month.

6. The Department of Homeland Security (DHS) refused to release Mr. A on bond when he was arrested.

7. DHS alleges that Mr. A entered the United States "without inspection," and is thus subject to mandatory detention, without the option of being granted bond, pursuant to 8 U.S.C. § 1225(b).

8. My firm filed a Request for Redetermination of Custody on behalf of Mr. A pursuant to 8 C.F.R. § 1236, seeking a determination of bond for Mr. A. Mr. A's case was heard by Immigration Judge ("IJ") Allison R. Kane in August 2025.

9. Based on my experience representing clients like Mr. A, people similarly situated to Mr. A, with supportive factors like Mr. A's, were routinely granted bond by IJs before July 8, 2025, or at least given a hearing on bond even if they were ultimately denied bond or bond was set too high for them to pay.

1

10. In particular, Mr. A has no disqualifying criminal convictions under 8 U.S.C. § 1226(c). Mr. A has no criminal record, has stable employment, and a stable housing situation. In addition, Mr. A has a Legal Permanent Resident brother and U.S. citizen friend who both provided letters stating they would be his sponsor and ensure he complied with all requirements of release and attended his immigration court hearings. All of these factors would have previously made Mr. A an excellent candidate for release on bond, and prior to the last few months, I am aware of many cases with similar facts where the detained person was granted bond.

11. IJ Kane ruled that the Immigration Court did not have jurisdiction to hear bond determinations because Mr. A was an "applicant for admission" who was "seeking admission" and therefore detained under 8 U.S.C. § 1225(b).

12. IJ Kane issued a written order in Mr. A's case, which is attached to this Declaration as Exhibit 1. Exhibit 1 is a true and correct copy of the order denying Mr. A's request for bond.

**Representation of Mr. B.**

13. My firm also represents Mr. B, who was detained at the Aurora Facility for more than 3 months.

14. DHS refused to release Mr. B on bond after arresting him near his home, which he owns.

15. DHS alleged that Mr. B entered the United States "without inspection," and was thus subject to mandatory detention, without the option of being granted bond, pursuant to 8 U.S.C. § 1225(b).

16. My firm filed a Request for Redetermination of Custody on behalf of Mr. B pursuant to 8 C.F.R. § 1236, seeking a determination of bond for Mr. B. IJ Kane ruled that she lacked jurisdiction to set bond because Mr. B was detained pursuant to § 1225(b), rather than § 1226(a). IJ Kane ruled that, in the alternative, if she had jurisdiction, she would have set bond in the amount of $5,000 because Mr. B "does not have a criminal record," "has strong ties to the U.S., which minimizes his flight risk," "lives at a fixed address" and "has reliable employment." A true and correct copy of IJ Kane's order denying Mr. B bond is attached as Exhibit 2.

17. Based on my experience representing clients like Mr. B, people similarly situated to Mr. B, with supportive factors like Mr. B's, were routinely granted bond by IJs before July 8, 2025, or at least given a hearing on bond even if they were ultimately denied bond or bond was set too high for them to pay.

2

18. In particular, Mr. B has no disqualifying criminal convictions under 8 U.S.C. § 1226(c) – indeed, his only criminal citation is a single traffic ticket. He has lived in Colorado for more than 20 years, worked for the same employer for 18 years, and has four minor U.S.-citizen children.

19. Mr. B appealed the decision to deny bond to the Board of Immigration Appeals.

**Change in Immigration Court Practice**

20. DHS and the Immigration Judges' position is a new interpretation of 8 U.S.C. § 1225(b), as DHS previously would not have applied this provision to people like Mr. A and Mr. B who had both resided in the U.S. for years, and were not apprehended at either the border or a point of entry.

21. As a result of DHS and ICE's new policy and practice, my clients like Mr. A and Mr. B both spent significant time detained at the Aurora Facility. This was a significant hardship for both men. Both men were the main financial providers for their families.

22. Mr. A has a wife and two daughters who depend on him. Mr. A's wife is currently unable to work as she cares for their seven-year-old daughter and 4-month-old U.S. citizen daughter.

23. Mr. B is the provider for his wife and their four U.S. citizen children, including his two children with learning disabilities. During his detention, Mr. B also suffered from a shoulder injury and high blood pressure that authorities at the Aurora Facility failed to treat properly. His medical records state that he was in such great pain that guards at the Aurora Facility brought him to seek medical attention, but he was only given over the counter pain killers and a sling by a nurse, without even a referral to a doctor.

24. I have both observed and am aware that almost all of Immigration Judges hearing bond cases at the Aurora Facility have also adopted this new interpretation to deny bond to anyone who entered the U.S. without inspection at any time in the past, even if that was 10, 15, or 20-plus years ago.

25. This is a dramatic change in the interpretation of INA sections 8 U.S.C. §§ 1225 & 1226, as compared to my prior experience as an immigration attorney practicing at the Aurora Facility.

26. Previously, it was standard practice among the IJs to recognize that people who entered without inspection but were not detained at the border or a port of entry were eligible for bond, unless their criminal history under § 1226(c) rendered them ineligible for bond in any amount.

3

27. I believe that the new interpretation of 8 U.S.C. §§ 1225 and 1226 being relied upon by the IJs at the Aurora Facility are contrary to the law.

28. Mr. A did not appeal to the BIA because of how long it would take to receive an answer from the BIA, and he decided to request voluntary departure instead.

29. Mr. B did appeal to the BIA, but his appeal remained pending because it typically takes the BIA longer to resolve bond appeals than it does for the underlying case to be resolved.

30. In my experience, it is not uncommon for the BIA to take several months, often over six months, to resolve bond denial appeals. During this time, Mr. A, Mr. B and people like them remain detained at the Aurora Facility.

**People Detained at the Aurora ICE Processing Center Face Irreparable Harm**

31. This change is resulting in immediate, irreparable harm to my clients, as well as many other people detained at the Aurora Facility. This change is a particular irreparable hardship on people who are proceeding *pro se* in their immigration cases, as they do not have a lawyer who can argue that this policy and practice is contrary to the law.

32. Likewise, it is not uncommon for people who remain detained to lose their jobs and housing as a consequence of their continued detention. Typically, their families will suffer as well by being deprived of income their detained family member was earning, as well as the care and support that their detained family member was providing before their detention.

33. In my experience, people who are granted bond after detention typically attend all subsequent immigration court appearances and remain engaged in their case. In fact, I have never had a client stop appearing in their immigration case in my career.

I declare under penalty of perjury under the law of the United States and 28 U.S.C. § 1746 that the foregoing is true and correct.

_____
Daniel Herrera, Esq.

Date: September 3, 2025

4



**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**AURORA IMMIGRATION COURT**

Respondent Name:

A-Number:

[redacted]

Riders:
In Custody Redetermination Proceedings

To:

Highland, Mary Jo
PO BOX 40394
Denver, CO 80204

Date:
08/14/2025

### ORDER OF THE IMMIGRATION JUDGE

The respondent requested a custody redetermination pursuant to 8 C.F.R. § 1236. After full consideration of the evidence presented, the respondent's request for a change in custody status is hereby ordered:

☑ Denied, because

The threshold issue before the Court is whether the immigration judge has jurisdiction to review the Department of Homeland Security's (DHS's) bond determination for an individual who is an "applicant for admission" under section 235 of the Immigration and Nationality Act (INA or the Act). For the reasons explained below, the Court finds that the Respondent is subject to mandatory detention under section 235 of the INA. Therefore, the Court does not have jurisdiction to redetermine the Respondent's custody under section 236 of the INA.

The immigration detention framework is multifaceted, but a plain reading of the statutes undergirding the detention of noncitizens, in addition to guidance from the Supreme Court, the Attorney General, the Board of Immigration Appeals, and the federal regulations, make it clear that Congress did not give immigration judges jurisdiction to redetermine bond for individuals who are "applicants for admission" under section 235 of the INA. Compare INA § 235, with INA § 236 (providing for the detention of noncitizens who have been admitted and have subsequently become removable); see Matter of M S , 27 I&N Dec. 509, 516 (A.G. 2019) ("[S]ection 235 (under which detention is mandatory) and section 236(a) (under which detention is permissive) can be reconciled only if they apply to different classes of aliens."). FN1.

The statutory definition for an "applicant for admission" is a noncitizen present in the United States who has not been admitted or who arrives in the United States, "whether or not at a designated port of arrival." INA § 235(a)(1); Matter of Lemus, 25 I&N Dec. 734, 743 (BIA 2012) (explaining that applicants for admission include those seeking permission to enter and those who are present in the United States without having requested or received permission to enter). The INA mandates

detention for applicants for admission described under section 235(b). Section 235(b)
(1) covers applicants for admission who are "arriving aliens" and "certain other
aliens" who are initially placed in expedited removal and then referred to full removal
proceedings after establishing a credible fear of persecution. INA § 235(b)(1)(B)(ii)
("[T]he alien shall be detained for further consideration of the application for
asylum.") (emphasis added). Section 235(b)(2) covers applicants for admission who
are not subject to expedited removal and who are placed directly into full removal
proceedings. INA § 235(b)(2)(A) ("[I]f the examining immigration officer determines
that an alien seeking admission is not clearly and beyond a doubt entitled to be
admitted, the alien shall be detained for a proceeding under section 240.") (emphasis
added).

Notably, the Board of Immigration Appeals (BIA) recognizes the DHS's discretion to
subject an eligible applicant for admission to the expedited removal process in INA
section 235(b)(1), or place them directly into full section 240 removal proceedings.
Matter of E-R-M- & L R M-, 25 I&N Dec. 520 (BIA 2011). However, under the INA
and the supporting case law and regulations, either way the noncitizen is an applicant
for admission and therefore subject to the mandatory detention requirements of
section 235(b) (1) or (2).

The case law regarding noncitizens subject to mandatory detention under section
235(b)(1) of the INA has shifted over the years. See e.g., Matter of X-K-, 23 I&N
Dec. 731 (BIA 2005). In 2019, the Attorney General clearly directed in a precedential
decision that all noncitizens transferred from expedited removal proceedings to full
removal proceedings after establishing a credible fear of persecution or torture are
ineligible for release on bond, in accord with section 235(b)(1). Matter of M S , 27
I&N Dec. at 518 (overruling Matter of X-K-, 23 I&N Dec. 731 (BIA 2005)). In other
words, immigration judges do not have jurisdiction to redetermine bond for
individuals who are placed in removal proceedings following the initiation of the
expedited removal process.
INA section 235(b) does not end after providing for the expedited removal and
credible fear interview procedures in (b)(1). As discussed above, (b)(2) covers
applicants for admission to whom (b)(1) is not applied. INA § 235(b)(2)(B)(ii).
Section 235(b)(2) clearly commands that anyone who meets the definition of an
applicant for admission and is not subject to (b)(1) (or another 235(b)(2)(B)
exception), "shall be detained for a proceeding under section 240." INA § 235(b)(2)
(A). The Board of Immigration Appeals clarified in Matter of Q. Li that "for aliens
arriving in and seeking admission into the United States who are placed directly in
full removal proceedings, section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A),
mandates detention 'until removal proceedings have concluded.'" FN2. 29 I&N Dec.
66, 68 (BIA 2025) (quoting Jennings v. Rodriguez, 583 U.S. 281, 299 (2018)).

In Jennings v. Rodriguez, the Supreme Court stated that "applicants for admission fall
into one of two categories, those covered by § [235](b)(1) and those covered by §
[235](b)(2)" 583 U.S. at 287. The Supreme Court further stated that, "[r]ead most
naturally, §§ [235](b)(1) and (b)(2) thus mandate detention of applicants for

admission until certain proceedings have concluded. Section [235](b)(1) aliens are detained for 'further consideration of the application for asylum,' and § [235](b)(2) aliens are in turn detained for '[removal] proceeding[s].' Once those proceedings end, detention under § [235](b) must end as well. Until that point, however, nothing in the statutory text imposes any limit on the length of detention. And neither § [235](b)(1) nor § [235](b)(2) says anything whatsoever about bond hearings." Id. at 297.

Section 235.3 of Title 8 of the Code of Federal Regulations further explains mandatory detention under section 235(b) of the INA. Subsection (b) of the regulation addresses noncitizens who may be subject to expedited removal and therefore detention under INA section 235(b)(1). 8 C.F.R. § 235.3(b). This same regulation also states that noncitizens not subject to expedited removal "who [were] not inspected and admitted or paroled into the United States but who establish[] that [they] [have] been continuously physically present in the United states for the 2-year period immediately prior to the date of determination of inadmissibility shall be detained in accordance with section 235(b)(2) of the Act for a proceeding under section 240 of the Act." 8 C.F.R. § 235.3(b)(1)(ii). The regulation also covers arriving aliens placed in section 240 proceedings and states they "shall be detained in accordance with section 235(b) of the Act." 8 C.F.R. § 235.3(c)(1). Clearly, the regulations contemplate the INA's instruction that all classes of applicants for admission are subject to mandatory detention under either section 235(b) (1) or (2).

Additionally, the regulations further contemplate detention under section 235(b) when discussing under what circumstances DHS will refer a case to an immigration judge through a Notice to Appear. 8 C.F.R. 235.6(a)(1) (2020). See Pangea Legal Servs. v. U.S. Dep't of Homeland Sec., 512 F.Supp.3d 966 (N.D. Cal. Jan. 8, 2021) (enjoining the rule titled, Procedures for Asylum and Withholding of Removal; Credible Fear and Reasonable Fear Review, amending subsection (a)(1)(ii) of the regulation). The regulation provides that an immigration or asylum officer will issue a Notice to Appear: (i) "in accordance with the provisions of section 235(b)(2)(A) of the Act," if the examining immigration officer "detains an alien for a proceeding before an immigration judge under section 240;" and (ii) when a noncitizen in expedited removal proceedings under section 235(b)(1) is determined to have established as credible fear of persecution or torture. Id.

Notably, once an alien is detained under section 235(b), the post-hoc issuance of a warrant by DHS does not convert the statutory authority governing their detention from section 235(b) to 236(a). Matter of Q. Li, 29 I&N Dec. at 69 n.4.

In sum, the Respondent is an applicant for admission as defined under section 235(a) of the INA, and a careful review of the INA, caselaw, and regulations reveals that applicants for admission shall be detained pursuant to section 235(b). Because the law requires the detention of all applicants for admission, this Court does not have jurisdiction to review the Respondent's bond determination made by DHS.

Nothing in this ruling impacts the DHS's authority to release the Respondent from

detention pursuant to parole under section 212(d)(5) of the INA. Jennings, 583 US at 288 ("Regardless of which of those two sections [under INA § 235(b)] authorizes [the noncitizen's] detention, applicants for admission may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'") (citing INA § 212(d)(5)(A); Matter of Cabrera-Fernandez, 28 I&N Dec. 747, 749 (BIA 2023) ("[C]onditional parole under section 236(a)(2)(B) of the INA is legally distinct from release on humanitarian parole under section 212(d)(5)(A)").

Alternatively, if the Court were to properly have jurisdiction over these custody proceedings, the Court makes the following findings. Respondent has no known criminal record. Thus, the Court does not find Respondent poses a danger, but he does present a flight risk that requires the setting of a bond to ensure his continued participation in his removal proceeding. He has resided in the U.S. since 2021, and he he has a U.S. citizen child. Exh. 2. He is listed as a derivative applicant on the I-589 his wife filed. Id. His brother, an LPR, and a friend, a USC, are willing to co-sponsor him if he is released. Id. He also has provided evidence to show he would have work available to him upon release and a fixed address to live. Id. Though this information does weigh in favor of Respondent's likelihood of future appearances, DHS points out that he has five voluntary returns noted in his immigration record. Exh. 4. Under the circumstances, and in consideration of the record as a whole, if the court had jurisdiction to redetermine Respondent's bond, the court would set a bond of $7,500.

FN1. In determining that applicants for admission are subject to mandatory detention under section 235(b) of the INA and not eligible for a custody determination by the Court under section 236, the Court acknowledges that section 236(c) discusses its applicability to certain aliens who are inadmissible under cross-referenced sections of the INA. See INA § 236(c)(1)(A), (D), (E)(i). However, that Congress determined certain actions and offenses should constitute both grounds for inadmissibility and mandatory detention of criminal aliens, and then efficiently defined such grounds for mandatory detention in section 236(c) of the INA by cross referencing inadmissibility grounds in section 212(a), does not compel a conclusion that 236 must necessarily apply to applicants for admission. See Matter of Kotliar 24 I&N Dec. 124 (BIA 2007) (holding that an alien need not be charged with the ground that provides the basis for mandatory detention under section 236(c)(1)). In other words, that a noncitizen could be found to have committed certain actions or offenses that qualify as grounds for inadmissibility does not affect their categorization as an "applicant for admission."

FN2. The Court acknowledges that, subsequent to Q. Li, the BIA published Matter of Akhmedov, 29 I&N Dec. 166 (BIA 2025). In Akhmedov, the BIA stated that the custody determination for the respondent who had entered the United States unlawfully is "governed by the provisions of section 236(a)" of the INA. Id. at 166, 167. Beyond quickly referencing 236(a), the case does not analyze or discuss jurisdiction, and it instead goes on to discuss whether the respondent is a flight risk. Id. at 166-68. Without any explanation for why the BIA found jurisdiction over the respondent's custody, which was not an issue discussed in Akhmedov, the Court does

not conclude that Akhmedov overrides the plain reading of the statute requiring
mandatory detention for all applicants for admission. See INA § 235(b).

☐   Granted. It is ordered that Respondent be:
 ☐   released from custody on his own recognizance.
 ☐   released from custody under bond of $
 ☐   other:


☐   Other:

Immigration Judge: Alison R. Kane 08/14/2025

| Appeal: | Department of Homeland Security: | ☐ waived | ☑ reserved |
| | Respondent: | ☐ waived | ☑ reserved |
| Appeal Due: 09/15/2025 | | | |

**Certificate of Service**

This document was served:

Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service | [ U ] Address Unavailable

To: [ ] Alien | [ ] Alien c/o custodial officer | [ E ] Alien atty/rep. | [ E ] DHS

Respondent Name : ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮    | A-Number : ▮▮▮▮▮▮▮

Riders:

Date: 08/14/2025 By: Alison R. Kane, Immigration Judge



**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**AURORA IMMIGRATION COURT**

| | |
|---|---|
| Respondent Name: ███████████████ | A-Number: ███████████ |
| To: | Riders: |
| Meyer, Hans Christopher | In Custody Redetermination Proceedings |
| PO Box 40394 | |
| Denver, CO 80204 | Date: |
| | 06/13/2025 |

## ORDER OF THE IMMIGRATION JUDGE

The respondent requested a custody redetermination pursuant to 8 C.F.R. § 1236. After full consideration of the evidence presented, the respondent's request for a change in custody status is hereby ordered:

☑ Denied, because

The threshold issue before the Court is whether the immigration judge has jurisdiction to review the Department of Homeland Security's (DHS's) bond determination for an individual who is an "applicant for admission" under section 235 of the Immigration and Nationality Act (INA or the Act). For the reasons explained below, the Court finds that the Respondent is subject to mandatory detention under section 235 of the INA. Therefore, the Court does not have jurisdiction to redetermine the Respondent's bond under section 236 of the INA.

The immigration detention framework is multifaceted, but a plain reading of the statutes undergirding the detention of noncitizens, in addition to guidance from the Supreme Court, the Attorney General, the Board of Immigration Appeals, and the federal regulations, make it clear that Congress did not give immigration judges jurisdiction to redetermine bond for individuals who are "applicants for admission" under section 235 of the INA. Compare INA § 235, with INA § 236 (providing for the detention of noncitizens who have been admitted and have subsequently become removable); see Matter of M S , 27 I&N Dec. 509, 516 (A.G. 2019) ("[S]ection 235 (under which detention is mandatory) and section 236(a) (under which detention is permissive) can be reconciled only if they apply to different classes of aliens."). FN 1.

The statutory definition for an "applicant for admission" is a noncitizen present in the United States who has not been admitted or who arrives in the United States, "whether or not at a designated port of arrival." INA § 235(a)(1); Matter of Lemus, 25 I&N Dec. 734, 743 (BIA 2012) (explaining that applicants for admission include those seeking permission to enter and those who are present in the United States without having requested or received permission to enter). The INA mandates detention for applicants for admission described under section 235(b). Section 235(b)

(1) covers applicants for admission who are "arriving aliens" and "certain other aliens" who are initially placed in expedited removal and then referred to full removal proceedings after establishing a credible fear of persecution. INA § 235(b)(1)(B)(ii) ("[T]he alien shall be detained for further consideration of the application for asylum."). Section 235(b)(2) covers applicants for admission who are not subject to expedited removal and who are placed directly into full removal proceedings. INA § 235(b)(2)(A) ("[I]f the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 240.").

Notably, the Board of Immigration Appeals (BIA) recognizes the DHS's discretion to subject an eligible applicant for admission to the expedited removal process in INA section 235(b)(1), or place them directly into full section 240 removal proceedings. Matter of E-R-M- & L-R-M-, 25 I&N Dec. 520 (BIA 2011). However, under the INA and the supporting case law and regulations, either way the noncitizen is an applicant for admission and therefore subject to the mandatory detention requirements of section 235(b) (1) or (2).

The Court here finds Respondent falls under section 235(b)(2) of the INA. Section 235(b)(2) clearly commands that anyone who meets the definition of an applicant for admission and is not subject to (b)(1) (or another 235(b)(2)(B) exception) "shall be detained for a proceeding under section 240." INA § 235(b)(2)(A). The Board of Immigration Appeals clarified in Matter of Q. Li that "for aliens arriving in and seeking admission to the United States who are placed directly in full removal proceedings, section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), mandates detention 'until removal proceedings have concluded.'" 29 I&N Dec. 66, 68 (BIA 2025) (quoting Jennings v. Rodriguez, 583 U.S. 281, 299 (2018).

In Jennings v. Rodriguez, the Supreme Court stated that "applicants for admission fall into one of two categories, those covered by § [235](b)(1) and those covered by § [235](b)(2)" 583 U.S. at 287. The Supreme Court further stated that, "[r]ead most naturally, §§ [235](b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded. Section [235](b)(1) aliens are detained for 'further consideration of the application for asylum,' and § [235](b)(2) aliens are in turn detained for '[removal] proceeding[s].' Once those proceedings end, detention under § [235](b) must end as well. Until that point, however, nothing in the statutory text imposes any limit on the length of detention. And neither § [235](b)(1) nor § [235](b)(2) says anything whatsoever about bond hearings." Id. at 297.

Section 235.3 of Title 8 of the Code of Federal Regulations further explains mandatory detention under section 235(b) of the INA. Subsection (b) of the regulation addresses noncitizens who may be subject to expedited removal and therefore detention under INA section 235(b)(1). 8 C.F.R. § 235.3(b). This same regulation also states that noncitizens not subject to expedited removal "who [were] not inspected and admitted or paroled into the United States but who establish[] that [they] [have] been continuously physically present in the United states for the 2-year

period immediately prior to the date of determination of inadmissibility shall be detained in accordance with section 235(b)(2) of the Act for a proceeding under section 240 of the Act." 8 C.F.R. § 235.3(b)(1)(ii). The regulation also covers arriving aliens placed in section 240 proceedings and states they "shall be detained in accordance with section 235(b) of the Act." 8 C.F.R. § 235.3(c)(1). Clearly, the regulations contemplate the INA's instruction that all classes of applicants for admission are subject to mandatory detention under either section 235(b) (1) or (2).

Additionally, the regulations further contemplate detention under section 235(b) when discussing under what circumstances DHS will refer a case to an immigration judge through a Notice to Appear. 8 C.F.R. 235.6(a)(1) (2020). See Pangea Legal Servs. v. U.S. Dep't of Homeland Sec., 512 F.Supp.3d 966 (N.D. Cal. Jan. 8, 2021) (enjoining the rule titled, Procedures for Asylum and Withholding of Removal; Credible Fear and Reasonable Fear Review, amending subsection (a)(1)(ii) of the regulation). The regulation provides that an immigration or asylum officer will issue a Notice to Appear: (i) "in accordance with the provisions of section 235(b)(2)(A) of the Act," if the examining immigration officer "detains an alien for a proceeding before an immigration judge under section 240;" and (ii) when a noncitizen in expedited removal proceedings under section 235(b)(1) is determined to have established as credible fear of persecution or torture. Id.

Notably, once an alien is detained under section 235(b), the post-hoc issuance of a warrant by DHS does not convert the statutory authority governing their detention from section 235(b) to 236(a). Matter of Q. Li, 29 I&N Dec. at 69 n.4.

In sum, the Court finds Respondent is an applicant for admission as defined under section 235(a) of the INA, since he has never been admitted, and a careful review of the INA, caselaw, and regulations reveals that applicants for admission shall be detained pursuant to section 235(b). Because the law requires the detention of all applicants for admission, this Court does not have jurisdiction to review the Respondent's bond determination made by DHS.

Nothing in this ruling impacts the DHS's authority to release the Respondent from detention pursuant to parole under section 212(d)(5) of the INA. Jennings, 583 US at 288 ("Regardless of which of those two sections [under INA § 235(b)] authorizes [the noncitizen's] detention, applicants for admission may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'") (citing INA § 212(d)(5)(A); Matter of Cabrera-Fernandez, 28 I&N Dec. 747, 749 (BIA 2023) ("[C]onditional parole under section 236(a)(2)(B) of the INA is legally distinct from release on humanitarian parole under section 212(d)(5)(A)").

Alternatively, if the Court were to properly have jurisdiction over these custody proceedings, the Court makes the following findings. Respondent does not have a criminal record. Respondent has strong ties to the U.S., which minimizes his flight risk. He has resided in the U.S. for more than twenty years. He has four U.S. citizen children, ages 17, 15, 12, and 8. Two of his children have had individualized

education plans (IEPs) in school; one still has the IEP. His wife, though without status, suffers from type II diabetes and is having difficulty in Respondent's absence. Respondent lives at a fixed address, and he has reliable employment. Respondent intends to seek cancellation of removal as a non-permanent resident under INA section 240A(b)(1). Under the circumstances, and in consideration of the record as a whole, if the court had jurisdiction to redetermine Respondents bond, the court would set a bond of $5,000.

FN 1. In determining that applicants for admission are subject to mandatory detention under section 235(b) of the INA and not eligible for a custody determination by the Court under section 236, the Court acknowledges that section 236(c) discusses its applicability to certain aliens who are inadmissible under cross-referenced sections of the INA. See INA § 236(c)(1)(A), (D), (E)(i). However, that Congress determined certain actions and offenses should constitute both grounds for inadmissibility and mandatory detention of criminal aliens, and then efficiently defined such grounds for mandatory detention in section 236(c) of the INA by cross referencing inadmissibility grounds in section 212(a), does not compel a conclusion that 236 must necessarily apply to applicants for admission. See Matter of Kotliar 24 I&N Dec. 124 (BIA 2007) (holding that an alien need not be charged with the ground that provides the basis for mandatory detention under section 236(c)(1)). In other words, that a noncitizen could be found to have committed certain actions or offenses that qualify as grounds for inadmissibility does not affect their categorization as an "applicant for admission."

☐   Granted. It is ordered that Respondent be:
    ☐   released from custody on his own recognizance.
    ☐   released from custody under bond of $
    ☐   other:


☐   Other:

Immigration Judge: Alison R. Kane 06/13/2025

| Appeal: | Department of Homeland Security: | ☐ waived | ☑ reserved |
| | Respondent: | ☐ waived | ☑ reserved |

Appeal Due: 07/14/2025

## Certificate of Service

This document was served:

Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service | [ U ] Address Unavailable

To: [ ] Noncitizen | [ ] Noncitizen c/o custodial officer | [ E ] Noncitizen's atty/rep. | [ E ] DHS

Respondent Name :                                      A-Number :

Riders:

Date: 06/13/2025 By: Alison R. Kane, Immigration Judge

S. Faville Decl. (ECF No. 15-7)

## Declaration of Sarah Faville, Esq.

**Experience and Qualifications**

1. I am an attorney practicing in Denver, Colorado. I work at the Meyer Law Office, PC.

2. I specialize in immigration law and regularly represent people who are detained by ICE at the Aurora ICE Processing Center, operated by the GEO Group, in Aurora, Colorado. Among other services, I represent detained people in bond proceedings. I have practiced this type of law and represented these types of clients for 22 years.

3. I regularly speak with other attorneys who practice immigration law, and in particular with other attorneys who represent people who are detained at the Aurora ICE Processing Center. As part of my practice, I also regularly observe portions of other proceedings while waiting to represent my clients.

4. From my extensive practice and experience working with people confined at the Aurora ICE Processing Center, I know that many people who are detained at the Aurora ICE Processing Center are forced to proceed *pro se* in immigration detention proceedings because they cannot hire a lawyer.

5. As part of my practice, I regularly speak to people detained at the Aurora ICE Processing Center and am aware of the harms that are caused to them by their detention.

**Representation of [Client]**

6. I represent JMC who has been detained at the Aurora ICE Processing Center since early June 2025.

7. The Department of Homeland Security (DHS) refused to release JMC on bond.

8. DHS alleges that [client] entered the United States "without inspection," and is thus subject to mandatory detention, without the option of being granted bond, pursuant to 8 U.S.C. § 1225(b).

9. I filed a Request for Redetermination of Custody on behalf of JMC pursuant to 8 C.F.R. § 1236, seeking a determination of bond for JMC. JMC's case was heard by Immigration Judge Corrin August 13, 2025.

SF Declaration 1

10. Based on my experience representing clients like JMC, people similarly situated to JMC, with supportive factors like JMC's, were routinely granted bond before July 8, 2025 by IJs, or at least given a hearing on bond.

11. In particular, JMC has no disqualifying criminal convictions under 8 U.S.C. § 1226(c). Instead, JMC had resided in the United States since 2005, had steady employment for the past 11 years where he was tasked with opening and closing the business, had an offer of employment upon release, had stable housing for the past 11 years and a home to which to return, family in the United States, and a colorable claim for asylum/withholding of removal and/or CAT, which would have previously made JMC an excellent candidate for release on bond.

12. Immigration Judge Corrin ruled that the Immigration Court did not have jurisdiction to hear bond determinations because JMC was an "applicant for admission" detained under 8 U.S.C. § 1225(b).

13. Immigration Judge Corrin issued a written order in JMC's case, which is attached to this Declaration as Exhibit 1. Exhibit 1 is a true and correct copy of the order denying JMC's request for bond.

**Change in Immigration Court Practice**

14. DHS and the Immigration Judges' position is a new interpretation of 8 U.S.C. § 1225(b), as DHS previously would not have applied this provision to people like JMC who has resided in the U.S. for years, and was not apprehended at either the border or a point of entry.

15. As a result of DHS and ICE's new policy and practice, JMC has now been detained at the Aurora ICE Processing Center for two months and nine days as of 8/19/2025. This has been a hardship on JMC because he has diabetes and has been denied proper medical care resulting in debilitating symptoms such as lack of feeling in extremities, lightheadedness, etc,, and isolation as he resided in Boston for the past 20 years but was held across the country.

16. I am aware that other Immigration Judges hearing bond cases at the Aurora ICE Processing Center have also adopted this new interpretation to deny bond to anyone who entered the U.S. without inspection at any time in the past, even if that was 10, 15, or 20-plus years ago.

SF Declaration 2

17. This is a dramatic change in the interpretation of INA sections 8 U.S.C. §§ 1225 & 1226, as compared to my prior experience as an immigration attorney practicing at the Aurora ICE Processing Center.

18. Previously, it was standard practice among the Immigration Judges to recognize that people who entered without inspection but were not detained at the border or a port of entry were eligible for bond, unless their criminal history under § 1226(c) rendered them ineligible for bond in any amount.

19. I believe that the new interpretation of 8 U.S.C. §§ 1225 and 1226 being relied upon by the Immigration Judges at the Aurora ICE Processing Center are contrary to the law.

20. JMC did not appeal this denial to the BIA because he was so ill, due to the lack of medical care while detained, that he did not feel it was medically safe for him to remain in detention while appealing the denial of his bond.

21. In my experience, it is not uncommon for the BIA to take six months to resolve bond denial appeals. During this time, JMC and people like him remain detained at the Aurora ICE Processing Center.

**People Detained at the Aurora ICE Processing Center Face Irreparable Harm**

22. This change is resulting in immediate, irreparable harm to my client JMC, as well as many other people detained at the Aurora ICE Processing Center. This change is a particular irreparable hardship on people who are proceeding *pro se* in their immigration cases, as they do not have a lawyer who can argue that this policy and practice is contrary to the law.

23. JMC lost his entire life in the United States when he was denied bond. Because he has been denied medical care for his documented diabetes, despite having a colorable case for asylum/withholding/CAT based on race, he will return home.  Instead of fighting against removal he is electing to return home – losing his home, job and community of 20 years.

24. Likewise, it is not uncommon for people who remain detained to lose their jobs and housing as a consequence of their continued detention. Typically, their families will suffer as well by being deprived of income their detained family member was earning, as well as the care and support that their detained family member was providing before their detention.

25. In my experience, people who are granted bond after detention typically attend all subsequent immigration court appearances and remain engaged in their case. It is the vast minority of detainees who are granted bond and then do not continue to appear in their immigration cases. This is especially true when the detainee has counsel, like JMC does.

SF Declaration 3

In fact, I am unaware of any of my previous clients released on bond who then failed to appear for their removal proceedings going forward.

I declare under penalty of perjury under the law of the United States and 28 U.S.C. § 1746 that the foregoing is true and correct.

_____

Sarah Faville, CO Atty Reg # 34295

Date: 9/3/2025



**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**AURORA IMMIGRATION COURT**

Respondent Name:

M█████████-C█████, J███████

To:

Gleason, Conor Timothy
PO BOX 40394
Denver, CO 80204

A-Number:

████████████

Riders:
In Custody Redetermination Proceedings

Date:
08/13/2025

## ORDER OF THE IMMIGRATION JUDGE

The respondent requested a custody redetermination pursuant to 8 C.F.R. § 1236. After full consideration of the evidence presented, the respondent's request for a change in custody status is hereby ordered:

☑ Denied, because

The issue before the Court is whether the immigration judge has jurisdiction to review the Department of Homeland Security's (DHS's) bond determination for an individual who is an "applicant for admission" under section 235 of the Immigration and Nationality Act (INA or the Act). For the reasons explained below, the Court finds that the Respondent is subject to mandatory detention under section 235 of the INA. Therefore, the Court does not have jurisdiction to redetermine the Respondent's bond under section 236 of the INA.

The Respondent argues that he is not an applicant for admission as contemplated in INA sec. 235(b) because he has been physically present in the interior of the United States for years, and he argues that the plain reading of the statute means an individual arriving, not one who has arrived and been present. The Respondent further argues that the United States Attorney General has recently certified cases where an individual who entered without inspection had been granted a bond, and if the Attorney General believed there was no jurisdiction the case would not have been certified. Matter of Akhmedov, 29 I&N Dec. 166 (BIA 2025).

The Court finds the Respondent's arguments unpersuasive. The sole discussion in the above cited case is whether the Respondent was a flight risk, and the review on appeal had no jurisdictional argument included or concerned. The Court finds that this case does not apply in the current matter, as jurisdiction was not at issue or discussed in the case at all. Id.

The immigration detention framework is multifaceted, but a plain reading of the statutes undergirding the detention of noncitizens, in addition to guidance from the

Supreme Court, the Attorney General, the Board of Immigration Appeals, and the
federal regulations, make it clear that Congress did not give immigration judges
jurisdiction to redetermine bond for individuals who are "applicants for admission"
under section 235 of the INA.  Compare INA § 235, with INA § 236 (providing for
the detention of noncitizens who have been admitted and have subsequently become
removable); see Matter of M S , 27 I&N Dec. 509, 516 (A.G. 2019) ("[S]ection 235
(under which detention is mandatory) and section 236(a) (under which detention is
permissive) can be reconciled only if they apply to different classes of aliens.").

The statutory definition for an "applicant for admission" is a noncitizen present in the
United States who has not been admitted or who arrives in the United States,
"whether or not at a designated port of arrival." INA § 235(a)(1); Matter of Lemus, 25
I&N Dec. 734, 743 (BIA 2012) (explaining that applicants for admission include
those seeking permission to enter and those who are present in the United States
without having requested or received permission to enter). The INA mandates
detention for applicants for admission described under section 235(b). Section 235(b)
(1) covers applicants for admission who are "arriving aliens" and "certain other
aliens" who are initially placed in expedited removal and then referred to full removal
proceedings after establishing a credible fear of persecution. INA § 235(b)(1)(B)(ii)
("[T]he alien shall be detained for further consideration of the application for
asylum.") (emphasis added). Section 235(b)(2) covers applicants for admission who
are not subject to expedited removal and who are placed directly into full removal
proceedings. INA § 235(b)(2)(A) ("[I]f the examining immigration officer determines
that an alien seeking admission is not clearly and beyond a doubt entitled to be
admitted, the alien shall be detained for a proceeding under section 240.") (emphasis
added).

Notably, the Board of Immigration Appeals (BIA) recognizes the DHS's discretion to
subject an eligible applicant for admission to the expedited removal process in INA
section 235(b)(1), or place them directly into full section 240 removal proceedings.
Matter of E-R-M- & L R M-, 25 I&N Dec. 520 (BIA 2011). However, under the INA
and the supporting case law and regulations, either way the noncitizen is an applicant
for admission and therefore subject to the mandatory detention requirements of
section 235(b) (1) or (2).

The case law regarding noncitizens subject to mandatory detention under section
235(b)(1) of the INA has shifted over the years. See e.g., Matter of X-K-, 23 I&N
Dec. 731 (BIA 2005). In 2019, the Attorney General clearly directed in a precedential
decision that all noncitizens transferred from expedited removal proceedings to full
removal proceedings after establishing a credible fear of persecution or torture are
ineligible for release on bond, in accord with section 235(b)(1). Matter of M S , 27
I&N Dec. at 518 (overruling Matter of X-K-, 23 I&N Dec. 731 (BIA 2005)). In other
words, immigration judges do not have jurisdiction to redetermine bond for

individuals who are placed in removal proceedings following the initiation of the expedited removal process.

INA section 235(b) does not end after providing for the expedited removal and credible fear interview procedures in (b)(1). As discussed above, (b)(2) covers applicants for admission to whom (b)(1) is not applied. INA § 235(b)(2)(B)(ii). Section 235(b)(2) clearly commands that anyone who meets the definition of an applicant for admission and is not subject to (b)(1) (or another 235(b)(2)(B) exception), "shall be detained for a proceeding under section 240." INA § 235(b)(2) (A). The Board of Immigration Appeals clarified in Matter of Q. Li that "for aliens arriving in and seeking admission into the United States who are placed directly in full removal proceedings, section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), mandates detention 'until removal proceedings have concluded.'" 29 I&N Dec. 66, 68 (BIA 2025) (quoting Jennings v. Rodriguez, 583 U.S. 281, 299 (2018).

In Jennings v. Rodriguez, the Supreme Court stated that "applicants for admission fall into one of two categories, those covered by § [235](b)(1) and those covered by § [235](b)(2)" 583 U.S. at 287. The Supreme Court further stated that, "[r]ead most naturally, §§ [235](b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded. Section [235](b)(1) aliens are detained for 'further consideration of the application for asylum,' and § [235](b)(2) aliens are in turn detained for '[removal] proceeding[s].' Once those proceedings end, detention under § [235](b) must end as well. Until that point, however, nothing in the statutory text imposes any limit on the length of detention. And neither § [235](b)(1) nor § [235](b)(2) says anything whatsoever about bond hearings." Id. at 297.

Section 235.3 of Title 8 of the Code of Federal Regulations further explains mandatory detention under section 235(b) of the INA. Subsection (b) of the regulation addresses noncitizens who may be subject to expedited removal and therefore detention under INA section 235(b)(1). 8 C.F.R. § 235.3(b). This same regulation also states that noncitizens not subject to expedited removal "who [were] not inspected and admitted or paroled into the United States but who establish[] that [they] [have] been continuously physically present in the United states for the 2-year period immediately prior to the date of determination of inadmissibility shall be detained in accordance with section 235(b)(2) of the Act for a proceeding under section 240 of the Act." 8 C.F.R. § 235.3(b)(1)(ii). The regulation also covers arriving aliens placed in section 240 proceedings and states they "shall be detained in accordance with section 235(b) of the Act." 8 C.F.R. § 235.3(c)(1). Clearly, the regulations contemplate the INA's instruction that all classes of applicants for admission are subject to mandatory detention under either section 235(b) (1) or (2).

Additionally, the regulations further contemplate detention under section 235(b) when discussing under what circumstances DHS will refer a case to an immigration judge through a Notice to Appear. 8 C.F.R. 235.6(a)(1) (2020). See Pangea Legal Servs. v.

U.S. Dep't of Homeland Sec., 512 F.Supp.3d 966 (N.D. Cal. Jan. 8, 2021) (enjoining the rule titled, Procedures for Asylum and Withholding of Removal; Credible Fear and Reasonable Fear Review, amending subsection (a)(1)(ii) of the regulation). The regulation provides that an immigration or asylum officer will issue a Notice to Appear: (i) "in accordance with the provisions of section 235(b)(2)(A) of the Act," if the examining immigration officer "detains an alien for a proceeding before an immigration judge under section 240;" and (ii) when a noncitizen in expedited removal proceedings under section 235(b)(1) is determined to have established as credible fear of persecution or torture. Id.

Notably, once an alien is detained under section 235(b), the post-hoc issuance of a warrant by DHS does not convert the statutory authority governing their detention from section 235(b) to 236(a). Matter of Q. Li, 29 I&N Dec. at 69 n.4.

In sum, the Respondent is an applicant for admission as defined under section 235(a) of the INA, and a careful review of the INA, caselaw, and regulations reveals that applicants for admission shall be detained pursuant to section 235(b). Because the law requires the detention of all applicants for admission, this Court does not have jurisdiction to review the Respondent's bond determination made by DHS. Nothing in this ruling impacts the DHS's authority to release the Respondent from detention pursuant to parole under section 212(d)(5) of the INA. Jennings, 583 US at 288 ("Regardless of which of those two sections [under INA § 235(b)] authorizes [the noncitizen's] detention, applicants for admission may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'") (citing INA § 212(d)(5)(A); Matter of Cabrera-Fernandez, 28 I&N Dec. 747, 749 (BIA 2023) ("[C]onditional parole under section 236(a)(2)(B) of the INA is legally distinct from release on humanitarian parole under section 212(d)(5)(A)").

☐   Granted. It is ordered that Respondent be:
    ☐   released from custody on his own recognizance.
    ☐   released from custody under bond of $
    ☐   other:

☐   Other:

Immigration Judge: Corrin, Melanie 08/13/2025

Appeal:   Department of Homeland Security: ☑ waived   ☐ reserved
          Respondent:                      ☐ waived   ☑ reserved

Appeal Due: 09/12/2025

## Certificate of Service

This document was served:

Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service | [ U ] Address Unavailable

To: [ ] Alien | [ ] Alien c/o custodial officer | [ E ] Alien atty/rep. | [ E ] DHS

Respondent Name : M⬛⬛⬛-C⬛⬛⬛, J⬛⬛⬛ | A-Number : ⬛⬛⬛

Riders:

Date: 08/13/2025 By: Corrin, Melanie, Immigration Judge

S. Meade Decl. (ECF No. 15-8)

## Declaration of Shawn D. Meade, Esq. (CO #39751)

**Experience and Qualifications**

1. I am a practicing attorney in Denver Colorado. I have practiced in the Denver and Aurora Immigration Courts in differing roles over the last 20 years.

2. I have personally represented hundreds of clients in removal proceedings, many of those cases began after ICE detention with the first request being a request for custody redetermination (Bond).

3. I am the founder and managing partner of MyRights Immigration Law Firm. In addition to the cases I have personally handled, I have supervised other immigration attorneys with their cases in the Denver and Aurora Immigration Courts.

4. I have represented respondents who have been denied bond, usually on discretion. Almost without fail those respondents choose to abandon any potential application for relief.

5. Additionally, I have witnessed the great majority of respondents detained in GEO are forced to proceed without an attorney.

**Change in Immigration Court Practice**

6. I have seen the dramatic change in practice related to issuing bond in immigration proceedings. Previously respondents detained would be given a custody redetermination hearing unless they had convictions which made them ineligible for bond.

7. Not once in the previous 20 years I had been practicing in the Aurora court had attorneys for the Department of Homeland Security argued or the Immigration Judges found a respondent ineligible for bond solely based on having entered the United State unlawfully.

8. Over the last few months, myself and other attorneys at our firm have witnessed multiple people being denied bond due solely to having entered the United States unlawfully. This includes respondents who have been in the United States for decades, who have no criminal or immigration history, and who are eligible to apply for relief in immigration court.

**Respondents Denied Bond face Irreparable Harm**

9. This sudden change in position by the Department of Homeland Security, and the Immigration Judges' willingness to follow the argument despite any binding precedent and 30 years of history has led to irreparable harm to my clients.

10. Many people who would otherwise be eligible for relief with the immigration court chose not to proceed because they are forced to remain detained during proceedings.

11. Since February 2025, MyRights Immigration Law Firm has Represented numerous respondents who have been denied bond based solely on having entered the United States unlawfully.

12. Respondent S. V. E. had lived in the United States since 1996. He was placed in removal proceedings after an arrest for driving with expired plates. After bond was denied, he chose to waive appeal, withdraw any potential applications for relief, and took voluntary departure.

13. Respondent B. R. G. entered the United States when he was one year old. Although he previously had paid bond, and had his case administratively closed since 2015, he was placed back in removal proceedings. He was now denied bond based on his entry and is now attempting relief while detained.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

9/3/2025

Shawn D. Meade, Esq.
MyRights Immigration Law Firm
8205 E. Colfax Ave.
Denver CO 80220

T. Guevara Decl. (ECF No. 15-9)

## Declaration of Tiago J. Guevara, Esq. (#50052)

**Experience and Qualifications**

1. I am an attorney practicing in Longmont, Colorado.  I work at McKinley Law Group LLC.

2. I specialize in immigration law and regularly represent people who are detained by ICE at the Aurora ICE Processing Center, operated by the GEO Group, in Aurora, Colorado. Among other services, I represent detained people in bond proceedings. I have practiced this type of law and represented these types of clients for nine years.

3. I regularly speak with other attorneys who practice immigration law, and in particular with other attorneys who represent people who are detained at the Aurora ICE Processing Center.  As part of my practice, I also regularly observe portions of other proceedings while waiting to represent my clients.

4. From my extensive practice and experience working with people confined at the Aurora ICE Processing Center, I know that many people who are detained at the Aurora ICE Processing Center are forced to proceed *pro se* in immigration detention proceedings because they cannot hire a lawyer.

5. As part of my practice, I regularly speak to people detained at the Aurora ICE Processing Center, and I am aware of the harms that are caused to them by their detention.

**Representation of K.O.A & J.S.A**

6. I represent K.O.A who has been detained at the Aurora ICE Processing Center since June 12, 2025; and J.S.A who has been detained at the Aurora ICE Processing Center since July 15, 2025.

7. The Department of Homeland Security (DHS) refused to release K.O.A and J.S.A on bond.

8. DHS alleges that K.O.A and J.S.A entered the United States "without inspection," and is thus subject to mandatory detention, without the option of being granted bond, pursuant to 8 U.S.C. § 1225(b).

9. I filed a Request for Redetermination of Custody on behalf of K.O.A and J.S.A pursuant to 8 C.F.R. § 1236, seeking a determination of bond for K.O.A and J.S.A. K.O.A's case was heard by Immigration Judge Carbone on August 1, 2025.  J.S.A's case was heard by Immigration Judge Corrin on August 18, 2025.

10. Based on my experience representing clients like K.O.A and J.S.A's, people similarly situated to K.O.A and J.S.A, with supportive factors like K.O.A and J.S.A, were routinely granted bond before July 8, 2025 by IJs, or at least given a hearing on bond.

11. In particular, neither K.O.A nor J.S.A have any disqualifying criminal convictions under 8 U.S.C. § 1226(c). Instead, J.S.A has been in the United States for 22 years, has a 10-year-old U.S. citizen child, a stable work history, a sponsor, and his most serious criminal history is for driving without a license which would have previously made J.S.A an excellent candidate for release on bond. K.O.A has no criminal convictions (but a pending charge for driving under the influence), has been in the United States since he was five years old (18 years), and provided extensive proof of his ties to the community. K.O.A. would also have been a good candidate for bond before the recent policy shift.

12. Immigration Judge Carbone ruled that the Immigration Court did not have jurisdiction to hear bond determinations because K.O.A was an "applicant for admission" detained under 8 U.S.C. § 1225(b). J.S.A was denied a bond hearing by Immigration Judge Corrin for the same reason.

13. Immigration Judge Carbone issued a written order in K.O.A's case, which is attached to this Declaration as Exhibit 1. Exhibit 1 is a true and correct copy of the order denying K.O.A's request for bond. Immigration Judge Corrin issued an oral order on August 18, 2025. Undersigned counsel avers that the substance of the order is materially the same as the order from Judge Carbone, finding that the Court lacked jurisdiction to consider J.S.A's custody status because it lacked jurisdiction under 8 U.S.C. § 1225(b).

**Change in Immigration Court Practice**

14. DHS and the Immigration Judges' position is a new interpretation of 8 U.S.C. § 1225(b), as DHS previously would not have applied this provision to people like K.O.A or J.S.A who have resided in the U.S. for years, and were not apprehended at either the border or a point of entry.

15. As a result of DHS and ICE's new policy and practice, K.O.A and J.S.A have now been detained at the Aurora ICE Processing Center for 67 days and 34 days respectively as of August 18, 2025. This has been a hardship on K.O.A because in addition to being deprived of his liberty, he is unable to maintain gainful employment, advance his education, be with his family, or resolve his ongoing DUI case. J.S.A's detention has deprived him of his liberty, his ability to maintain contact with his 10-year-old U.S. citizen child, his ability to

fight for greater custody of his child, it threatens his ability to continue paying child support, and has had a significant negative psychological impact on his son.

16. I have observed and am aware through conversations with other practitioners that other Immigration Judges hearing bond cases at the Aurora ICE Processing Center have also adopted this new interpretation to deny bond to anyone who entered the U.S. without inspection at any time in the past, even if that was 10, 15, or 20-plus years ago.

17. This is a dramatic change in the interpretation of INA sections 8 U.S.C. §§ 1225 & 1226, as compared to my prior experience as an immigration attorney practicing at the Aurora ICE Processing Center.

18. Previously, it was standard practice among the Immigration Judges to recognize that people who entered without inspection but were not detained at the border or a port of entry were eligible for bond, unless their criminal history under § 1226(c) rendered them ineligible for bond in any amount.

19. I believe that the new interpretation of 8 U.S.C. §§ 1225 and 1226 being relied upon by the Immigration Judges at the Aurora ICE Processing Center are contrary to the law.

20. Neither K.O.A. nor J.S.A have decided to appeal their negative bond determinations. Although both of them are convinced of the injustice of the rulings, both lack the financial means and the ability to remain detained for several months awaiting a ruling. Furthermore, in the case of J.S.A, he was informed that his removal case is on an accelerated timetable pursuant to an across-the-board policy to set individual merits hearings in detained cases no later than two weeks from the last master calendar hearing. As a practical matter, this means that any detainee seeking an appeal of their bond case is likely to have their removal case fully resolved before having a meaningful opportunity to challenge an adverse bond ruling.

21. In my experience, it is not uncommon for the BIA to take to resolve bond denial appeals. During this time, K.O.A, J.S.A and people like them remain detained at the Aurora ICE Processing Center.

**People Detained at the Aurora ICE Processing Center Face Irreparable Harm**

22. This change is resulting in immediate, irreparable harm to my client K.O.A and J.S.A, as well as many other people detained at the Aurora ICE Processing Center. This change is a particular irreparable hardship on people who are proceeding *pro se* in their immigration

cases, as they do not have a lawyer who can argue that this policy and practice is contrary
to the law.

23. This has been a hardship on K.O.A because in addition to being deprived of his liberty, he
is unable to maintain gainful employment, advance his education, be with his family, or
resolve his ongoing DUI case.  J.S.A's detention has deprived him of his liberty, his ability
to maintain contact with his 10-year-old U.S. citizen child, his ability to fight for greater
custody of his child, it threatens his ability to continue paying child support, and has had a
significant negative psychological impact on his son.  K.O.A. and J.S.A have both also
suffered and continue to suffer profound moral and psychological injuries from the
continued deprivation of their liberty.

24. Likewise, it is not uncommon for people who remain detained to lose their jobs and housing
as a consequence of their continued detention. Typically, their families will suffer as well
by being deprived of income their detained family member was earning, as well as the care
and support that their detained family member was providing before their detention.

25. In my experience, people who are granted bond after detention typically attend all
subsequent immigration court appearances and remain engaged in their case. It is the small
minority of detainees who are granted bond and then do not continue to appear in their
immigration cases.  This is especially true when the detainee has counsel, like K.O.A and
J.S.A. do.

I declare under penalty of perjury under the law of the United States and 28 U.S.C. § 1746 that the
foregoing is true and correct.


Tiago J. Guevara, Esq. (#50052)

McKinley Law Group LLC

829 Main St Ste 1

Longmont, CO 80501

Date: September 3, 2025



**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**AURORA IMMIGRATION COURT**

Respondent Name:

To:

    Guevara , Tiago Joseph
    829 Main St. Ste. 1
    Longmont, CO 80501

A-Number:

Riders:
In Custody Redetermination Proceedings

Date:
08/01/2025

## ORDER OF THE IMMIGRATION JUDGE

The respondent requested a custody redetermination pursuant to 8 C.F.R. § 1236. After full consideration of the evidence presented, the respondent's request for a change in custody status is hereby ordered:

☑  Denied, because
    The court lacks jurisdiction to redetermine the respondent's case because he is an
    applicant for admission under section 235(b)(2).

☐  Granted. It is ordered that Respondent be:
    ☐  released from custody on his own recognizance.
    ☐  released from custody under bond of $
    ☐  other:

☐  Other:

Immigration Judge: CARBONE, NINA 08/01/2025

Appeal:    Department of Homeland Security:  ☐  waived  ☐  reserved

           Respondent:  ☐  waived  ☐  reserved

Appeal Due:

## Certificate of Service

This document was served:

Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service | [ U ] Address Unavailable

To: [ ] Noncitizen | [ ] Noncitizen c/o custodial officer | [ E ] Noncitizen's atty/rep. | [ E ] DHS

Respondent Name : ███████████████████ | A-Number : ████████

Riders:

Date: 08/01/2025 By: DeHerrera, Deanna, Court Staff



**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**AURORA IMMIGRATION COURT**

Respondent Name:

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

To:

    Guevara , Tiago Joseph
    829 Main St. Ste. 1
    Longmont, CO 80501

A-Number:

▓▓▓▓▓▓▓▓

Riders:
In Custody Redetermination Proceedings

Date:
08/18/2025

## ORDER OF THE IMMIGRATION JUDGE

The respondent requested a custody redetermination pursuant to 8 C.F.R. § 1236. After full consideration of the evidence presented, the respondent's request for a change in custody status is hereby ordered:

☑  Denied, because
The issue before the Court is whether the immigration judge has jurisdiction to review the Department of Homeland Security's (DHS's) bond determination for an individual who is an "applicant for admission" under section 235 of the Immigration and Nationality Act (INA or the Act). For the reasons explained below, the Court finds that the Respondent is subject to mandatory detention under section 235 of the INA. Therefore, the Court does not have jurisdiction to redetermine the Respondent's bond under section 236 of the INA.

The Respondent argues that his long presence in the United States, coupled with recent case law establish that the Court has jurisdiction to hear his bond redetermination request. The Court finds that Matter of Akhmedov is not persuasive in this matter, as it was a case solely discussing whether an individual is a flight risk, and does not speak to the jurisdictional issue in this matter. Further, the Respondent's argument that Jennings is also not a jurisdictional case, while true, carries more weight in that it discusses that individuals who entered the United States without authorization are "applicants for admission", which therefore makes the respondent an applicant for admission and the Court is unable to hear his bond redetermination request.

The immigration detention framework is multifaceted, but a plain reading of the statutes undergirding the detention of noncitizens, in addition to guidance from the Supreme Court, the Attorney General, the Board of Immigration Appeals, and the federal regulations, make it clear that Congress did not give immigration judges jurisdiction to redetermine bond for individuals who are "applicants for admission" under section 235 of the INA. Compare INA § 235, with INA § 236 (providing for the

detention of noncitizens who have been admitted and have subsequently become removable); see Matter of M S , 27 I&N Dec. 509, 516 (A.G. 2019) ("[S]ection 235 (under which detention is mandatory) and section 236(a) (under which detention is permissive) can be reconciled only if they apply to different classes of aliens.").

In determining that applicants for admission are subject to mandatory detention under section 235(b) of the INA and not eligible for a custody determination by the Court under section 236, the Court acknowledges that section 236(c) discusses its applicability to certain aliens who are inadmissible under cross-referenced sections of the INA. See INA § 236(c)(1)(A), (D), (E)(i). However, that Congress determined certain actions and offenses should constitute both grounds for inadmissibility and mandatory detention of criminal aliens, and then efficiently defined such grounds for mandatory detention in section 236(c) of the INA by cross referencing inadmissibility grounds in section 212(a), does not compel a conclusion that 236 must necessarily apply to applicants for admission. See Matter of Kotliar 24 I&N Dec. 124 (BIA 2007) (holding that an alien need not be charged with the ground that provides the basis for mandatory detention under section 236(c)(1)). In other words, that a noncitizen could be found to have committed certain actions or offenses that qualify as grounds for inadmissibility does not affect their categorization as an "applicant for admission."

The statutory definition for an "applicant for admission" is a noncitizen present in the United States who has not been admitted or who arrives in the United States, "whether or not at a designated port of arrival." INA § 235(a)(1); Matter of Lemus, 25 I&N Dec. 734, 743 (BIA 2012) (explaining that applicants for admission include those seeking permission to enter and those who are present in the United States without having requested or received permission to enter). The INA mandates detention for applicants for admission described under section 235(b). Section 235(b) (1) covers applicants for admission who are "arriving aliens" and "certain other aliens" who are initially placed in expedited removal and then referred to full removal proceedings after establishing a credible fear of persecution. INA § 235(b)(1)(B)(ii) ("[T]he alien shall be detained for further consideration of the application for asylum.") (emphasis added). Section 235(b)(2) covers applicants for admission who are not subject to expedited removal and who are placed directly into full removal proceedings. INA § 235(b)(2)(A) ("[I]f the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 240.") (emphasis added).

Notably, the Board of Immigration Appeals (BIA) recognizes the DHS's discretion to subject an eligible applicant for admission to the expedited removal process in INA section 235(b)(1), or place them directly into full section 240 removal proceedings. Matter of E-R-M- & L R M-, 25 I&N Dec. 520 (BIA 2011). However, under the INA and the supporting case law and regulations, either way the noncitizen is an applicant

for admission and therefore subject to the mandatory detention requirements of
section 235(b) (1) or (2).

The case law regarding noncitizens subject to mandatory detention under section
235(b)(1) of the INA has shifted over the years. See e.g., Matter of X-K-, 23 I&N
Dec. 731 (BIA 2005). In 2019, the Attorney General clearly directed in a precedential
decision that all noncitizens transferred from expedited removal proceedings to full
removal proceedings after establishing a credible fear of persecution or torture are
ineligible for release on bond, in accord with section 235(b)(1). Matter of M S , 27
I&N Dec. at 518 (overruling Matter of X-K-, 23 I&N Dec. 731 (BIA 2005)). In other
words, immigration judges do not have jurisdiction to redetermine bond for
individuals who are placed in removal proceedings following the initiation of the
expedited removal process.

INA section 235(b) does not end after providing for the expedited removal and
credible fear interview procedures in (b)(1). As discussed above, (b)(2) covers
applicants for admission to whom (b)(1) is not applied. INA § 235(b)(2)(B)(ii).
Section 235(b)(2) clearly commands that anyone who meets the definition of an
applicant for admission and is not subject to (b)(1) (or another 235(b)(2)(B)
exception), "shall be detained for a proceeding under section 240." INA § 235(b)(2)
(A). The Board of Immigration Appeals clarified in Matter of Q. Li that "for aliens
arriving in and seeking admission into the United States who are placed directly in
full removal proceedings, section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A),
mandates detention 'until removal proceedings have concluded.'" 29 I&N Dec. 66, 68
(BIA 2025) (quoting Jennings v. Rodriguez, 583 U.S. 281, 299 (2018).

In Jennings v. Rodriguez, the Supreme Court stated that "applicants for admission fall
into one of two categories, those covered by § [235](b)(1) and those covered by §
[235](b)(2)" 583 U.S. at 287. The Supreme Court further stated that, "[r]ead most
naturally, §§ [235](b)(1) and (b)(2) thus mandate detention of applicants for
admission until certain proceedings have concluded. Section [235](b)(1) aliens are
detained for 'further consideration of the application for asylum,' and § [235](b)(2)
aliens are in turn detained for '[removal] proceeding[s].' Once those proceedings end,
detention under § [235](b) must end as well. Until that point, however, nothing in the
statutory text imposes any limit on the length of detention. And neither § [235](b)(1)
nor § [235](b)(2) says anything whatsoever about bond hearings." Id. at 297.

Section 235.3 of Title 8 of the Code of Federal Regulations further explains
mandatory detention under section 235(b) of the INA. Subsection (b) of the
regulation addresses noncitizens who may be subject to expedited removal and
therefore detention under INA section 235(b)(1). 8 C.F.R. § 235.3(b). This same
regulation also states that noncitizens not subject to expedited removal "who [were]
not inspected and admitted or paroled into the United States but who establish[] that
[they] [have] been continuously physically present in the United states for the 2-year

period immediately prior to the date of determination of inadmissibility shall be detained in accordance with section 235(b)(2) of the Act for a proceeding under section 240 of the Act." 8 C.F.R. § 235.3(b)(1)(ii). The regulation also covers arriving aliens placed in section 240 proceedings and states they "shall be detained in accordance with section 235(b) of the Act." 8 C.F.R. § 235.3(c)(1). Clearly, the regulations contemplate the INA's instruction that all classes of applicants for admission are subject to mandatory detention under either section 235(b) (1) or (2).

Additionally, the regulations further contemplate detention under section 235(b) when discussing under what circumstances DHS will refer a case to an immigration judge through a Notice to Appear. 8 C.F.R. 235.6(a)(1) (2020). See Pangea Legal Servs. v. U.S. Dep't of Homeland Sec., 512 F.Supp.3d 966 (N.D. Cal. Jan. 8, 2021) (enjoining the rule titled, Procedures for Asylum and Withholding of Removal; Credible Fear and Reasonable Fear Review, amending subsection (a)(1)(ii) of the regulation). The regulation provides that an immigration or asylum officer will issue a Notice to Appear: (i) "in accordance with the provisions of section 235(b)(2)(A) of the Act," if the examining immigration officer "detains an alien for a proceeding before an immigration judge under section 240;" and (ii) when a noncitizen in expedited removal proceedings under section 235(b)(1) is determined to have established as credible fear of persecution or torture. Id.

Notably, once an alien is detained under section 235(b), the post-hoc issuance of a warrant by DHS does not convert the statutory authority governing their detention from section 235(b) to 236(a). Matter of Q. Li, 29 I&N Dec. at 69 n.4.

In sum, the Respondent is an applicant for admission as defined under section 235(a) of the INA, and a careful review of the INA, caselaw, and regulations reveals that applicants for admission shall be detained pursuant to section 235(b). Because the law requires the detention of all applicants for admission, this Court does not have jurisdiction to review the Respondent's bond determination made by DHS. Nothing in this ruling impacts the DHS's authority to release the Respondent from detention pursuant to parole under section 212(d)(5) of the INA. Jennings, 583 US at 288 ("Regardless of which of those two sections [under INA § 235(b)] authorizes [the noncitizen's] detention, applicants for admission may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'") (citing INA § 212(d)(5)(A); Matter of Cabrera-Fernandez, 28 I&N Dec. 747, 749 (BIA 2023) ("[C]onditional parole under section 236(a)(2)(B) of the INA is legally distinct from release on humanitarian parole under section 212(d)(5)(A)").

☐   Granted. It is ordered that Respondent be:
   ☐   released from custody on his own recognizance.
   ☐   released from custody under bond of $

☐   other:


☐   Other:


Immigration Judge: Corrin, Melanie 08/18/2025

Appeal:   Department of Homeland Security: ☑ waived  ☐ reserved
          Respondent:                      ☐ waived  ☑ reserved
Appeal Due: 09/17/2025


## Certificate of Service

This document was served:

Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service | [ U ] Address Unavailable

To: [ ] Alien | [ ] Alien c/o custodial officer | [ E ] Alien atty/rep. | [ E ] DHS

Respondent Name :                          | A-Number :

Riders:

Date: 08/18/2025 By: Corrin, Melanie, Immigration Judge

Prof. Hausman Supplemental Decl.

**Supplemental Declaration of David Hausman**

I, David Hausman,[1] hereby declare:

I make this declaration based on my own personal knowledge. If called, I could and would competently testify hereto:

1.     I am an assistant professor of law at UC Berkeley and Faculty Director of the Deportation Data Project. I previously submitted a declaration in support of Plaintiff's Motion to Certify Class. *See* Dkt. 15-3. My qualifications and work experience are set forth therein. *See id.* ¶¶ 1-2.

2.     For my calculations in this supplemental declaration, I used the CASE dataset posted by the Executive Office for Immigration Review ("EOIR") in its FOIA Library in early September 2025. I am familiar with the spreadsheets and the data contained therein.

3.     Counsel for Plaintiff asked me to summarize the data in the CASE dataset for cases where a noncitizen received a bond redetermination hearing in the Aurora Immigration Court after the Department of Homeland Security ("DHS") alleged that the noncitizen violated the Immigration and Nationality Act ("INA") § 212(a)(6)(a)(i), 8 U.S.C. § 1182(a)(6)(a)(i) (entry without inspection).

4.     To obtain this information, I counted the number of times where the last bond decision in a removal proceeding (called a "case" in the database) included an INA § 212(a)(6)(a)(i) charge and that bond decision stated "no jurisdiction," which indicates that the Immigration Judge ("IJ") determined that the noncitizen was statutorily ineligible for bond.

---

[1] I practiced as an attorney at the ACLU Immigrants' Rights Project in New York from 2016 to 2019 and worked as a volunteer briefly at the project in early 2025.

1

5.    At the request of Plaintiff's counsel, I looked at bond decisions for two time periods: from May 1, 2025 to July 8, 2025 and from July 9, 2025 to August 29, 2025—the last recorded decision date in the data.

6.    These two time periods compare bond decisions that were made before and after U.S. Immigration and Customs Enforcement ("ICE") issued its Interim Guidance Regarding Detention Authority for Applications for Admission (July 8, 2025), Dkt. 15-1. I understand from Plaintiffs' counsel that this guidance, which ICE adopted in coordination with the Department of Justice, provides that all noncitizens who enter the country without inspection are subject to mandatory detention under 8 U.S.C. § 1225(b)(2), and thus ineligible for release on bond under 8 U.S.C. § 1226(a). *See* Dkt. 15-1. I also understand from Plaintiffs' counsel that, pursuant to this guidance, DHS began to oppose bond in all covered cases on the grounds that the immigration court lacked jurisdiction to conduct a bond hearing.

7.    From May 1, 2025 to July 8, 2025, the Aurora Immigration Court made 299 bond decisions. Of these, IJs found "no jurisdiction"—meaning the IJ found the person statutorily ineligible for bond—in 22 cases, or 7.36% of bond decisions.

8.    From July 9, 2025 to August 29, 2025, the Aurora Immigration Court made 211 bond decisions. Of these, IJs found "no jurisdiction" in 71 cases, or 33.65% of bond decisions.

9.    This marked increase in the number and percentage of "no jurisdiction" determinations by the Aurora Immigration Court is consistent with the shift in detention policy enacted by the July 9 Interim Guidance.


I declare under penalty of perjury under the laws of the United States and 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on November 7, 2025 in Berkeley, California.

DAVID HAUSMAN
Berkeley, California

3

N. Mendoza Gutierrez Decl. (ECF No. 14-7 & 15-2)

Pursuant to 28 U.S.C. § 1746, I, Nestor Esai Mendoza Gutierrez, declare under penalty of perjury that the following is true and correct to the best of my knowledge and belief:

1. I am a 49-year-old man born in El Salvador. I have resided continuously in Colorado for the past 26 years.

2. I am the proud father of two (2) United States citizen children, who are currently 18 (my son, J.M.) and 16 (my daughter, N.M.) years old. I share parenting responsibilities with my wife, G.E.A.G. We all live together as a family.

3. I live with my wife and our two children in Broomfield, Colorado.

4. I work in the construction industry and own my own small drywall business along with a family member. I have operated our small business for approximately six years. Before that, I worked for a few different construction companies doing drywall work. I take great pride in the quality of my work and the reputation I've built as a dependable employee and a family-man with a strong work ethic. Indeed, some of my former employers will now hire my small business as a subcontractor because they are familiar with the high quality of my work.

5. I am the provider for my family.

6. I pay all appropriate and necessary taxes, including Social Security taxes, even though I have never received any Social Security benefits myself.

7. I am a founding member of my church and attend services every Sunday. I occasionally give the Sunday sermon, and I sing in the choir every week as the lead vocalist. My church community is close-knit and deeply important to me and my family. It is a goal of mine to impart good morals onto each of my children.

8. My wife and I rent an apartment. We have lived in this particular apartment since 2024.

9. My son, J.M., is the victim of sexual abuse. In 2017, my wife and I left J.M. in the care of a family friend, who we used to be close to, when J.M. was just 10 years old. J.M. told me what our former friend did to him, and we reported the abuse to the police. We have cooperated with the police in this case. It is my understanding that the police are currently looking for the man who abused my son.

10. I applied for a U-Visa in 2024 as a parent of a minor child who is a victim of crime. I understand that my U-Visa application is still pending, and likely will remain pending for several more years due to a large backlog in processing U-Visa applications.

11. I have no criminal convictions other than a driving under the influence charge from almost 23 years ago, and some traffic tickets. There was no accident and no one was

1

injured. I took responsibility for what I had done, and plead guilty. I received one year of probation, and had to complete some classes, including an alcohol awareness class. I successfully completed my probation. I also have completely stopped drinking because of this incident.

12. On May 23, 2025, I was falsely accused of indecent exposure. One of my neighbors alleged that I exposed myself at the apartment complex's pool while I was there with my wife and children. This allegation was completely false – I would never do something like that, especially after what happened to my son. It is my understanding that this charge was dismissed "in the interest of justice" by the prosecutor because there was video evidence that proved my innocence.

13. Because of the false charge, I was arrested by the Broomfield Police Department, and then taken into custody by ICE. ICE took me to the Denver Contract Detention Facility in Aurora, Colorado ("Aurora Facility") on May 25, 2025, where I have been imprisoned ever since.

14. ICE placed me in removal proceedings, and charged me with being "present in the United States without being admitted or paroled."

15. I contacted my immigration lawyer, Alyssa Reed, who had filed the U-Visa petition for me last year. On June 12, 2025, Ms. Reed requested a bond hearing before an immigration judge for me. Ms. Reed gave the immigration judge evidence of my stable address and employment, my ties to the community, and my criminal record.

16. After the bond hearing, the immigration judge denied me bond.

17. While ICE has detained me, I have spoken with many other people who asked for bond but were denied by the immigration judges.

18. Being imprisoned has been very hard on me and my family, and particularly on my two children. I was the main financial provider in our home and supported my two children and my wife.

19. I want to be a named plaintiff in this case. I understand that if the Court grants the motion for class certification, I would represent a large number of people who have entered the United States without inspection and, for that reason, (a) ICE is not considering them for bond, and (b) the immigration judge is not considering them for bond by denying a bond hearing.

20. I understand that this class action is only seeking declaratory relief, and not money damages. I understand that I would not receive any money for participating in this case, but that my lawyers might receive attorneys' fees from the defendants if they win.

21. I understand that, as a class representative, I represent the interests of all class members in this lawsuit and that it is my responsibility to represent the interests of each class as a whole and not just my own personal interests. I am committed to being an adequate class representative because I understand how important these issues are not just for me, but for many other people who ICE is detaining in Colorado.

22. I am not aware of any reason I could not be an adequate class representative. I am not aware of any conflict of interest between myself and other people like me who are being detained by ICE without bond.

23. I understand that my duty to be a class representative continues until the Court decides this case is no longer a class action, or the case is over.

24. I understand and accept that any resolution of the lawsuit, such as by settlement or dismissal, is subject to the Court's approval and must be in the interests of the class as a whole.

25. I understand that, by agreeing to become a class representative, I have a duty to take steps to help move the case forward, which I will do with my attorneys. I know that I must attend court if necessary; provide information to my attorneys that they feel is necessary for the case; give them documents I have if it is required; testify at a deposition or trial if necessary; and provide my attorneys with my contact information and current whereabouts because it may be necessary for them to contact me on short notice.

26. I understand that I am volunteering to represent many other people who ICE is detaining with similar claims. I believe it is important that people in my situation be considered for bond and to receive a fair bond hearing. I will work hard to make sure the class's interests are fairly and adequately protected. I will devote all the time and effort necessary to this lawsuit to help the class members, in addition to myself.

27. This declaration was read back to me in Spanish, a language in which I am fluent.

I, Nestor Esai Mendoza Gutierrez, swear under penalty of perjury that the forgoing declaration is true and correct to the best of my knowledge and recollection.


Nestor Esai Mendoza Gutierrez

Executed this __2nd__ day of September, 2025 in Aurora, Colorado.

3

N. Mendoza Gutierrez Notice to Appear

(ECF No. 14-8)

## DEPARTMENT OF HOMELAND SECURITY
## NOTICE TO APPEAR

DOB: ▇▇▇▇▇▇

Event No: ▇▇▇▇▇▇

**In removal proceedings under section 240 of the Immigration and Nationality Act:**

Subject ID: ▇▇▇▇▇    FINS: ▇▇▇▇    File No: ▇▇▇▇▇

In the Matter of:

Respondent: NESTOR ESAI MENDOZA-GUTIERREZ    currently residing at:

See Continuation Page Made a Part Hereof    (303) 361-6612

(Number, street, city, state and ZIP code)    (Area code and phone number)

☐ You are an arriving alien.

☒ You are an alien present in the United States who has not been admitted or paroled.

☐ You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that you:

1. You are not a citizen or national of the United States;

2. You are a native of EL SALVADOR and a citizen of EL SALVADOR;

3. You entered the United States at or near Unknown, on or about unknown date;

4. You were not then admitted or paroled after inspection by an Immigration Officer
OR at that time you arrived at a time or place other than as designated by the
Attorney General.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following
provision(s) of law:

212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended, in that you are
an alien present in the United States without being admitted or paroled, or who
arrived in the United States at any time or place other than as designated by the
Attorney General.

☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of
persecution or torture.

☐ Section 235(b)(1) order was vacated pursuant to:    ☐ 8CFR 208.30    ☐ 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

3130 N OAKLAND ST,  AURORA, COLORADO 80010. AURORA IMMIGRATION COURT
(Complete Address of Immigration Court, including Room Number, if any)

on ___June 5, 2025___ at ___8:00 am___ to show why you should not be removed from the United States based on the
(Date)        (Time)

charge(s) set forth above.    B 6845 KURETICH - SDDO
(Signature and Title of Issuing Officer)

Date:    May 25, 2025    Frederick, CO
(City and State)

DHS Form I-862 (6/22)    App. 111    Page 1 of 4

## Notice to Respondent

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are in removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 1003.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents that you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing. At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear, including that you are inadmissible or removable. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge. You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of voluntary departure. You will be given a reasonable opportunity to make any such application to the immigration judge.

**One-Year Asylum Application Deadline:** If you believe you may be eligible for asylum, you must file a Form I-589, Application for Asylum and for Withholding of Removal. The Form I-589, Instructions, and information on where to file the Form can be found at **www.uscis.gov/i-589**. Failure to file the Form I-589 within one year of arrival may bar you from eligibility to apply for asylum pursuant to section 208(a)(2)(B) of the Immigration and Nationality Act.

**Failure to appear:** You are required to provide the Department of Homeland Security (DHS), in writing, with your full mailing address and telephone number. You must notify the Immigration Court and the DHS immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to your local DHS office, listed on the internet at **http://www.ice.gov/contact/ero**, as directed by the DHS and required by statute and regulation. Immigration regulations at 8 CFR 1241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United States and for ten years after your departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Immigration and Nationality Act.

U.S. Citizenship Claims: If you believe you are a United States citizen, please advise the DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903.

**Sensitive locations:** To the extent that an enforcement action leading to a removal proceeding was taken against Respondent at a location described in 8 U.S.C. § 1229(e)(1), such action complied with 8 U.S.C. § 1367.

## Request for Prompt Hearing

To expedite a determination in my case, I request this Notice to Appear be filed with the Executive Office for Immigration Review as soon as possible. I waive my right to a 10-day period prior to appearing before an immigration judge and request my hearing be scheduled.

Before: _____

_____      *(Signature of Respondent)*

Date: _____

_____
*(Signature and Title of Immigration Officer)*

### Certificate of Service

This Notice To Appear was served on the respondent by me on **May 25, 2025**_____, in the following manner and in compliance with section 239(a)(1) of the Act.

[X] in person    [ ] by certified mail, returned receipt # _____ requested    [ ] by regular mail

Attached is a credible fear worksheet.

[X] Attached is a list of organization and attorneys which provide free legal services.

The alien was provided oral notice in the **SPANISH**_____ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

*REFUSED TO SIGN*
_____
*(Signature of Respondent if Personally Served)*

M. D010105 HOLDER – Deportation
Officer
_____
*(Signature and Title of officer)*

**Privacy Act Statement**

**Authority:**
The Department of Homeland Security through U.S. Immigration and Customs Enforcement (ICE), U.S Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (USCIS) are authorized to collect the information requested on this form pursuant to Sections 103, 237, 239, 240, and 290 of the Immigration and Nationality Act (INA), as amended (8 U.S.C. 1103, 1229, 1229a, and 1360), and the regulations issued pursuant thereto.

**Purpose:**
You are being asked to sign and date this Notice to Appear (NTA) as an acknowledgement of personal receipt of this notice. This notice, when filed with the U.S. Department of Justice's (DOJ) Executive Office for Immigration Review (EOIR), initiates removal proceedings. The NTA contains information regarding the nature of the proceedings against you, the legal authority under which proceedings are conducted, the acts or conduct alleged against you to be in violation of law, the charges against you, and the statutory provisions alleged to have been violated. The NTA also includes information about the conduct of the removal hearing, your right to representation at no expense to the government, the requirement to inform EOIR of any change in address, the consequences for failing to appear, and that generally, if you wish to apply for asylum, you must do so within one year of your arrival in the United States. If you choose to sign and date the NTA, that information will be used to confirm that you received it, and for recordkeeping.

**Routine Uses:**
For United States Citizens, Lawful Permanent Residents, or individuals whose records are covered by the Judicial Redress Act of 2015 (5 U.S.C. § 552a note), your information may be disclosed in accordance with the Privacy Act of 1974, 5 U.S.C. § 552a(b), including pursuant to the routine uses published in the following DHS systems of records notices (SORN): DHS/USCIS/ICE/CBP-001 Alien File, Index, and National File Tracking System of Records, DHS/USCIS-007 Benefit Information System, DHS/ICE-011 Criminal Arrest Records and Immigration Enforcement Records (CARIER), and DHS/ICE-003 General Counsel Electronic Management System (GEMS), and DHS/CBP-023 Border Patrol Enforcement Records (BPER). These SORNs can be viewed at https://www.dhs.gov/system-records-notices-sorns. When disclosed to the DOJ's EOIR for immigration proceedings, this information that is maintained and used by DOJ is covered by the following DOJ SORN: EOIR-001, Records and Management Information System, or any updated or successor SORN, which can be viewed at https://www.justice.gov/opcl/doj-systems-records. Further, your information may be disclosed pursuant to routine uses described in the abovementioned DHS SORNs or DOJ EOIR SORN to federal, state, local, tribal, territorial, and foreign law enforcement agencies for enforcement, investigatory, litigation, or other similar purposes.

For all others, as appropriate under United States law and DHS policy, the information you provide may be shared internally within DHS, as well as with federal, state, local, tribal, territorial, and foreign law enforcement; other government agencies; and other parties for enforcement, investigatory, litigation, or other similar purposes.

**Disclosure:**
Providing your signature and the date of your signature is voluntary. There are no effects on you for not providing your signature and date; however, removal proceedings may continue notwithstanding the failure or refusal to provide this information.

DHS Form I-862 (6/22)

Page 3 of 4

**U.S. Department of Homeland Security**                   **Continuation Page for Form** I-862

| Alien's Name | File Number | Date |
|---|---|---|
| MENDOZA-GUTIERREZ, NESTOR ESAI | | 05/25/2025 |
| | Event No: | |

CURRENTLY RESIDING AT:
-----------------------------------------------------------------------------

Denver Contract Detention Facility 3130 N. Oakland St. Aurora, COLORADO 80010

| Signature | Title |
|---|---|
| B 6845 KURETICH | SDDO |

_____4_____ of ____4____ Pages

Form I-831 Continuation Page (Rev. 08/01/07)

**U.S. DEPARTMENT OF HOMELAND SECURITY**        **Warrant for Arrest of Alien**

File No. _____

Date: _____ 05/24/2025 _____

**To:**   **Any immigration officer authorized pursuant to sections 236 and 287 of the Immigration and Nationality Act and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations**

I have determined that there is probable cause to believe that _____ MENDOZA-GUTIERREZ, NESTOR _____
is removable from the United States. This determination is based upon:

☐ the execution of a charging document to initiate removal proceedings against the subject;

☒ the pendency of ongoing removal proceedings against the subject;

☐ the failure to establish admissibility subsequent to deferred inspection;

☒ biometric confirmation of the subject's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law; and/or

☐ statements made voluntarily by the subject to an immigration officer and/or other reliable evidence that affirmatively indicate the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law.

**YOU ARE COMMANDED** to arrest and take into custody for removal proceedings under the Immigration and Nationality Act, the above-named alien.

_____
(Signature of Authorized Immigration Officer)

B 6845 KURETICH - SDDO
_____
(Printed Name and Title of Authorized Immigration Officer)

| **Certificate of Service** |
|---|

I hereby certify that the Warrant for Arrest of Alien was served by me at ___ FREDERICK, CO ___
                                                                                          (Location)

on ___ MENDOZA-GUTIERREZ, NESTOR ___ on ___ 05/25/2025 ___ , and the contents of this
        (Name of Alien)                          (Date of Service)

notice were read to him or her in the ___ Spanish ___ language.
                                              (Language)

M. DO10105 HOLDER  Mr. Sh.Cc
_____
Name and Signature of Officer                    Name or Number of Interpreter (if applicable)

Form I-200 (Rev. 09/16)

App. 115

DEPARTMENT OF HOMELAND SECURITY
## NOTICE OF CUSTODY DETERMINATION

Alien's Name: MENDOZA-GUTIERREZ, NESTOR ESAI

A-File Number: ▮

Date: 05/25/2025

Event ID: ▮

Subject ID: ▮

Pursuant to the authority contained in section 236 of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations, I have determined that, pending a final administrative determination in your case, you will be:

☒ Detained by the Department of Homeland Security.

☐ Released (check all that apply):

☐ Under bond in the amount of $ _____

☐ On your own recognizance.

☐ Under other conditions. [Additional document(s) will be provided.]

KURETICH, B 6845
Name and Signature of Authorized Officer

05/25/2025 2:08 PM
Date and Time of Custody Determination

3770 Puritan Way Frederick, CO US 80516

SDDO
Title

Office Location/Address

---

You may request a review of this custody determination by an immigration judge.

☐ I acknowledge receipt of this notification, and

☐ I **do** request an immigration judge review of this custody determination.

☐ I **do not** request an immigration judge review of this custody determination.

REFUSED TO SIGN
Signature of Alien

05/25/2025
Date

---

The contents of this notice were read to MENDOZA-GUTIERREZ, NESTOR ESAI    in the    SPANISH    language.
(Name of Alien)                                    (Name of Language)

HOLDER, M. D010105
Name and Signature of Officer

Name or Number of Interpreter (if applicable)

Deportation Officer
Title

DHS Form I-286 (1/14)

Page 1 of 1

Event No: _____    **DEPARTMENT OF HOMELAND SECURITY**    **FINS #:** _____

Subject ID: _____ **NOTIFCACIÓN DE DERECHOS Y SOLICITUD DE RESOLUCIÓN**

Nombre: **NESTOR ESAI MENDOZA-GUTIERREZ** _____    Expediente No: _____

## AVISO DE DERECHOS Y NOTIFICACIONES

Usted ha sido arrestado(a) porque los oficiales de inmigración creen que usted está en los Estados Unidos ilegalmente. Usted tiene el derecho a una audiencia ante la corte de inmigración para que se determine si puede permanecer en los Estados Unidos. Si usted pide una audiencia ante un juez de inmigración, podría permanecer detenido(a) o podría ser elegible para salir de la detención, ya sea con o sin el pago de una fianza.

Usted tiene el derecho de contactar a un abogado de inmigración u otro representante legal para que lo represente en sus audiencias, o para que le conteste cualquier pregunta concerniente a sus derechos legales en los Estados Unidos. El oficial que le ha dado esta notificación le proveerá una lista de servicios legales que podrían representarlo(a) de gratis o a bajo costo. Usted tiene el derecho de comunicarse con los oficiales consulares o diplomáticos de su país. Usted puede utilizar el teléfono para llamar a un abogado, otro representante legal o al oficial consular en cualquier momento antes de su salida de los Estados Unidos.

Como alternativa, usted puede pedir que lo devuelvan a su país lo más pronto posible, sin una audiencia. Si elige regresar a su país, usted podría perder la oportunidad de solicitar ciertos beneficios de inmigración o formas de prevenir la remoción que solamente están disponibles para las personas presentes en los Estados Unidos. Si elige regresar a su país, usted puede cambiar de idea y pedir una audiencia ante un juez en la corte de inmigración en cualquier momento antes de su salida de los Estados Unidos. Usted debe notificar inmediatamente a un oficial de inmigración si cambia de idea.

Si usted ha estado en los Estados Unidos sin estatus legal por un año o más y elige regresar a su país, usted no podrá regresar a los Estados Unidos legalmente por diez años, a no ser que obtenga una dispensa. Si usted ha estado en los Estados Unidos sin estatus legal por más de 180 días pero por menos de un año y elige regresar a su país, usted no podrá regresar a los Estados Unidos legalmente por tres años, a no ser que obtenga una dispensa. Usted puede solicitar una dispensa solamente si tiene un conyuge o un padre que es ciudadano o residente permanente legal de los Estados Unidos.

## SOLICITUD DE RESOLUCIÓN

_____     Solicito una audiencia ante la corte de inmigración que resuelva si puedo o no permanecer en los Estados
Iniciales    Unidos.

_____     Considero que estaría en peligro si regreso a mi país. Mi caso se trasladará a la corte de inmigración para
Iniciales    la celebración de una audiencia.

_____     Admito que estoy ilegalmente en los Estados Unidos, y no considero que estaría en peligro si regreso a mi
Iniciales    país. Renuncio a mi derecho a una audiencia ante la corte de inmigración. Deseo regresar a mi país en
            cuanto se pueda disponer mi partida. Entiendo que pudiera permanecer detenido hasta mi salida.

_REFUSED TO SIGN_ _____    _5/25/2025_
Firma del Sujeto               Fecha

## CERTIFICATION OF SERVICE

☒ Notice read by subject.

☐ Notice read to subject by _____ , in the ___**SPANISH**___ language.

**HOLDER, M. D010105  Deportation Officer**
**Deportation Officer**
Name of Immigration Officer (Print)                    Name of Interpreter (Print)

_(signature)_
Signature of Officer                                    Date and Time of Service

DHS Form I-826 (9/14)                                                           Page 1 of 1

_NESTOR   MENDOZA - GUTIERREZ_

| Name   (Nombre) | File Number   (Número de registro) |

### REQUEST FOR DISPOSITION FOR SALVADORIANS
### PETICION DE DISPOSICIÓN A SALVADOREÑOS

I understand my options and I request one of the following dispositions of my case.

Entiendo todas las alternativas que tengo y solicito una de las siguientes disposiciones en mi caso.

[ ] (1) I wish to request a hearing before an immigration judge to determine whether I may remain in, or will be removed from the United States. I understand that if I wish to request political asylum I must request a hearing.

(1) Deseo pedir una audiencia ante un juez de inmigración para determinar si puedo permanecer en los Estados Unidos o si me regresarán a mi país de origen. Entiendo que si quiero solicitar asilo político debo pedir una audiencia.

_5/25/2025_     _REFUSED TO SIGN_     _D. Zumla 63582_

| Date and Time   (Fecha y Hora) | Signature   (Firma) | Witness   (Testigo) |

[ ] (2) I admit that I am in the United States illegally. I wish to give up my right to a hearing before an immigration Judge and return to my home country on the first available transportation. I understand that I may be held in detention until my departure. I also understand that if the United States government pays for my transportation to my country, I cannot return for five years unless I obtain permission from the Attorney General of the United States.

(2) Reconozco que estoy en los Estados Unidos ilegalmente. Deseo renunciar mi derecho a una audiencia ante un juez de inmigración; a mi derecho de ser representado por un abogado; y a mi derecho de ser puesto en libertad bajo fianza. Deseo regresar a mi país a la primera oportunidad. Entiendo que me pueden detener hasta el momento de mi salida. Tambien entiendo que si el gobierno de los Esatdos Unidos paga mi viaje, no voy a poder regresar por cinco años sin previo permiso del Procurador General de los Estados Unidos.

| Date and Time   (Fecha y Hora) | Signature   (Firma) | Witness   (Testigo) |

### TO BE COMPLETED BY THE OFFICER

[X] Form read by alien

[X] Form read to the alien

_D. LOVELESS     D. Zumla 63582_
Officer who gave notice (Printed name and signature)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Removed at : Government Expense - cost $ _____

     Alien's Expense    - cost $ _____

     Request for V/R approved

| Signauture and Title | Date |

NESTOR   MENDOZA-GUTIERREZ
**Nombre**                                        Numero de registro

## EL AVISO DE DERECHOS A SALVADOREÑOS

Ud. ha sido arrestado porque los agentes de inmigración creen que está en los Estados Unidos ilegalmente. Al ser arrestado en este país, Ud. tiene ciertos derechos que nadie puede negarle. Este aviso explicará cuales son esos derechos. Ud. debe firmar abajo para mostrar que ha recibido una copia de este aviso y que lo entiende. Por favor, lea este aviso cuidadosamente antes de decidir lo que desea hacer. <u>No firme absolutamente nada hasta que no haya leído este aviso y haya entendido sus derechos.</u>

### EL DERECHO DE SOLICITAR ASILO POLITICO
Si Ud. tiene miedo de ser perseguido a causa de su raza, religión, nacionalidad, sociedad en un grupo social particular, u opinión política, al regresar a El Salvador, Ud puede solicitar asilo político. Si desea solicitar asilo político debe avisarle al agente que le entrego este aviso. Un juez de inmigración decidirá si le dará o le negará su asilo político.

### EL DERECHO A SER REPRESENTADO POR UN ABOGADO
Si Ud. tiene alguna duda o preguntas sobre sus derechos, puede hablar con un abogado quien le explicará sus cerechos. El agente que le dio este aviso le dará una lista de abogados que le hablaran sin cobrarle. Algunos de ellos quizás hablan español. Ud. tiene el derecho de hacer una llamada telefonica a un abogado. Si Ud. desea hacer tal llamada, debe informarle al agente. Ud. puede ponerse en contacto con un abogaco ahora o en cualquier otro momento antes de salir de los Estados Unidos.

### EL DERECHO DE UNA AUDIENCIA ANTE UN JUEZ DE INMIGRACIÓN
Si Ud. no quiere regresar a El Salvador, tiene el derecho de una audiencia ante un juez de inmigración, quien determinará si Ud. puede permanecer aqui o si tiene que salir de los Estados Unidos. En esta audiencia puede explicarle al juez sus razones de no querer volver a El Salvador. Si Ud. solicita una audiencia, puede ser representado por un abogado pagado por cuenta propia. Si Ud. no puede pagar los servicios de un abogado, puede ponerse en contacto con uno de los abogados en la lista de servicios libres legales. Estos abogados ofrecen servicios legales gratuitos, es decir, Ud. no tiene que pagar.

### EL DERECHO A SER PUESTO EN LIBERTAD BAJO FIANZA
Es posible que Ud. sea elegible para quedar en libertad bajo fianza. La fianza es para asegurar que Ud. asista cada vez que lo citen. A menos que Ud. pueda depositar una cantidad de dinero (fianza), tiene que permanecer detenido para asegurar su presencia en la audiencia. Si Ud. paga la fianza, el dinero se le devolvera si Ud. comparece a todas las audiencias y entrevistas obligatorias. Si la fianza fijada por Inmigración es demasiado alta, Ud. puede pedirle al juez de inmigración que rebaje la cantidad de la fianza.

### EL DERECHO DE SOLICITAR SALIDA VOLUNTARIA
Si Ud. desea regresar a su país de origen, Ud. puede solicitar que le permitan salir en cuanto haya transporte. Si pide salida voluntaria, pierde su derecho a la audiencia de deportación y su derecho a solicitar asilo político. Si despues de haber pedido salida voluntaria cambia su opinion en cualquier momento antes de regresar a su país, siempre puede pedir una audiencia ante un juez. También puede pedirle saliza voluntaria al juez durante la audiencia.

### COMUNICACIÓN CON EL CONSUL
Ud. puede hablar con los oficiales del consulado y oficiales diplomáticos de su país. Si desea hacerlo, su abogado o el agente que le entregó este aviso puede ayudarle comunicarse con la persona apropiada.

=============================================

He recibido una copia de este aviso. Yo entiendo mis derechos.

5/25/2025 , 1410 HRS       REFUSES TO SIGN       D. Gonzalez 12582
**Fecha Y Hora**              **Firma**                **Testigo**

M. Ketels Decl. (ECF No. 26-1)

# Declaration of Michael Ketels

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-2720-RMR

NESTOR ESAI MENDOZA GUTIERREZ, for himself and on behalf of themselves and others similarly situated,

      Petitioners,

v.

JUAN BALTASAR, Warden, Denver Contract Detention Facility, Aurora, Colorado, in his official capacity,
ROBERT GUADIAN, Director of the Denver Field Office for U.S. Immigration and Customs Enforcement, in his official capacity,
KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, in her official capacity,
TODD LYONS, Acting Director of U.S. Immigration and Customs Enforcement, in his official capacity,
PAMELA BONDI, Attorney General of the United States, in her official capacity,
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW,
SIRCE OWEN, Acting Director for Executive Office of Immigration Review, in her official capacity,
U.S. DEPARTMENT OF HOMELAND SECURITY,
AURORA IMMIGRATION COURT, and
U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,

      Respondents.

---

## DECLARATION OF MICHAEL KETELS

---

      I, Michael Ketels, pursuant to 28 U.S.C. § 1746, and based on my personal knowledge and information made known to me from official records reasonably relied upon by me in the course of my employment, hereby declare as follows relating to the above-captioned matter:

      1.      I am employed as a Deportation Officer for the United States Department

of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"),

Enforcement and Removal Operations Denver Field Office ("Denver ERO").  I have

been employed with ICE ERO since May 2018 and have been in my current role as a

Deportation Officer since then. My duty station is at the ICE contract detention facility in

Aurora, Colorado ("Denver CDF"). I am the Deportation Officer assigned to the case of

Nestor Esai Mendoza-Gutierrez, A094336724.

2.      I provide this declaration based on my personal knowledge, review of the

case file, reasonable inquiry, and information obtained from various records, systems,

databases, other DHS employees, and information portals maintained and relied upon

by DHS in the regular course of business.

3.      I have reviewed the case of Nestor Esai Mendoza-Gutierrez ("Petitioner"),

who is in ICE custody at the Denver CDF.

4.      Petitioner is a native and citizen of El Salvador who illegally entered the

United States.

5.      In 2003, he was convicted in the State of Colorado of Driving with Ability

Impaired. He received a 90-day suspended sentence.

6.      In May 2025, ICE received information that Petitioner was in custody at

the county jail in Broomfield, Colorado after being arrested for Indecent Exposure.[1] ICE

officers determined that Petitioner had illegally entered the United States and issued an

immigration detainer.

7.      On May 25, 2025, after his release from jail, ICE took custody of Petitioner

---

[1] This charge was subsequently dismissed.

and detained him. At that time, ICE detained Petitioner pursuant to 8 U.S.C. § 1226(a)

and issued a Form I-286, Notice of Custody Determination. Petitioner did not request

custody review by an immigration judge and refused to sign the form.

8.      After Petitioner's initial detention, DHS reexamined its detention authority

and determined that 8 U.S.C. § 1225 is the correct detention authority that applies to

Petitioner.

9.      Also on May 25, 2025, DHS issued a Notice to Appear ("NTA"), initiating

immigration court proceedings under 8 U.S.C. § 1229a, before the Executive Office for

Immigration Review ("EOIR"). The NTA charged Petitioner with being inadmissible to

the United States pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) (alien present in the United

States without being admitted or paroled, or who arrives in the United States at any time

or place other than as designated by the Attorney General).

10.     On June 3, 2025, Petitioner filed an application for cancellation of removal

under 8 U.S.C. § 1229b(b) with the immigration court.

11.     On June 5, 2025, Petitioner appeared before the Immigration Judge ("IJ")

for his initial hearing in removal proceedings. At that time, Petitioner admitted the

allegations in the NTA and conceded the charge of inadmissibility. Petitioner was also

scheduled for a custody redetermination hearing but withdrew the request. The IJ

scheduled the case for an individual hearing on Petitioner's application for July 25,

2025.

12.     On June 13, 2025, Petitioner filed a request for a custody determination

hearing.

13.     On June 23, 2025, Petitioner appeared before the IJ for a custody redetermination hearing. At the conclusion of the hearing, the IJ found he lacked jurisdiction to issue a bond because Petitioner is detained pursuant to 8 U.S.C. § 1225.

14.     Petitioner did not appeal this decision.

15.     On July 25, 2025, Petitioner appeared before the IJ for an individual hearing on his application for cancellation of removal. After discussing pre-trial issues with the parties, the IJ determined that she could not complete the hearing that day and, due to her impending retirement, continued the hearing without taking evidence to avoid bifurcating the testimony then reassigning the case to a different judge. The IJ rescheduled the hearing to August 1, 2025.

16.     On July 28, 2025, EOIR rescheduled the hearing to August 4, 2025.

17.     On the same date, Petitioner filed a motion for continuance.

18.     The IJ granted the motion for continuance and rescheduled the hearing to September 30, 2025.

19.     On August 12, 2025, EOIR rescheduled the hearing to September 4, 2025.

20.     On August 13, 2025, Petitioner filed a motion for custody redetermination due to changed circumstances.

21.     On September 4, 2025, Petitioner appeared before the IJ for an individual hearing on his application. At the conclusion of the hearing, the IJ advised that he will issue a written decision on the merits of the case.

22.     On September 10, 2025, the IJ issued an order denying Petitioner's

4

motion for custody redetermination.

23.     As of the date and time of signing this declaration, the IJ had yet to issue a

written decision.

24.     ICE has cancelled the Form I-286 initially issued to Petitioner in this case.

25.     Petitioner remains detained at the Denver CDF pursuant to 8 U.S.C.

§ 1225.


Executed this 16th day of September 2025.

MICHAEL D
KETELS

Digitally signed by
MICHAEL D KETELS
Date: 2025.09.16
12:29:11 -06'00'

Deportation Officer
U.S. Immigration and Customs Enforcement

5

# Matter of Jonathan Javier Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025)

# Matter of Jonathan Javier YAJURE HURTADO, Respondent

*Decided September 5, 2025*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Based on the plain language of section 235(b)(2)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1225(b)(2)(A) (2018), Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission.

FOR THE RESPONDENT: Gabriel Harrison, Esquire, Bellingham, Washington

FOR THE DEPARTMENT OF HOMELAND SECURITY: Cassidy A. Cloninger, Associate Legal Advisor

BEFORE: Board Panel: HUNSUCKER and MONTANTE, Appellate Immigration Judges; MCCLOSKEY, Temporary Appellate Immigration Judge.

HUNSUCKER, Appellate Immigration Judge:

The respondent, a native and citizen of Venezuela, appeals from the Immigration Judge's April 18, 2025, order denying his request for a redetermination of his custody status.[1] The Immigration Judge determined that he lacked jurisdiction to hear the respondent's bond request because the respondent was subject to mandatory detention under section 235(b)(2) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1225(b)(2) (2018) and, in the alternative, that the respondent is a flight risk.[2] This case presents an issue that the Board has not previously addressed in a precedential decision—the Immigration Judge's authority to hold a bond hearing for an alien present in the United States who has not been admitted after inspection.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The respondent crossed the border into the United States without inspection in November 2022 near El Paso, Texas. United States Citizenship and Immigration Services granted him temporary protected status in 2024,

---

[1] Throughout the remainder of this decision, we will use the term "bond hearing" to reference any hearing in which the Immigration Judge considers any aspect of an alien's detention or conditions of release.

[2] On April 30, 2025, the Immigration Judge issued a written memorandum in support of the bond order.

but that status expired on April 2, 2025.  The respondent was apprehended by immigration officials, and on April 8, 2025, the Department of Homeland Security ("DHS") issued a notice to appear charging the respondent as inadmissible under section 212(a)(6)(A)(i) of the INA, 8 U.S.C. § 1182(a)(6)(A)(i) (2018), for being "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General."

The respondent requested a bond hearing before the Immigration Judge. At the hearing, the Immigration Judge determined he had no jurisdiction to set bond under the facts of the respondent's case.  Alternatively, the Immigration Judge stated he would have denied bond because the respondent is a flight risk.  The respondent timely appealed to the Board.

On July 18, 2025, the Board issued a request for supplemental briefing, asking the parties to specifically address whether the Immigration Judge has the authority to conduct a bond hearing for an alien who is present in the United States without admission.  Both parties filed supplemental briefs.

## II.  STATUTORY AND REGULATORY BACKGROUND

We review de novo whether an Immigration Judge has the authority to consider the bond request of an alien who entered the United States without admission and who has been present in the United States for at least 2 years. *See* 8 C.F.R. § 1003.1(d)(3)(i) (2025).  The authority of an Immigration Judge to adjudicate any matter, including a request for a bond, is limited to the authority that is delegated to the Immigration Judge by the INA and the Attorney General through regulation.[3]  *See* 8 C.F.R. § 1003.10(b) (2025); *see also Matter of A-W-*, 25 I&N Dec. 45, 46 (BIA 2009); *Matter of D-J-*, 23 I&N Dec. 572, 575 (A.G. 2003).

---

[3]  The authority of an Immigration Judge to consider a bond request is impacted by legal authorities which generally define that authority in the negative.  For example, the Immigration Judge is without authority to conduct a custody redetermination hearing for aliens in exclusion proceedings.  *See* 8 C.F.R. § 1003.19(h)(2)(i)(A) (2025).  An Immigration Judge is also without authority to conduct a custody redetermination hearing for an arriving alien, including an alien paroled after arrival pursuant to section 212(d)(5) of the INA, 8 U.S.C. § 1182(d)(5).  *See* 8 C.F.R. § 1003.19(h)(2)(i)(B); *see also Matter of Oseiwusu*, 22 I&N Dec. 19, 20 (BIA 1998).  Various other sections of the INA and the regulations further prohibit the Immigration Judge from considering custody redetermination under certain circumstances.  *See* INA § 235(b)(1)(B)(iii)(IV), (b)(2)(A), 8 U.S.C. § 1225(b)(1)(B)(iii)(IV), (b)(2)(A); INA § 236(c), 8 U.S.C.A. § 1226(c) (West 2025); 8 C.F.R. §§ 235.3(b)(1), 1003.19(h)(1)(i)(A)–(E) (2025).

### A.  Detention Under Section 235

The inspection, detention, and removal of aliens who have not been admitted is governed by section 235 of the INA, 8 U.S.C. § 1225.  There, Congress defined an applicant for admission as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)."  INA § 235(a)(1), 8 U.S.C. § 1225(a)(1).

Under section 235, Congress created three different categories of applicants for admission.   The first two categories are covered by section 235(b)(1)(A) of the INA, 8 U.S.C. § 1225(b)(1)(A).  They include: (1) arriving aliens inadmissible under section 212(a)(6)(C) or 212(a)(7), 8 U.S.C. § 1182(a)(6)(C), (a)(7), and (2) aliens not admitted or paroled into the United States who are inadmissible under section 212(a)(6)(C) or 212(a)(7), 8 U.S.C. § 1182(a)(6)(C), (a)(7), and "who ha[ve] not affirmatively shown, to the satisfaction of an immigration officer, that [they] ha[ve] been physically present in the United States continuously for the 2-year period immediately prior to the date of determination of inadmissibility."     INA     §     235(b)(1)(A)(i),     (iii)(II),     8     U.S.C. § 1225(b)(1)(A)(i), (iii)(II); *see also* 8 C.F.R. § 235.3(b)(1) (2025).  The INA explicitly requires that aliens who fall into either of these two categories are subject to mandatory detention for the duration of their immigration proceedings.    *See*   INA   §   235(b)(1)(B)(ii),   (iii)(IV),   8   U.S.C. § 1225(b)(1)(B)(ii), (iii)(IV); *see also* 8 C.F.R. § 235.3(b)(2)(iii).  Thus, an Immigration Judge lacks authority to hear a bond request filed by an applicant for admission in either of these two categories.  *See Matter of M-S-*, 27 I&N Dec. 509, 515–19 (A.G. 2019).

The third category of applicants for admission subject to the inspection, detention, and removal procedures set forth in section 235 of the INA, 8 U.S.C. § 1225, are those aliens who are seeking admission and who an immigration officer has determined are "not clearly and beyond a doubt entitled to be admitted."  INA § 235(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A).  This category is a "catchall provision that applies to all applicants for admission not covered by [section 235(b)(1)]."  *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).  Like with the first two categories of applicants for admission, the INA explicitly requires that this third "catchall" category of applicants for admission be mandatorily detained for the duration of their

App. 130

immigration proceedings.[4]    *See* INA § 235(b)(2)(A), 8 U.S.C.
§ 1225(b)(2)(A); *see also Jennings*, 583 U.S. at 299 (interpreting the "plain
meaning" of sections 235(b)(1) and (2) to mean that applicants for admission
be mandatorily detained for the duration of their immigration proceedings);
8 C.F.R. § 235.3(b)(1)(ii).

### B.  Detention Under Section 236

Section 236 of the INA, 8 U.S.C.A. § 1226 (West 2025), provides
additional direction for the apprehension and detention of aliens "pending a
decision on whether the alien is to be removed from the United States."  INA
§ 236(a), 8 U.S.C.A. § 1226(a).  Section 236 "generally governs the process
of arresting and detaining" aliens who are deportable under section 237(a),
8 U.S.C. § 1227(a) (2018), including "aliens who were inadmissible at the
time of entry or who have been convicted of certain criminal offenses since
admission." *Jennings*, 583 U.S. at 288 (citing INA § 237(a)(1), (2), 8 U.S.C.
§ 1227(a)(1), (2)).

The detention provisions of section 236, distinguish between two groups
of aliens.  The first group consists of aliens arrested on a warrant issued by
DHS, who, subject to certain restrictions, may be detained or released on
bond or conditional parole.  INA § 236(a), 8 U.S.C.A. § 1226(a).  The
regulatory provision at 8 C.F.R. § 1236.1(d) (2025) authorizes Immigration
Judges to "exercise the authority in section 236 of the [INA] . . . to detain the
alien in custody, release the alien, and determine the amount of bond, if any,
under which the respondent may be released, as provided in § 1003.19 of this
chapter."  The second group of aliens identified in section 236 are certain
defined categories of "criminal aliens" subject to mandatory detention under
section 236(c) of the INA, 8 U.S.C.A. § 1226(c).  An Immigration Judge is
without authority to consider a bond request filed by an alien falling into this
category.

Section 236 does not purport to overrule the mandatory detention
requirements for arriving aliens and applicants for admission explicitly set
forth in section 235(b)(1) and (2) of the INA, 8 U.S.C. § 1225(b)(1), (2).
Thus, while an inadmissible alien who establishes that he or she has been

---

[4]    While these aliens might be subject to parole by the Attorney General or DHS, that is
not an issue that the Immigration Judge has authority to consider.  *See* INA § 212(d)(5)(A),
8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. 212.5(a) (2025) (designating who may exercise
authority to grant parole); *see also Jennings*, 583 U.S. at 300 (noting that the Attorney
General may grant aliens detained under sections 235(b)(1) and (b)(2) temporary parole
into the United States "for urgent humanitarian reasons or significant public benefit"
(quoting INA § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A)).

App. 131

present in the United States for over 2 years is not subject to the expedited removal process, the alien nevertheless "shall be detained for a proceeding under section 240." INA § 235(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A).

## III. APPLICATION OF THE RESPONDENT

The issue presented on appeal is one of statutory construction: Does the INA require that all applicants for admission, even those like the respondent who have entered without admission or inspection and have been residing in the United States for years without lawful status, be subject to mandatory detention for the duration of their immigration proceedings, and thus the Immigration Judge lacks authority over a bond request filed by an alien in this category? In addressing this issue, the Board must begin with the "plain language" of the INA. *See Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009) ("As with any question of statutory interpretation, [the] analysis begins with the plain language of the statute.").

"The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co*., 519 U.S. 337, 341 (1997); *see also Beecham v. United States*, 511 U.S. 368, 372 (1994) ("The plain meaning that we seek to discern is the plain meaning of the whole statute, not of isolated sentences"). The Board does not "view the language of statutory provisions in isolation but instead . . . read[s] the words 'in their context and with a view to their place in the overall statutory scheme.'" *Matter of C-T-L-*, 25 I&N Dec. 341, 345 (BIA 2010) (quoting *FDA v. Brown & Williamson Tobacco Corp*., 529 U.S. 120, 133 (2000)); *see also Stenberg v. Carhart*, 530 U.S. 914, 942 (2000) ("When a statute includes an explicit definition, we must follow that definition, even if it varies from that term's ordinary meaning.").

Under the plain reading of the INA, we affirm the Immigration Judge's determination that he did not have authority over the bond request because aliens who are present in the United States without admission are applicants for admission as defined under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings. *See Jennings*, 583 U.S. at 300 (holding that the INA "unequivocally mandates that aliens falling within the scope [of section 235(b)(1) and (2)] 'shall' be detained," and that "[u]nlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement" (quoting *Kingdomware Technologies, Inc. v. United States*, 579 U.S. 162, 171 (2016))).

The respondent concedes that he is an "applicant for admission" under section 235(a)(1) of the INA, 8 U.S.C. § 1225(a)(1), by virtue of his entry without inspection. The respondent also contends, however, that because he has been residing in the interior of the United States for almost 3 years (since his November 2022 entry without inspection), he cannot be considered as "seeking admission" as the phrase is used in section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A).

The respondent's argument is not supported by the plain language of the INA, and actually creates a legal conundrum. If he is not admitted to the United States (as he admits) but he is not "seeking admission" (as he contends), then what is his legal status? The respondent provides no legal authority for the proposition that after some undefined period of time residing in the interior of the United States without lawful status, the INA provides that an applicant for admission is no longer "seeking admission," and has somehow converted to a status that renders him or her eligible for a bond hearing under section 236(a) of the INA, 8 U.S.C.A. § 1226(a). *See Matter of Lemus*, 25 I&N Dec. 734, 743 & n.6 (BIA 2012) (noting that "many people who are not *actually* requesting permission to enter the United States in the ordinary sense [including aliens present in the United States who have not been admitted] are nevertheless deemed to be 'seeking admission' under the immigration laws"). The respondent's argument also leaves unanswered which applicants for admission would be covered by section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), if, as he argues, applicants for admission who have been living for years in the United States without admission and without lawful status are somehow exempt from section 235(b)(2)(A) and instead fall under section 236.

The respondent also contends that the Immigration Judge's interpretation of section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), as applying to aliens who are present in the United States without inspection renders superfluous sections 236(c)(1)(A), (D), and (E), 8 U.S.C.A. § 1226(c)(1)(A), (D), (E), which bar certain categories of inadmissible aliens from requesting bond under section 236(a) of the INA, 8 U.S.C.A. § 1226(a). According to the respondent, Congress would not have enacted the provisions of sections 236(c) and also amended the provision as it did with the recent passage of the Laken Riley Act, Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025), if those aliens were already subject to mandatory custody under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A).[5] The respondent's argument is

---

[5]   The Laken Riley Act amended section 236(c) of the INA, 8 U.S.C.A. § 1226(c), to require that the Attorney General take into custody certain criminal aliens who are deemed inadmissible, including for being "present in the United States without being admitted or

221

unavailing, however, because nothing in the statutory text of section 236(c), including the text of the amendments made by the Laken Riley Act, purports to alter or undermine the provisions of section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), requiring that aliens who fall within the definition of the statute "shall be detained for a proceeding under section 240."

The respondent's interpretation would, in fact, render section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), superfluous. Interpreting the provisions of section 236(c) as rendering null and void the provisions of section 235(b)(2)(A) (or even the provisions of section 235(b)(1) of the INA, 8 U.S.C. § 1225(b)(1)), would be in contravention of the "cardinal principle of statutory construction," which is that courts are to "'give effect, if possible, to every clause and word of a statute,' rather than to emasculate an entire section." *United States v. Menasche*, 348 U.S. 528, 538–39 (1955) (citations omitted).

Further, the fact that section 236(c) of the INA, 8 U.S.C.A. § 1226(c), mandates detention of a subset of the category of aliens that are also subject to mandatory detention under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), is not a basis on which to determine that section 235(b)(2)(A) is null and void. *See Barton v. Barr*, 590 U.S. 222, 239 (2020) (holding that because "redundancies are common in statutory drafting—sometimes in a congressional effort to be doubly sure, sometimes because of congressional inadvertence or lack of foresight, or sometimes simply because of the shortcomings of human communication,"—"[r]edundancy in one portion of a statute is not a license to rewrite or eviscerate another portion of the statute contrary to its text").

The respondent also argues that the relevant legislative history of the INA supports an interpretation of the INA that authorizes bond and bond hearings under section 236(a) for aliens present in the United States without admission. On the contrary, the legislative history supports the interpretation the Board is taking here. The statutory definition of an "applicant for admission" at section 235(a)(1) of the INA, 8 U.S.C. § 1225(a)(1), was added to the INA in 1996, with the passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, Div. C, § 302(a), 110 Stat. 3009-546, 3009-579. Before the passage of IIRIRA, the INA provided for inspection of aliens only when they were arriving at a port of entry. *See* former INA § 235(a), 8 U.S.C. § 1225(a) (1994) (discussing "aliens arriving at ports of the United States"); *see also*

---

paroled," under section 212(a)(6)(A)(i) of the INA, 8 U.S.C. § 1182(a)(6)(A)(i), and who have been arrested, charged with, or convicted of certain crimes, including theft.

former INA § 235(b), 8 U.S.C. § 1225(b) (discussing the detention of aliens by "the examining immigration officer at the port of arrival"). Aliens who were "seeking admission" at a port of entry under former section 235 of the INA, 8 U.S.C. § 1225, or who had been paroled into the United States and were determined to be excludable were placed in exclusion proceedings and subject to mandatory detention, with potential release solely by means of a grant of parole under section § 212(d)(5), 8 U.S.C. § 1182(d)(5) (1994). *See also* former INA §§ 212(a), 235(a)–(b), 236, 8 U.S.C. §§ 1182(a), 1225(a)–(b), 1226 (1994); *see also* 8 C.F.R. § 235.3(a)–(c) (1995).

At the same time, aliens who were "in the United States" and within certain classes of deportable aliens, including those "who entered the United States without inspection or at any time or place other than as designated by the Attorney General" were deemed deportable under former section 241(a) of the INA, 8 U.S.C. § 1251(a) (1994), and placed in deportation proceedings. Those aliens were entitled to request release on bond. *See* former INA § 242(a)(1), 8 U.S.C. § 1252(a)(1) (1994); *see also* 8 C.F.R. § 242.2(c)(1) (1995). Thus, the placement of an alien in exclusion or deportation proceedings before the 1996 passage § IIRIRA depended on whether the alien had made an "entry" within the meaning of the INA. *See* former INA § 101(a)(13), 8 U.S.C. § 1101(a)(13) (1994) (defining "entry" as "any coming of an alien into the United States, from a foreign port or place or from an outlying possession").

In 1996, Congress enacted IIRIRA, which, among other things, substituted the term "admission" for "entry," and replaced deportation and exclusion proceedings with removal proceedings. *See Martinez v. Att'y Gen. of U.S.*, 693 F.3d 408, 413 n.5 (3d Cir. 2012) ("Prior to the 1996 amendment, the INA assessed status on the basis of 'entry' as opposed to 'admission.'"). Congress acted, in part, to remedy the "unintended and undesirable consequence" of having created a statutory scheme where aliens who entered without inspection "could take advantage of the greater procedural and substantive rights afforded in deportation proceedings," including the right to request release on bond, while aliens who had "actually presented themselves to authorities for inspection were restrained by 'more summary exclusion proceedings,'" and were subject to mandatory custody. *Id.* (quoting *Hing Sum v. Holder*, 602 F.3d 1092, 1100 (9th Cir. 2010).

The legislative history of IIRIRA explains that in replacing the definition of "entry" with a definition for "admission" and "admitted," Congress:

> intended to replace certain aspects of the current "entry doctrine," under which illegal aliens who have entered the United States without inspection gain equities and

privileges in immigration proceedings that are not available to aliens who present themselves for inspection at a port of entry. Hence, the pivotal factor in determining an alien's status will be whether or not the alien has been lawfully admitted.

H.R. Rep. No. 104-469, pt. 1, at 225 (1996). The House Judiciary Committee Report for what would become IIRIRA further explains:

> Currently, aliens who have entered without inspection are deportable under section 241(a)(1)(B). Under the new "admission" doctrine, such aliens will not be considered to have been admitted, and thus, must be subject to a ground of inadmissibility, rather than a ground of deportation, based on their presence without admission. (Deportation grounds will be reserved for aliens who have been admitted to the United States.).

*Id.* at 226.

Thus, after the 1996 enactment of IIRIRA, aliens who enter the United States without inspection or admission are "applicants for admission" under section 235(a)(1) of the INA, 8 U.S.C. § 1225(a)(1), and subject to the inspection, detention, and removal procedures of section 235(b) of the INA, 8 U.S.C. § 1225(b). The legislative history confirms that, under a plain language reading of section 235(b)(1) and (2) of the INA, 8 U.S.C. § 1225(b)(1), (2), Immigration Judges do not have authority to hold a bond hearing for arriving aliens and applicants for admission. *See Chapman v. Hous. Welfare Rts. Org.*, 441 U.S. 600, 608 (1979) (noting that the Supreme Court's "task is to interpret the words of these statutes in light of the purposes Congress sought to serve."); *see also Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835 (1990) ("The starting point for interpretation of a statute 'is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.'" (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980))).

The respondent contends that the statement in the House Judiciary Committee Report that "[s]ection 236(a) restates the current provisions in section 242(a)(1) regarding the authority of the Attorney General to arrest, detain, and release on bond an alien who is not lawfully in the United States" demonstrates that Congress intended to retain the same discretionary detention scheme for aliens unlawfully in the United States that was in place prior to the 1996 enactment of IIRIRA. H.R. Rep. No. 104-469, pt. 1, at 229. The respondent's argument is unavailing, however, because nothing in the portion of the report cited by the respondent suggests that it was intended to undermine or alter the earlier statements, in the same report, that aliens present in the United States without inspection will be considered "seeking

admission." *See id.* at 225. The House Judiciary Committee Report makes clear that Congress intended to eliminate the prior statutory scheme that provided aliens who entered the United States without inspection more procedural and substantive rights than those who presented themselves to authorities for inspection. *See id.*; *see also Martinez*, 693 F.3d at 413 n.5. Interpreting the provisions of the INA in the manner the respondent argues would essentially repeal the statutory fix that Congress made with the 1996 passage of IIRIRA.

As the legislative history reflects, the Immigration Judge's interpretation of the respondent as an applicant for admission under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and therefore subject to mandatory detention and ineligible for a bond hearing is supported by the plain language of the INA. *See Jennings*, 583 U.S. at 297 ("Read most naturally, [sections 235(b)(1)] and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded. Section [235(b)(1)] aliens are detained for 'further consideration of the application for asylum,' and [section 235(b)(2)] aliens are in turn detained for '[removal] proceeding[s].'" (last two alterations in original)). Thus, we affirm the Immigration Judge's interpretation, and hold, under a plain language reading of section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), Immigration Judges lack authority to hear bond requests or to grant bond to aliens, like the respondent, who are present in the United States without admission.

Citing *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the respondent also contends in his supplemental brief that DHS' "longstanding practice" of treating aliens who are present in the United States without inspection as detained under section 236(a) of the INA, 8 U.S.C.A. § 1226(a), and therefore eligible for a bond, supports his argument that he is likewise detained under section 236(a). *See Loper Bright*, 603 U.S. at 386 ("'"[T]he longstanding "practice of the government"'—like any other interpretive aid—'can inform [a court's] determination of "what the law is."'" (citation omitted)).[6] Somewhat similarly, the respondent contends that Congress did

---

[6]    We acknowledge that for years Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection. However, we do not recall either DHS or its predecessor, the Immigration and Naturalization Service, previously raising the current issue that is before us. In fact, the supplemental information for the 1997 Interim Rule titled "Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures," 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997), reflects that the Immigration and Naturalization Service took the position at that time that "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."

not intend the provisions of section 235(b)(2)(A) of the INA, 8 U.S.C.
§ 1225(b)(2)(A), to apply to aliens who are arrested after having lived in the
United States for more than 2 years, as reflected in DHS' practice of treating
those aliens as detained under section 236 of the INA, 8 U.S.C. § 1226.

The respondent's argument is unavailing, however, because the Supreme
Court in *Loper Bright* made that statement specifically with respect to
judicial interpretation of a "doubtful and ambiguous law." *Id.* at 385–86. As
explained above, the statutory text of the INA is not "doubtful and
ambiguous" but is instead clear and explicit in requiring mandatory detention
of all aliens who are applicants for admission, without regard to how many
years the alien has been residing in the United States without lawful status.
*See* INA § 235(b)(1), (2), 8 U.S.C. § 1225(b)(1), (2). The Supreme Court in
*Loper Bright* did not hold that the long-standing practice of the government
can somehow change, or even eviscerate, explicit statutory text that is
contrary to that practice. *See* 603 U.S. at 385–86; *see also Niz-Chavez v.
Garland*, 593 U.S. 155, 171 (2021) (stating that "no amount of policy-talk
can overcome a plain statutory command").

Likewise, the respondent's citation to *Matter of Akhmedov*, 29 I&N
Dec. 166 (BIA 2025), does not support his arguments. The Board's
statement in that decision that the respondent's custody determination was
governed by section 236(a) of the INA, 8 U.S.C.A. § 1226(a), even though
the respondent was present in the United States without inspection, *Matter
of Akhmedov*, 29 I&N Dec. at 166, does not somehow eviscerate or nullify
section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), or vest the
Immigration Judge with authority over the respondent's bond request.
Whether the respondent was subject to mandatory detention under section
235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and whether the
Immigration Judge had authority to hear the bond request, were not issues
presented to the Board in that case.

The respondent also argues that because DHS issued an arrest warrant in
conjunction with the Notice to Appear and a Notice of Custody
Determination, DHS has detained the respondent pursuant to section 236(a)
of the INA, 8 U.S.C.A. § 1226(a), and the Immigration Judge therefore has
statutory and regulatory authority to consider his request for a bond. The
respondent cites *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), in support of
his argument. *Matter of Q. Li*, 29 I&N Dec. at 69, held:

> [A]n applicant for admission who is arrested and detained without a warrant while
> arriving in the United States, whether or not at a port of entry, and subsequently
> placed in removal proceedings is detained under section 235(b) of the INA, 8 U.S.C.

§ 1225(b), and is ineligible for any subsequent release on bond under section 236(a) of the INA, 8 U.S.C. § 1226(a).

*Matter of Q. Li*, 29 I&N Dec. at 69, further stated that "[s]ubject to certain exceptions contained in section 236(c) of the INA, 8 U.S.C. § 1226(c), aliens detained under section 236(a) may be eligible for discretionary release on bond pursuant to section 236(a)(2) of the INA, 8 U.S.C. § 1226(a)(2)."

Our conclusion in *Matter of Q. Li* that aliens detained without a warrant while arriving in the United States are mandatorily detained under section 235(b) of the INA, 8 U.S.C. § 1225, is consistent with our holding in the present case. While the respondent reads *Matter of Q. Li* as suggesting that aliens present in the United States who are detained with a warrant of arrest are detained under section 236(a), that issue was beyond the scope of our decision in that case. Our acknowledgement that "aliens detained under section 236(a) may be eligible for discretionary release on bond" does not mean that *all* aliens detained while in the United States with a warrant of arrest are detained under section 236(a) and entitled to a bond hearing before the Immigration Judge, regardless of whether they are applicants for admission under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A).

In short, the mere issuance of an arrest warrant does not endow an Immigration Judge with authority to set bond for an alien who falls under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A). *See Matter of A-W-*, 25 I&N Dec. at 46 (discussing the limits on Immigration Judge authority); *Matter of D-J-*, 23 I&N Dec. at 575 (same); 8 C.F.R. § 1003.10(b); *see also* 8 C.F.R. § 235.3(b)(1)(ii). If it did, it would render meaningless the many prohibitions cited above on the authority of an Immigration Judge to set bond.

Ultimately, this issue of statutory interpretation is complicated by a patchwork of statutes implemented at different times and intended to address different issues. The INA is a complex set of legal provisions created at different times and modified over a series of years. Where these provisions impact one another, they cannot be read in a vacuum. *See Matter of C-T-L-*, 25 I&N Dec. at 345 (BIA 2010) (explaining that the Board does not "view the language of statutory provisions in isolation but instead [is] charged with reading the words 'in their context and with a view to their place in the overall statutory scheme'" (citation omitted)). Additionally, the fact that a statute specifically prohibits an Immigration Judge from doing a particular act cannot be read as authorizing the Immigration Judge to perform acts that are not otherwise specifically prohibited.

"'[A]n alien present in the United States who has not been admitted . . . ' is deemed 'an applicant for admission.'" *DHS v. Thuraissigiam*, 591 U.S. 103, 109 (2020) (quoting INA § 235(a)(1), 8 U.S.C. § 1225(a)(1)); *see also Matter of Lemus*, 25 I&N Dec. at 743 ("Congress has defined the concept of an 'applicant for admission' in an unconventional sense, to include not just those who are expressly seeking permission to enter, but also those who are present in this country without having formally requested or received such permission . . . ."). Applicants for admission remains such unless an immigration officer determines that they are "clearly and beyond a doubt entitled to be admitted." INA § 235(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A). Failing to clearly and beyond a doubt demonstrate that they are entitled to admission, such aliens "shall be detained for a proceeding under section 240." *Id.*; *see also Jennings*, 583 U.S. at 288.

Aliens, like the respondent, who surreptitiously cross into the United States remain applicants for admission until and unless they are lawfully inspected and admitted by an immigration officer. Remaining in the United States for a lengthy period of time following entry without inspection, by itself, does not constitute an "admission." *See* INA § 101(a)(13)(A), 8 U.S.C. § 1101(a)(13)(A) (2018) (defining "admission"). Likewise, being arrested pursuant to a warrant and placed into removal proceedings does not constitute an admission. Therefore, just as Immigration Judges have no authority to redetermine the custody of arriving aliens who present themselves at a port of entry, they likewise have no authority to redetermine the custody conditions of an alien who crossed the border unlawfully without inspection, even if that alien has avoided apprehension for more than 2 years.

Holding otherwise would require reading the INA to conclude that Congress intended that aliens unlawfully entering the United States without inspection, particularly those who successfully evaded apprehension for more than 2 years, be rewarded with the opportunity for a bond hearing before an Immigration Judge, whereas aliens who present themselves to officers at a port of entry are ineligible for a bond hearing. This is an incongruous result which is not supported by the plain language or any reasonable interpretation of the INA.[7]

---

[7]    Violations of the INA and the regulations often have consequences for aliens seeking relief and protection from removal. *See, e.g.*, Circumvention of Lawful Pathways, 88 Fed. Reg. 31314, 31314 (May 16, 2023) (codified at 8 C.F.R. pts. 1003 and 1208) (establishing a "rebuttable presumption of asylum ineligibility" for certain aliens who did not "avail themselves of a lawful, safe, and orderly pathway to the United States" or "seek asylum or other protection in a country through which they travel[ed]"). For example, aliens who have not been "inspected and admitted or paroled into the United States" are ineligible for

## IV.    CONCLUSION

The Immigration Judge properly held that he lacked authority to hear the respondent's request for a bond as the respondent is an applicant for admission and is subject to mandatory detention under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and the regulation at 8 C.F.R. § 235.3(b)(1)(ii).[8]  Accordingly, the following order will be entered.

**ORDER:**  The appeal is dismissed.

---

adjustment of status under section 245(a) of the INA, 8 U.S.C. § 1255(a) (2018).  *See also Sanchez v. Mayorkas*, 593 U.S. 409, 414 (2021).  Likewise, an applicant for asylum will, absent extraordinary or changed circumstances, be ineligible for relief if he or she did not file the application within 1 year of his or her last arrival in the United States.  *See* INA § 208(a)(2)(B), (D), 8 U.S.C. § 1158(a)(2)(B), (D).

[8]    As we are dismissing the respondent's appeal on the grounds that the Immigration Judge lacked jurisdiction to hear the respondent's motion for a bond, we need not address the Immigration Judge's alternative holding denying bond because the respondent did not meet his burden of proving that he is not a flight risk, or the respondent's appellate arguments contesting that alternative holding.  *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

M. Sherman Decl. (ECF 15-10)

**Declaration of Monique R. Sherman**

1. I am the Managing Attorney for the Detention Program at the Rocky Mountain Immigrant Advocacy Network (RMIAN). I have had this position for three years.

2. RMIAN is a non-profit organization that provides pro bono legal representation to adults detained at the Denver Contract Detention Facility in Aurora, Colorado ("Aurora Facility"), and to immigrant children. RMIAN employs around 23 immigration attorneys, and we serve have historically served more than 2000 people detained at the Aurora Facility each year.

3. RMIAN has a daily presence at the Aurora Facility to meet with clients and potential clients, and to represent clients in the immigration court proceedings at the Aurora Immigration Court, which take place at the Aurora Facility.

4. Likewise, RMIAN operates the only free hotline for legal help that people detained at the Aurora Facility can access. Even though RMIAN has the only free legal hotline available at the Aurora Facility, we do not receive calls from anywhere near the total number of people detained there.

5. RMIAN was a provider under the nationwide Legal Orientation Program ("LOP"). Until the Legal Orientation Program ("LOP") was terminated in mid-April 2025, RMIAN offered free legal orientation presentations and workshops to everyone who detained in the Aurora Facility. These presentations reached up to 30 detained people a day. Unfortunately, since the termination of the LOP, ICE has denied RMIAN's requests to provide know-your-rights presentations to groups under the procedures outlined in the Performance Based National Detention Standards.

6. RMIAN's team that provided LOP services presently meets with pro se individuals who reach out to RMIAN requesting services to provide legal orientation and information on a one-on-one basis.

7. According to the website of the GEO Group – the for-profit company that operates the Aurora Facility under a contract with ICE – the facility has the capacity to detain over 1,500 people.

8. As part of my job as the Detention Program Managing Attorney, I receive regular reports and monitor data from the team that provides pro se services. The team regularly speaks to people who have been detained who are seeking legal representation in their immigration cases. Our team returns messages left for us on the hotline by detained individuals and their loved ones and responds to community outreach informing us of community members who have been detained by ICE. Every day, the team interviews people seeking legal help to

determine if RMIAN can assist them in direct representation. This includes speaking with people who were recently detained, and who are seeking release from the Aurora Facility on bond. The team speaks to approximately 4-5 people who are detained at the Aurora Facility each day.

9. The number of people requesting representation from RMIAN has always exceeded our capacity to help. Unfortunately, we have to turn away more than ninety percent of people who call us asking for legal representation because we lack the resources to represent all the people who call us, even when those people have meritorious claims.

10. During a typical intake, we ask the potential client about how long they have lived in the United States, where and how they were detained, what their ties to the community are, if they have any criminal record (or pending criminal charges), why ICE is alleging they are removable, and details around any potential claims for relief from deportation.

11. Our team regularly speaks to people who are detained at the Aurora Facility who were not detained in Colorado or Wyoming, but were detained in other parts of the country and then brought to Aurora by ICE.

12. During our team's intakes, detained individuals regularly tell us about problems they are having while detained, such as lack of medical care in detention, the problems their families are experiencing while they are detained, and other difficult conditions caused by their detention.

13. Since the inauguration, RMIAN has encountered an increasing number of detained individuals who were apprehended in Colorado or somewhere else in the interior of the country.  Many of these people ICE claims "entered without inspection"—years or even decades ago. The team has encountered at least 270 people who were detained due to internal enforcement since inauguration. Based on the trends previous to the termination of the LOP and the increasing number of calls to our hotline, I believe that we would have encountered many more individuals in this situation if we were still allowed to reach groups of detained individuals for know-your-rights presentations and intakes.

14. Based on my experience, there are likely hundreds of people currently held in the Aurora Facility who ICE alleges entered without inspection, were apprehended inside the country, and are in ongoing removal proceedings.

15. Eighty-five percent (85%) of people in ICE custody at the Aurora Facility do not have an attorney to help them seek bond or draft a habeas petition. Pro se individuals would need to know basic information about how and where to file both legal documents.

I declare under penalty of perjury under the law of the United States and 28 U.S.C. § 1746 that the foregoing is true and correct.


Dated: September 3, 2025          */s/ Monique R. Sherman*
                                  Monique R. Sherman
                                  Detention Program Managing Attorney
                                  ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK

Collected Cases

**1225/1226 Cases**

*Rodriguez Vazquez v. Bostock*, 779 F.Supp.3d 1239 (W.D. Wash. 2025) (granting preliminary relief)

**Cases Decided Post-July 8 DHS/ICE Policy**
- *Gomes v. Hyde*, No. 25-CV-11571, 2025 WL 1869299 (D. Mass. July 7, 2025)
- *Diaz Martinez v. Hyde*, --- F.Supp.3d ---, 2025 WL 2084238 (D. Mass. July 24, 2025);
- *Bautista v. Santacruz Jr.*, No. 25-CV-1873, 2025 WL 2670875 (C.D. Cal. July 28, 2025);
- *Rosado v. Figueroa*, No. 25-CV-02157, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted*, No. CV-25-02157-PHX-DLR (CDB), 2025 WL 2349133 (D. Ariz. Aug. 13, 2025)
- *Lopez Benitez v. Francis*, --- F.Supp.3d ---, 2025 WL 2371588 (S.D. N.Y. Aug. 13, 2025)
- *Ceja Gonzalez v. Noem*, No. 25-CV-2054, 2025 WL 2633187 (C.D. Cal. Aug. 13, 2025)
- *Garcia Jimenez v. Kramer*, No. 25-03162, 2025 WL 2374223 (D. Neb. Aug. 14, 2025)
- *Maldonado v. Olson*, --- F.Supp.3d ---, 2025 WL 2374411 (D. Minn. Aug. 15, 2025)
- *Arrazola-Gonzalez v. Noem*, No. 25-CV-01789, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025)
- *Aguilar Vazquez v. Bondi*, No. 25-CV-3162 (D. Minn. Aug. 19, 2025) (Dkt. 17)
- *Romero v. Hyde*, --- F.Supp.3d ---, 2025 WL 2403827 (D. Mass. Aug. 19, 2025)
- *Samb v. Joyce*, No. 25 Civ. 6373, 2025 WL 2398831 (S.D. N.Y. Aug. 19, 2025)
- *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248, 2025 WL 2419263 (N.D. Cal. Aug. 21, 2025)
- *Leal-Hernandez v. Noem*, No. 25-CV-02428, 2025 WL 2430025 (D. Md. Aug. 24, 2025)
- *Ruben Benitez v. Noem*, No. 25-CV-2190 (C.D. Cal. Aug. 26, 2025) (Dkt. 11)
- *Kostak v. Trump*, No. 25-CV-1093, 2025 WL 2472136 (W.D. La. Aug. 27, 2025)
- *Jose J.O.E. v. Bondi*, --- F.Supp.3d ---, 2025 WL 2466670 (D. Minn. Aug. 27, 2025)
- *Diaz Diaz v. Mattivelo*, No. 25-CV-12226, 2025 WL 2457610 (D. Mass. Aug. 27, 2025)
- *Francisco T. v. Bondi*, --- F.Supp.3d ---, 2025 WL 2629839 (D. Minn. Aug. 29, 2025)
- *Lopez-Campos v. Raycraft*, --- F.Supp.3d ---, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025)
- *Vasquez Garcia v. Noem*, No. 25-CV-02180, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025)
- *Doe v. Moniz*, --- F.Supp.3d ---, 2025 WL 2576819 (D. Mass. Sept. 5, 2025)
- *Herrero Encarnacio v. Moniz*, No. 25-12237-LTS (D. Mass. Sept 5, 2025)

**Cases Decided Post *Yajure-Hurtado* (BIA)**
- *Zaragoza Mosqueda v. Noem*, No. 5:25-CV-02304 CAS (BFM), 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025)
- *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025)
- *Sampiao v. Hyde*, No. 1:25-CV-11981-JEK, 2025 WL 2607924 (D. Mass. Sept. 9, 2025)
- *Cuevas Guzman v. Andrews*, No. 1:25-CV-01015-KES-SKO (HC), 2025 WL 2617256 (E.D. Cal. Sept. 9, 2025)
- *Hernandez Marcelo v. Trump*, --- F.Supp.3d ----, 2025 WL 2741230 (S.D. Iowa Sept. 10, 2025)

- *Lopez Santos v. Noem*, No. 3:25-CV-01193, 2025 WL 2642278 (W.D. La. Sept. 11, 2025)
- *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503 (N.D. Cal. Sept. 12, 2025)
- *Garcia Cortes v. Noem*, No. 1:25-CV-02677-CNS, 2025 WL 2652880 (D. Colo. Sept. 16, 2025)
- *Maldonado Vazquez v. Feeley*, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082 (D. Nev. Sept. 17, 2025)
- *Salazar v. Dedos*, No. 1:25-CV-00835-DHU-JMR, 2025 WL 2676729 (D. N.M. Sept. 17, 2025)
- *Oliveros v. Kaiser*, No. 25-CV-07117-BLF, 2025 WL 2677125 (N.D. Cal. Sept. 18, 2025)
- *Beltran Barrera v. Tindall*, No. 3:25-CV-541-RGJ, 2025 WL 2690565 (W.D. Ky. Sept. 19, 2025)
- *Hasan v. Crawford*, No. 1:25-CV-1408 (LMB/IDD), --- F.Supp.3d ----, 2025 WL 2682255 (E.D. Va. Sept. 19, 2025)
- *Chogllo Chafla v. Scott*, No. 25-CV-00437, 2025 WL 2688541 (D. Me. Sept. 22, 2025)
- *Singh v. Lewis*, No. 25-CV-96, 2025 WL 2699219 (W.D. Ky. Sept. 22, 2025)
- *Campos Leon v. Forestal*, No. 25-01774, 2025 WL 2694763 (S.D. Ind. Sept. 22, 2025)
- *Lepe v. Andrews*, --- F.Supp.3d ---, 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025)
- *Giron Reyes v. Lyons*, --- F.Supp.3d ---, 2025 WL 2712427 (N.D. Iowa Sept. 23, 2025)
- *Brito Barrajas v. Noem*, No. 25-CV-00322, 2025 WL 2717650 (S.D. Iowa Sept. 23, 2025)
- *Sanchez Roman v. Noem*, No. 2:25-CV-01684-RFB-EJY, 2025 WL 2710211 (D. Nev. Sept. 23, 2025)
- *Roa v. Albarran*, No. 25-CV-07802, 2025 WL 2732923 (N.D. Cal. Sept. 25, 2025)
- *Lopez v. Hardin*, No. 25-CV-830, 2025 WL 2732717 (M.D. Fla. Sept. 25, 2025)
- *Rivera Zumba v. Bondi*, No. 25-CV-14626, 2025 WL 2753496 (D. N.J. Sept. 26, 2025)
- *Valencia Zapata v. Kaiser*, --- F.Supp.3d ---, 2025 WL 2741654 (N.D. Cal. Sept. 26, 2025)
- *Santiago Flores v. Noem*, No. 5:25-cv-02490-AB-AJR, 2025 WL 3050062 (C.D. Cal. Sept. 29, 2025)
- *Inlago Tocagon v. Moniz*, --- F.Supp.3d ---, 2025 WL 2778023 (D. Mass. Sept. 29, 2025)
- *Romero-Nolasco v. McDonald*, --- F.Supp.3d ---, 2025 WL 2778036 (D. Mass. Sept. 29, 2025)
- *Chang Barrios v. Shepley*, No. 25-CV-00406, 2025 WL 2772579 (D. Me. Sept. 29, 2025)
- *Alves da Silva v. ICE*, No. 25-CV-284, 2025 WL 2778083 (D. N.H. Sept. 29, 2025)
- *J.U. v. Maldonado*, No. 25-CV-04836, 2025 WL 2772765 (E.D. N.Y. Sept. 29, 2025)
- *Quispe v. Crawford*, No. 25-CV-1471, 2025 WL 2783799 (E.D. Va. Sept. 29, 2025)
- *Rodriguez Vazquez v. Bostock*, No. 3:25-CV-05240-TMC, --- F.Supp.3d ----, 2025 WL 2782499 (W.D. Wash. Sept. 30, 2025) (granting summary judgment)
- *Chiliquinga Yumbillo v. Stamper*, No. 25-CV-00479, 2025 WL 2783642 (D. Me. Sept. 30, 2025)
- *Morales v. Plymouth Cnty. Corr. Facility*, No. 25-CV-12602 (D. Mass. Sept. 30, 2025) (Dkt. 15)
- *Santiago Helbrum v. Williams*, No. 4:25-cv-00349-SHL-SBJ, 2025 WL 2840273 (S.D. Iowa Sept. 30, 2025)
- *Quispe-Ardiles v. Noem*, No. 25-CV-01382, 2025 WL 2783800 (E.D. Va. Sept. 30, 2025)

- *Esmeralda Mendoza v. Hyde*, No. 25-12815-JEK (D. Mass. Oct. 1, 2025) (Dkt. 12)
- *Chavez Chavez v. Hyde*, No. 25-12571-JEK (D. Mass. Oct. 1, 2025) (Dkt. 11)
- *De Oliveira Gomes v. Hyde*, No. 25-12737-JEK (D. Mass. Oct. 1, 2025) (Dkt. 8)
- *Reynosa Tejada v. Moniz*, No. 1:25-cv-12731-LTS (D. Mass. Oct. 1, 2025) (Dkt. 10)
- *D.S. v. Bondi*, No. 25-CV-3682, 2025 WL 2802947 (D. Minn. Oct. 1, 2025)
- *De Miranda Silva v. Hyde*, No. 25-12679-ADB (D. Mass. Oct. 2, 2025) (Dkt. 9)
- *De Sousa v. Hyde*, No. 25-12736-BEM (D. Mass. Oct. 2, 2025) (Dkt. 8)
- *Goncalves Xavier v. Moniz*, No. 25-12798-JEK (D. Mass. Oct. 2, 2025) (Dkt. 14)
- *Rocha v. Hyde*, No. 25-CV-12584, 2025 WL 2807692 (D. Mass. Oct. 2, 2025)
- *Chanaguano Caiza v. Scott*, No. 25-CV-00500, 2025 WL 2806416 (D. Me. Oct. 2, 2025)
- *Moreira Neto v. FCI Berlin, Warden*, No. 25-311-JL-TSM (D. N.H. Oct. 2, 2025) (Dkt. 14)
- *Ayala Casun v. Hyde*, No. 25-CV-427, 2025 WL 2806769 (D. R.I. Oct. 2, 2025)
- *Guzman Alfaro v. Wamsley*, No. 25-CV-01706, 2025 WL 2822113 (W.D. Wash. Oct. 2, 2025)
- *Guerrero Orellana v. Moniz*, No. 25-CV-12664-PBS, --- F.Supp.3d ----, 2025 WL 2809996 (D. Mass. Oct. 3, 2025)
- *Echevarria v. Bondi*, No. 25-CV-03252, 2025 WL 2821282 (D. Ariz. Oct. 3, 2025)
- *Alvarenga Matute v. Wofford*, No. 25-CV-01206, 2025 WL 2817795 (E.D. Cal. Oct. 3, 2025)
- *Cordero Pelico v. Kaiser*, No. 25-CV-07286, 2025 WL 2822876 (N.D. Cal. Oct. 3, 2025)
- *Escobar v. Hyde*, No. 25-CV-12620, 2025 WL 2823324 (D. Mass. Oct. 3, 2025)
- *Martins Valadares v. Hyde*, No. 1:25-cv-12693-ADB (D. Mass. Oct. 3, 2025) (Dkt. 8)
- *Ribeiro Da Silva v. Hyde*, No. 1:25-cv-12756-JEK (D. Mass. Oct. 3, 2025) (Dkt. 9)
- *Shinwari v. Hyde*, No. 1:25-cv-12021-LTS (D. Mass. Oct. 3, 2025 (Dkt. 37)
- *Lopez Pop, v. Noem*, No. 25-02589, 2025 WL 3050095 (C.D. Cal. Oct. 3, 2025)
- *Artiga v. Genalo*, No. 25-CV-5208, 2025 WL 2829434 (E.D. N.Y. Oct. 5, 2025)
- *Diaz Dimas et al. v. Moniz*, No. 1:25-cv-12665-LTS (D. Mass. Oct. 6, 2025) (Dkt. 14)
- *Pereira De Souza v. Hyde*, No. 1:25-cv-12532-RGS (D. Mass. Oct. 6, 2025) (Dkt. 13)
- *Velasco-Luis v. Hyde*, No. 1:25-cv-12747-RGS (D. Mass. Oct. 6, 2025)) (Dkt. 8)
- *Hyppolite v. Noem*, No. 25-CV-4304, 2025 WL 2829511 (E.D. N.Y. Oct. 6, 2025)
- *Cardoso De Sa v. Hyde*, No. 1:25-cv-12788-RGS (D. Mass. Oct. 7, 2025) (Dkt. 9)
- *Cardoso Dos Santos v. Hyde*, No. 1:25-cv-12787-RGS (D. Mass. Oct. 7, 2025) (Dkt. 7)
- *Carmona Reyes v. Hyde*, No. 1:25-cv-12781-RGS (D. Mass. Oct. 7, 2025) (Dkt. 8)
- *Da Silva v. Hyde*, No. 1:25-cv-12638-IT (D. Mass. Oct. 7, 2025) (Dkt. 10)
- *Fonseca De Sa v. Hyde*, No. 1:25-cv-12734-ADB (D. Mass. Oct. 7, 2025) (Dkt. 8)
- *S.D.B.B. v. Johnson*, No. 1:25-CV-882, 2025 WL 2845170 (M.D. N.C. Oct. 7, 2025)
- *Buenrostro-Mendez v. Bondi*, No. 4:25-cv-03726 (S.D. Tex. Oct. 7, 2025) (Dkt. 18)
- *De Andrade v. Moniz*, --- F.Supp.3d ----, No. 25-CV-12455-FDS, 2025 WL 2841844 (D. Mass. Oct. 7, 2025)
- *Torres v. Wamsley*, No. 25-5772, 2025 WL 2855379 (W.D. Wash. Oct. 8, 2025)
- *Goncalves Bento et al. v. Moniz*, No. 1:25-cv-12498-RGS (D. Mass. Oct. 8, 2025) (Dkt. 8)

- *Eliseo A.A. v. Olson*, No. CV 25-3381 (JWB/DJF), 2025 WL 2886729 (D. Minn. Oct. 8, 2025)
- *Padron Covarrubias v. Vergara*, No. 5:25-cv-00112, 2025 WL 2950097 (S.D. Tex. Oct. 8, 2025)
- *Lopez Lopez v. Hyde*, No. 1:25-cv-12725-IT (D. Mass. Oct. 8, 2025) (Dkt. 14)
- *Ortiz Donis v. Chestnut*, No. 1:25-CV-01228 JLT SAB, 2025 WL 2879514 (E.D. Cal. Oct. 9, 2025)
- *Alvarez Chavez v. Kaiser*, No. 3:25-cv-06984-LB, 2025 WL 2909526 (N.D. Cal. Oct. 9, 2025)
- *De Los Reyes Gonzalez v. McDonald*, No. 1:25-cv-12644-RGS (D. Mass. Oct. 9, 2025) (Dkt. 10)
- *Pereira v. Hyde*, No. 1:25-cv-12775-ADB (D. Mass. Oct. 9, 2025) (Dkt. 8)
- *Rosa Venancio v. Hyde*, No. 1:25-cv-12616-IT (D. Mass. Oct. 9, 2025) (Dkt. 12)
- *Seidu v. Moniz*, No. 1:25-cv-12723-BEM (D. Mass. Oct. 9, 2025) (Dkt. 11)
- *Tawela v. Wesling*, No. 1:25-cv-12794-AK (D. Mass. Oct. 9, 2025) (Dkt. 11)
- *Vasconcelos De Castro v. Hyde*, No. 1:25-cv-12785-AK (D. Mass. Oct. 9, 2025) (Dkt. 13)
- *Ballestros v. Noem*, No. 25-594, 2025 WL 2880831 (W.D. Ky. Oct. 9, 2025)
- *Landaverde v. Hyde*, No. 1:25-cv-12552-MJJ (D. Mass. Oct. 10, 2025) (Dkt. 16)
- *Lopez Orellana v. Moniz*, No. 1:25-cv-12908-PBS (D. Mass. Oct. 10, 2025) (Dkt. 12)
- *Monzon Guzman v. Hyde*, No. 1:25-cv-12593-MJJ (D. Mass. Oct. 10, 2025) (Dkt. 14)
- *Orellana-Serrano v. Hyde*, No. 1:25-cv-12646-MJJ (D. Mass. Oct. 10, 2025) (Dkt. 18)
- *Carlos v. Noem*, No. 2:25-CV-01900-RFB-EJY, 2025 WL 2896156 (D. Nev. Oct. 10, 2025)
- *Castillo v. Lyons*, No. 25-CV-16219 (MEF), 2025 WL 2940990 (D. N.J. Oct. 10, 2025)
- *Alejandro v. Olson*, No. 1:25-CV-02027-JPH-MKK, 2025 WL 2896348 (S.D. Ind. Oct. 11, 2025)
- *E.C. v. Noem*, No. 2:25-CV-01789-RFB-BNW, 2025 WL 2916264 (D. Nev. Oct. 14, 2025)
- *Singh v. Lyons*, No. 1:25-CV-01606-AJT-WBP, 2025 WL 2932635 (E.D. Va. Oct. 14, 2025)
- *Pablo Sequen v. Albarran*, --- F.Supp.3d ----, 2025 WL 2935630 (N.D. Cal. Oct. 15, 2025)
- *Merino v. Ripa*, No. 25-23845-CIV, 2025 WL 2941609 (S.D. Fla. Oct. 15, 2025)
- *Puga v. Assistant Field Off. Dir., Krome N. Serv. Processing Ctr.*, No. 25-24535-CIV, 2025 WL 2938369 (S.D. Fla. Oct. 15, 2025)
- *Garcia Domingo v. Castro*, No. 25-00979, --- F.Supp.3d ----, 2025 WL 2941217 (D. N.M. Oct. 15, 2025)
- *Ochoa v. Noem*, No. 25 CV 10865, 2025 WL 2938779 (N.D. Ill. Oct. 16, 2025)
- *Andrade Hernandez v. Moniz*, No. 25-12860-ADB (D. Mass. Oct. 16, 2025) (Dkt. 8)
- *Cruz Avalos v. Moniz*, No. 25-12940-BEM (D. Mass. Oct. 16, 2025) (Dkt. 8)
- *Chavez Mendoza v. Moniz*, No. 25-12978-PBS (D. Mass. Oct. 16, 2025) (Dkt. 13)
- *Dume Rivera v. Moniz*, No. 25-12833-FDS (D. Mass. Oct. 16, 2025) (Dkt. 12)
- *Garcia Liranzo v. Moniz*, No. 25-12930-BEM (D. Mass. Oct. 16, 2025) (Dkt. 11)
- *Pineda-Chavez v. Moniz*, No. 25-12932-MJJ (D. Mass. Oct. 16, 2025) (Dkt. 9)

- *Zacarias-Sanchez v. Moniz*, No. 25-12915-BEM (D. Mass. Oct. 16, 2025) (Dkt. 9)
- *Pérez Piña v. Stamper*, No. 2:25-cv-00509-SDN (D. Me. Oct. 16, 2025) (Dkt. 20)
- *Hernandez v. Crawford*, No. 1:25-CV-01565-AJT-WBP, 2025 WL 2940702 (E.D. Va. Oct. 16, 2025)
- *Menjivar Sanchez v. Wofford*, No. 1:25-CV-01187-SKO (HC), 2025 WL 2959274 (E.D. Cal. Oct. 17, 2025)
- *Mendoza Gutierrez v. Baltasar*, No. 25-CV-2720-RMR, 2025 WL 2962908 (D. Colo. Oct. 17, 2025)
- *Garcia Guaman v. Hyde*, No. 25-12879-ADB (D. Mass. Oct. 17, 2025) (Dkt. 7)
- *Nogueira Da Silva v. Hyde*, No. 25-12931-LTS (D. Mass. Oct. 17, 2025) (Dkt. 10)
- *Lema Zamora v. Noem*, 25-12750-NMG, 2025 WL 2958879 (D. Mass. Oct. 17, 2025)
- *Contreras-Cervantes v. Raycraft*, No. 2:25-CV-13073, 2025 WL 2952796 (E.D. Mich. Oct. 17, 2025)
- *Diaz Sandoval v. Raycraft*, No. 2:25-CV-12987, 2025 WL 2977517 (E.D. Mich. Oct. 17, 2025)
- *Pacheco Mayen v. Raycraft*, No. 2:25-CV-13056, 2025 WL 2978529 (E.D. Mich. Oct. 17, 2025)
- *Sanchez Alvarez v. Noem*, No. 1:25-CV-1090, 2025 WL 2942648 (W.D. Mich. Oct. 17, 2025)
- *Sabi Polo v. Chestnut*, No. 25-01342, 2025 WL 2959346 (E.D. Cal. Oct. 17, 2025)
- *Gonzalez v. Joyce*, No. 25-8250, 2025 WL 2961626 (S.D. N.Y. Oct. 19, 2025)
- *H.G.V.U. v. Smith*, No. 25 CV 10931, 2025 WL 2962610 (N.D. Ill. Oct. 20, 2025)
- *De La Cruz v. Noem*, No. 25-cv-150-LTS (N.D. Iowa Oct. 20, 2025) (Dkt. 24)
- *Da Silva v. Moniz*, No. 25-12563-LTS (D. Mass. Oct. 20, 2025) (Dkt. 15)
- *Hercules Acosta v. Hyde*, No. 25-13011-AK (D. Mass. Oct. 20, 2025) (Dkt. 10)
- *Monzon v. Hyde*, No. 25-12594-RGS (D. Mass. Oct. 20, 2025) (Dkt. 15)
- *Ruiz Barahona v. Hyde*, No. 25-12551-IT (D. Mass. Oct. 20, 2025) (Dkt. 13)
- *Miguel v. Noem*, No. 25 C 11137, 2025 WL 2976480 (N.D. Ill. Oct. 21, 2025)
- *Maldonado de Leon v. Baker*, No. CV 25-3084-TDC, 2025 WL 2968042 (D. Md. Oct. 21, 2025)
- *Araujo Da Silva v. Bondi*, No. 25-12672-DJC, 2025 WL 2969163 (D. Mass. Oct. 21, 2025)
- *Casio-Mejia v. Raycraft*, No. 2:25-CV-13032, 2025 WL 2976737 (E.D. Mich. Oct. 21, 2025)
- *Contreras-Lomeli v. Raycraft*, No. 2:25-CV-12826, 2025 WL 2976739 (E.D. Mich. Oct. 21, 2025)
- *Jimenez Garcia v. Raybon*, No. 2:25-CV-13086, 2025 WL 2976950 (E.D. Mich. Oct. 21, 2025)
- *Santos Franco v. Raycraft*, No. 2:25-CV-13188, 2025 WL 2977118 (E.D. Mich. Oct. 21, 2025)
- *Herrera Avila v. Bondi*, No. CV 25-3741 (JRT/SGE), 2025 WL 2976539 (D. Minn. Oct. 21, 2025)
- *Buestan v. Chu*, No. CV 25-16034 (MEF), 2025 WL 2972252 (D. N.J. Oct. 21, 2025)
- *Flores Pineda v. Simon*, No. 1:25-CV-01616-AJT-WEF, 2025 WL 2980729 (E.D. Va. Oct. 21, 2025)

- *Garcia v. Noem*, No. 5:25-CV-02771-ODW (PDX), 2025 WL 2986672 (C.D. Cal. Oct. 22, 2025)
- *Padilla v. Noem*, No. 25 CV 12462, 2025 WL 2977742 (N.D. Ill. Oct. 22, 2025)
- *Ventura Martinez v. Trump*, No. 3:25-cv-01445-JE-KDM (W.D. La. Oct. 22, 2025) (Dkt. 17)
- *Coelho Gomes v. Moniz*, No. 25-13021-MJJ (D. Mass. Oct. 22, 2025) (Dkt. 8);
- *Cortez Rivera v. Hyde*, No. 25-12390-IT, 2025 WL 2977900 (D. Mass. Oct. 22, 2025)
- *Moreira Aguiar v. Moniz*, No. 25-12706-IT, 2025 WL 2987656 (D. Mass. Oct. 22, 2025)
- *Bethancourt Soto v. Soto*, --- F.Supp.3d ----, 2025 WL 2976572 (D. N.J. Oct. 22, 2025)
- *Loa Caballero v. Baltazar*, No. 25-03120, 2025 WL 2977650 (D. Colo. Oct. 22, 2025)
- *Hernandez Vazquez v. Baltasar*, No. 25-cv-03049-GPG (D. Colo. Oct. 23, 2025) (Dkt. 22)
- *Da Cruz v. Moniz*, No. 25-13067-MJJ (D. Mass. Oct. 23, 2025) (Dkt. 8)
- *Contreras Maldonado v. Cabezas*, No. CV 25-13004, 2025 WL 2985256 (D. N.J. Oct. 23, 2025)
- *Lomeu v. Soto*, No. 25CV16589 (EP), 2025 WL 2981296 (D. N.J. Oct. 23, 2025)
- *Del Cid v. Bondi*, No. 3:25-CV-00304, 2025 WL 2985150 (W.D. Pa. Oct. 23, 2025)
- *Aparicio v. Noem*, No. 25-01919, 2025 WL 2998098 (D. Nev. Oct. 23, 2025)
- *Esquivel-Ipina v. Larose*, No. 25-CV-2672 JLS (BLM), 2025 WL 2998361 (S.D. Cal. Oct. 24, 2025)
- *Nava Hernandez v. Baltazar*, No. 1:25-cv-03094-CNS, 2025 WL 2996643 (D. Colo. Oct. 24, 2025)
- *Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787 (N.D. Ill. Oct. 24, 2025)
- *Ajtzac Osorio v. Hyde*, No. 25-12678-DJC (D. Mass. Oct. 24, 2025) (Dkt. 17)
- *Arias Lopez v. Hyde*, No. 25-12680-NMG (D. Mass. Oct. 24, 2025) (Dkt. 21)
- *Mezdaoui v. Moniz*, No. 25-12999-JEK (D. Mass. Oct. 24, 2025) (Dkt. 9)
- *Aguilar Guerra v. Joyce*, No. 2:25-cv-00534-SDN, 2025 WL 2999042 (D. Me. Oct. 24, 2025)
- *Rodriguez Carmona, v. Noem*, No. 1:25-CV-1131, 2025 WL 2992222 (W.D. Mich. Oct. 24, 2025)
- *Carlos v. Noem*, No. 2:25-CV-01900-RFB-EJY, 2025 WL 2998184 (D. Nev. Oct. 24, 2025)
- *Dominguez-Lara v. Noem*, No. 2:25-CV-01553-RFB-EJY, 2025 WL 2998094 (D. Nev. Oct. 24, 2025)
- *Yobani v. Noem*, No. 1:25-CV-01666-AJT-LRV, 2025 WL 2997507 (E.D. Va. Oct. 24, 2025)
- *Cesario Souza v. Hyde*, No. 25-12461, 2025 WL 2997670 (D. Mass. Oct. 24, 2025)
- *J.A.C.P. v. Wofford*, No. 1:25-CV-01354-KES-SKO (HC), 2025 WL 3013328 (E.D. Cal. Oct. 27, 2025)
- *Martinez-Elvir v. Olson*, No. 3:25-CV-589-CHB, --- F.Supp.3d ---, 2025 WL 3006772 (W.D. Ky. Oct. 27, 2025)
- *Orellana v. Noem*, No. 4:25-CV-112-RGJ, 2025 WL 3006763 (W.D. Ky. Oct. 27, 2025)
- *Pineda Velasquez v. Noem*, No. CV GLR-25-3215, 2025 WL 3003684 (D. Md. Oct. 27, 2025)
- *Chavez Castillo v. Moniz*, No. 25-13091-MJJ (D. Mass. Oct. 27, 2025) (Dkt. 8)

- *De Moura v. Moniz*, No. 25-13058-IT (D. Mass. Oct. 27, 2025) (Dkt. 10)
- *Lopez-Monteros v. Hyde*, No. 25-12629-NMG (D. Mass. Oct. 27, 2025) (Dkt. 21)
- *Mejia Arias v. Moniz*, No. 25-13019-IT (D. Mass. Oct. 27, 2025) (Dkt. 8)
- *Palencia Morales v. Hyde*, No. 25-13031-DJC (D. Mass. Oct. 27, 2025) (Dkt. 8)
- *Lopez v. Warden, Otay Mesa Det. Ctr.*, No. 25-2527, 2025 WL 3005346 (S.D. Cal. Oct. 27, 2025)
- *Gimenez Gonzalez v. Raycraft*, No. 25-CV-13094, 2025 WL 3006185 (E.D. Mich. Oct. 27, 2025)
- *Bautista-Avalos v. Bernacke*, No. 2:25-CV-01987-RFB-BNW, 2025 WL 3014023 (D. Nev. Oct. 27, 2025)
- *Tomas Elias v. Hyde*, No. 25-CV-540-JJM-AEM, 2025 WL 3004437 (D. R.I. Oct. 27, 2025)
- *Duarte Escobar v. Perry*, No. 3:25CV758, 2025 WL 3006742 (E.D. Va. Oct. 27, 2025)
- *Amigon Sanchez v. Olson*, No. 25-12453, 2025 WL 3004580 (N.D. Ill. Oct. 27, 2025)
- *Garcia Picazo v. Sheehan*, No. 25-4057, 2025 WL 3006188 (N.D. Iowa Oct. 27, 2025)
- *Puerto-Hernandez v. Lynch*, No. 1:25-CV-1097, 2025 WL 3012033 (W.D. Mich. Oct. 28, 2025)
- *J.G.O. v. Francis*, No. 25-CV-7233 (AS), 2025 WL 3040142 (S.D. N.Y. Oct. 28, 2025)
- *Zolakio v. Hyde*, No. 25-13040-RGS (D. Mass. Oct. 28, 2025) (Dkt. 8)
- *Arce-Cervera v. Noem*, No. 2:25-CV-01895-RFB-NJK, 2025 WL 3017866 (D. Nev. Oct. 28, 2025)
- *Patel v. Almodovar*, No. CV 25-15345 (SDW), 2025 WL 3012323 (D. N.J. Oct. 28, 2025)
- *Hernandez Lopez v. Hardin*, No. 2:25-cv-00830-KCD-NPM, 2025 WL 3022245 (M.D. Fl. Oct. 29, 2025)
- *Corona Diaz v. Olson*, No. 25 CV 12141, 2025 WL 3022170 (N.D. Ill. Oct. 29, 2025)
- *Marin Garcia v. Noem*, No. 1:25-CV-1271, 2025 WL 3017200 (W.D. Mich. Oct. 29, 2025)
- *Rodriguez v. Noem*, No. 1:25-CV-1196, 2025 WL 3022212 (W.D. Mich. Oct. 29, 2025)
- *Ramirez Valverde v. Olson*, No. 25-CV-1502, 2025 WL 3022700 (E.D. Wis. Oct. 29, 2025)
- *Singh v. Bondi*, No. 1:25-CV-02101-SEB-TAB, 2025 WL 3029524 (S.D. Ind. Oct. 30, 2025)
- *Ayala Amaya v. Bondi*, No. 25-CV-16428-ESK, 2025 WL 3033880 (D. N.J. Oct. 30, 2025)
- *Astudillo v. Hyde*, No. CV 25-551-JJM-AEM, 2025 WL 3035083 (D. R.I. Oct. 30, 2025)
- *Tejada Polanco v. Hyde*, No. 25-CV-552-JJM-AEM, 2025 WL 3033926 (D. R.I. Oct. 30, 2025)
- *Lopez Lopez v. Sheehan*, No. 25-CV-4052-CJW-KEM, 2025 WL 3046183 (N.D. Iowa Oct. 30, 2025)
- *Martinez Lopez v. LaRose*, No. 25-2717, 2025 WL 3030457 (S.D. Cal. Oct. 30, 2025)
- *L.A.E. v. Wamsley*, No. 25-01975, 2025 WL 3037856 (D. Or. Oct. 30, 2025)
- *Ruiz Yarleque v. Noem*, No. 5:25-CV-02836-MEMF-SP, 2025 WL 3043936 (C.D. Cal. Oct. 31, 2025)
- *Artola Arauz v. Baltazar*, No. 1:25-cv-03260-CNS (D. Colo. Oct. 31, 2025) (Dkt. 16)

- *Cervantes Arredondo v. Baltazar*, No. 1:25-cv-03040-RBJ (D. Colo. Oct. 31, 2025) (Dkt. 21)
- *Garcia v. Noem*, No. 2:25-CV-00879-SPC-NPM, 2025 WL 3041895 (M.D. Fla. Oct. 31, 2025)
- *Rosales Ponce v. Olson*, No. 25-CV-13037, 2025 WL 3049785 (N.D. Ill. Oct. 31, 2025)
- *Valencia v. Noem*, No. 25-CV-12829, 2025 WL 3042520 (N.D. Ill. Oct. 31, 2025)
- *Escobar-Ruiz v. Raycraft*, No. 1:25-CV-1232, 2025 WL 3039255 (W.D. Mich. Oct. 31, 2025)
- *Ruiz Mejia v. Noem*, No. 1:25-CV-1227, 2025 WL 3041827 (W.D. Mich. Oct. 31, 2025)
- *De Jesus Ramirez v. Noem*, No. 1:25-CV-1261, 2025 WL 3039266 (W.D. Mich. Oct. 31, 2025)
- *Godinez-Lopez v. Ladwig*, No. 2:25-CV-02962-SHL-ATC, 2025 WL 3047889 (W.D. Tenn. Oct. 31, 2025)
- *Barrios Sandoval v. Acuna*, No. 25-01467, 2025 WL 3048926 (W.D. La. Oct. 31, 2025)
- *J.A.M. v. Streeval*, No. 4:25-CV-342 (CDL), 2025 WL 3050094 (M.D. Ga. Nov. 1, 2025)
- *D.E.C.T. v. Noem*, No. 25 C 12463, 2025 WL 3063650 (N.D. Ill. Nov. 3, 2025)
- *Flores v. Olson*, No. 25 C 12916, 2025 WL 3063540 (N.D. Ill. Nov. 3, 2025)
- *Mboup v. Field Off. Dir. of New Jersey Immigr. & Customs Enf't*, No. 2:25-CV-16882 (MEF), 2025 WL 3062791 (D. N.J. Nov. 3, 2025)
- *Vargas Ramos v. Rokosky*, No. 25CV15892 (EP), 2025 WL 3063588 (D. N.J. Nov. 3, 2025)
- *Galvis Cortes v. Olsen*, No. 25-6293, 2025 WL 3063636 (N.D. Ill. Nov. 3, 2025)
- *Carmelo Beltran v. Noem*, No. 25CV2650-LL-DEB, 2025 WL 3078837 (S.D. Cal. Nov. 4, 2025)
- *Aguirre Villa v. Normand*, No. 5:25-CV-89, 2025 WL 3095969 (S.D. Ga. Nov. 4, 2025)
- *Hernandez Alonso v. Tindall*, No. 3:25-CV-652-DJH, 2025 WL 3083920 (W.D. Ky. Nov. 4, 2025)
- *Salgado Mendoza v. Noem*, No. 1:25-CV-1252, 2025 WL 3077589 (W.D. Mich. Nov. 4, 2025)
- *Alvarez Ortiz v. Freden*, No. 25-CV-960-LJV, 2025 WL 3085032 (W.D. N.Y. Nov. 4, 2025)
- *Menjivar Sanchez v. Wofford*, No. 1:25-CV-01187-SKO (HC), 2025 WL 3089712 (E.D. Cal. Nov. 5, 2025)
- *Reyes Arizmendi v. Noem*, No. 25 C 13041, 2025 WL 3089107 (N.D. Ill. Nov. 5, 2025)
- *Hernandez Capote v. Sec'y of U.S. Dep't of Homeland Security*, No. 25-13128, 2025 WL 3089756 (E.D. Mich. Nov. 5, 2025)
- *Lopez Sarmiento v. Perry*, 1:25-cv-01644-AJT-WBP, 2025 WL 3091140 (E.D. Va. Nov. 5, 2025)
- *Garcia Magadan v. Noem*, No 25-2889, 2025 WL 3090089 (S.D. Cal. Nov. 5, 2025)
- *Mirzoev v. Olson*, No. 25-CV-12969, 2025 WL 3101969 (N.D. Ill. Nov. 6, 2025)
- *Vicens-Marquez v. Soto*, No. CV 25-16906 (KSH), 2025 WL 3097496 (D. N.J. Nov. 6, 2025)
- *Romero Perez v. Francis*, No. 25-CV-8112 (JGK), 2025 WL 3110459 (S.D. N.Y. Nov. 6, 2025)
- *Diaz Garcia v. Noem*, No. 25-1712, 2025 WL 3111223 (E.D. Va. Nov. 6, 2025)

- *Pacheco Carrillo v. Noem*, No. 25-12963, 2025 WL 3101993 (N.D. Ill. Nov. 6, 2025)
- *Hernandez-Luna v. Noem*, No. 25-01818, 2025 WL 3102039 (D. Nev. Nov. 6, 2025)
- *Vasquez Carmaco v. Noem*, 2025 WL 3119263 (M.D. Fla. Nov. 7, 2025)
- *Garcia Rios v. Noem*, 2025 WL 3124173 (N.D. Ill. Nov. 7, 2025)
- *Zaragoza v. Noem*, 5:25-cv-2925-HDV-PVC (C.D. Cal. Nov. 7, 2025) (Dkt. 8)
- *Morales-Martinez v. Raycraft*, No. 25-CV-13303, 2025 WL 3124695 (E.D. Mich. Nov. 7, 2025)
- *Molina Ochoa v. Noem*, 2025 WL 3125846 (D.N.M. Nov. 7, 2025)
- *Hernandez Garcia v. Raycraft*, No. 25-1281, 2025 WL 3122800 (W.D. Mich. Nov. 7, 2025)
- *Herrera Martinez v. Hyde*, No. 25-575, 2025 WL 3124025 (D. R.I. Nov. 7, 2025)
- *Rodriguez Serrano v. Noem*, No. 25-1320, 2025 WL 3122825 (W.D. Mich. Nov. 7, 2025)
- *Munoz Arredondo v. Olson*, No. 25-12882, 2025 WL 3124149 (N.D. Ill. Nov. 7, 2025)
- *Mendez v. Noem*, No. 25-02062, 2025 WL 3124285 (D. Nev. Nov. 7, 2025)
- *Ortega Munoz v. Noem*, No. 1:25-CV-1753-RP, 2025 WL 3218241 (W.D. Tex. Nov. 7, 2025)
- *Guartazaca Sumba v. Crowley*, No. 1:25-CV-13034, 2025 WL 3126512 (N.D. Ill. Nov. 9, 2025)
- *Perez-Gomez v. Warden, Camp East Montana Detention Facility*, No. CV 3:25CV773, 2025 WL 3141103 (E.D. Va. Nov. 10, 2025)
- *Lira Perez v. Noem*, No. 25 C 13442, 2025 WL 3140692 (N.D. Ill. Nov. 10, 2025);
- *Ramirez Martinez v. Noem*, No. 25-CV-12029, 2025 WL 3145103 (N.D. Ill. Nov. 11, 2025);
- *Lopez Briseno v. Noem*, No. 25 C 12092, 2025 WL 3145985 (N.D. Ill. Nov. 11, 2025);
- *Otilio B.F. v. Andrews*, 1:25-cv-01398-KES-EPG (HC), -- F.Supp.3d ----, 2025 WL 3152480 (E.D. Cal. Nov. 11, 2025)
- *Sharan S. v. Chestnut*, No. 1:25-CV-01427-KES-SKO (HC), 2025 WL 3167826 (E.D. Cal. Nov. 12, 2025)
- *Garcia Guevara v. Swearingen*, No. 25 C 12549, 2025 WL 3158151 (N.D. Ill. Nov. 12, 2025)
- *Adonay E.M. v. Noem*, No. 25-CV-3975 (SRN/DTS), 2025 WL 3157839 (D. Minn. Nov. 12, 2025)
- *Chilel Chilel v. Sheehan*, No. C25-4053-LTS-KEM, 2025 WL 3158617 (N.D. Iowa Nov. 12, 2025)
- *Mauricio Diego v. Raycraft*, No. 25-13288, 2025 WL 3159106 (E.D. Mich. Nov. 12, 2025)
- *Contreras Alvarez v. Noem*, No. 1:25-CV-1313, 2025 WL 3151948 (W.D. Mich. Nov. 12, 2025)
- *Lucero v. Noem*, No. 1:25-CV-1295, 2025 WL 3165235 (W.D. Mich. Nov. 12, 2025)
- *Guaman Naula v. Noem*, No. CV 25-16792 (SDW), 2025 WL 3158490 (D. N.J. Nov. 12, 2025)
- *Guaita Quinapanta v. Bondi*, No. 25-CV-795-WMC, 2025 WL 3157867 (W.D. Wis. Nov. 12, 2025)
- *Portillo Martinez v. Hyde*, No. CV 25-11909-BEM, 2025 WL 3152847 (D. Mass. Nov. 12, 2025)

- *Moran Bernal v. Noem*, No. 5:25-cv-2995-CV-SSC (C.D. Cal. Nov. 12, 2025) (Dkt. 9)
- *Vasquez Gonzalez v. Olson*, No. 25-13162, 2025 WL 3158191 (N.D. Ill. Nov. 12, 2025)
- *Hernandez Silva v. Bondi*, No. 9:25-cv-251-MJT (E.D. Tex. Nov. 12, 2025) (Dkt. 10)
- *Aquino v. LaRose*, No. 25-2904, 2025 WL 3158676 (S.D. Cal. Nov. 12, 2025)
- *Pelico Calel v. Larose*, No. 3:25-CV-02883-GPC-JLB, 2025 WL 3171898 (S.D. Cal. Nov. 13, 2025)
- *Maravilla Amaya v. Noem*, No. 25CV2892-BTM-DEB, 2025 WL 3182998 (S.D. Cal. Nov. 13, 2025)
- *Mariscal Serrano v. Salazar*, No. 25 C 13170, 2025 WL 3171354 (N.D. Ill. Nov. 13, 2025)
- *Delgado Avila v. Crowley*, No. 2:25-CV-00533-MPB-MJD, --- F.Supp.3d ----, 2025 WL 3171175 (S.D. Ind. Nov. 13, 2025)
- *Singh v. Noem*, No. 1:25-CV-1251, 2025 WL 3170855 (W.D. Mich. Nov. 13, 2025)
- *Estuardo Marin v. Andrews*, No. 1:25-CV-01422-SAB-HC, 2025 WL 3171484 (E.D. Cal. Nov. 13, 2025)
- *Cabrera v. Noem*, No. 25 C 12160, 2025 WL 3171288 (N.D. Ill. Nov. 13, 2025)
- *Caguana-Caguana v. Moniz*, No. 1:25-CV-13142-IT, 2025 WL 3171043 (D. Mass. Nov. 13, 2025)
- *Anselmo v. Moniz*, No. 1:25-CV-13309-IT, 2025 WL 3171137 (D. Mass. Nov. 13, 2025)
- *Ginez Hernandez v. Noem*, No. 1:25-CV-1307, 2025 WL 3170872 (W.D. Mich. Nov. 13, 2025)
- *Mora Lara v. Noem*, No. 1:25-CV-1332, 2025 WL 3170876 (W.D. Mich. Nov. 13, 2025)
- *Madrid Gonzalez v. Noem*, No. 1:25-CV-1315, 2025 WL 3170879 (W.D. Mich. Nov. 13, 2025)
- *Moreira Da Silva v. LaForge*, No. 25CV17095 (EP), 2025 WL 3173859 (D. N.J. Nov. 13, 2025)
- *Domingo Campos v. Baltazar*, No. 1:25-cv-3062-GPG-NRN (D. Colo. Nov. 13, 2025) (Dkt. 33)
- *Cantu-Cortes v. O'Neill*, No. 25-6338, 2025 WL 317639 (E.D. Pa. Nov. 13, 2025)
- *Castanon Nava v. DHS*, No. 18-cv-3757 (N.D. Ill. Nov. 13, 2025) (Dkt. 247)
- *Rodriguez Loredo v. Forestal*, No. 25 C 12758, 2025 WL 3187319 (N.D. Ill. Nov. 14, 2025)
- *Dionisa Quinonez v. Olson*, No. 25 CV 13524, 2025 WL 3190598 (N.D. Ill. Nov. 14, 2025)
- *Pu Sacvin v. De Anda-Ybarra*, No. 2:25-CV-01031-KG-JFR, 2025 WL 3187432 (D. N.M. Nov. 14, 2025)
- *Kashranov v. Jamison*, No. 2:25-CV-05555-JDW, 2025 WL 3188399 (E.D. Pa. Nov. 14, 2025)
- *Cruz Gutierrez v. Thompson*, No. 4:25-4695, 2025 WL 3187521 (S.D. Tex. Nov. 14, 2025)
- *Ramandi v. Field Office Dir., ICE ERO San Francisco*, No. 1:25-CV-01462-JLT-EPG, 2025 WL 3182732 (E.D. Cal. Nov. 14, 2025)
- *Morales Chavez v. Dir. Of Detroit Field Office*, No. 4:25-CV-2061, 2025 WL 3187080 (N.D. Ohio Nov. 14, 2025)
- *Erazo v. Hardin*, No. 25-00891, 2025 WL 3187136 (M.D. Fla. Nov. 14, 2025)

- *Villa v. Warden Normand*, No. 25-100, 2025 WL 3188406 (S.D. Ga. Nov. 14, 2025)
- *Cardona-Lozano v. Noem*, No. 1:25-CV-1784-RP, 2025 WL 3218244 (W.D. Tex. Nov. 14, 2025)
- *Morillo v. Albarran*, No. 25-01533, 2025 WL 3190899 (E.D. Cal. Nov. 15, 2025)
- *Ortiz Rosales v. Baltazar*, No. 1:25-cv-3275-GPG-KAS (D. Colo. Nov. 16, 2025) (Dkt. 25)
- *Amigon Cardona v. Unknown Party #1*, No. 25-1297, 2025 WL 3200682 (W.D. Mich. Nov. 17, 2025)
- *Sevilla v. Noem*, No. 25-1325, 2025 WL 3200698 (W.D. Mich. Nov. 17, 2025)
- *Escobar Salgado v. Mattos*, No. 2:25-CV-01872-RFB-EJY, 2025 WL 3205356 (D. Nev. Nov. 17 2025)
- *Quishpe-Guaman v. Noem*, No. 25-00211, 2025 WL 3201072 (S.D. Ind. Nov. 17, 2025)
- *Demirel v. Fed. Detention Ctr. Philadelphia*, 2:25-cv-5488-PD, 2025 WL 3218243 (E.D. Pa. Nov. 18, 2025)
- *Cordero Esparza v. Knight*, No. No. 1:25-CV-00601-BLW, 2025 WL 3228282 (D. Idaho Nov. 19, 2025)
- *Duran Serrato v. Anderson*, No. 4:25-CV-00603-BLW, 2025 WL 3229001 (D. Idaho Nov. 19, 2025)
- *Esparza Ibarra v. Knight*, No. 1:25-CV-00597-BLW, 2025 WL 3228968 (D. Idaho Nov. 19, 2025)
- *Jimenez Rangel v. Knight*, No. 1:25-CV-00607-BLW, 2025 WL 3229000 (D. Idaho Nov. 19, 2025)
- *Martinez Martinez v. Knight*, No. 1:25-CV-00610-BLW, 2025 WL 3228987 (D. Idaho Nov. 19, 2025)
- *Ortega Casarez v. Thompson*, No. 1:25-CV-00596-BLW, 2025 WL 3228988 (D. Idaho Nov. 19, 2025)
- *Ortiz Gonzalez v. Knight*, No. 1:25-CV-00602-BLW, 2025 WL 3228975 (D. Idaho Nov. 19, 2025)
- *Perez Camacho v. Hollinshead*, No. 1:25-CV-00593-BLW, 2025 WL 3228998 (D. Idaho Nov. 19, 2025)
- *Quijaba Cordoba v. Knight*, No. 1:25-CV-00605-BLW, 2025 WL 3228945 (D. Idaho Nov. 19, 2025)
- *Estrada Elias v. Knight*, No. 1:25-CV-00594-BLW, 2025 WL 3228262 (D. Idaho Nov. 19, 2025)
- *Rodriguez Arredondo v. Hollinshead*, No. 1:25-CV-00609-BLW, 2025 WL 3228972 (D. Idaho Nov. 19, 2025)
- *Estrada Elias v. Knight*, No. 1:25-CV-00604-BLW, 2025 WL 3229013 (D. Idaho Nov. 19, 2025)
- *Torres Esparza v. Hollinshead*, No. 1:25-CV-00599-BLW, 2025 WL 3228974 (D. Idaho Nov. 19, 2025)
- *Verdugo Lopez v. Anderson*, No. 1:25-CV-00621-BLW, 2025 WL 3228997 (D. Idaho Nov. 19, 2025)
- *Villafana Rodriguez v. Knight*, No. 1:25-CV-00600-BLW, 2025 WL 3228285 (D. Idaho Nov. 19, 2025)

- *Perez Sales v. Mattos*, No. 2:25-CV-01819-RFB-BNW, 2025 WL 3237366 (D. Nev. Nov. 19, 2025)
- *Maldonado Bautista v. Santacruz*, No. 25-CV-1873 (C.D. Cal. Nov. 20, 2025) (Dkt. 81)
- *Suarez Guerrero v. Noem*, No. H-25-5351 (S.D. Tex. Nov. 21, 2025) (Dkt. 16)
- Cantero Garcia v. Wamsley, No. 25-02092, 2025 WL 3123996 (W.D. Wash. Nov. 7, 2025)
- Marcia Navarette v. Wamsley, No. 25-02150, 2025 WL 3134712 (W.D. Wash. Nov. 10, 2025)