IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-02720-RMR

NESTOR ESAI MENDOZA GUTIERREZ, for himself and on behalf of themselves and others similarly situated,

    Petitioner-Plaintiff,

v.

JUAN BALTASAR, Warden, Denver Contract Detention Facility, Aurora, Colorado, in his official capacity,
ROBERT HAGAN, Director of the Denver Field Office for U.S. Immigration and Customs Enforcement, in his official capacity;
KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, in her official capacity;
TODD LYONS, Acting Director of U.S. Immigration and Customs Enforcement, in his official capacity;
PAMELA BONDI, Attorney General of the United States, in her official capacity;
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW;
SIRCE OWEN, Acting Director for Executive Office of Immigration Review, in her official capacity;
U.S. DEPARTMENT OF HOMELAND SECURITY;
AURORA IMMIGRATION COURT; and,
U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,

    Respondents-Defendants.

**MOTION BY DEFENDANTS FOR AN INDICATIVE RULING UNDER RULE 62.1 TO DISSOLVE THE INJUNCTION ENJOINING TRANSFER OR REMOVAL**

Pursuant to Federal Rule of Civil Procedure 62.1, Respondents-Defendants ("Defendants") move for an order indicating to the Tenth Circuit that, if it had jurisdiction over the injunction entered at ECF No. 33 (and then modified at ECF No. 47) that enjoins Defendants from removing class members from the United States or transferring class members from the District of Colorado during the pendency of this case, the Court would dissolve that injunction.

As explained below, the order is contrary to statute and Tenth Circuit precedent. And it threatens to do significant harm. As demonstrated through incidents the week of December 8, 2025, the Court's order jeopardizes the ability of the Department of Homeland Security ("DHS") to transfer individuals with exigent medical needs to facilities that can provide appropriate care.

Defendants have filed a notice of appeal regarding both ECF No. 33 and No. 47. Accordingly, the Court does not have jurisdiction to modify or dissolve those orders. Defendants, thus, proceed with this motion as a request for an indicative ruling under Federal Rule of Civil Procedure 62.1(a).[1]

## BACKGROUND

**I.  The Court issued a class-wide injunction barring transfers of class members even though Plaintiff did not seek one.**

As explained below, the injunction against transfers is not one that Petitioner-

---

[1] Pursuant to D.C.COLO.LCivR 7.1(a), undersigned counsel for Defendants conferred with Plaintiff's counsel regarding Plaintiff's position on this motion by email on December 19 & 22, 2025.  Plaintiff's counsel indicated Plaintiff is unable to take a position prior to the filing of the motion.

Plaintiff ("Plaintiff") requested in his original habeas petition, or in the Amended Complaint, the Motion for a TRO, or the Motion for Class Certification. None of those filings contained a request by Plaintiff that the Court enjoin Defendants from transferring *class* members outside the District of Colorado. Indeed, Plaintiff himself has now stated that the Court need not continue such sweeping class-wide injunctive relief.

This case was brought as a habeas petition, seeking to challenge detention. Plaintiff, a noncitizen who entered the country without inspection and is now seeking a U-visa, challenged his detention on the ground that he was improperly detained under one provision of INA which does not provide for bond hearings (8 U.S.C. § 1225(b)(2)) and should, instead, have been detained under a different provision that does provide for bond hearings (8 U.S.C. § 1226(a)). *See generally* ECF No. 1. He sought immediate release from Immigration and Customs Enforcement ("ICE") custody or, in the alternative, a bond hearing. *Id.*

Plaintiff then filed an Amended Complaint, seeking the same habeas relief for himself and additional relief for himself and a class. ECF No. 6. The Amended Complaint asserts claims under the habeas statute, 28 U.S.C. § 2241, the Administrative Procedure Act ("APA"), 5 U.S.C. § 701-06, and the Declaratory Judgment Act, 28 U.S.C. § 2201. ECF No. 6 ¶¶ 15-16. Plaintiff then filed a Motion for a Temporary Restraining Order ("TRO") and/or a Preliminary Injunction. ECF No. 14. He also filed the Motion for Class Certification, seeking to represent a putative class of noncitizens detained by ICE in Colorado who are ineligible for bond hearings because they are, or will be, detained under 8 U.S.C. § 1225(b)(2) rather than 8 U.S.C.

§ 1226(a).  ECF No. 15.

None of those filings asked the Court enjoin Defendants from transferring *class* members outside the District of Colorado.  Plaintiff asked only for an order enjoining his own removal from the United States or transfer from the District of Colorado.  ECF No. 6 at 25; ECF No. 14 at 1, 15.  Because a request on behalf of the class was not raised by Plaintiff, Defendants did not have an opportunity to respond to such a request as part of briefing on the Petition, the Motion for a TRO, or the Motion for Class Certification.

Although Plaintiff had never requested that the Court issue an order enjoining transfer of class members, the Court nevertheless granted a class-wide injunction.  On October 17, 2025, the Court found that Plaintiff's statutory argument was likely to succeed.  ECF No. 33 at 22 (finding that Plaintiff is "likely to succeed on the merits that he is unlawfully detained under 8 U.S.C. § 1225").  The Court also issued an injunction that "Respondents are enjoined from removing Mr. Gutierrez *and the class he proposes to represent* from the United States or transferring them from the District of Colorado during the pendency of this action."  ECF No. 33 at 36 (emphasis added).  The Court later clarified that the order did not bar transfer or removal of some noncitizens subject to a final order of removal and thus subject to detention under 8 U.S.C. § 1231, rather than §§ 1225 or 1226.  ECF No. 35.  The Court subsequently further modified its order to apply "only to members of the" conditionally certified class.  ECF No. 47 at 15.[2]  But

---

[2] The order now clearly does not apply to individuals that are subject to a final order of removal and, thus, detained under 8 U.S.C. § 1231, not § 1225(b)(2).  *See* ECF No. 47 at 3-4 (defining class).

3

the order still provides class-wide injunctive relief as to the conditionally certified class.

Plaintiff has now *himself* requested that the Court modify the current order so that it would not fully enjoin transfer of class members. As part of his motion for partial summary judgment, he requested that the Court modify the current order so that it does not fully enjoin transfer of class members, but instead require a five-day notice period before transfer of class members. ECF No. 49 at 20 (explaining that "Plaintiff does not ask the court to enjoin further transfers of class members"). That motion remains pending.[3]

**B.    The class-wide injunction on transfers of class members significantly disrupts ICE's operations in a manner that may harm class members.**

DHS often needs to transfer detainees promptly to facilities outside Colorado to address exigent circumstances, including circumstances related to health and security.

ICE ordinarily transfers detainees from one facility to another for various reasons. Movant's App'x, Decl. of A. Hall, ¶ 3. For example, these transfers can be carried out to provide appropriate medical or mental health treatment to detainees, to allow a detainee to attend collateral legal proceedings in another location, to fulfill a detainee's own transfer requests, to prevent overcrowding, to ensure the safety and security of detainees and others at the facility, and to address special circumstances. *Id.*

---

[3] The members of the class in this case are also currently members of a nationwide class certified by the court in *Maldonado Bautista v. Ernesto Santacruz Jr.*, 5:25-cv-01873-SSS-BFM, ECF No. 82 (C.D. Cal. Nov. 25, 2025). The Court in that case has issued a declaratory judgment to the nationwide class there. *See Maldonado Bautista*, 5:25-cv-01873-SSS-BFM, ECF No. 92 (Dec. 18, 2025). On December 18, 2025, the court in *Maldonado Bautista* issued a declaratory judgment as to all class members of that nationwide class, declaring detention under 8 U.S.C. § 1225(b)(2) unlawful and entering a final judgment to that extent. ECF No. 92 at 12.

Some of these transfers must occur quickly to address urgent needs, such as medical and behavioral needs. Detainees at the Denver CDF often present with complex medical or behavioral needs. *Id.* ¶ 5. When such detainees arrive at the Denver CDF, it is the responsibility of ICE to ensure the continuity of medical or mental health care for the detainee. *Id.* ¶ 6. There are times when the doctors or mental health professionals at the Denver Contract Detention Facility ("Denver CDF") in Aurora, Colorado, may determine that Denver CDF cannot accommodate the particular medical needs of an inmate. *Id.* ¶ 7. For instance, a detainee may require involuntary psychiatric treatment, but the medical staff at Denver CDF cannot administer such treatment. *Id.*

In such situations, transfers enable ICE to ensure that such needed care can be provided. ICE has relationships with different medical and behavioral health care systems across the United States that can provide a higher level of care in an inpatient setting. *Id.* There are no other ICE facilities in Colorado that can provide such treatment. *Id.* Accordingly, once the doctors or mental health professionals at Denver CDF determine that a detainee requires a higher level of medical or mental health care, ICE must immediately request admission of the detainee to an appropriate medical or mental health system. *Id.* ¶ 8.

These transfers often require prompt action. Bed space within other medical or mental health systems is not guaranteed. *Id.* ¶ 9. In the case of behavioral health systems, bed space is typically very limited, so once a system accepts the detainee for admission, ICE must immediately transfer the detainee to the accepting facility. *Id.* Any

5

delay in transfer can result in the loss of bed space and, accordingly, it may result in further deterioration of the detainee's medical or mental health. *Id.* ¶¶ 10-11.

The current class-wide injunction, by prohibiting Defendants from transferring class members out of Colorado, prevents transfers for legitimate, and sometimes even urgent, reasons. The injunction thus interferes with ICE's operations in an ongoing manner that threatens to hinder the proper care of those individuals. *Id.* ¶ 12.

These concerns about interference with care are not hypothetical. During the week of December 8, 2025, ICE identified two individuals housed at the Denver CDF who required medical services beyond the capacity of that facility to provide. *See* ECF No. 59. Upon an initial review, ICE determined that those individuals were likely class members and, thus, the Court's order enjoining transfer would apply to them. *Id.* at 3. The Court's order thus prevented an immediate transfer of those individuals.

The process needed to seek relief from the injunction then delayed the transfer of these individuals to receive needed treatment. On December 10, 2025, after ICE's determination that the individuals were likely class members and could not be transferred, counsel for Defendants promptly contacted the class counsel to confer regarding an emergency motion to transfer these individuals. *Id.* Class counsel indicated that they could not formulate a position on the emergency motion without further information, including medical records for the two individuals. *Id.* Defendants filed the emergency motion the evening of December 10, 2025, asking for a ruling from the Court by the end of the day on December 11, 2025. *Id.* at 2. On December 11, 2025, the Court ordered a response from class counsel and asked Defendants to

provide further information.  ECF No. 60.  Defendants provided the Court information regarding the two individuals under a Level 2 restriction, thus providing *in camera* access to the Court only.  ECF No. 61.  Class counsel filed a response, explaining they still required more information to formulate a position.  ECF No. 63.  The Court then ordered the parties to confer regarding the issues in the emergency motion and to file a joint status report by the end of the day.  ECF No. 64.  After conferral, which involved further requests from class counsel for information regarding where the individuals would be sent, the status of their immigration proceedings, and further information about their medical needs, the parties submitted a joint status report and proposed order allowing for the transfer the evening of December 11, 2025.  ECF No. 65.  The next morning, December 12, 2025, the Court granted the proposed order.  ECF No. 66.

**C.     The injunction has been appealed.**

On December 15, 2025, Defendants filed a notice of appeal of the October 17, 2025, order on the Motion for a TRO, and the November 21, 2025, order on the Motion for Class Certification.  ECF No. 68.

## ARGUMENT

**I.     The Court retains authority to consider this motion and make an indicative ruling.**

Because Defendant has filed a notice of appeal of both the Court's temporary restraining order, ECF No. 33, as well as the Court's order granting class certification, ECF No. 47, the notice of appeal grants jurisdiction to the Tenth Circuit to review the injunction at issue.  *See* 28 U.S.C. § 1292(a)(1) (providing courts of appeals "jurisdiction of appeals from . . . [i]nterlocutory orders of the district courts . . . granting injunctions").

That notice of appeal withdrew this Court's authority to modify the injunction. As a general rule, "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). Courts have explained that "[o]nce an appeal from a [preliminary injunction] has been filed, the district court may generally 'not alter the injunction . . . except to maintain the status quo of the parties pending the appeal.'" *Pueblo of Pojoaque v. State*, 233 F. Supp. 3d 1021, 1091 (D.N.M. 2017) (quoting *Coastal Corp. v. Texas E. Corp.*, 869 F.2d 817, 819-20 (5th Cir. 1989)); *cf. Stewart v. Donges*, 915 F.2d 572, 575–76 (10th Cir. 1990) ("[W]hen an interlocutory appeal is taken, the district court [only] retains jurisdiction to proceed with *matters not involved in that appeal.*" (citation omitted; emphasis in original)). This Court thus lacks jurisdiction at this time to modify the injunction it has entered.[4]

But this Court retains the authority to consider a motion to modify the injunction. Federal Rule of Civil Procedure 62.1(a) provides that "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending," the district court can take one of three actions: "(1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a

---

[4] For the same reason, the Court also lacks jurisdiction to modify the order as Plaintiff has requested as part of the Partial Motion for Summary Judgment, ECF No. 49 at 20.

substantial issue." Here, Defendants move for an order stating that this Court would grant this motion if the court of appeals remands for that purpose.

## II. The INA, Tenth Circuit precedent, and the public interest support dissolving the injunction barring transfer of class members.

Several strong reasons support an indicative ruling that this Court, if provided the opportunity, would dissolve its injunction prohibiting Respondents from transferring class members outside the District of Colorado. As explained above, the class-wide injunction is one that Plaintiff did not seek and himself has moved to modify. As explained below, the injunction is barred by two statutory provisions, as recognized in Tenth Circuit precedent. And it threatens harm to both ICE and class members and is contrary to the public interest.

**Two separate provisions of the INA bar the Court from enjoining transfer on a class-wide basis.** Congress has provided that "[t]he Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." 8 U.S.C. § 1231(g)(1). The Court's injunction as to that placement decision is barred by two INA provisions.

First, Congress, in § 1252(f)(1), deprived district courts of "jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter [8 U.S.C. § 1221-1232] . . . other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated." Because § 1231 is found in "this subchapter," this bar on class-wide injunctive relief extends to such placement decisions under § 1231(g).

9

The Tenth Circuit has determined that § 1252(f)(1) bars such class-wide relief.  In *Van Dinh v. Reno*, 197 F.3d 427 (10th Cir. 1999), the plaintiffs had sought injunctive relief as to the class, and the district court issued a TRO ordering that the class not be transferred out of the Denver area.  *Id.* at 429.  The Tenth Circuit first ruled that the "Attorney General's discretionary power to transfer aliens from one locale to another, as she deems appropriate, arises from" the authority granted in § 1231(g).  *Id.* at 433.  The Tenth Circuit concluded that "§ 1252(f) forecloses jurisdiction to grant class-wide injunctive relief to restrain operation of §§ 1221–31 by any court other than the Supreme Court."  *Id.*  The Tenth Circuit went on to explain that "[i]t is therefore apparent that a district court has no jurisdiction to restrain the Attorney General's power to transfer aliens to appropriate facilities by granting injunctive relief in a *Bivens* class action suit."  *Id.*  Indeed, this Court, in its order granting the TRO, recognized that in *Van Dinh* "the Tenth Circuit interpreted § 1252 of the INA to deprive the court of jurisdiction, in a class action lawsuit, to restrain the Attorney General's power to transfer noncitizens to appropriate facilities by granting injunctive relief."  ECF No. 33 at 31.

Second, Congress, in § 1252(a)(2)(B)(ii), separately deprived courts of the authority to review discretionary decisions.  8 U.S.C. § 1252(a)(2)(B)(ii) provides that "no court shall have jurisdiction to review . . . any . . . decision or action of the Attorney General . . . the authority for which is specified under this subchapter to be in the discretion of the Attorney General."

Again, in *Van Dinh*, the Tenth Circuit explained that this provision "further" applies to bar injunctive relief challenging the government's discretionary decision

regarding where to place detainees. The Tenth Circuit recognized that the decision where to place detainees is one where the government has been granted discretion. It observed that 8 U.S.C. § 1231(g)(1) provides "[t]he Attorney General[ ] discretionary power to transfer aliens from one locale to another, *as she deems appropriate*." 197 F.3d at 433 (emphasis added). The court concluded that "[b]ecause the discretionary decision to transfer aliens from one facility to another and the correlative discretionary decision to grant or deny relief from such a transfer is a 'decision . . . under this subchapter,' judicial review of that decision is expressly barred by § 1252(a)(2)(B)(ii)." *Id.* at 434 (citations omitted).

The Tenth Circuit in *Van Dinh* thus held that two separate statutory provisions barred the class-wide limitation on transfers the district court has granted in that case. It explained that the district court had lacked authority to issue such an order "[b]ecause the district court had no jurisdiction to review the Attorney General's discretionary decision to transfer and detain appellants in another INS facility under § 1252(a)(2)(B)(ii) and because the complaint requested a remedy the district court had no jurisdiction to grant under § 1252(f) . . . ." *Id.* at 435.

This Court, in its TRO, nevertheless determined that *Van Dinh* was "distinguishable from the case presented here" because it had not resolved whether those INA provisions bar *declaratory* relief for *constitutional* claims. ECF No. 33 at 31. This Court observed that the Tenth Circuit in *Van Dinh* had "declined to decide whether § 1252(f) bars review when constitutional due process issues are raised." *Id.* at 31-32. This Court then reasoned that *Van Dinh* "specifically did not address, let alone preclude,

11

declaratory relief in a case such as this, which seeks collateral review of constitutional issues." *Id.* at 31-32.

But the distinction this Court relied on—about whether *Van Dinh* applies to *declaratory* relief for *constitutional* claims—does not show that *Van Dinh* does not apply the relief the Court granted here. In barring transfer of class members, this Court granted *injunctive*—not declaratory—relief. And, as to this particular issue of transfer of class members, Plaintiff has *not* argued that their transfer would violate the Constitution. Accordingly, this Court's injunction is governed the Tenth Circuit's reasoning in *Van Dinh*, which makes clear that this kind of injunction against the transfer of class members violates *both* § 1252(f)(1) § 1252(a)(2)(B)(ii). Plaintiff's proposed requirement of five-days' notice before transfer of class members fairs no better. The proposed order would effectively enjoin Defendants from any transfer for a minimum of five days after they exercise the § 1231(g) discretion to transfer a class member. That relief—like the Court's current limit on transfer—would be barred by §§ 1252(f)(1) and 1252(a)(2)(B)(ii).

**The public interest further supports modifying the injunction to grant ICE retain the discretion regarding where to transfer individual detainees, including on short notice.** Even if the injunction against the transfer of class members were not barred by two INA provisions and Tenth Circuit precedent, the public interest would still support dissolving that part of the Court's injunction. Congress has expressly granted the government the discretion to transfer detainees as circumstances require. *See* 8 U.S.C. § 1231(g)(1).

Here, this Court's class-wide restriction on transfer disrupts ICE operations in a way that risks serious harm to detainees. As described above, ICE determined that it needed to transfer two individuals the week of December 8, 2025, because the Denver CDF could not accommodate their particular medical needs. ICE identified facilities that were willing and able to take those individuals. But due to the delay involved in moving to modify the injunction as to those individuals, conferring with the class counsel regarding information they believed they needed, and waiting on the Court's order, the needed transfers of these individuals were delayed.

As described above, *supra* at pp. 4-6, medical needs are not the only reason that a detainee may need to be transferred. Detainees may need to be transferred for a variety of reasons, including security needs, to reduce overcrowding, to allow a detainee to attend collateral legal proceedings in another location. Movant's App'x, Decl. of A. Hall, ¶ 3. These factual circumstances are often unique and changing, factors that together underscore why Congress granted DHS the discretion to determine appropriate housing for immigration detainees in 8 U.S.C. § 1231(g)(1). *See Van Dinh*, 197 F.3d at 433.

It would be impractical for Defendants to seek a modification of the injunction every time some need to transfer a detainee may arise. Given the logistics of identifying bed space for individuals in other facilities and arranging transportation, Defendants cannot engage in a lengthy conferral and briefing process each time that an individual detainee needs to be transferred for medical reasons. *See* Movant's App'x, Decl. of A. Hall, ¶¶ 10-12. Requiring Defendants to go through the same process for

other class members puts those individuals at risk of not receiving the medical assistance they need in a timely manner—an outcome § 1231(g)(1) is intended to avoid. This process may become even more cumbersome now that there is an appeal regarding ECF Nos. 33 and 47, which may mean that the Court could not modify those orders absent an indicative ruling and remand. Plaintiff's proposed five-day notice period would present the same issues and continue to impose the same harms.

Finally, Plaintiff has not shown that the restriction on transfers serves an important public purpose.[5] On the contrary, as explained above, the class-wide bar on transfers threatens a variety of public harms—denying timely medical or mental health treatment to certain detainees, inhibiting the ability of a detainee to attend collateral legal proceedings in another location, preventing ICE from fulfilling a detainee's own transfer requests; preventing ICE from avoiding overcrowding, and preventing ICE from taking steps to ensure the safety and security of detainees and others at the facility and

---

[5] Indeed, all the individual class members in this matter are also members of the nationwide class certified in the *Maldonado Bautista* case pending in the Central District of California. *See Maldonado Bautista v. Ernesto Santacruz Jr.*, 5:25-cv-01873-SSS-BFM, ECF No. 82 at 2 (C.D. Cal. Nov. 25, 2025). The *Maldonado Bautista* court certified a class including:

> All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.

5:25-cv-01873-SSS-BFM, ECF No. 82 at 2. It is not clear which members of the class in this matter would not fall within this definition, regardless of where they are detained.

to address other special circumstances. The public interest thus further warrants granting the relief sought here.

## CONCLUSION

The Court should issue an indicative ruling that, if it had jurisdiction to do so, it would dissolve the order issued at ECF No. 33 and modified at ECF No. 47 that enjoins the transfer of class members outside the District of Colorado.

Dated: December 22, 2025

>PETER MCNEILLY
>United States Attorney
>
>*s/ Benjamin Gibson*
>Benjamin Gibson
>Brad Leneis
>Timothy Bart Jafek
>Assistant United States Attorneys
>1801 California Street, Suite 1600
>Denver, Colorado 80202
>Telephone: (303) 454-0100
>benjamin.gibson@usdoj.gov
>brad.leneis2@usdoj.gov
>timothy.jafek@usdoj.gov
>
>Attorneys for Respondents-Defendants Executive Office of Immigration Review, U.S Department of Homeland Security, Aurora Immigration Court, and U.S. Immigration and Customs Enforcement, and Juan Baltasar, Robert Hagan, Kristi Noem, Todd Lyons, Pamela Bondi, and Sirce Owen in their official capacities

## CERTIFICATE OF SERVICE

      I hereby certify that on December 22, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/ Benjamin Gibson*
Benjamin Gibson
U.S. Attorney's Office
