**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-CV-2720-RMR

NESTOR ESAI MENDOZA GUTIERREZ, for himself and on behalf of themselves and others similarly situated,

      Petitioners-Plaintiffs,

v.

JUAN BALTASAR, Warden, Denver Contract Detention Facility, Aurora, Colorado, in his official capacity,

ROBERT HAGAN, Director of the Denver Field Office for U.S. Immigration and Customs Enforcement, in his official capacity;

KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, in her official capacity;

TODD LYONS, Acting Director of U.S. Immigration and Customs Enforcement, in his official capacity;

PAMELA BONDI, Attorney General of the United States, in her official capacity;

EXECUTIVE OFFICE FOR IMMIGRATION REVIEW;

DAREN K. MARGOLIN, Director for Executive Office of Immigration Review, in his official capacity;

U.S. DEPARTMENT OF HOMELAND SECURITY;

AURORA IMMIGRATION COURT; and,

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,

      Respondents-Defendants.

---

**SECOND AMENDED CLASS ACTION COMPLAINT FOR VACATUR AND DECLARATORY AND *HABEAS CORPUS* RELIEF**

---

**INTRODUCTION**

1. Petitioner-Plaintiff Nestor Esai Mendoza Gutierrez ("Plaintiff") is a noncitizen and decades-long resident of the United States. At the time this lawsuit was filed, he was detained under Respondent-Defendants' ("Defendants'") new, draconian

policy reinterpreting the immigration detention statutes to preclude Plaintiff (and numerous others similarly situated) from eligibility for bond hearings under the Immigration and Nationality Act (INA), 8 U.S.C. § 1226(a), and for bond hearings under 8 C.F.R. §§ 1003.19(a) & 1236.1(d). Instead, pursuant to this cruel new policy, Defendants now misclassify Mr. Mendoza Gutierrez and hundreds of those similarly situated as people "seeking admission" to this country, even though they have been living in the U.S. for years and sometimes decades. This change subjects Mr. Mendoza Gutierrez and hundreds of other people to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), without the opportunity for release on bond during the pendency of their immigration removal proceedings.

2. According to news reports, immigration officials within the Trump Administration requested this new policy in response to Congress' recent appropriation of billions of dollars to expend the immigration detention system, given that on any given day ICE will soon have the capacity to detain more than twice as many people who are currently detained.[1] Indeed, it is estimated that Defendants' capacity to detain people in Colorado alone will soon more than triple.[2] This unlawful change in policy at the Aurora immigration court and nationally is designed to fill up the new detention centers that are coming across the country.

---

[1] *See* Michelle Hackman, *New ICE Policy Blocks Detained Migrants From Seeking Bond*, WALL STREET JOURNAL (July 15, 2025), https://www.wsj.com/politics/policy/new-ice-policy-blocks-detained-migrants-from-seeking-bond-f557402a [https://perma.cc/K8NY-DAAZ].

[2] Seth Klamann, *ICE plans to open as many as three new detention centers in rural Colorado, report says*, DENVER POST (Aug. 15, 2025), https://www.denverpost.com/2025/08/15/colorado-immigration-detention-centers-ice/ ("If the plans come to fruition, the new facilities would triple ICE's detention capacity in the state").

3.  Mr. Mendoza Gutierrez has lived in the United States for over 26 years. Mr. Mendoza Gutierrez was detained by Immigration and Customs Enforcement (ICE) on or about May 25, 2025, and at all relevant times was detained at the Denver Contract Detention Facility in Aurora, Colorado ("Aurora Facility"). Mr. Mendoza Gutierrez has two teenage U.S.-citizen children (one of who is the victim of sexual abuse), has a fixed address, owns his own small business, and has had steady employment for over a decade. His only criminal convictions are a 20+-year-old driving under the influence conviction (that he took responsibility for by pleading guilty and completing all the requirements of his probation) and minor traffic tickets.

4.  Plaintiff and others similarly situated are charged with, *inter alia*, having entered the U.S. without inspection. *See* 8 U.S.C. § 1182(a)(6)(A)(i).

5.  Based solely on the "entry without inspection" allegation in Mr. Mendoza Gutierrez's removal proceedings, Defendant Department of Homeland Security (DHS) denied Mr. Mendoza Gutierrez and others similarly situated an opportunity for release from immigration detention on bond. This new denial of access to bond is unlawful and a dramatic change from decades of precedent and agency interpretation of 8 U.S.C. § 1226, which has long been interpreted to permit release on bond. Defendants have taken their actions pursuant to a draconian and cruel new DHS policy issued on July 8, 2025, instructing all ICE employees to consider anyone inadmissible under § 1182(a)(6)(A)(i) – *i.e.* those who entered the U.S. without inspection – to be subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and therefore eligible for release only on parole at ICE's discretion.

6.  Then, on September 5, 2025, the Board of Immigration Appeal (BIA), a

component of Defendant Executive Office for Immigration Review (EOIR), issued a precedential decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) (*Yajure Hurtado*) that purports to require *all* of EOIR's immigration judges (IJs) to find they have no "jurisdiction" to grant bond to people like Plaintiff and the class he represents because they are detained pursuant to § 1225(b)(2)(A) rather than § 1226(a).

7. Mr. Mendoza Gutierrez (and others similarly situated) sought a bond redetermination hearing before an IJ at the Aurora Facility, but the IJ hearing his case likewise denied Mr. Mendoza Gutierrez bond. Other similarly situated people are similarly being denied bond by multiple IJs hearing these cases at the Aurora Facility. Consistent with DHS's new policy and *Yajure Hurtado*, the IJs reach this conclusion by reasoning that, notwithstanding years or even decades of living in the U.S., that Mr. Mendoza Gutierrez and others similarly situated are nevertheless "applicants for admission" who are "seeking admission" and subject to mandatory detention under § 1225(b)(2)(A), and that the IJs thus "lack jurisdiction" to hear requests for bond.

8. DHS and ICE's detention of Mr. Mendoza Gutierrez and others similarly situated on this basis violates the plain language of the INA and its implementing regulations.

9. 8 U.S.C. § 1225(b)(2)(A) applies only to individuals who, unlike Mr. Mendoza Gutierrez and those similarly situated, are apprehended *on arrival* in the U.S. The statute states that an "applicant for admission" who is "seeking admission" at the border or a port of entry is subject to mandatory detention and ineligible for release on bond. However, the statute does *not* apply to individuals like Mr. Mendoza Gutierrez and others similarly situated who were detained by ICE in the interior after having entered and

4

begun residing in the U.S. Instead, people like Mr. Mendoza Gutierrez and others similarly situated are subject to a different statute, 8 U.S.C. § 1226(a), that allows for release on bond. Indeed, § 1226(a) expressly applies to people who, like Mr. Mendoza Gutierrez and those similarly situated, are charged as inadmissible for having entered the U.S. without inspection.

10. Indeed, for decades Defendants have applied § 1226(a) to people like Mr. Mendoza Gutierrez and acknowledged that they are eligible for bond. Defendants' new policies and *Yajure Hurtado* are thus not only contrary to law, but arbitrary and capricious in violation of the Administrative Procedure Act (APA).

11. Accordingly, Mr. Mendoza Gutierrez seeks to represent a class of noncitizens harmed by these unlawful agency policies and practices which deny him and others similarly situated bond, and result in their prolonged illegal incarceration at the Aurora Facility.

12. Mr. Mendoza Gutierrez seeks to represent all noncitizens in the jurisdiction of this Court without lawful status who are (1) detained by ICE; (2) have or will have proceedings before any immigration court hearing cases within the District of Colorado; (3) have entered or will enter the U.S. without inspection; (4) were not or will not be apprehended upon arrival; and (5) are not or will not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time the noncitizen is scheduled for or requests a bond hearing.

13. The class seeks declaratory relief that establishes that class members are instead subject to detention under § 1226(a) and its implementing regulations, and are therefore entitled to an individualized custody determination regarding bond following

apprehension by DHS and, if not released, a bond determination by the Aurora Court.

14. Additionally, the class seeks relief under the APA, 5 U.S.C. § 706(2), to vacate and set aside Defendants' unlawful detention policies and the BIA's precedential decision in *Yajure Hurtado*.

## JURISDICTION

15. Mr. Mendoza Gutierrez (at all relevant times, including when this lawsuit was filed) was, and others similarly situated who are currently, in the physical custody of Defendants and are detained at the Aurora Facility in Aurora, Colorado, within the jurisdiction of this Court.

16. This case arises under 28 U.S.C. § 2241 (the federal *habeas* statute) as it challenges Defendants' unlawful detention of Mr. Mendoza Gutierrez; the INA, 8 U.S.C. §§ 1101-1538, and its implementing regulations; the APA, 5 U.S.C. §§ 500-596, 701-706; and the U.S. Constitution, including the Suspension Clause, U.S. Const., art. I, sec. 9.

17. The Court may grant relief pursuant to 28 U.S.C. § 2241; the Declaratory Judgment Act, 28 U.S.C. § 2201; the APA, 5 U.S.C. §§ 702 & 706; the All Writs Act, 28 U.S.C. § 1651; Federal Rule of Civil Procedure 65; and the Court's inherent equitable powers.

## VENUE

18. Venue properly lies within the District of Colorado under 28 U.S.C. § 1391(b)(2) and (e), because this is a civil action in which Defendants are employees, officers, and agencies of the United States, Plaintiff and others similarly situated are detained in this District, and a substantial part of the events or omissions giving rise to this action occurred in the District because Plaintiff and others similarly situated had their

bond hearings before the Aurora Court, which is in this District.

## PARTIES

### A. Plaintiff

19. ICE agents detained Mr. Mendoza Gutierrez on May 25, 2025. Mr. Mendoza Gutierrez was detained at the Aurora ICE Processing Center at all relevant times, including when this lawsuit was filed. After detaining Mr. Mendoza Gutierrez, ICE did not set bond and, on June 23, 2025 an IJ at the Aurora ICE Processing Center denied Mr. Mendoza Gutierrez bond because the IJ erroneously deemed him subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).

### B. Defendants

20. Defendant Juan Baltasar is employed by The GEO Group – the private, for-profit prison company that contracts with ICE – as the Warden of the Aurora Facility where Mr. Mendoza Gutierrez is detained. Mr. Baltasar has immediate physical custody of Plaintiff and others similarly situated and is sued in his official capacity.

21. Defendant Robert Hagan is the ICE Field Office Director of the Denver ICE Field Office and is sued in his official capacity. Defendant Hagan is the immediate custodian of Plaintiff (and others similarly situated) and is responsible for detaining Plaintiff and others similarly situated.

22. Defendant Kristi Noem is the Secretary of the Department of Homeland Security (DHS). Sec. Noem is responsible for the implementation and enforcement of the INA, and oversees ICE, a component agency of DHS, which is responsible for detaining Plaintiff and others similarly situated. Secretary Noem has ultimate custodial authority over Plaintiff and others similarly situated and is sued in her official capacity.

23. Defendant Todd M. Lyons is the Acting Director of U.S. Immigration and Customs Enforcement and is sued in his official capacity. Defendant Lyons is responsible for detaining Plaintiff and others similarly situated.

24. Defendant Pamela Bondi is the Attorney General of the United States. Attorney General Bondi is responsible for the Department of Justice, of which the Executive Office for Immigration Review and the immigration court system it operates is a component agency. Attorney General Bondi is sued in her official capacity.

25. Defendant Department of Homeland Security is the federal agency responsible for implementing and enforcing the INA, including the detention and removal of noncitizens.

26. Defendant Executive Office for Immigration Review (EOIR) is the federal agency responsible for implementing and enforcing the INA in removal proceedings, including for custody redeterminations in bond hearings. The BIA is a component of EOIR.

27. Defendant Daren K. Margolin is the Director of EOIR and has ultimate responsibility for overseeing the operation of the immigration courts and the BIA, including bond hearings. Director Margolin is sued in his official capacity

28. The Aurora Immigration Court is the adjudicatory body within EOIR with jurisdiction over the removal and bond cases of the class members.

29. Defendant Immigration and Customs Enforcement is the agency within DHS responsible for implementing and enforcing the INA, including the detention and removal of noncitizens.

## LEGAL FRAMEWORK

30. Immigration detainees generally are imprisoned under three basic forms of detention authorized by the INA during the pendency of removal (deportation) proceedings under 8 U.S.C. § 1229a or, where the person receives a final removal order, to effectuate the person's removal from the U.S.

31. First, 8 U.S.C. § 1226(a) authorizes the *discretionary* detention of noncitizens in § 1229a removal proceedings before an IJ. When ICE arrests a person pursuant to § 1226(a), ICE conducts an initial "custody determination" where ICE "may" keep the person detained, release them on bond, or release them on their own recognizance.. If ICE elects to keep someone detained under § 1226(a) with or without bond, those individuals are then generally entitled to a "custody redetermination hearing" (also known as a bond hearing) before an IJ near the outset of their detention, unless they have been arrested for, charged with, or convicted of certain disqualifying crimes (that are enumerated at § 1226(c) and not relevant here). *See* 8 U.S.C. § 1226(a) & 8 C.F.R. §§ 1003.19(a), 1236.1(d). This is the "default" detention authority, *see Jennings v. Rodriguez*, 582 U.S. 281 (2018), and for decades has been applied to people apprehended in the interior, rather than at or near the border or a port of entry.

32. Second, the INA provides for *mandatory* detention of noncitizens subject to an expedited removal order imposed pursuant to § 1225(b)(1) and for other noncitizen "applicants for admission" who are "seeking admission" to the U.S. who are apprehended at the border or port of entry, *see* 8 U.S.C. § 1225(b)(2), as well as for people facing certain criminal allegations or convictions under § 1226(c).

9

33. Section 1225 focuses on noncitizens "arriv[ing]" "whether or not at a designated port of arrival," and plainly applies to people like those who were "interdicted in international or United State waters" (§ 1225(a)(1)), are "stowaways" (§ 1225(a)(2)), and who are otherwise "applicants for admission" into the U.S. (§ 1225(a)(3)). In contrast to § 1226, § 1225 discusses matters such as "screening" "claims for asylum" (§ 1225(b)(1)(A)(i)-(ii)) at the border, "inspection" to determine if a noncitizen "is … clearly and beyond a doubt entitled to be admitted" (§ 1225(b)(2) & (d)), and "removal" of "an arriving [noncitizen]" (§ 1225(c)(1)).

34. Finally, the INA provides for detention of noncitizens who have been ordered removed. *See* 8 U.S.C. § 1231(a). As Mr. Mendoza Gutierrez and hundreds of others like him are not yet subject to a final removal order, this provision is not relevant here.

35. This case concerns the discretionary detention provisions at 8 U.S.C. § 1226(a) and the mandatory detention provisions at § 1225(b)(2).

36. The Supreme Court summarizes the interplay between §§ 1226 and 1225 as follows: "In sum, U.S. immigration law authorizes the Government to detain certain [noncitizens] seeking admission *into* the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain [noncitizens] *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 582 U.S. at 289 (emphasis added).

37. The detention provisions at §§ 1226(a) and 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996, Pub. L. No. 104-208, Div. C, §§ 302-03, 110 Stat. 3009-546, Div. C, §§ 302-03, 110 Stat. 3009-

10

546, 3009-582, & 3009-585. Section 1226 was most recently amended earlier in 2025 by the Laken Riley Act (LRA), Pub. L. No. 119-1, 139 Stat. 3 (2025).

38. Following enactment of the IIRIRA, EOIR wrote new regulations explaining that, in general, people who entered the country without inspection were *not* detainable under § 1225 and that they were instead could only be detained under § 1226 – and thus able to access bond. *See* Inspection and Expediated Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination").

39. Thus, in the following decades, most people who entered without inspection, were later apprehended in the interior, and were then placed in standard § 1229a removal proceedings (like Mr. Mendoza Gutierrez), could receive bond hearings under § 1226 before IJs (unless their criminal history rendered them ineligible under § 1226(c)). That practice was consistent with additional decades of pre-IIRIRA practice, in which noncitizens who were not "arriving" were entitled to a custody hearing before an IJ or other hearing officer. *See* 8 U.S.C. § 1252(a) (1994); *see also* H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting the new § 1226(a) simply "restates" the detention authority previously found at § 1252(a)).

40. This practice of providing people like Mr. Mendoza Gutierrez bond hearings – both pre- and post-enactment of the IIRIRA – is consistent with the fact that noncitizens present in the U.S. have constitutional rights. "[T]he Due Process Clause applies to all

'persons' within the United States, including [noncitizens], whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

41. However, over the last several months, Defendants have adopted an entirely new interpretation of the statute. On May 22, 2025, the BIA issued an unpublished decision, Redacted AXXX-XXX-269 (BIA May 22, 2025), holding that because noncitizens who entered the U.S. without inspection or parole are considered "applicants for admission" who are "seeking admission" to the U.S., they are therefore ineligible for IJ bond hearings under 8 U.S.C. § 1225(b)(2)(A).

42. On or about July 8, 2025, ICE, "in coordination with the Department of Justice (DOJ)," announced a new policy that rejected this decades-long framework, and the well-settled understanding of the statutory basis for detention.

43. The new ICE/DOJ policy, titled "Interim Guidance Regarding Detention Authority for Applicants for Admission," claims that all noncitizens present within the U.S. who entered without inspection – no matter how long ago – are deemed "applicants for admission" who are "seeking admission" under 8 U.S.C. § 1225, and thus subject to mandatory detention under § 1225(b)(2)(A). The new policy applies regardless of when and where a person was apprehended and primarily affects people who have resided in the U.S. for months, years, and even – like Mr. Mendoza Gutierrez – decades. As such, ICE is now detaining noncitizens like Mr. Mendoza Gutierrez without conducting an initial custody determination.

44. Then, on September 5, 2025, the BIA issued the precedential decision in *Yajure Hurtado*, which requires all IJs to find that people like Mr. Mendoza Gutierrez and the class members are properly detained without bond under § 1225, rather than being

12

eligible for bond under § 1226. Under *Yajure Hurtado*, Defendants have predetermined that Mr. Mendoza Gutierrez and the class he represents will be denied bond hearings, and that the federal government is imprisoning them under the purported authority of 8 U.S.C. § 1225(b)(2). As recently as January 13, 2026, the Chief Immigration Judge sent an email to "all Immigration Judges" instructing them that "*Yajure Hurtado* [is] binding precedent on agency adjudications."

45. Respondents continue to take this position even though virtually *every* federal court considering this issue has rejected their position and granted *habeas* or other preliminary relief to detained immigrants who were held without bond. *See*, *e.g.*, *Rodriguez-Vazquez v. Bostock*, 779 F.Supp.3d 1239 (W.D. Wash. 2025) (granting preliminary relief); *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299, *8 (D. Mass. July 7, 2025) (granting individual *habeas* relief); *Diaz Martinez v. Hyde*, No. CV 25-11613-BEM, --- F. Supp.3d ---, 2025 WL 2084238, *9 (D. Mass. July 24, 2025) (denying reconsideration of individual *habeas* relief); *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01874-SSS-BFM, *13 (C.D. Cal. July 28, 2025) (granting preliminary relief); *Escalante v. Bondi*, No. 25-cv-3051, 2025 WL 2212104 (D. Minn. July 31, 2025) (report and recommendation to grant preliminary relief, adopted *sub nom O.E. v. Bondi*, 2025 WL 2235056 (D. Minn. Aug. 4, 2025)); *Lopez Benitez v. Francis*, No. 25-Civ-5937, 2025 WL 2267803 (S.D. N.Y. Aug. 8, 2025) (granting individual *habeas* relief); *de Rocha Rosado v. Figueroa*, No. CV 25-02157, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025) (report and recommendation to grant *habeas* relief, adopted without objection at 2025 WL 2349133 (D. Ariz. Aug. 13, 2025)); *Dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988 (D. Mass. Aug. 14, 2025) (granting *habeas* relief); *Aguilar Maldonado v. Olson*,

No. 25-cv-3142, 2025 WL 2374411 (D. Minn. Aug. 15, 2025) (same); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW, 2025 WL 2379285 (C.D. Cal. Aug 15, 2025) (same); *Romero v. Hyde*, --- F.Supp.3d ----, 2025 WL 2403827 (D. Mass. Aug. 19, 2025) (same); *Leal-Hernandez v. Noem*, No. 1:25-cv-02428-JRR, 2025 WL 2430025 (D. Md. Aug. 24, 2025) (same); *Benitez v. Noem*, No. 5:25-cv-02190, Doc. 11 (C.D. Cal. Aug. 26, 2025) (granting preliminary relief); *Kostak v. Trump*, No. 3:25-dcv-01093-JE, Doc. 20 (W.D. La. Aug. 27, 2025) (same); *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, Doc. 14 (E.D. Mich. Aug. 29, 2025) (granting *habeas* relief).

46. It is estimated that this novel and incorrect interpretation of the INA would require a person's detention any time that immigration authorities arrest one of the millions of undocumented immigrants residing in the U.S. who entered without inspection and who have not since been admitted or paroled.[3]

47. Virtually all of the IJs hearing cases in the Aurora Immigration Court have followed suit and adopted this flawed interpretation of the statute. These IJs now hold that they lack jurisdiction to determine bond for any person who has entered the U.S. without inspection, even if that person has resided here for months, years, or even decades. Instead, consistent with the unpublished BIA decision, the new DHS policy, and *Yajure Hurtado*, these Aurora Immigration Court IJs are now (erroneously) concluding they lack jurisdiction to consider bond, and that people like Mr. Mendoza Gutierrez are thus subject to mandatory detention under § 1225(b)(2)(A).

---

[3] Maria Sacchetti & Carol D. Leonnig, *ICE declares millions of undocumented immigrants ineligible for bond hearings*, WASHINGTON POST (July 14, 2025), https://www.washingtonpost.com/immigration/2025/07/14/ice-trump-undocumented-immigrants-bond-hearings/ [https://perma.cc/5ZTR-EN4B].

48. This marks a dramatic change at the Aurora Immigration Court, where judges had previously granted bond in bond in 42% of cases, one of the highest rates in the country.[4]

49. Pursuant to its July 8, 2025 policy and *Yajure Hurtado*, DHS is now asserting that all person who entered without inspection are subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).

50. Simply, DHS, DOJ, EOIR (including the BIA), and ICE's interpretation defies the plain language of the INA, its long-extant implementing regulations, and canons of statutory construction. And now hundreds of federal court orders. *See supra* ¶ 45.

51. Instead, the INA's plain text demonstrates § 1226(a) – *not* § 1225(b) – applies to people like Mr. Mendoza Gutierrez. Section 1226(a) is the "default rule" applying to all persons "pending a decision on whether the [noncitizen] is to be removed." *Rodriguez Vazquez*, 779 F. Supp. 3d at 1246 & *Jennings*, 582 U.S. at 281. *See also supra* at ¶ 43.

52. Other portions of the text of § 1226 also explicitly apply to people charged as being inadmissible, including those who entered without inspection. *See* 8 U.S.C. § 1226(c)(1)(E). Subparagraph (E)'s reference to inadmissible individuals makes clear that, by default, inadmissible individuals not subject to subparagraph (E)(ii) are entitled to a bond hearing under subjection (a). "When Congress creates 'specific exceptions' to a statute's applicability, it 'proves' that absent those exceptions, the statute generally applies." *Rodriguez Vazquez*, 779 F. Supp. 3d at 1256-57 (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010)).

---

[4] *See* TRAC Immigration, *Detained Immigrants Seeking Release on Bond Have Widely Different Outcomes*, July 19, 2023, available at: https://tracreports.org/reports/722/.

53. Thus, § 1226 leaves no doubt that it applies to noncitizens like Mr. Mendoza Gutierrez who are present without admission and who face charges of removal proceedings of being inadmissible to the U.S.

54. By contrast, § 1225(b) applies to people arriving at U.S. ports of entry or who very recently entered the U.S. The statute's entire framework is premised on inspections at the border of people who are "seeking admission" to the U.S. 8 U.S.C. § 1225(b)(2)(A). *See also Diaz Martinez v. Hyde*, No. CV 25-11613-BEM, --- F. Supp.3d ---, 2025 WL 2084238, *9 (D. Mass. July 24, 2025) ("Our immigration laws have long made a distinction between those [noncitizens] who have come to our shores seeking admission … and those who are within the United States after an entry, irrespective of its legality.") (cleaned up, citing *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958)). Indeed, the Supreme Court has explained that this mandatory detention scheme applies "at the Nation's borders and ports of entry, where the Government must determine whether a[] [noncitizen] seeking to enter the country is inadmissible." *Jennings*, 583 U.S. at 287.

55. Accordingly, the mandatory detention provision of § 1225(b)(2) does not apply to people like Mr. Mendoza Gutierrez and hundreds of other people like him who are detained at the Aurora Facility, after they had already entered and were residing in the U.S. at the time they were detained.

**FACTS**

56. Mr. Mendoza Gutierrez is a native of El Salvador who has resided in in the Denver Metro Area since 1999. During the 26-plus years he has resided in the U.S., he has never had any prior contact with immigration authorities.

57. Mr. Mendoza Gutierrez has two U.S.-citizen children, his son, J.M. (18 years old) and daughter, N.M. (16 years old), who he supports along with his wife, Glendy. He is a leader in his church, where he was a founding member and occasionally gives the Sunday sermon, while singing in the choir as the lead vocalist. At a hearing on his underlying removal case, over a dozen members of the church showed up to support him. He owns his own construction firm, which is frequently hired by his former employer (where he worked for eight years) as a subcontractor. His colleagues describe him as a hard worker and dependable employee. Before his detention, he lived at a fixed address with his family. Mr. Mendoza Gutierrez pays all required taxes – including Social Security taxes even though he would not benefit from the Social Security program.

58. Tragically, when he was a minor, J.M. was sexually assaulted in 2017 by a family friend while J.M. was in the perpetrator's care. J.M reported the assault to Mr. Mendoza Gutierrez, who made sure the perpetrator was reported to the police. Mr. Mendoza Gutierrez has cooperated with law enforcement to prosecute this case. Indeed, Mr. Mendoza Gutierrez is a witness in the criminal case who has been subpoenaed to testify. There is an active investigation into the assault, and a warrant out for the arrest of the perpetrator (who is at large). Unsurprisingly, J.M. has suffered severe emotional trauma as a result of being sexually abused by a man close to his family.

59. As a result, the Aurora Police Department certified Mr. Mendoza Gutierrez's request for a U-Visa. The U-Visa program is designed to encourage victims of crime (as well as parents of minor U.S.-citizen children who are victims of crime) to cooperate with law enforcement, including prosecutors, to ensure the safety of our communities. With

the certification from the Aurora Police Department, Mr. Mendoza Gutierrez submitted his U-Visa application before his detention. The application remains pending.

60. Mr. Mendoza Gutierrez's criminal convictions consist of a single misdemeanor driving under the influence charge from almost 23 years ago, and minor traffic tickets. Mr. Mendoza Gutierrez took responsibility for the DUI charge by pleading guilty, was sentenced to one year of probation, complied with all the conditions of his plea agreement (including completing alcohol awareness classes), and has abstained from alcohol ever since. There was no accident, and no one was injured. In any case, driving under the influence is not an offense that would disqualify him from release on bond under § 1226(c). In fact, the INA does not provide for any immigration consequences for a DUI conviction. *E.g.*, *Matter of Lopez-Meza*, 22 I. & N. Dec. 1188, 1194 (B.I.A. 1999) (acknowledging the "long historical acceptance that a simple DUI offense does not inherently involve moral turpitude").

61. In short, Mr. Mendoza Gutierrez has a fixed address, strong ties to the community, and no disqualifying criminal convictions. As such, prior to Respondents' new policy and *Yajure Hurtado*, he would have been an excellent candidate for release from immigration detention on bond.

62. Unfortunately, in May 2025, Mr. Mendoza Gutierrez was falsely accused of another criminal offense – indecent exposure – and arrested by the Broomfield police. The police body cameras showed the complaining witness was plainly intoxicated, and other witnesses who were present immediately contradicted her story. After reviewing surveillance video evidence of the alleged incident, the district attorney quickly dismissed the case on June 10, 2025 "in the interest of justice," and sealed the records.

63. Because of his arrest on this bogus charge, however, ICE took Mr. Mendoza Gutierrez into custody on or about May 25, 2025, and imprisoned him at the Aurora Facility. ICE continued to detain him at the Aurora Facility at all relevant times, including when this lawsuit was filed.

64. ICE initially declined to issue bond to Mr. Mendoza Gutierrez under § 1226(a).

65. ICE placed Mr. Mendoza Gutierrez in removal proceedings before the Aurora Immigration Court pursuant to 8 U.S.C. § 1229a.

66. On June 5, 2025, ICE served a "notice to appear" on Mr. Mendoza Gutierrez, and charged him with being "present in the United States [without] be[ing] admitted or paroled." The factual basis of the charge is that on an "unknown" date and an "unknown" location, Mr. Mendoza Gutierrez entered the U.S. and then was "not admitted or paroled after inspection by an Immigration Officer OR at that time [he] arrived at a time or place other than as designated by the Attorney General" and thus is "a[] [noncitizen] present in the United States without being admitted or paroled" in violation of INA § 212(a)(6)(A)(i) (8 U.S.C. § 1182).

67. On June 12, 2025, through counsel, Mr. Mendoza Gutierrez requested a bond hearing before an IJ.

68. After the bond hearing, on June 23, 2025, IJ Tyler Wood of the Aurora Immigration Court denied bond "because the [immigration] court lacks jurisdiction because [Mr. Mendoza Gutierrez] is detained under [8 U.S.C. § 1225]," relying on Respondents' new interpretation of the INA's detention authorities.

69. Members of the class are presently likewise being denied release on bond as IJs rely on *Yajure Hurtado* and ICE's initial, albeit erroneous, decision that class members are detained pursuant to § 1225.

**CLASS ACTION ALLEGATIONS**

70. Plaintiff Mendoza Gutierrez brings this action on behalf of himself and all other persons who are similarly situated, pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2). A class action is proper because this action involves questions of law and fact common to the class; the class is so numerous that joinder of all members is impractical; the claims of Plaintiff are typical of the claims of the class; Plaintiff will fairly and adequately protect the interests of the class; and Defendants have acted on grounds that apply generally to the class, so that final declaratory relief is appropriate with respect to the class as a whole.

71. Plaintiff also seeks to represent a class comprised of the following:

All people who are arrested and detained by Respondents in Colorado pending a decision on whether they are to be removed from the United States based on alleged violations of the Immigration and Nationality Act, or who are otherwise subject to the jurisdiction of an immigration Court located in Colorado, where:

(a) For the person's most recent entry into the United States, the government has not alleged that the person was admitted into the United States;
(b) For the person's most recent entry into the United States, the person was not paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A) at the time of entry;
(c) The person is not a person whose most recent arrest occurred at the border while they were arriving in the United States; and,
(d) The person is being detained based on Respondents' assertions that they are subject to 8 U.S.C. § 1225(b)(2)(A).

72. The class is so numerous that joinder of all members is impracticable. Plaintiff is not aware of the exact number of putative class members, as Defendants are uniquely positioned to identify such persons. Upon information and belief, there are

20

presently hundreds of individuals detained with removal proceedings before the Aurora Immigration Court to whom the Defendants' no-bond policy applies. The class is also comprised of many future potential members, given the large numbers of persons residing in Colorado who entered without inspection. It is estimated that 156,000 undocumented immigrants currently reside in Colorado, and the vast majority of them likely entered without inspection and would be subject to Defendants' policies and practices if apprehended.[5] The Class is also comprised of numerous future members.

73. The proposed class meets the commonality requirement of Federal Rule of Civil Procedure 23(a)(2). All Class members present at least one core common question: whether § 1225(b)(2)'s mandatory detention provisions apply to them and prevent them from being considered for release on bond under § 1226(a) and its implementing regulations.

74. The Named Plaintiff's claims are typical of the Class, as Mr. Mendoza Gutierrez faces the same injury as the Class and asserts the same claims and rights as the Class.

75. The proposed class meets the adequacy requirement of Federal Rule of Civil Procedure 23(a)(4). The Named Plaintiff seeks a declaration of rights and relief under the APA applicable to the whole class, is represented by competent class counsel, and will fairly and adequately protect the class' interest.

---

[5] Carl Davis, *et al., Tax Payments by Undocumented Immigrants*, INSTITUTE ON TAXATION AND ECONOMIC POLICY, Appx. Table 5, available at https://itep.org/undocumented-immigrants-taxes-2024/.

**CLAIMS FOR RELIEF**

**COUNT I**

**Violation of 8 U.S.C. § 1226(a)**
**Unlawful Denial of Release on Bond**
**(On Behalf of Plaintiff and the Class)**

76. Plaintiff incorporates by reference the allegations of fact set forth in the preceding paragraphs.

77. The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to Mr. Mendoza Gutierrez or the class members because they were present and residing in the U.S., have been placed under a § 1229a removal proceeding, and charged with inadmissibility pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). Simply, § 1225 does not apply to people like Mr. Mendoza Gutierrez who previously entered the country and have been present and residing in the U.S. prior to being detained and placed in removal proceedings by Respondents. Such noncitizens may only be detained pursuant to § 1226(a), unless (unlike Mr. Mendoza Gutierrez and the class members) they are subject to mandatory detention under § 1226(c), or § 1231. And detention under § 1226(a) requires access to bond.

78. Nonetheless, DHS and Aurora Immigration Court IJs have adopted a policy and practice of applying § 1225(b)(2) to Plaintiff and class members.

79. The unlawful application of § 1225(b)(2) to class members unlawfully mandates their continued detention and violates the INA.

22

## COUNT II

**Violation of Bond Regulations, 8 C.F.R. §§ 236.1, 1236.1 & 1003.19
Unlawful Denial of Release on Bond
(On Behalf of Plaintiff and the Class)**

80. Plaintiff incorporates by reference the allegations of fact set forth in the preceding paragraphs.

81. In 1997, after Congress amended the INA through IIRIRA, EOIR and then-Immigration and Naturalization Service issued an interim rule to interpret and apply the IIRIRA. Specifically, under the heading "Apprehension, Custody, and Detention of [Noncitizens]," the agencies explained that "[d]espite being applicants for admission, [noncitizens] who are present without having been admitted or paroled (formerly referred to as [noncitizens] who entered without inspection) *will be eligible for bond and bond redetermination*." 62 Fed. Reg. at 10323 (emphasis added). The agencies thus made clear that individuals who had entered without inspection were eligible for consideration for bond and bond hearings before IJs under 8 U.S.C. § 1226 and its implementing regulations.

82. Nonetheless, DHS, DOJ, EOIR (including the BIA) and Aurora Immigration Court IJs have adopted a policy and practice of applying § 1225(b)(2) and its implementing regulations to Plaintiff and class members.

83. The application of § 1225(b)(2) and its implementing regulations to Plaintiff and class members unlawfully mandates their continued detention and violates 8 C.F.R. §§ 236.1, 1236.1, and 1003.19.

23

## COUNT III

**Violation of the Administrative Procedure Act
Failure to Observe Required Procedures
(On Behalf of Plaintiff and the Class)**

84. Plaintiff incorporates by reference the allegations of fact set forth in the preceding paragraphs.

85. Under the APA, a court must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," that is "contrary to constitutional right [or] power," or that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A)-(C).

86. Respondents' detention of Mr. Mendoza Gutierrez and the class members pursuant to § 1225 is arbitrary and capricious, and in violation of the Fifth Amendment of the U.S. Constitution. Respondents do not have statutory authority under § 1225 to detain Mr. Mendoza Gutierrez or any members of the class.

87. Respondents' detention of Mr. Mendoza Gutierrez and the class members without access to bond is arbitrary, capricious, an abuse of discretion, violative of the U.S. Constitution, and without statutory authority, all in violation of 5 U.S.C. § 706(2). As such, the Court should vacate and set aside Defendants' July 8, 2025 policy denying class members individualized custody determinations and the BIA decisions in Redacted, AXXX-XXX-269 (BIA May 22, 2025) and *Yajure Hurtado* denying class members individualized bond hearings.

## COUNT IV

### Violation of Fifth Amendment Due Process Clause
### (On Behalf of Plaintiff and the Class)

88. Plaintiff incorporates by reference the allegations of fact set forth in the preceding paragraphs.

89. The Fifth Amendment provides that "No person shall … be deprived of life, liberty, or property[] without due process of law."

90. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

91. Moreover, "The Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id*. at 693.

92. Defendants' mandatory detention of Plaintiffs and the proposed class without consideration for release on bond or access to a bond hearing violates their due process rights.

### PRAYER FOR RELIEF

Wherefore,

A.  Plaintiff respectfully requests that this Court:

1.  Assume jurisdiction over this matter;

2.  Certify this case as a class action, and certify the Class;

3.  Appoint Named Plaintiff Mendoza Gutierrez as the representative of the Class;

4.  Appoint Undersigned counsel as Class Counsel pursuant to Federal Rule of Civil Procedure 23(g);

B. As remedies for each of the causes of action asserted above, Plaintiff and the proposed class members request that this Court:

1. Enjoin respondents from transferring Mr. Mendoza Gutierrez outside the jurisdiction of the District of Colorado pending resolution of this case;

2. Declare that Defendants' policy and practice of denying consideration for bond on the basis of § 1225(b)(2) to Plaintiff Mendoza Gutierrez and the Class, violates the INA, its implementing regulations, the APA, and the Due Process Clause of the Fifth Amendment;

3. Issue a writ of *habeas corpus* requiring the Defendants to release Mr. Mendoza Gutierrez immediately, or grant him a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven days;

4. Set aside application of Defendants' unlawful detention policy and *Yajure Hurtado* as to the class members pursuant to 5 U.S.C. § 706(2), as contrary to law, arbitrary and capricious, and contrary to constitutional rights;

5. Award attorneys' fees and costs pursuant to the Equal Access to Justice Act (EAJA), as amended, 28 U.S.C. § 2412(d), 5 U.S.C. § 504, and on any other basis justified under law; and,

6. Grant any other and further relief that this Court deems just and appropriate, including individual injunctions when requested as necessary to secure the rights of Class members.

Dated: February 6, 2026.

Respectfully submitted,


*s/ Scott C. Medlock*
_____
Timothy R. Macdonald
Sara R. Neel
Emma Mclean-Riggs
Anna I. Kurtz
Scott C. Medlock
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF COLORADO
303 E. 17th Avenue
Denver, CO 80203
(720) 402-3107
sneel@aclu-co.org
emcleanriggs@aclu-co.org
akurtz@aclu-co.org
smedlock@aclu-co.org

Michael K.T. Tan
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
m.tan@aclu.org

Anand Balakrishnan
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
abalakrishnan@aclu.org

*s/ Hans Meyer*
Hans Meyer
Conor T. Gleason
The Meyer Law Office
PO Box 40394
Denver, CO 80204
(303) 831 0817
hans@themeyerlawoffice.com
conor@themeyerlawoffice.com

27

ATTORNEYS FOR PETITIONER AND THE PUTATIVE CLASS

Alyssa Reed
Reed Immigration, LLC
2326 W. 72nd Ave.
Denver, CO 80221
Attorney for Petitioner
(303) 957 0192
alyssa@reedimmigration.com

ATTORNEY FOR PETITIONER

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 6, 2026, I electronically filed the foregoing **PLAINTIFF-PETITIONER'S SECOND AMENDED CLASS ACTION COMPLAINT FOR VACATUR AND DECLARATORY AND *HABEAS CORPUS* RELIEF** with the Clerk of the Court using the CM/ECF system, and that in accordance with Fed. R. Civ. P. 5, all counsel of record shall be served electronically through such filing.

*s/ Scott Medlock*

Counsel for Plaintiff-Petitioner and the Plaintiff Class